UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

AUG 1 7 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JACKSON L. MCGRADY, )
Major, United States Marine Corps, )
820 Bright Street )
Fredericksburg, Virginia 22134 )
Tel. # 540.371.3792 )
)
      Plaintiff )

v.

GORDON R. ENGLAND
Secretary of the Navy
Washington, D.C. 20350-1000

and

DEPARTMENT OF THE NAVY
Washington, D.C. 20350-1000

      Defendants

CASE NUMBER   1:05CV01651

JUDGE: Gladys Kessler

DECK TYPE: Administrative Agency Review

DATE STAMP: 08/17/2005

## COMPLAINT

1. This is a civil action to: a) seek judicial review of defendants' deemed denial of plaintiff's request, received by defendant on February 9, 2005, for consideration by a military special selection board (SSB) under 10 U.S.C. § 628 or in the alternative, if defendant issues a final decision denying plaintiff's request as a result of the filing of this complaint, and the Court is willing to consider the defendants' post hoc rationalization, judicial review of defendants' decision; and b) seek an order from this Court compelling defendant to comply with the statutory deadlines imposed by 10 U.S.C. § 628 in processing plaintiff's second request for a SSB that was received by defendant on March 22, 2005, or in the first alternative, to seek judicial review of defendant's deemed denial of the request under the

1

provisions of 10 U.S.C. § 628, or in the second alternative, if defendant issues a final decision denying plaintiff's request as a result of the filing of this complaint, and the Court is willing to considers the defendants' post hoc rationalization, to seek judicial review of defendants' decision.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This court has personal jurisdiction over the parties pursuant to 10 U.S.C. § 628(g). This case presents a federal question pursuant to 10 U.S.C. § 628 which is the federal statute creating military SSBs. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because the Defendants, the U.S. Secretary of Navy and the Department of the Navy, reside in this District.

3. Defendant received plaintiff's complete application for a SSB on February 9, 2005. Defendants' failure to issue a final decision within six months of receiving the request is deemed to be a denial under the provisions of 10 U.S.C. § 628(g) and entitles plaintiff to seek judicial review.

4. Defendant received plaintiff's second completed application for a SSB on March 22, 2005. Defendant is required to issue a decision by September 22, 2005, which is a statutory deadline. Defendants' representations to the plaintiff indicate that a final decision will not be issued before the statutory deadlines, which is a deemed denial of the request entitling plaintiff to seek judicial review.

## PARTIES

5. Plaintiff is a major on the active duty list currently serving in the United States Marine

2

Corps.

6. Defendant, the Honorable Gordon R. England, is the Secretary of the Navy and is the named defendant in his official capacity only. He is the proper defendant for causes of action for review of military SSB decisions.

## FACTUAL BACKGROUND

7. In October 2002 plaintiff was considered for promotion by the Marine Corps' Fiscal Year (FY) 2004 lieutenant colonel selection board.

8. Prior to the convening of the board Plaintiff contacted Lieutenant Colonel Poleto, a Marine Corps career counselor, to review plaintiff's Official Military Personnel File (OMPF). During this review Lieutenant Colonel Poleto expressed an opinion about a performance evaluation (fitness report) for the reporting period ending December 31, 1989, authored by Lieutenant Colonel Hagee, now General Hagee and presently serving as the Commandant of the Marine Corps (CMC). Her opinion was that it was not a favorable report because the plaintiff was not marked as "Outstanding", which is the highest performance level. She also opined that a comment in the report to the effect that plaintiff was "among the top ¼ of the 38 first lieutenants in the battalion" was not favorable.

9. Despite Lieutenant Colonel Poleto's opinion that the report was not a positive one, there was no statutory or regulatory basis by which plaintiff could challenge General Hagee's report to have it changed or deleted from plaintiff's (OMPF).

10. Based on Lieutenant Colonel Poleto's comments that the rankings on another of plaintiff's performance evaluations, in which plaintiff was ranked "1 of 4", were obscured, plaintiff submitted a copy of the report, along with other materials, to the president of the FY 2004 lieutenant colonel board.

11. Plaintiff was not selected for promotion by the FY 2004 lieutenant colonel board.

12. After plaintiff was notified that he was not selected by the FY 2004 board and in anticipation of preparing for the FY 2005 lieutenant colonel board, plaintiff again reviewed his OMPF with another career counselor, Lieutenant Colonel McLennan. This review occurred on March 7, 2003. Lieutenant Colonel McLennan reviewed plaintiff's record to include all of plaintiff's performance evaluations. He did not express any opinion that any individual performance evaluation was internally inconsistent or any opinion that any of the reports were inaccurate.

13. Plaintiff also reviewed his official record with Colonel Crowl before the convening of the FY 2005 lieutenant colonel board. Colonel Crowl was the Marine Corps Base, Quantico, Command Inspector at the time. He had significant experience with the Marine Corps' promotion processes. Colonel Crowl, based on his own personal philosophy when writing performance evaluations, identified to plaintiff what he considered to be an inconsistency between the comments of Colonel C. Scovel, who was the reviewing officer (second level supervisor) for one of plaintiff's performance evaluations, and his marking on a comparative assessment scale for the evaluation period ending March 15, 1999. Based on Colonel Crowl's own grading philosophy, he believed that Colonel Scovel's comment that plaintiff was "among the top 5% of majors [he] had observe[d] in his 22 years of service" was inconsistent with Colonel Scovel's marking of plaintiff in the 5th of 8 blocks in the comparative assessment scale.

14. Colonel Crowl also identified as strongly negative a "transfer" performance evaluation in which plaintiff was ranked last. This report was written by Captain D. Davidson for the period ending November 26, 1990.

15. Neither Lieutenant Colonel Poleto nor Lieutenant Colonel McLennan identified Colonel Scovel's report as being internally inconsistent. Neither Lieutenant Colonel Poleto nor

Lieutenant Colonel McLennon specifically identified Captain Davidson's report as being strongly negative.

16. Based on the face of Colonel Scovel's report, there was no statutory or regulatory basis by which plaintiff could challenge the report to have it changed or deleted from plaintiff's Official Military Personnel File (OMPF). Based on the face of Captain Davidson's report, there was no statutory or regulatory basis by which plaintiff could challenge the report to have it changed or deleted from plaintiff's Official Military Personnel File (OMPF).

17. In preparing for a promotion board, officers are not required to contact their previous raters to ascertain if they authored accurate performance evaluations.

18. It is presumed that military officers discharge their duties correctly, lawfully and in good faith. Plaintiff is entitled to rely on this presumption.

19. In preparing for the FY 2005 lieutenant colonel selection board, plaintiff solicited a number of senior officers, who were familiar with plaintiff's personal performance, seeking letters of recommendation to bolster the strength of plaintiff's record. The following individuals provided such letters: Lieutenant General Hanlon, Commanding General Marine Corps Combat Development Command; Brigadier General Composto, Commanding General, Marine Corps Base, Quantico; Colonel R. Favors, Marine Corps Base, Quantico, and Colonel D.L. Wright, Marine Corps Base, Quantico.

20. Plaintiff also sought to obtain letters from General M. W. Hagee; Colonel C. Scovel; and Captain (now Mr.) Dennis Davidson in an attempt to ameliorate the negative inferences that a selection board might draw from their comments or markings.

21. General Hagee, through his military attaché, declined to provide a letter based on his belief that providing such a letter would unduly influence a selection board based on his position as CMC.

22. Captain Davidson provided a letter to plaintiff. However, instead of merely placing the

5

marks in context, Captain Davidson admitted that he falsified plaintiff's performance evaluation by improperly ranking Plaintiff "3 of 3" in an attempt to increase the augmentation chances of two other lieutenants. Captain Davidson admitted that plaintiff should have been ranked of "1 of 3".

23. In 1999 the Marine Corps changed the format of the performance evaluations. The "old" system graded officers of the same grade, who were under the direction of the same supervisor, against each other for a finite period of time, and in no case longer than year. This was a "static" or "point in time" comparative assessment. Out of a concern that raters were "inflating" their reports and "gaming" the system, the Marine Corps introduced a new performance evaluation system in an attempt to wring out inflation by tracking the evaluation habits of rating officials. This new system created a rater profile that is continuously updated as the rater writes additional reports on subordinates of a particular grade. Under this system, when a rater writes an evaluation, the officer is effectively ranked against all other officer on whom the rater has submitted an evaluation over his entire career. The new system is considered "dynamic" for these reasons. For the new system to work as intended, raters must not change their rating philosophy over time and are prohibited from doing so by paragraph 8012.2 of Marine Corps Order P1670.7F.

24. Colonel Scovel provided a letter to plaintiff for submission to the promotion board. Colonel Scovel's letter evidences that his personal rating philosophy had changed over time. Colonel Scovel now equated a "top 5%" comment with a mark in the 7th of 8 blocks in the comparative assessment scale instead of the 5th block.

25. On May 6, 2003, plaintiff submitted a petition to the Navy Board for Correction of Military Records (BCNR) through the Marine Corps' Performance Evaluation Board (PERB) as required by Secretary of the Navy Instruction 5420.193.

26. The PERB acts on behalf of the Commandant of the Marine Corps (CMC). Any decision

6

by the PERB is made under the authority of CMC.

27. Plaintiff's May 6, 2003, petition sought to correct the rankings on plaintiff's performance evaluation, which was authored by Captain Davidson, to reflect that he was appropriately ranked as "1 of 3" instead of "3 of 3".

28. The petition included other evidence that Captain Davidson had manipulated other officer's performance evaluations by improperly including plaintiff as a comparator to another officer after plaintiff had left the battalion. Including an officer as a comparator after the officer had left a unit was improper under the performance evaluation system that was in effect at the time of the report.

29. CMC, through the PERB, determined that the admission from Captain Davidson that he falsified plaintiff's evaluation in addition to the evidence submitted by plaintiff that Captain Davidson improperly manipulated another report provided an insufficient basis to correct plaintiff's record. Despite Captain Davidson's statement to the contrary, CMC determined that Captain Davidson made a moral and conscious choice to rank plaintiff last. Consequently, CMC determined that the report was administratively correct as written and should remain unaltered in plaintiff's record. CMC also unwittingly assumed that a reviewing officer (second level supervisor) had concurred in Captain Davidson's markings.

30. Plaintiff was notified of CMC's decision and given a right to respond to the BCNR who would make a final decision on plaintiff's petition. Plaintiff responded by letter of August 14, 2003, specifically addressing the PERB's concerns and providing other material evidence. A copy of the letter was sent to both the BCNR and the PERB. Plaintiff asked BCNR to return the matter to the PERB for reconsideration. BCNR twice asked the PERB if it would reconsider the decision in light of the new evidence and its weight. The PERB refused both times.

31. The evidence in plaintiff's August 14, 2003, included the following:

    a.    A statement from the reviewing officer who admitted that, because of operational commitments, he simply accepted the rankings of the reporting senior and opined that he would have ranked plaintiff "1 of 3".

    b.    A statement from the unit communications officer who expressed an opinion that plaintiff was appropriately ranked "1 of 3".

    c.    Letters from two other officers with very similar career paths as plaintiff, who were considered by the FY 2004 lieutenant colonel promotion board demonstrating that the FY 2004 likely placed dispositive weight on first lieutenant rankings. The officer thought most likely to be promoted by the career counselors, but had marginal first lieutenant rankings, was not selected. The career counselors thought that the other officer was less competitive but he was selected and had strong ranking as a first lieutenant. The officer who did not get selected was successful in having the first lieutenant reports pulled from his record and was selected on the FY 2005 lieutenant colonel board, which further demonstrates the importance the rankings must have had on the FY 2004 lieutenant colonel board.

32. Because of the PERB's refusal to reconsider plaintiff's case, BCNR decided plaintiff's case without further input from the Marine Corps. BCNR granted plaintiff's petition and directed that the performance evaluation be changed as requested by the plaintiff to properly reflect that plaintiff was "1of 3" on Captain Davidson's report.

33. Although the performance evaluation written by Captain Davidson's was approximately 13 years old at the time plaintiff filed the petition to correct it, the Secretary of the Navy determined that plaintiff's petition was "timely" within the meaning of 10 U.S.C. § 1552.

34. Captain Davidson's improper ranking was material in that it made plaintiff's record less competitive when compared to his peers on the FY 2004 lieutenant colonel board.

35. Under the "old" performance evaluation system, a rater (reporting senior, first level supervisor, or reviewing officer, second level supervisor) was required to directly compare

8

the performance of all the officers of the same rank under the rater's supervision on a set schedule, which was either annually or semi-annually. However, if an officer transferred prior to the annual or semi-annual rating period, the rater was only required to write on the transferring officer. Thus, a transfer report afforded a rater an opportunity to manipulate the performance evaluation system by rating an officer higher in the comparative assessments than was the officer's due without negatively affecting the rankings of the other officers. Manipulation of this type was sufficiently frequent that being ranked last on a transfer report sends a strongly negative opinion to a promotion board.

36. Captain Davison, at the time he wrote the report, was unaware of this fact.

37. On September 6, 2003, plaintiff submitted a request for a SSB as relief from the FY 2004 lieutenant colonel board, via the CMC, to the Secretary of the Navy citing the directed change in the rankings on the performance evaluation authored by Captain Davidson.

38. By letter dated February 16, 2004, CMC recommended to the Secretary of the Navy that plaintiff's petition for a SSB be denied based on his view that plaintiff failed to exercise "reasonable diligence" to ensure the accuracy of his record prior to the convening of the FY 2005 lieutenant colonel selection board. The Secretary of the Navy accepted this recommendation without further comment or analysis and adopted the rationale of the CMC.

39. CMC's denial recommendation to the Secretary of the Navy based on a failure to exercise reasonable diligence is inconsistent with CMC's initial position that the admission from Captain Davidson and the other evidence of Captain Davidson's improper manipulation of the performance evaluation system provided an insufficient basis to change the report.

40. CMC's denial recommendation failed to identify any objective criteria upon which he determined that plaintiff failed to exercise reasonable diligence. CMC's recommendation simply concludes that plaintiff failed to exercise reasonable diligence without identifying

the objective criteria used to reach that conclusion. CMC's failure to provide any objective criteria made it impossible for the Secretary of the Navy to make a reasoned decision in denying plaintiff's request for an SSB. CMC's failure to provide any objective criteria makes it impossible for a reviewing court to provide a meaningful judicial review of the Secretary of the Navy's decision to deny plaintiff's request for a SSB.

41. The CMC's denial recommendation based on "reasonable diligence" is inconsistent with the Secretary of the Navy's decision that plaintiff's petition to change Captain Davidson's report was timely filed with the BCNR.

42. The CMC's denial recommendation and the Secretary of the Navy's denial of plaintiff's request for a SSB based on "reasonable diligence" violates 10 U.S.C. § 1552(a) (4) as the Secretary of the Navy had previously determined that the plaintiff timely filed his petition with BCNR to change Captain Davidson's report.

43. Beginning in May 2004, in an attempt to ascertain the objective criteria upon which CMC's reasonable diligence determination was based, Plaintiff filed a series of Privacy Act (5 U.S.C. § 552a) (PA) requests and appeals seeking the contents of plaintiff's SSB file. This file is maintained by the defendant and is a "system of records" under 5 U.S.C. 552a.

44. Plaintiff was told by defendants' employee working in Headquarters Marine Corps, Code MMPR, that a legal memorandum was contained in plaintiff's SSB file. In his PA requests Plaintiff specifically requested a copy of the legal memorandum. By letter of November 5, 2004, defendant responded to plaintiff's PA request denying plaintiff a copy of the legal memorandum by saying that the legal memorandum was not filed in a PA file but was filed in a "general and administrative record file", which was not covered by the PA. Access to the legal memorandum was then denied based on a (b)(5) exception under the Freedom of Information Act (5 U.S.C. 552) (FOIA).

45. Plaintiff requested reconsideration of the denial of access to the legal memorandum citing

to several e-mails between plaintiff and defendants' employees indicating that the legal memorandum had been filed in plaintiff's SSB file. In response, defendant admitted that the legal memorandum has been filed in plaintiff's SSB file. Defendant provided plaintiff a copy of a legal memorandum authored on behalf of the Staff Judge Advocate (SJA) to the Commandant, "SJA TO CMC COMMENT ON MMPR-1 r/s of 5 Dec 03" dated December 18, 2003.

46. Defendants' statement to plaintiff that the SJA legal memorandum was not filed in plaintiff's SSB file was false. Defendant removed the legal memorandum from plaintiff's SSB file and placed it into a "general and administrative record file" after receiving plaintiff's PA request in an attempt to avoid release to plaintiff.

47. The SJA's legal opinion identified eight specific criterion for determining "reasonable diligence". One of the listed criteria is whether the "officer reviewed his/her official record with a career counselor a reasonable period of time prior to a board." The legal memo concluded that "[n]o evidence suggests that [plaintiff] contacted a career counselor prior to the board. Applying the [8 identified factors], we conclude that [plaintiff] did not exercise reasonable diligence."

48. Although the SJA's legal memorandum purports to apply all eight factors, it does not. In fact, the legal memorandum only addresses one factor. The only factor addressed is whether plaintiff made contact with a career counselor before the convening of the FY 2004 lieutenant colonel board. Plaintiff's purported failure to contact a career counselor prior to the board is the sole basis for the legal conclusion that plaintiff failed to exercise "reasonable diligence".

49. CMC's conclusion that Plaintiff failed to exercise "reasonable diligence" is based solely on his SJA's opinion.

50. CMC has not published any mandatory requirement that an officer being considered for

11

...

promotion by a selection board see a career counselor before the convening of the promotion board. CMC has not published a mandatory requirement that an officer provide evidence that an officer contacted a career counselor before the convening of a promotion board prior to the officer submitting an application for a SSB.

51. The SJA opinion does not analyze whether a career counselor could have identified the falsity of Captain Davidson's rankings on plaintiff's evaluation.

52. Requiring contact with a career counselor as a prerequisite for a finding of "reasonable diligence" is arbitrary and capricious unless the counselor could have reasonably identified the discrepancy at issue.

53. A career counselor would not be able to tell by looking at the face of a performance evaluation if the writer falsified the ranking on the report.

54. Finding that plaintiff failed to exercise reasonable diligence by allegedly not contacting a career counselor when a career counselor would not have been able to ascertain the falsity, is arbitrary and capricious.

55. Plaintiff met with Lieutenant Colonel Poleto, a career counselor, a reasonable amount of time before the convening of the Fiscal year 2005 lieutenant colonel promotion board. Lieutenant Colonel Poleto did not opine that she thought Captain Davidson's report was false.

56. Given that the sole basis for CMC's recommendation, which was adopted by the Secretary of the Navy, to deny plaintiff's SSB request was based on the erroneous assumption that plaintiff did not meet with a career counselor before the convening of the board, Plaintiff submitted a request for reconsideration of the Secretary's decision.

57. Plaintiff's request for reconsideration included evidence that he did see Lieutenant Colonel Poleto prior to the convening of the FY 2004 lieutenant colonel board. Plaintiff also analyzed the eight factors used to determine reasonable diligence as identified by the SJA

memo. Analysis of these factors demonstrates that plaintiff did exercise reasonable diligence to ensure his record was accurate prior to the convening of the FY 2004 lieutenant colonel board.

58. Defendant received Plaintiff's request for reconsideration by letter dated February 9, 2005.

59. Defendant failed to meet the statutorily imposed time limits to respond to plaintiff's February 9, 2005, request for a SSB.

60. In December 2004, based on Colonel Scovel's change in rating philosophy, plaintiff submitted a request to the PERB to have Colonel Scovel's report amended to accurately reflect plaintiff's past performance under Colonel Scovel's current grading philosophy.

61. CMC, through the PERB, found that the performance appraisal written by Colonel Scovel was correct at the time it was written. Consequently, CMC reasoned that the report should remain in plaintiff's OMPF as written. CMC's reasoning is flawed because it ignores the "dynamic" nature of the current performance evaluation system. Colonel Scovel's report was accurate at the time it was written and the comments and comparative assessment marking were consistent. Colonel Scovel's report on plaintiff became inaccurate over time as Colonel Scovel inflated later reports by assigning a higher comparative assessments for equivalent performance. In order for an earlier report to accurately reflect the performance of an officer, the rater cannot inflate later reports of other officers.

62. CMC, through the PERB, found that Colonel Scovel's letter was merely an endorsement for promotion and not an official request to change plaintiff's record. However, the PERB noted that such a request would not have made a difference in the decision, as Colonel Scovel should not have changed his grading philosophy citing to Marine Corps Order MCO P1610.7F (Performance Evaluation System) subparagraph 8012.2, which discusses the rater's "Profile Dynamics", stressing the importance of a consistent grading philosophy.

63. CMC's decision ignores the fact that Colonel Scovel admits that his grading philosophy has

13

changed over time and now assigns higher comparative marks for equivalent performance as compared to when he authored plaintiff's report. CMC's decision also ignores the admonition contained within subparagraph 8012.2, which states:

"[reporting officials] must accurately and fairly assess the performance of their subordinates; **[reporting officials] who fail to do so will unwittingly and *unfairly discriminate* against either earlier reports or subsequent reports.**" Para. 8012.2(e)(Emphasis added).

. . .

Reporting seniors who attempt to change their rating philosophy may either positively or negatively affect the relative value of reports for MROs they previously rated. Para. 8012.2(e)(2). **When the rater changes his philosophy and grades higher, he will diminish the value of all preceding reports ever written.** Para. 8012.2(e)(2)(a). (Emphasis added).

64. Because Colonel Scovel changed his grading philosophy by grading higher on later reports, plaintiff, by definition, was unfairly discriminated against and the report in question is unfair. It is unfair because it does not accurately reflect plaintiff's performance during the reporting period. Colonel Scovel's performance evaluation of plaintiff is materially inaccurate.

65. It was unjust of CMC to deny plaintiff's requested relief to change Colonel Scovel's performance evaluation of plaintiff to make it accurate.

66. Plaintiff exercised his right to respond to BCNR from the PERB's decision through a filing of March 22, 2005, in which Plaintiff requested correction of the inaccurate report and a SSB, based on the impact of the inaccurate report and plaintiff's non-selection for promotion by the FY 2005 lieutenant colonel selection board.

67. The evidence in plaintiff's March 22, 2005, submission included the following:

a. A letter from Colonel Scovel requesting official change to plaintiff's record.

b. A letter from a member of the FY 2005 lieutenant colonel board expressing the opinion that changing the report as requested would have significantly altered in plaintiff's favor a

14

    key objective criteria (those ranked above, below and with the officer on the comparative assessment scale) in making promotion decisions and would have increased the likelihood of plaintiff's selection.

    c.    Evidence that plaintiff exercised "reasonable diligence" to ensure the accuracy of his record before the FY 2004, FY 2005, and FY 2006 lieutenant colonel selection boards.

68. Plaintiff exercised "reasonable diligence" to ensure the accuracy of his record before the FY 2004, FY 2005, and FY 2006 lieutenant colonel selection boards.

69. Colonel Scovel's change in grading philosophy severely diminished the value of plaintiff's report and negatively skews plaintiff's entire record.

70. Before the FY 2004 lieutenant colonel board, plaintiff had approximately 22 officers ranked above him, 26 officers with him and 8 officers below him. A record with 2.5 times the number of officers ranked above the officer as below is not competitive.

71. If Colonel Scovel's report were amended to accurately reflect plaintiff's performance, plaintiff's record before the FY 2004 lieutenant colonel selection board would have had approximately 12 officers ranked above him, 15 officers ranked with him, and 29 officers below him. A record with 2.5 times the numbers of officer below as above is competitive.

72. Before the FY 2005 lieutenant colonel's board, plaintiff had approximately 47 officers ranked above him, 59 officers with him and 48 officers below him. A record with a similar number of officers ranked above and below is not competitive.

73. If Colonel Scovel's report were amended to accurately reflect plaintiff's performance, plaintiff's record before the FY 2005 lieutenant colonel's selection board would have had approximately 17 officers ranked above him, 44 officers ranked with him, and 94 officers below him. A record with five times the numbers of officer below as above is very competitive.

74. Colonel Scovel, recognizing this fact, opined in his letter to officially request a change to

15

the report that:

"Failure to change the report unfairly colors Major McGrady's performance because of the new evaluation system's reliance on comparative assessments. Those who may look at Major McGrady's record now or in the future would be misled as to his performance during that period and as to his potential. This is not fair to the Marine or the Marine Corps, which relies on the performance evaluation system to make a myriad of personnel decisions. Major McGrady has a right to an accurate evaluation. The marking should be changed."

75. Defendant will not issue a decision on plaintiff's request for a SSB based on Colonel Scovel's inaccurate fitness report prior to the expiration of the deadline imposed by 10 U.S.C. § 628.

## COUNT I
(Failure to Provide SSB for FY 2004 Board)

76. The allegations contained in paragraphs 1 through 75 are incorporated herein by reference.

77. Federal law permits the defendants to convene a special selection board (SSB) when the previous action of a promotion board was contrary to law, involved material error of fact or material administrative error, or the board did not have material information before it for its consideration. 10 U.S.C. 628. The defendant's implementing regulations, Secretary of the Navy Instruction 1401.1B, states that any error of fact or administrative/procedural error that is more likely than not to have deprived the officer concerned of a fair and impartial consideration by the board is a material error. Furthermore, any information that, when properly recorded in, or removed from, an officer's record would have been essential to a substantially accurate, complete and fair portrayal of the officer's career is material information. A Court of the United States may review a determination by the defendants not to convene a SSB. The Court may set aside the defendant's determination if the Court finds the determination to be (i) arbitrary or capricious; (ii) not based on substantial evidence; (iii) a result of material error of fact or material administrative error; or (iv) otherwise contrary to law. The changing of Captain Davidson's report to reflect that

16

plaintiff was properly ranked 1 of 3 instead of 3 of 3 on a transfer report had a material effect on plaintiff's record. The changing of Colonel Scovel's report to accurately reflect plaintiff's performance under Colonel Scovel's current grading philosophy would have a material effect on plaintiff's record. Defendants' deemed denial of plaintiff's request for a SSB is arbitrary and capricious, not based on substantial evidence, and is contrary to law.

### COUNT II
(Failure to Provide SSB for FY 2005 Board)

78. The allegations contained in paragraphs 53 through 70 are incorporated herein by reference.

79. Federal law permits the defendants to convene a special selection board (SSB) when the previous action of a promotion board was contrary to law, involved material error of fact or material administrative error, or the board did not have material information before it for its consideration. 10 U.S.C. 628. The defendant's implementing regulations, Secretary of the Navy Instruction 1401.1B, states that any error of fact or administrative/procedural error that is more likely than not to have deprived the officer concerned of a fair and impartial consideration by the board is a material error. Furthermore, any information that, when properly recorded in, or removed from, an officer's record would have been essential to a substantially accurate, complete and fair portrayal of the officer's career is material information. A Court of the United States may review a determination by the defendants not to convene a SSB. The Court may set aside the defendant's determination if the Court finds the determination to be (i) arbitrary or capricious; (ii) not based on substantial evidence; (iii) a result of material error of fact or material administrative error; or (iv) otherwise contrary to law. The changing of Colonel Scovel's report to accurately reflect plaintiff's performance under Colonel Scovel's current grading philosophy would have a material effect on plaintiff's record. Defendants' imminent deemed denial of plaintiff's

request for a SSB is arbitrary and capricious, not based on substantial evidence, and is contrary to law.

### Requested Relief

WHEREFORE, plaintiff prays that this Court

a. Amend plaintiff's performance evaluation, written by Colonel Scovel, to accurately reflect plaintiff's performance under Colonel Scovel's current grading philosophy by changing the comparative assessment by marking plaintiff in the 7th block instead of the 5th block.

b. Set aside defendant's deemed denial of plaintiff's February 9, 2005, request for an SSB and remand the case back to defendants who shall provide plaintiff with consideration by a SSB as he was considered in an unfair manner by the FY 2004 lieutenant colonel board and the board lacked material information about plaintiff's performance;

c. Set aside defendants' deemed denial of plaintiff's March 22, 2005, request for an SSB and remand the case back to defendants who shall provide plaintiff with consideration by a SSB as he was considered in an unfair manner by the FY 2005 lieutenant colonel board and the board lacked material information about plaintiff's performance;

d. Order other equitable and statutory relief that this Court deems appropriate;

e. Award to plaintiff, against defendants, payment of all costs incurred in this action, as well as attorney's fees expended by the plaintiff in obtaining advice on the filing of this complaint.

Respectfully submitted,

J. L. McGrady
Plaintiff
820 Bright Street
Fredericksburg, Virginia
540.371.3792