## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JACKSON L. MCGRADY,              )
Major, United States Marine Corps, )
820 Bright Street                )
Fredericksburg, Virginia 22134   )
   Tel. # 540.371.3792          )
                          )   Case Number: 1:05CV01651
       Plaintiff             )   (Judge: Gladys Kessler)
                          )
v.                               )   PROPOSED ORDER
                          )   GRANTING PLAINTIFF'S
GORDON R. ENGLAND               )   MOTION FOR SUMMARY
Secretary of the Navy            )   JUDGMENT
Washington, D.C. 20350-1000      )
                          )
  and                           )
                          )
DEPARTMENT OF THE NAVY          )
Washington, D.C. 20350-1000      )
                          )
       Defendants            )

## ISSUES

I. Was there "material unfairness", within the meaning of 10 U.S.C. § 628 (b), and Defendants'

implementing instructions, in the FY 2004 and FY 2005 lieutenant colonel selection boards as

the processes of those boards related to Plaintiff because those boards did not have before them

material information and/or Plaintiff's record contained material error based on Captain

Davidson's false report or Colonel Scovel's inaccurate report?

II. If there was "material unfairness", does the Secretary's decision to deny Plaintiff's SSB

request, based on Plaintiff's alleged failure to exercise reasonable diligence, violate the

provisions of 10 U.S.C. § 628 (g)(1)(A) as being: i) arbitrary or capricious; ii) not based on

-1-

substantial evidence; iii) a result of material error of fact or material administrative error; or iv) otherwise contrary to law?

# I. INTRODUCTION

10 U.S.C. § 611 provides the statutory authority for a Secretary of a military department (Secretary of the Army, Secretary of the Navy, and the Secretary of the Air Force), to convene regular selection boards to select officers for promotion to the next higher grade. A Secretary may also convene special selection boards (SSBs) in circumstances where an officer was consider by a regular selection board but there was "material unfairness" in the manner in which the board considered the particular officer. (10 U.S.C. § 628, included as Plaintiff's Exhibit (Pl. Ex.) A, pp. 1-5.) In determining "material unfairness" the Secretary concerned must find that:

> "the action of the promotion board that considered the person was contrary to law or involved material error of fact or material administrative error, or the board did not have before it for its consideration material information." (10 U.S.C. § 628 b(1)(A) and (B).)

A Secretary is required to convene SSBs under regulations prescribed by the Secretary of Defense. (10 U.S.C. § 628(f)(1).) Congress also required each Secretary to establish regulations on convening SSBs, subject to the approval of the Secretary of Defense. (10 U.S.C. § 628(j).) The Secretary of Defense fulfilled his statutory obligation through issuance of Department of Defense (DoD) Directive 1320.11. (Pl. Ex. B, pp. 6-10.) This directive gives a Secretary discretion in convening SSBs in situations involving material unfairness. However, the Secretary of Defense makes clear that DoD policy encourages the use of such boards. (*Id.* at p. 7, ¶ 4.)

The Secretary of the Navy (SECNAV) implemented the provisions of 10 U.S.C. § 628 through publication of SECNAV Instruction (SECNAVINST) 1401.1B. (Pl. Ex. C, pp. 11-20.)

-2-

SECNAVINST 1401.1B restates the statutory language for determining material unfairness. (Pl.

Ex. C, p. 012, ¶ 5.b) The instruction amplifies the meaning of "material unfairness" as:

> "Any error of fact or administrative/procedural error that is more likely than not to have deprived the officer concerned of a fair and impartial consideration by the board is a material error." (Pl. Ex. C, p. 014, ¶ 8(c)(3).)

> "Any information that, when properly recorded in, or removed from, an officer's record would have been essential to a substantially accurate, complete and fair portrayal of the officer's career is material information." (Pl. Ex. C, p. 014, ¶ 8(c)(4).)

Marine Corps Order (MCO) P1610.7E governs the Performance Evaluation System to

include the rules governing the writing of an officer's performance evaluations. (Excerpts are

attached as Pl. Ex. D, pp.21-38.) MCO P1610.7E makes clear that the fitness report is a "vital

portion of a Marines' Official Military Personnel File (OMPF). (Pl. Ex. D, p. 24, ¶ 1001.1.a.)

MCO P1610.7E summarizes the importance of the fitness report as follow:

> "The completed fitness report is the most important information component in manpower management. It is the primary means of evaluating a Marine's performance. The fitness report is the Commandant's primary tool available for the selection of personnel for promotion, retention, augmentation, resident schooling, command, and duty assignments. Therefore the completion of this report is one of an officer's most critical responsibilities. Inherent in this duty is the commitment of each reporting senior and each reviewing officer to ensure the integrity of the system by close attention to accurate marking and timely reporting. Every officer serves a role in the scrupulous maintenance of this evaluation system, ultimately important to both the individual and the Marine Corps." (Pl. Ex. D, p. 25 – 26, ¶ 1004.)

MCO P1610.7E provides detailed instruction on completing the report. The order makes

clear that a 'fitness report accepted by the [Commandant of the Marine Corps, Manpower

Support Branch (MMSB)] for inclusion in the official record of a Marine is presumed to be

administratively correct, procedurally complete, and valid according to performance evaluation

policy [in existence at the time the report is written]." (Pl. Ex. D, p. 40, ¶ 5.a.) This view is

consistent with federal case law. (*See Kosnik v. Secretary of the Air Force*, 31 F. Supp. 2d 151,

158 (D.C. Cir. 1998) (finding a strong presumption that administrators of the military, like other

public officials, discharge their duties correctly, lawfully, and in good faith); *LaChance v. White*,

174 F.3d 1378, 1381 (Fed.Cir. 1999) (government officials are presumed to act in good faith and

this presumption of regularity is the supposition that public officers perform their duties

correctly, fairly, in good faith, and in accordance with law and governing regulations, and is valid

and binding unless "well-nigh irrefragable proof rebuts or overcomes it").)

Recognizing that, despite the presumption of regularity, there may be situations in which

reports should be changed, MCO P1610.7E provides a mechanism for an officer to appeal a

report that he or she believe is "incorrect, inaccurate, or in violation of the policies and

instruction of [MCO P1610.7E ] once the report is a matter of official record." (Pl. Ex. D, p.

031, ¶ 5008.1.) To contest a particular report, a Marine is required to file an application with the

Board for Correction of Naval Records (BCNR) through the Commandant of the Marine Corps

(CMC). (*Id.* at ¶ 5008.2.) CMC delegates his authority to process such applications to the

Marine Corps Performance Evaluation Review Board (PERB). The PERB's operations are

governed by MCO 1610.11. (Pl. Ex. E, pp. 39-49.) If the PERB denies the application, it is

forwarded to BCNR for final agency action. BCNR is composed of civilians and is created by the

Secretary of the Navy under the authority granted to him by 10 U.S.C. § 1552. (Pl. Ex. F, pp. 50-

51.)

-4-

However, the Secretary of the Navy, as a matter of policy, under the discretion granted to him by 10 U.S.C. § 628, will not convene a SSB if an officer was considered, but not selected, for promotion if the error is one that could have been corrected by the officer through the exercise of "reasonable diligence" prior to the convening of a promotion board. The policy is as follows:

> "Correction of an error in an officer's record, after the officer incurs a failure of selection by the promotion selection board that was affected by the error, will not necessarily be the basis for the convening of a board." (Pl. Ex. C, pp. 012 – 013,  ¶ 6a.)

> "A special selection board will not be convened to consider any officer who, through the exercise of reasonable diligence, might have discovered an corrected the error or omission in the official record prior to the convening the promotion selection board that considered, but did not select the officer." (Pl. Ex. C, pp. 012-013, ¶ 6b.)

The Marine Corps Promotions Manual (MCO P1400.31B) defines "reasonable diligence" "as fair, proper, and due degree of care and activity, measured with reference to the particular circumstance; such diligence, care and attention as might be expected from a man/woman of ordinary prudence and activity." (Excerpts are attached as Pl. Ex. G, pp. 52-60.)  MCO P1400.31B does not, however, list any objective criteria for making a "reasonable diligence" determination.

Per 10 U.S.C. § 628(g), a service Secretary has six months after receiving a completed application to issue a final decision on an officer's request for a SSB.  After six months, the statute deems the Secretary's failure to issue a decision as a denial and allows the officer to seek judicial review.  The statute does provide a Service Secretary with authority to extend the six-month time limit if the Secretary determines that a longer period for consideration is warranted.

However, the Secretary must publish regulations on how the extension would be implemented and does not allow a waiver decision to be delegated.

## II. BACKGROUND

On May 6, 2003, Plaintiff filed an application to BCNR through the PERB seeking to correct the rankings on Plaintiff's performance evaluation, written by then Captain Davidson, who was Plaintiff's reporting senior (first level supervisor), to reflect that he was appropriately ranked as "1 of 3" instead of "3 of 3". (Pl. Ex. H, pp. 61-72.) The application included a letter, from Captain Davidson that he ranked Plaintiff as "3 of 3", although he believed Plaintiff was appropriately ranked "1 of 3", in an attempt to give two other lieutenants an advantage for augmentation from the "reserve" component of the Marine Corps to the "regular" forces. (Pl. Ex. H, pp. 67 – 68.) Plaintiff's application for correction also included evidence that Captain Davidson had manipulated another officer's performance evaluation. (Pl. Ex. H, p. 064, ¶¶ 3 - 4; *see* Pl. Ex. H, pp. 69-72 (actual FOIA request and response).)

Despite this evidence, by letter of July 16, 2003, CMC, through the PERB, determined that Plaintiff produced insufficient evidence upon which to correct the report. (Pl. Ex. I, p. 73-75, ¶¶ 2- 3.) Consequently, CMC determined that the report was administratively correct as written and should remain unaltered in Plaintiff's record. (*Id.*) CMC also assumed that a reviewing officer (second level supervisor) concurred in Captain Davidson's markings. (*Id.*) Plaintiff, responded by letter of August 14, 2003, to BCNR specifically addressing the PERB's concerns. (Pl. Ex. J, pp. 79-99.) The submission included a letter from the reviewing officer of the report in question admitting that, because of operational commitments, he simply accepted

-6-

Captain Davidson's rankings and opined that he would have ranked Plaintiff "1 of 3". (*Id.* at p. 88, ¶ 5.) Plaintiff asked BCNR to return the matter to the PERB for reconsideration in light of the weight of the evidence, which specifically addressed the PERB's concerns. (Pl. Ex. K, p. 100.) BCNR twice asked the PERB if it would reconsider the decision in light of the new evidence and its weight. (*Id.*) The PERB refused both times. (*Id.*)

Because of the PERB's refusal to reconsider Plaintiff's case, BCNR decided the case without further Marine Corps' input. BCNR granted Plaintiff's petition and directed Plaintiff's evaluation be changed to properly reflect that Plaintiff was "1of 3". (Pl. Ex. L, pp. 101-108.) Although the performance evaluation written by Captain Davidson's was approximately 13 years old at the time Plaintiff filed a petition to correct it. The Secretary of the Navy determined it was "timely" within the meaning of 10 U.S.C. § 1552, which requires the filing of a request within three years after the petitioner discovers the error. (Pl. Ex. L, p. 103, ¶ 3.b.)

After being granted relief and believing that the inaccurate report may have been a factor in Plaintiff's failure for selection by the Fiscal Year 2004 lieutenant colonel board, Plaintiff filed, on September 16, 2003, a request for a SSB via the CMC, to the Secretary of the Navy. (Pl. Ex. M, pp. 109-131.) By letter dated April 28, 2004, CMC notified Plaintiff that his request for a SSB had been denied. (Pl. Ex. N, p. 132.) Included with the letter was the CMC's MEMORANDUM FOR THE SECRETARY OF THE NAVY, dated 16 Feb 04. (Pl. Ex. N, pp. 133-135.) CMC concluded that Plaintiff "failed to exercise due diligence to ensure his record was substantially accurate and complete before the convening of the board" and recommending Plaintiff's petition for a SSB be denied. (*Id.* at p. 134, ¶ 5.) The Secretary of the Navy accepted this recommendation without further comment or analysis and, thereby, adopted the rationale of

-7-

the CMC on April 16, 2004. (*Id.* at p. 135.)

CMC's denial recommendation, as ultimately adopted by the Secretary of the Navy, failed to identify any objective criteria upon which he determined that Plaintiff failed to exercise reasonable diligence. CMC's recommendation simply concluded that Plaintiff failed to exercise reasonable diligence without identifying the objective criteria used to reach that conclusion. (Pl. Ex. N, pp. 133-135.) In an attempt to ascertain the objective criteria upon which CMC's reasonable diligence determination was based, Plaintiff filed a Privacy Act (5 U.S.C. § 552a) (PA) request on May 5, 2004, seeking the contents of Plaintiff's SSB file, which is maintained by Headquarters Marine Corps, Manpower, Promotions Branch (MMPR), and is a "system of records" under 5 U.S.C. 552a. (Pl. Ex. O, p. 136.)

On June 7, 2004, Plaintiff, in response to an inquiry regarding his PA request was told by an employee within MMPR that a memorandum from the Staff Judge Advocate (SJA) to CMC was resident within Plaintiff's SSB file. (*See* Pl. Ex. P, pp. 141-143) On November 5, 2004, Defendant responded to Plaintiff's May 5, 2004, PA request. (Pl. Ex. S, pp. 151-164.) Defendant denied Plaintiff a copy of the legal memorandum by saying that the legal memorandum was not filed in a PA file but was filed in a "general and administrative record file", which was not covered by the PA. (Pl. Ex. S, p 153.) Access to the 3-page legal memorandum was erroneously denied based on a (b)(5) exception under the Freedom of Information Act (5 U.S.C. 552) (Pl. Ex. S, p. 161.)

On November 9, 2004, Plaintiff requested reconsideration of the denial of SJA's legal memorandum citing to several e-mails between Plaintiff and MMPR employees indicating that the memorandum was filed in Plaintiff's SSB file. (Pl. Ex. T, pp. 166-167.) On December 9,

2004, the PA coordinator granted the reconsideration request. (Pl. Ex. T, p. 165). She provided

the SJA memorandum, "SJA TO CMC COMMENT ON MMPR-1 r/s of 5 Dec 03" dated

December 18, 2003. (Pl. Ex. V, pp. 170-173.) The response admitted "the subject memo has

indeed been filed into [Plaintiff's] Special Selection Board Request file and . . . the SJA memo

must be disclosed to [Plaintiff] in its entirety." (Pl. Ex. T, p. 165.)

      The SJA's legal opinion identified eight criterion for determining "reasonable diligence".

(Pl. Ex. V, pp. 171-172, ¶ 4.d.) Although the SJA's legal memorandum purports to apply all

eight factors, it does not. (*See* Pl. Ex. V, pp. 170-173.) The legal memorandum only addresses

one factor concerning whether Plaintiff made contact with a career counselor before the

convening of the FY 2004 lieutenant colonel board. (*Id.*) Plaintiff's purported failure to contact

a career counselor prior to the board is the sole basis for the legal conclusion that Plaintiff failed

to exercise "reasonable diligence". (*Id.*) The SJA legal memo concluded that "[n]o evidence

suggests that [Plaintiff] contacted a career counselor prior to the board. Applying the [8

identified factors], we conclude that [Plaintiff] did not exercise reasonable diligence." (Pl. Ex.

V, p. 172, ¶ 5.c.) CMC's conclusion that Plaintiff failed to exercise "reasonable diligence" is

based solely on his SJA's opinion.

      CMC has not published any mandatory requirement that an officer being considered for

promotion by a selection board must contact a career counselor before the convening of a

promotion board. CMC has not published a mandatory requirement that an officer provide

evidence that an officer contacted a career counselor before the convening of a promotion board

as a prerequisite for requesting a SSB or as a prerequisite for recommending a SSB. The SJA

opinion does not analyze whether a career counselor could have identified the falsity of Captain

Davidson's rankings on Plaintiff's evaluation. (Pl. Ex. V, pp. 170-173.)

Given that the sole basis for CMC's recommendation, which was adopted by the Secretary of the Navy, to deny Plaintiff's SSB request was based on the erroneous assumption that Plaintiff did not meet with a career counselor before the convening of the board, Plaintiff submitted a request for reconsideration of the Secretary's decision. (Pl. Ex. W, pp. 174-214.) Plaintiff submitted evidence that he spoke with Lieutenant Colonel Poleto, a career counselor with MMOA-4, prior to the convening of the FY 2004 selection board to include a copy of his desk calendar from that date reflecting the appointment. (*Id.* at p. 194.)

On December 9, 2004, Plaintiff submitted a second application to BCNR through the PERB, seeking to correct the comparative assessment on a fitness report authored by Colonel C. Scovel for the rating period ending March 15, 1999. (Pl. Ex. Y, pp. 216-228.)[1] The basis for the requested change is that Colonel Scovel changed his rating philosophy over a period of time since he acted as the reviewing officer of Plaintiff's fitness report. A change in rating philosophy, whether by reporting senior or a reviewing officer, is in violation of MCO P1610.7E. If a rater changes his rating philosophy over time, it makes all early report inaccurate.

Colonel Scovel commented on Plaintiff's fitness report that Plaintiff was among the "top

---

[1] In 1999 the Marine Corps changed the format of the performance evaluation. The "old" system graded officers of the same grade, who were under the direction of the same supervisor, against each other. This was a "static" or "point in time" comparative assessment. Out of a concern that raters were "inflating" their reports and "gaming" the system, the Marine Corps introduced the current performance evaluation system, which tracks the evaluation habits of the rating officials. This new system created a rater profile that is continuously updated as the rater writes additional reports on subordinates of a particular grade. When a rater writes an evaluation, the subordinate is effectively ranked against all other officers on whom the rater has submitted an evaluation over his entire career. The new system is considered "dynamic" for these reasons. For the new system to work as intended, raters must not change their rating philosophy over time and are

5% of majors [he] had observed in his 22 years of service." (Pl. Ex. Y, p. 224.) Colonel Scovel marked Plaintiff in the 5th of 8 blocks on the comparative assessment scale in section K.3 of the report. (*Id.*) Colonel Scovel believed at the time of the writing of the report that the comment and the marking were consistent. (Pl. Ex. Y, p. 225, ¶ 3.) Since the writing of Plaintiff's report, Colonel Scovel changed his rating philosophy such that a "top 5%" now equates to a mark in the 7th of 8 blocks of section K.3. of the report. (Pl. Ex. Y, p. 226, ¶ 4.) Colonel Scovel memorialized this change in philosophy in a letter, dated September 2, 2003, to the Plaintiff. (Pl. Ex. Y, pp. 225-226.)

Plaintiff was again considered for promotion by the FY 2005 lieutenant colonel selection board. Plaintiff submitted a letter to the FY 2005 board. (Pl. Ex. AA, pp. 296-334.) Plaintiff's letter to the board included Colonel Scovel's letter as an enclosure. (Pl. Ex. pp. 306-307.) The FY 2005 lieutenant colonel selection board convened on September 4, 2003. (Pl. Ex. AA, p. 262, ¶ 1.) Plaintiff was again, not selected by the board. Plaintiff asserts that Colonel Scovel's inaccurate report was a factor in his non-selection by the FY 2005 board.

Defendants have yet to issue a final decision on Plaintiff's second request for a SSB over Defendants issued an interim opinion, authored by the Marine Corps Promotions Branch (MMPR), on whether to grant Plaintiff's SSB request. (Pl. Ex. BB, pp. 338-339.) The interim opinion recommends denial based on Plaintiff's "failure in identifying and correcting the error prior to being considered by the FY 05 USMC Lieutenant Colonel Promotion Selection Board." (Pl. Ex. BB, p. 339, ¶ 3.)

---

prohibited from doing so. (Pl. Ex. D, p. 32, ¶ 8012.2.d.)

### III. ARGUMENT

**A.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment may be granted based upon the pleadings, supplemental affidavits, and facts developed during the administrative proceedings. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990). A moving party is entitled to judgment as a matter of law if the record in the case confirms the non-moving party cannot establish "the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322-23. Summary judgment procedures are important in winnowing out meritless claims and preventing the "unwarranted consumption of public and private resources." *Id.* at 327. *See, also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); and *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts.")

**B.    PLAINTIFF'S FITNESS REPORTS CONTAINED MATERIAL ERROR AND SELECTION BOARD DID NOT HAVE MATERIAL INFORMATION.**

The importance of fitness reports in the promotion process cannot be overstated. MCO

-12-

P1610.7E emphasizes how important accurate performance reports are in ensuring the best individuals are selected for promotion and key assignments. Implicit in that order is the weight placed on the competitive markings. Intuitively, these numbers are important to the selection process. This is confirmed by Colonel J.E. McCown III who was a member of the FY 2005 lieutenant colonel selection board. (Pl. Ex. AA, p. 257.) He has served on a total of three selection boards. (Pl. Ex. AA, p. 250, ¶ 1.) He notes that selections board place "significant weight . . . on both the reporting seniors' and reviewing officers' comparative assessments." (Pl. Ex. AA, p. 250, ¶ 2.) He further notes that the "relative value markings, provided by the [reporting senior] in the old reports and by the [reviewing officer] in the new reports is one of the few objective, quantifiable tools available to the board members." (Pl. Ex. AA, p. 250, ¶ 2.)

Based on the importance of rankings and comparative assessments in the promotion process, and considering Defendants' definition of materiality, a bright line rule emerges that any change in rankings or comparative assessment markings on an officer's fitness report must be material and requires the Secretary to refer the officer's corrected record to a SSB. This view is consistent with Defendants definition of materiality as "[a]ny error of fact or administrative/procedural error that is more likely than not to have deprived the officer concerned of a fair and impartial consideration by the board is a material error" or "[a]ny information that, when properly recorded in, or removed from, an officer's record would have been essential to a substantially accurate, complete and fair portrayal of the officer's career is material information." (Exhibit C, p. 14, ¶ 8(c)(3).)

With regard to the Captain Davidson Report, Plaintiff's record before the FY 2004 board, on the "old" fitness report system, Plaintiff had seven officers marked above him, eight marked

-13-

below him and two marked with him. (Pl. Ex. M, p. 122, ¶ 3.)  A record with approximately the same number of officers ranked below as above is not competitive for promotion.  Correcting the error in Captain Davidson's report to reflect that Plaintiff was "1 of 3" instead of "3 of 3" changed Plaintiff's rankings to five marked above him, ten marked below him, and two marked with him.  (*Id.*)  A record with twice as many officers ranked below as above, is competitive based on the assessment of Defendants' career counselors.  (*See* Pl. Ex. M, p. 127, ¶ 5.)   Quite frankly, Defendants' admit that the correction improved Plaintiff's record.  (*Id.* at p. 122, ¶ 4.) Throughout the administrative review process, Defendants have never disputed materiality.  If the correction improved Plaintiff's record, it must, necessarily mean that the change would have increased the likelihood of selection and is, therefore, material.

With regard to the Colonel Scovel report, Plaintiff submitted evidence to the BCNR detailing, *inter alia*, the legal basis for requesting a SSB to include the issue of materiality and reasonable diligence.  (Pl. Ex. AA, pp. 234 – 335.)  Plaintiff noted that if Colonel Scovel had not changed his grading philosophy or graded Plaintiff according to his current philosophy at the time of the report in question, Plaintiff's comparative assessments before the FY 2004, FY 2005, and FY 2006 lieutenant colonel selection boards would have been dramatically strengthened.

To demonstrate materiality Plaintiff provided the comparative assessment numbers as they would have likely appeared before the FY 2005 board and how the comparative assessment numbers would change if Colonel Scovel's report were corrected.  Before the FY 2005 board, Plaintiff had approximately 47 officers ranked above him, 59 officers with him, and 48 officers below him. (Pl. Ex. AA, p. 241, ¶ 7.b.)  A record with a similar number of officers above and below is not competitive.  If Colonel Scovel's fitness report were corrected to accurately portray

-14-

Plaintiff's performance, Plaintiff would have approximately 17 officers above him, 44 officers with him, and 94 officers below him. (*Id.*)  A record with fives times as many officers ranked below as above is highly competitive.  This is confirmed by Colonel J.E. McCown III, a member of the FY 2005, noted that changing Plaintiff's record to reflect Colonel Scovel's change in grading philosophy "would result in a significant improvement in his comparative value marks." (Pl. Ex. AA, p. 251, ¶ 4.)  "[S]uch a shift in the over/under numbers would have altered, in [Plaintiff's] favor, one of the key criterion used in making selection decisions and would have increased the possibility of his selection." (*Id.* at ¶ 5.)

BCNR provided a copy of Plaintiff's brief (Exhibit AA), to MMPR who issued an advisory opinion on Plaintiff's request for a SSB.  (Pl. Ex. BB, pp. 338 – 339.)  Although Plaintiff extensively briefed the issue, the advisory opinion does not address materiality and appears to concede the point.  However, the advisory opinion recommends denial of the SSB based on Plaintiff's alleged "failure in identifying and correcting the error prior to being considered by the FY 2005 USMC Lieutenant Colonel Selection Board." (Pl. Ex. BB, p. 339, ¶ 3.)

## C.  IF THERE WAS MATERIAL UNFAIRNESS, SECRETARY IS *REQUIRED* TO SEND PLAINTIFF'S CASE TO A SSB

Before enactment of 10 U.S.C. § 628, after an officer showed that his record contained a defective performance evaluation, the ultimate burden was on the government to show that the officer would not have been promoted had his record contained no error.  (*See Richey v. United States*, 322 F.3d 1317, 1323 (C.A. Fed. Cir. 2003).)  However, since the enactment of 10 U.S.C. § 628, a Secretary is not to make such a harmless error determination. ( *Id.* at 1324 (citing to

*Porter v. Unites States*, 163 F.3d 1304, 1323 (C.A. Fed. Cir 1998), *cert. denied*, 528 U.S. 809, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999)).) Instead, under 10 U.S.C. § 628, as interpreted in *Porter*, the case should be referred to an SSB, which will decide whether to promote the officer based on his corrected military record, and, therefore, the harmless error rule has no application. (*Id.*)

## D. DEFENDNATS' DENIALS OF PLAINTIFF'S SSB REQUEST VIOLATES 10 U.S.C. § 628(g)(1)(A).

With regard to the Captain Davidson Report Defendants denied Plaintiff's SSB request for lack of "reasonable diligence". This conclusion was premised on Defendants' view that "[Plaintiff] reasonably should have known of the nature of the ranking and should have taken appropriate steps to highlight or correct the fitness report prior to the FY 2004 USMC Lieutenant Colonel Board convening." (Pl. Ex. N, p. 134, ¶ 4.a.) The statement is conclusory and is without support. The decision does not identify or apply any objective factors that would have allowed the Secretary to make an informed decision or provide this Court a basis for review.

In <u>Homer v. Secretary of the Air Force</u>, 226 F.Supp.2d 222 (Dist. Ct. DC 2002) this Court reviewed a Department of the Air Force decision for an officer's failure for selection. The agency rationale was that "the selection process is highly competitive and there is no guarantee that the applicant would have been promoted under any circumstances." This Court held that this explanation provided no actual reason for the agency's decision and noted that the "justification only highlight's the Air Force's failure to identify the substantive criteria that were used in that process and to explain the reason that Plaintiff did not satisfy those criteria." The same rationale applies to Plaintiff's case. There is nothing in the decision that avails itself of review.

Recognizing this fact, and hoping to ascertain if Defendants had conducted any objective analysis, Plaintiff on May 5, 2004, submitted a request under the provisions of 5 U.S.C. § 552a (Privacy Act (PA)). (Pl. Ex. O, p. 136.)  What followed was a seven-month series of requests, phone calls, a personal file review, and appeals. (*See* Pl. Ex. P – U.)[2] Ultimately, Defendant provided Plaintiff with a copy of a Staff Judge Advocate (SJA) legal opinion written to the Commandant of the Marine Corps that purported to analyze Plaintiff's reasonable diligence based on articulated objective factors. (Pl. Ex. V, pp. 170 – 173.)

The SJA opinion identifies the legal standards applicable for SSB requests and identifies eight factors to be used to determine "reasonable diligence". (Pl. Ex. V, p. 171, ¶ 4.d.) The second of the eight factors is whether the officer reviewed his/her official record with a career counselor within a reasonable period of time prior to a board. Of the eight listed criteria, the only factor analyzed by the SJA relates to career counselor contact. Specifically, the SJA's ultimate opinion that Plaintiff failed to exercise reasonable diligence is premised on the observation that there is "[n]o evidence suggest[ing] that [Plaintiff] contacted a career counselor prior to the board. Applying the factors [used to determine reasonable diligence], we conclude that he did not exercise reasonable diligence."[3]  (Pl. Ex. V, p. 172, ¶ 5.c.)

---

[2] Plaintiff noted that an employee from MMPR, the holder of Plaintiff's SSB record, told him that the SJA memorandum was contained within his SSB file. When MMPR transmitted the documents in response to Plaintiff's PA request to the PA coordinator, MMPR represented to the PA coordinator that the SJA memorandum was filed in a "general and administrative record file" and not in Plaintiff's SSB file.  (Pl. Ex. S. p. 153.)  It was only after Plaintiff requested reconsideration from the PA coordinator, and again cited to the e-mail traffic with MMPR employees indicating that the SJA memorandum was contained within the SSB file, that it was released.  (Pl. Ex. T, p. 165.)

[3] The SJA opinion does not analyze why failure to contact a career counselor necessarily equates

Contrary to Defendant's assumption, Plaintiff did see a career counselor prior to convening of the FY 2004 lieutenant colonel's board. Plaintiff spoke with Lieutenant Colonel Frances Poleto, a career counselor from MMOA-4 by telephone on October 4, 2002. Plaintiff was unaware that career counselor contact was used as a touchstone for making reasonable diligence determinations and did not identify this fact in his initial request for a SSB. During the phone counseling, Lieutenant Colonel Poleto gave no indication that she believed that Captain Davidson had improperly ranked Plaintiff with two other lieutenants. Neither did she opine that the reviewing officer of that report failed to properly execute his reviewing officer duties by simply accepting the reporting senior's markings. Lieutenant Colonel Poleto did not indicate that she believed that Colonel Scovel's comments and comparative assessments markings were inconsistent.

Based on the administrative record and Defendants' deemed denial of Plaintiff's request for consideration, it is clear that Defendants' decision is not based on substantial evidence as Plaintiff spoke with a career counselor prior to the convening of the FY 2004 lieutenant colonel board. Regardless, establishing career counselor contact as a dispositive of the reasonable diligence determination, is arbitrary and capricious. Defendants have not published a clear

---

to a lack of reasonable diligence. Using career counselor contact as a substantive criterion for making a reasonable diligence determination makes an implicit assumption that the career counselor would have been able to identify the error. Without this assumption, the criterion would be arbitrary. An officer should not be determined to have failed to exercise reasonable diligence because he failed to perform a futile act. Ergo, the requirement to see a career counselor is subsumed, to a large degree if not totally, by an analysis of the "nature" of the error (Factor 7 of the SJA's memorandum). In Plaintiff's case it would be unreasonable to assume that a counselor would know that a report was improperly manipulated merely by looking at the document's face. As such, even if Plaintiff had not contacted a counselor, such a failure should not have led to a finding of a lack of reasonable diligence because of the nature of the error.

requirement that officers are required to seek the advice of a career counselor contact. The only published requirements are contained in a Marine Administrative (MARADMIN) message. As applies to Plaintiff's case, MARADMIN 371/02 requires that a Marine should: (1) submit a photograph; (2) complete suggested professional military education; (3) personally check the Official Military Personnel File (OMPF) and Master Brief Sheet (MBS); (4) and send copies of any documents that may not yet be reflected in the file. Each of these items is under the Marine's control and he/she is "responsible to ensure the accuracy and completeness" of his/her record. (Pl. Ex. AA, p. 259, ¶ 4.) It is these criteria that establish reasonable diligence and were the factors that Plaintiff addressed in his original request. (Pl. Ex. M, p. 112, ¶ 12). Plaintiff met these requirements.

MARADMN 371/02 does not require an officer to see a career counselor before the convening of a promotion board but states that "after checking their records, officers who have specific concerns about some aspect of their record may contact the career counselors, CMC (MMOA-4) for assistance." (Pl. Ex. AA, p. 260, ¶ 4.a.) As such, career counselor contact cannot be used as an indicia of reasonable diligence. The arbitrary and capricious nature of the criterion is further highlighted by Defendants failure to even maintain a record of those officers who have sought career counseling. Further, the SJA memorandum is also indicative of the arbitrary manner in which Plaintiff's case has been processed. There is simply no rational basis for making career counselor contact a touchstone for a reasonable diligence determination when there is no likely hood that the counselor would be able to identify the error.

Defendants' denial of Plaintiff's SSB request also violates 10 U.S.C. § 1552 (Corrections of Military Records; Claims Incident Thereto). This code section establishes a three-year statute

of limitations from the time of the discovery of the error. (10 U.S.C. § 1552(b).) In Plaintiff's request to change the rankings on Captain Davidson's report, Defendant affirmatively determined that Plaintiff's petition "was filed in a timely manner." (Pl. Ex. L, p. 103, ¶ 3.b.) This determination is "final and conclusive on all officers of the United States." (10 U.S.C. § 1552(a)(4).) As such, Defendant cannot now legally argue that Plaintiff failed to exercise reasonable diligence by seeking to contest the report at the time it was written. In fact, Defendants' determination that Plaintiff's petition was timely necessarily means that Plaintiff exercised due diligence.

There is other evidence in this case demonstrating that Defendants have acted arbitrarily and capriciously. The fact that CMC, through the PERB, determined that there was no basis to initially change Plaintiff's record and then determined that Plaintiff failed to exercise reasonable diligence is arbitrary and capricious. If CMC determined that Captain Davidson's admission and the supporting evidence that he improperly manipulated the report of another officer were insufficient to change the report, CMC cannot logically argue that Plaintiff should have contested the report at an earlier point in time. The arbitrary manner in which CMC processed this case is further demonstrated by his refusal, through the PERB, to reconsider Plaintiff's case, after being asked to do so twice by BCNR, after Plaintiff provided specific evidence addressing the PERB's rationale for denial. (Pl. Ex. K, p. 100.)

Plaintiff submitted his initial request for a SSB on September 16, 2003. After seven months, one month beyond the statutory limit, Defendants responded on April 16, 2004. Instead of appealing that decision to this Court, which might have remanded for the lack of any substantive criteria upon which it could base a review, Plaintiff worked for an additional seven

months to ascertain the rationale for the decision. After finally determining that the denial was based on assumed lack of career counselor contact, Plaintiff asked for reconsideration on February 7, 2005, and submitted evidence that he did, in fact, see a career counselor. The scope of Defendants' reconsideration should be whether the evidence submitted by Plaintiff, to include his sworn statement, desk calendar, and the details of the counseling, are sufficient to show that he did speak with a career counselor prior to the convening of the board. Given the limited scope of review, Defendants should have been able to meet the statutorily imposed deadline for making a decision on this point.

Perhaps the most disturbing evidence of Defendants' arbitrary and capricious processing of Plaintiff's case is MMPR's attempt to subvert Plaintiff's rights under 5 U.S.C. § 552a (Privacy Act). Fortunately for Plaintiff, am employee from MMPR informed Plaintiff that the SJA memorandum was contained within his SSB file. (*See* Pl. Ex.Q, 144-149.) However, when Defendants' responded to Plaintiff's PA request, MMPR had apparently refiled the SJA memorandum in a "general and administrative file" in an attempt to avoid releasing it to Plaintiff. (*See* Pl. Ex. S, p. 153, final paragraph.) It was only after Plaintiff requested reconsideration from the release authority, with supporting e-mails from MMPR employees indicating that the SJA memo was filed within Plaintiff's SSB file, that Defendants admitted that the SJA memorandum had indeed been filed in Plaintiff's SSB records and complied with the law by releasing the memo to Plaintiff. (Pl. Ex. T, p. 165.)

With regard to Colonel Scovel's report, Defendant's have yet to issue a final decision. As Defendant's have failed to meet the statutory time limit for issuing a decision under 10 U.S.C. § 628, Defendant's are deemed to have denied Plaintiff's request. Given this fact, this Court is in a

position to rule on the deemed denial and finds that the denial is not based on substantial evidence.

Correcting Colonel Scovel's comparative assessment of Plaintiff would result in significant improvement in his record and would increase the likelihood that he would be selected. This is clear based on Colonel McCown's letter. This point was not contested in Defendant's interim opinion. (Pl. Ex. 338-339.) As such, there is no reasonably basis for denying Plaintiff's SSB request on lack of materiality. It is also clear that the report, as it currently standards is unfair based on Defendants' own orders.

CMC states Colonel Scovel should not have changed his grading philosophy citing to Marine Corps Order MCO P1610. 7F (Performance Evaluation System) subparagraph 8012.2, which discusses the rater's "Profile Dynamics", stressing the importance of a consistent grading philosophy. (Pl. Ex. Z, p. 232, ¶ 3.b.) However, CMC's decision ignores the fact that Colonel Scovel admits that his grading philosophy has changed over time and now assigns higher comparative marks for equivalent performance as compared to when he authored Plaintiff's report. CMC's decision also ignores the admonition contained within subparagraph 8012.2 of MCO 1610.7E (Pl. Ex. D), which states:

> "[reporting officials] must accurately and fairly assess the performance of their subordinates; **[reporting officials] who fail to do so will unwittingly and _unfairly_ _discriminate_ against either earlier reports or subsequent reports.**" (Pl. Ex. D, p. 033, ¶ 8012.2(e)(Emphasis added.))
>
> Reporting seniors who attempt to change their rating philosophy may either positively or negatively affect the relative value of reports for MROs they previously rated. Para. 8012.2(e)(2). **When the rater changes his philosophy and grades higher, he will diminish the value of all preceding reports ever written.** (Pl. Ex. D, p. 033, ¶

-22-

8012.2(e)(2)(a).  (Emphasis added.))

Because Colonel Scovel changed his grading philosophy by grading higher on later reports, Plaintiff, by definition, was unfairly discriminated against and the report in question is unfair.  (*See* Pl. Ex. D, p. 033, ¶ 8012.2(e).)  The report must be changed to accurately reflect Plaintiff's performance under Colonel Scovel's current rating philosophy.

There is no reasonable basis to conclude that Plaintiff failed to exercise due diligence to ensure the accuracy of his record before the convening of the FY 2005 lieutenant colonel board. Colonel Scovel's letter was dated September 2, 2004 and the board convened on September 4, 2004.  It is absurd to believe that Plaintiff could avail himself of the administrative process to correct this error his record in two-days.  The position is even more arbitrary given that PERB's denial of Plaintiff's request and the fact that Defendants will not meet their statutory 6-month deadline in this case.  The only thing Plaintiff could do, and did, was to submit a personal letter to the promotion board and include Colonel Scovel's letter.  Under the SJA's factors, submitting a letter to the board and identifying known errors are indicia of reasonable diligence.  (*See* Pl. Ex. V, p. 171, ¶ 4.d, factor (5).)  Plaintiff also went to extraordinary lengths in presenting to the Defendants all actions taken by Plaintiff to prepare for the convening of the FY 2004, FY 2005, and FY 2006 boards using the SJA's stated criteria to prepare for the promotion boards.  (Pl. Ex. AA, pp. 234-335.)  This analysis proves that Plaintiff was reasonably diligent in ensuring the accuracy of his record before each of these boards.   Quite frankly, the evidence presented demonstrated that Plaintiff went well beyond what was required under a reasonable diligence standard.

With regard to both the Captain Davidson report and the Colonel Scovel report,

-23-

Defendants place heavy reliance, as they should, on the presumed regularity of official records. (*See* Pl. Ex. E, p. 40, ¶ 5.c.) However, Defendants attempt to place an unreasonable burden on Plaintiff to ascertain his raters' failure to follow applicable regulations. Plaintiff is also entitled to rely on the presumption of official documents. It was only after Plaintiff contacted these officers, admittedly after failure for selection before the 2004 board, seeking letters to put their marks in context or otherwise mitigate their markings for the next promotion board that Plaintiff discovered that Captain Davidson had improperly manipulated the rankings and that Colonel Scovel did not heed the admonishment contained in MCO P1610.7E to not change his rating philosophy over time. Reasonable diligence cannot require that an officer query each of his raters before each board to ascertain if the raters did something improper or were inflating their reports in contravention of published order. Such a requirement is unworkable and flies in the face of *Kosnik* and *LaChance*.

## CONCLUSION

There are no material facts in dispute. Based on the foregoing, Defendant's deemed denials of Plaintiff's request for reconsideration violates 10 U.S.C. § 628(g)(1)(A). Plaintiff is entitled to relief on both Count I and Count II. This Court remands Plaintiff's case to the Secretary of the Navy for correction of Colonel Scovel's Report and referral Plaintiff's

corrected record to a SSB as relief for both the FY 2004 board and the FY 2005 board.  Costs are

awarded to Plaintiff against Defendants.


IT IS SO ORDERED


DATED:                                _____

                                      HON GLADYS KESSLER
                                      United States District Court Judge

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of _____ the decision and order on Plaintiff's Motion for Summary Judgment was properly served on the following:

Gordon R. England, Secretary of the Navy
Office of the General Counsel
Navy Litigation Office
720 Kennon Street SE Bldg 36, Rm 233
Washington Navy Yard DC 20374-5013

Department of the Navy
Office of the General Counsel
Navy Litigation Office
720 Kennon Street SE Bldg 36, Rm 233
Washington Navy Yard DC 20374-5013

Mr. K. L. Wainstein
U.S. Attorney for the District of Columbia
555 4th St. NW
Washington, DC 20530

Honorable Alberto Gonzalez
U.S. Department of Justice
950 Pennsylvania Avenue
Washington DC 20530-0001

Jackson L. McGrady
Plaintiff
820 Bright St.
Fredericksburg, VA 22401

## CERTIFICATE OF SERVICE

I hereby certify that on the _7th_ day of September, 2005, I, J. L. McGrady, sent by U.S. mail, return receipt requested, postage prepaid, a copy of Plaintiff's Motion for Summary Judgment to the following addresses:    PROPOSED ORDER GRANTING

Gordon R. England, Secretary of the Navy
Office of the General Counsel
Navy Litigation Office
720 Kennon Street SE Bldg 36, Rm 233
Washington Navy Yard DC 20374-5013

Department of the Navy
Office of the General Counsel
Navy Litigation Office
720 Kennon Street SE Bldg 36, Rm 233
Washington Navy Yard DC 20374-5013

Mr. K. L. Wainstein
U.S. Attorney for the District of Columbia
555 4th St. NW
Washington, DC 20530

Honorable Alberto Gonzalez
U.S. Department of Justice
950 Pennsylvania Avenue
Washington DC 20530-0001


J.L. MCGRADY
Plaintiff
820 Bright Street
Fredericksburg, Virginia
540.371.3792

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JACKSON L. MCGRADY, )
Major, United States Marine Corps, )
820 Bright Street )
Fredericksburg, Virginia 22134 )
 Tel. # 540.371.3792 )
 ) Case Number: 1:05CV01651
   Plaintiff ) (Judge:  Gladys Kessler)
 )
v. )
 )
GORDON R. ENGLAND )
Secretary of the Navy )
Washington, D.C. 20350-1000 )
 )
 and )
 )
DEPARTMENT OF THE NAVY )
Washington, D.C. 20350-1000 )
 )
   Defendants )

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

10 U.S.C. § 611 provides the statutory authority for a Secretary of a military department (Secretary of the Army, Secretary of the Navy, and the Secretary of the Air Force), to convene regular selection boards to select officers for promotion to the next higher grade. A Secretary may also convene special selection boards (SSBs) in circumstances where an officer was consider by a regular selection board but there was "material unfairness" in the manner in which the board considered the particular officer. (10 U.S.C. § 628, included as Plaintiff's Exhibit (Pl. Ex.) A, pp. 1-5.) [1] In determining "material unfairness" the Secretary concerned must find that:

---

[1] Because of the number of exhibits and the multiple enclosures to many of the exhibits, cites will

"the action of the promotion board that considered the person was contrary to law or involved material error of fact or material administrative error, or the board did not have before it for its consideration material information." (10 U.S.C. § 628 b(1)(A) and (B).)

A Secretary is required to convene SSBs under regulations prescribed by the Secretary of Defense. (10 U.S.C. § 628(f)(1).) Congress also required each Secretary to establish regulations on convening SSBs, subject to the approval of the Secretary of Defense. (10 U.S.C. § 628(j).) The Secretary of Defense fulfilled his statutory obligation through issuance of Department of Defense (DoD) Directive 1320.11. (Pl. Ex. B, pp. 6-10.) This directive gives a Secretary discretion in convening SSBs in situations involving material unfairness. However, the Secretary of Defense makes clear that DoD policy encourages the use of such boards. (*Id.* at p. 7, ¶ 4.)

The Secretary of the Navy (SECNAV) implemented the provisions of 10 U.S.C. § 628 through publication of SECNAV Instruction (SECNAVINST) 1401.1B. (Pl. Ex. C, pp. 11-20.) SECNAVINST 1401.1B restates the statutory language for determining material unfairness. (Pl. Ex. C, p. 012, ¶ 5.b) The instruction amplifies the meaning of "material unfairness" as:

"Any error of fact or administrative/procedural error that is more likely than not to have deprived the officer concerned of a fair and impartial consideration by the board is a material error." (Pl. Ex. C, p. 014, ¶ 8(c)(3).)

"Any information that, when properly recorded in, or removed from, an officer's record would have been essential to a substantially accurate, complete and fair portrayal of the officer's career is material information." (Pl. Ex. C, p. 014, ¶ 8(c)(4).)

---

be to the exhibit but the page number will refer to the page number on the left corner of the page. These numbers begin with 001 of the first page of Pl. Ex. A and continue, consecutively, through the last page of the last Pl. Ex. This was done in an effort to make presentation of the material more manageable. There will also be a cite to the paragraph on the page, if applicable. An

Marine Corps Order (MCO) P1610.7E governs the Performance Evaluation System to include the rules governing the writing of an officer's performance evaluations.  (Excerpts are attached as Pl. Ex. D, pp.21-38.)  MCO P1610.7E makes clear that the fitness report is a "vital portion of a Marines' Official Military Personnel File (OMPF).  (Pl. Ex. D, p. 24, ¶ 1001.1.a.) MCO P1610.7E summarizes the importance of the fitness report as follow:

> "The completed fitness report is the most important information component in manpower management.  It is the primary means of evaluating a Marine's performance.  The fitness report is the Commandant's primary tool available for the selection of personnel for promotion, retention, augmentation, resident schooling, command, and duty assignments.  Therefore the completion of this report is one of an officer's most critical responsibilities.  Inherent in this duty is the commitment of each reporting senior and each reviewing officer to ensure the integrity of the system by close attention to accurate marking and timely reporting.  Every officer serves a role in the scrupulous maintenance of this evaluation system, ultimately important to both the individual and the Marine Corps." (Pl. Ex. D, p. 25 – 26, ¶ 1004.)

MCO P1610.7E provides detailed instruction on completing the report.  The order makes clear that a 'fitness report accepted by the [Commandant of the Marine Corps, Manpower Support Branch (MMSB)] for inclusion in the official record of a Marine is presumed to be administratively correct, procedurally complete, and valid according to performance evaluation policy [in existence at the time the report is written]."  (Pl. Ex. D, p. 40, ¶ 5.a.)  This view is consistent with federal case law.  (*See Kosnik v. Secretary of the Air Force*, 31 F. Supp. 2d 151, 158 (D.C. Cir. 1998) (finding a strong presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith); *LaChance v. White*, 174 F.3d 1378, 1381 (Fed.Cir. 1999) (government officials are presumed to act in good faith and

---

exhibit list is placed on top of the exhibits and identifies the pages numbers of all exhibits.

this presumption of regularity is the supposition that public officers perform their duties correctly, fairly, in good faith, and in accordance with law and governing regulations, and is valid and binding unless "well-nigh irrefragable proof rebuts or overcomes it").)

Recognizing that, despite the presumption of regularity, there may be situations in which reports should be changed, MCO P1610.7E provides a mechanism for an officer to appeal a report that he or she believe is "incorrect, inaccurate, or in violation of the policies and instruction of [MCO P1610.7E ] once the report is a matter of official record." (Pl. Ex. D, p. 031, ¶ 5008.1.) To contest a particular report, a Marine is required to file an application with the Board for Correction of Naval Records (BCNR) through the Commandant of the Marine Corps (CMC). (*Id.* at ¶ 5008.2.) CMC delegates his authority to process such applications to the Marine Corps Performance Evaluation Review Board (PERB). The PERB's operations are governed by MCO 1610.11. (Pl. Ex. E, pp. 39-49.) If the PERB denies the application, it is forwarded to BCNR for final agency action. BCNR is composed of civilians and is created by the Secretary of the Navy under the authority granted to him by 10 U.S.C. § 1552. (Pl. Ex. F, pp. 50-51.)

However, the Secretary of the Navy, as a matter of policy, under the discretion granted to him by 10 U.S.C. § 628, will not convene a SSB if an officer was considered, but not selected, for promotion if the error is one that could have been corrected by the officer through the exercise of "reasonable diligence" prior to the convening of a promotion board.[2] The policy is as

---

[2] The meaning of "reasonable diligence" is the dispositive issue. In Plaintiff's case Defendants take the position that reasonable diligence requires that, prior to the convening of each promotion board, an officer being considered must query each of his raters (first and second line supervisors) throughout his entire career to ascertain if they submitted inaccurate or false reports,

follows:

> "Correction of an error in an officer's record, after the officer incurs a failure of selection by the promotion selection board that was affected by the error, will not necessarily be the basis for the convening of a board." (Pl. Ex. C, pp. 012 – 013,   ¶ 6a.)

> "A special selection board will not be convened to consider any officer who, through the exercise of reasonable diligence, might have discovered an corrected the error or omission in the official record prior to the convening the promotion selection board that considered, but did not select the officer." (Pl. Ex. C, pp. 012-013, ¶ 6b.)

The Marine Corps Promotions Manual (MCO P1400.31B) defines "reasonable diligence" "as fair, proper, and due degree of care and activity, measured with reference to the particular circumstance; such diligence, care and attention as might be expected from a man/woman of ordinary prudence and activity." (Excerpts are attached as Pl. Ex. G, pp. 52-60.) MCO P1400.31B does not, however, list any objective criteria for making a "reasonable diligence" determination.

Per 10 U.S.C. § 628(g), a service Secretary has six months after receiving a completed application to issue a final decision on an officer's request for a SSB. After six months, the statute deems the Secretary's failure to issue a decision as a denial and allows the officer to seek judicial review. The statute does provide a Service Secretary with authority to extend the six-month time limit if the Secretary determines that a longer period for consideration is warranted. However, the Secretary must publish regulations on how the extension would be implemented and does not allow a waiver decision to be delegated.

---

or have changed their rating philosophy in violation of applicable regulations. As will be explained in the Argument section, this position violates Defendants' own order and contradicts federal case on the presumptive correctness of official records.

## STATEMENT OF MATERIAL UNDISPUTED FACTS

### Count I  (Captain Davidson Report)

1.  On May 6, 2003, Plaintiff filed an application to BCNR through the PERB seeking to correct

the rankings on Plaintiff's performance evaluation, written by then Captain Davidson, who was

plaintiff's reporting senior (first level supervisor), to reflect that he was appropriately ranked as

"1 of 3" instead of "3 of 3".  (Pl. Ex. H, pp. 61-72.)

2.  The application included a letter, signed per 18 U.S.C. § 1001, from Captain Davidson, that

he falsely ranked Plaintiff as "3 of 3". (Pl. Ex. H, pp. 67 – 68.) Captain Davidson admitted that at

the time the report was written, he believed that Plaintiff was appropriately ranked "1 of 3". (*Id.*

at p. 67.) Captain Davidson ranked Plaintiff "3 of 3" in an attempt to give two other lieutenants

an advantage for augmentation from the "reserve" component of the Marine Corps to the

"regular" forces. (*Id.*)

3.  Plaintiff's application for correction also included evidence, obtained through the Freedom of

Information Act (FOIA), 5 U.S.C. § 552, that Captain Davidson had manipulated another

officer's performance evaluations by improperly including Plaintiff as a comparator after

Plaintiff had left the battalion. (Pl. Ex. H, p. 064, ¶¶ 3 - 4; *see* Pl. Ex. H, pp. 69-72 (actual FOIA

request and response).)  Including an officer as a comparator after the officer had left a unit was

improper under the performance evaluation system that was in effect at the time of the report.

4.  By letter of July 16, 2003, CMC, through the PERB, notified Plaintiff of his determination

that Captain Davidson's admission concerning his falsification of Plaintiff's fitness report, in

addition to the evidence submitted by Plaintiff that Captain Davidson improperly manipulated

another officer's report, provided an insufficient basis to correct Plaintiff's record. (Pl. Ex. I, p. 073-75, ¶¶ 2- 3.) Despite Captain Davidson's statement to the contrary, CMC determined that Captain Davidson made a moral choice to rank Plaintiff "3 of 3." (*Id.* at ¶ 3.a.) Consequently, CMC determined that the report was administratively correct as written and should remain unaltered in Plaintiff's record. (*Id.*) CMC also assumed that a reviewing officer (second level supervisor) concurred in Captain Davidson's markings. (*Id.*)

5.  Plaintiff, exercising his right to reply to CMC's notification, responded by letter of August 14, 2003. (Pl. Ex. J, pp. 79-99.) The letter specifically addressed the PERB's concerns. It included a letter from the reviewing officer of the report in question. (*Id.* at pp. 87-88.) The reviewing officer admitted, because of operational commitments, he simply accepted Captain Davidson's rankings and opined that he would have ranked Plaintiff "1 of 3". (*Id.* at p. 88, ¶ 5.) A copy of the letter was sent to both the BCNR and the PERB. (*Id.* at p. 86.)

6.  Plaintiff asked BCNR to return the matter to the PERB for reconsideration in light of the weight of the evidence, which specifically addressed the PERB's concerns. (Pl. Ex. K, p. 100.) BCNR twice asked the PERB if it would reconsider the decision in light of the new evidence and its weight. (*Id.*) The PERB refused both times. (*Id.*)

7.  Because of the PERB's refusal to reconsider Plaintiff's case, BCNR decided the case without further Marine Corps' input. BCNR granted Plaintiff's petition and directed Plaintiff's evaluation be changed to properly reflect that Plaintiff was "1of 3". (Pl. Ex. L, pp. 101-108.)

8.  The performance evaluation written by Captain Davidson's was approximately 13 years old at the time Plaintiff filed a petition to correct it. The Secretary of the Navy determined it was "timely" within the meaning of 10 U.S.C. § 1552, which requires the filing of a request within

three years after the petitioner discovers the error. (Pl. Ex. L, p. 103, ¶ 3.b.)

9.    Captain Davidson's improper ranking was material in that it made Plaintiff's record less competitive when compared to his peers on the FY 2004 lieutenant colonel selection board

10. On September 16, 2003, Plaintiff submitted a request for a SSB as relief from the FY 2004 lieutenant colonel selection board, via the CMC, to the Secretary of the Navy citing the directed rankings change on the evaluation authored by Captain Davidson. (Pl. Ex. M, pp. 109-131.)

11. By letter dated April 28, 2004, CMC notified Plaintiff that his request for a SSB had been denied. (Pl. Ex. N, p. 132.) Included with the letter was the CMC's MEMORANDUM FOR THE SECRETARY OF THE NAVY, dated 16 Feb 04. (Pl. Ex. N, pp. 133-135.) CMC concluded that Plaintiff "failed to exercise due diligence to ensure his record was substantially accurate and complete before the convening of the board" and recommending Plaintiff's petition for a SSB be denied. (*Id.* at p. 134, ¶ 5.) The Secretary of the Navy accepted this recommendation without further comment or analysis and, thereby, adopted the rationale of the CMC on April 16, 2004. (*Id.* at p. 135.)

12. CMC's denial recommendation failed to identify any objective criteria upon which he determined that Plaintiff failed to exercise reasonable diligence. CMC's recommendation simply concluded that Plaintiff failed to exercise reasonable diligence without identifying the objective criteria used to reach that conclusion. (Pl. Ex. N, pp. 133-135.)

13. In an attempt to ascertain the objective criteria upon which CMC's reasonable diligence determination was based, Plaintiff filed a Privacy Act (5 U.S.C. § 552a) (PA) request on May 5, 2004, seeking the contents of Plaintiff's SSB file, which is maintained by Headquarters Marine Corps, Manpower, Promotions Branch (MMPR), and is a "system of records" under 5 U.S.C.

-8-

552a. (Pl. Ex. O, p. 136.)

14. On June 7, 2004, Plaintiff, in response to an inquiry regarding his PA request was told by an employee within MMPR that a memorandum from the Staff Judge Advocate (SJA) to CMC was resident within Plaintiff's SSB file. (*See* Pl. Ex. P, pp. 141-143 (e-mails between Plaintiff and Defendant's employees.)

15. On November 5, 2004, Defendant responded to Plaintiff's May 5, 2004, PA request. (Pl. Ex. S, pp. 151-164.) Defendant denied Plaintiff a copy of the legal memorandum by saying that the legal memorandum was not filed in a PA file but was filed in a "general and administrative record file", which was not covered by the PA. (Pl. Ex. S, p 153.) Access to the 3-page legal memorandum was erroneously denied based on a (b)(5) exception under the Freedom of Information Act (5 U.S.C. 552) (Pl. Ex. S, p. 161.)

16. On November 9, 2004, Plaintiff requested reconsideration of the denial of SJA's legal memorandum citing to several e-mails between Plaintiff and MMPR employees indicating that the memorandum was filed in Plaintiff's SSB file. (Pl. Ex. T, pp. 166-167.)

17. On December 9, 2004, the PA coordinator granted the reconsideration request. (Pl. Ex. T, p. 165). She provided the SJA memorandum, "SJA TO CMC COMMENT ON MMPR-1 r/s of 5 Dec 03" dated December 18, 2003. (Pl. Ex. V, pp. 170-173.) The response admitted "the subject memo has indeed been filed into [Plaintiff's] Special Selection Board Request file and . . . the SJA memo must be disclosed to [Plaintiff] in its entirety." (Pl. Ex. T, p. 165.)

18. The SJA's legal opinion identified eight criterion for determining "reasonable diligence". (Pl. Ex. V, pp. 171-172, ¶ 4.d.) Although the SJA's legal memorandum purports to apply all eight factors, it does not. (*See* Pl. Ex. V, pp. 170-173.) The legal memorandum only addresses

one factor concerning whether Plaintiff made contact with a career counselor before the convening of the FY 2004 lieutenant colonel board. (*Id.*) Plaintiff's purported failure to contact a career counselor prior to the board is the sole basis for the legal conclusion that Plaintiff failed to exercise "reasonable diligence". (*Id.*) The SJA legal memo concluded that "[n]o evidence suggests that [Plaintiff] contacted a career counselor prior to the board. Applying the [8 identified factors], we conclude that [Plaintiff] did not exercise reasonable diligence." (Pl. Ex. V, p. 172, ¶ 5.c.) CMC's conclusion that Plaintiff failed to exercise "reasonable diligence" is based solely on his SJA's opinion.

19. CMC has not published any mandatory requirement that an officer being considered for promotion by a selection board must contact a career counselor before the convening of a promotion board. CMC has not published a mandatory requirement that an officer provide evidence that an officer contacted a career counselor before the convening of a promotion board as a prerequisite for requesting a SSB or as a prerequisite for recommending a SSB.

20. The SJA opinion does not analyze whether a career counselor could have identified the falsity of Captain Davidson's rankings on Plaintiff's evaluation. (Pl. Ex. V, pp. 170-173.)

21. Defendants have not published any criteria by which a career counselor could evaluate or conclude by looking at the face of a fitness report, whether the writer falsified the rankings on the report.

22. Finding that Plaintiff failed to exercise reasonable diligence, within the meaning of SECNAVINST 1401.31B, by allegedly failing to contact a career counselor before the convening of the FY 2004 promotion board, when the career counselor would not have been able to ascertain the falsity of Captain Davidson's report, is arbitrary and capricious.

-10-

23. Given that the sole basis for CMC's recommendation, which was adopted by the Secretary of the Navy, to deny Plaintiff's SSB request was based on the erroneous assumption that Plaintiff did not meet with a career counselor before the convening of the board, Plaintiff submitted a request for reconsideration of the Secretary's decision. (Pl. Ex. W, pp. 174-214.)

24. Plaintiff submitted evidence that he spoke with Lieutenant Colonel Poleto, a career counselor with MMOA-4, prior to the convening of the FY 2004 selection board, which included Plaintiff's sworn statement under 28 U.S.C. § 1746,. (Pl. Ex. W, pp. 180-183.) Plaintiff also provided a copy of his desk calendar from that date reflecting the appointment. (*Id.* at p. 194.)

25. MMOA-4 does not maintain records of officers who have sought career counseling.

26. Defendant acknowledged receipt of Plaintiff's request for reconsideration by letter dated February 9, 2005. (Pl. Ex. X, p. 215.) Defendant has not published any regulation that would allow the Secretary of the Navy to extend the 6-month statutorily imposed deadline.

27. Defendant never formally notified Plaintiff that the Secretary of the Navy would exceed the statutorily imposed deadline for rendering a final decision on Plaintiff's request for a SSB.

28. Defendant failed to meet the statutorily imposed time limits to respond to Plaintiff's February 9, 2005, request for a SSB.

**Count II (Colonel Scovel Report)**[3]

29. On December 9, 2004, Plaintiff submitted a second application to BCNR through the PERB, seeking to correct the comparative assessment on a fitness report authored by Colonel C. Scovel for the rating period ending March 15, 1999. (Pl. Ex. Y, pp. 216-228.) The basis for the requested change is that Colonel Scovel changed his rating philosophy over a period of time since he acted as the reviewing officer of Plaintiff's fitness report. A change in rating philosophy, whether by reporting senior or a reviewing officer, is in violation of MCO P1610.7E. If a rater changes his rating philosophy over time, it makes all earlier reports inaccurate.

30. Colonel Scovel commented on Plaintiff's fitness report that Plaintiff was among the "top 5% of majors [he] had observed in his 22 years of service." (Pl. Ex. Y, p. 224.) Colonel Scovel marked Plaintiff in the 5th of 8 blocks on the comparative assessment scale in section K.3 of the report. (*Id.*) Colonel Scovel believed at the time of the writing of the report that the comment and the marking were consistent. (Pl. Ex. Y, p. 225, ¶ 3.)

31. Since the writing of Plaintiff's report, Colonel Scovel changed his rating philosophy such that a "top 5%" now equates to a mark in the 7th of 8 blocks of section K.3. of the report. (Pl. Ex. Y, p. 226, ¶ 4.) Colonel Scovel memorialized this change in philosophy in a letter, dated September

---

[3] In 1999 the Marine Corps changed the format of the performance evaluation. The "old" system graded officers of the same grade, who were under the direction of the same supervisor, against each other. This was a "static" or "point in time" comparative assessment. Out of a concern that raters were "inflating" their reports and "gaming" the system, the Marine Corps introduced the current performance evaluation system, which tracks the evaluation habits of the rating officials. This new system created a rater profile that is continuously updated as the rater writes additional reports on subordinates of a particular grade. When a rater writes an evaluation, the subordinate is effectively ranked against all other officers on whom the rater has submitted an evaluation over his entire career. The new system is considered "dynamic" for these reasons. For the new system to work as intended, raters must not change their rating philosophy over time and are

2, 2003, to the Plaintiff. (Pl. Ex. Y, pp. 225-226.) Plaintiff submitted a letter to the FY 2005

lieutenant colonel board. (Pl. Ex. AA, pp. 296-334.) Plaintiff's letter to the board included

Colonel Scovel's letter as an enclosure. (Pl. Ex. pp. 306-307.) The FY 2005 lieutenant colonel

selection board convened on September 4, 2003. (Pl. Ex. AA, p. 262, ¶ 1.)

32. Defendants issued an interim opinion, authored by the Marine Corps Promotions Branch

(MMPR), on whether to grant Plaintiff's SSB request. (Pl. Ex. BB, pp. 338-339.) The interim

opinion recommends denial based on Plaintiff's "failure in identifying and correcting the error

prior to being considered by the FY 05 USMC Lieutenant Colonel Promotion Selection Board."

(Pl. Ex. BB, p. 339, ¶ 3.)

33.    Even if Plaintiff had identified the error to the PERB using Colonel Scovel's letter of

September 2, 2003, the PERB would not have issued a decision prior to the convening date of the

board. (*See* Pl. Ex. E, p. 41, ¶ 6a (requiring submission of requests 120 days prior to the

convening of a selection board.)

34. As said in the SJA memo of December 18, 2003, identifying a known error to the board is an

indicia of reasonable diligence.   (Pl. Ex. V, p. 171, ¶ d(5).)

35. CMC, through the PERB, found that the performance appraisal written by Colonel Scovel

was correct at the time it was written. (Pl. Ex. Z, p. 231, ¶ 3.) Consequently, CMC reasoned that

the report should remain in Plaintiff's OMPF as written. (Pl. Ex. Z, p. 232, ¶ 4.)

36. CMC's reasoning is flawed because it ignores the "dynamic" nature of the current

performance evaluation system. (*See* Pl. Ex. D, pp. 34-38.) Colonel Scovel's report was accurate

at the time it was written and the comments and comparative assessment marking were

prohibited from doing so. (Pl. Ex. D, p. 32, ¶ 8012.2.d.)

-13-

consistent. Colonel Scovel's report on Plaintiff became inaccurate over time as he inflated later reports by assigning a higher comparative assessment for equivalent performance. For an earlier report to accurately reflect the performance of an officer, the rater must not inflate later reports. (Pl. Ex. D, p. 33, ¶ 8012.2(e).)

37. CMC, through the PERB, found that Colonel Scovel's letter was merely an endorsement for promotion and not an official request to change Plaintiff's record. (Pl. Ex. Z, pp. 231-232, ¶ 3.a.) However, the PERB noted that such a request would not have made a difference in the decision. (*Id.*) CMC states Colonel Scovel should not have changed his grading philosophy citing to Marine Corps Order MCO P1610. 7E (Performance Evaluation System) subparagraph 8012.2, which discusses the rater's "Profile Dynamics", stressing the importance of a consistent grading philosophy. (Pl. Ex. Z, p. 232, ¶ 3.b.)

38. CMC's decision ignores the fact that Colonel Scovel admits that his grading philosophy has changed over time and now assigns higher comparative marks for equivalent performance as compared to when he authored Plaintiff's report. CMC's decision also ignores the admonition contained within subparagraph 8012.2 of MCO 1610.7E (Pl. Ex. D), which states:

> "[reporting officials] must accurately and fairly assess the performance of their subordinates; **[reporting officials] who fail to do so will unwittingly and *unfairly discriminate* against either earlier reports or subsequent reports.**" (Pl. Ex. D, p. 033, ¶ 8012.2(e)(Emphasis added.))

> Reporting seniors who attempt to change their rating philosophy may either positively or negatively affect the relative value of reports for MROs they previously rated. Para. 8012.2(e)(2). **When the rater changes his philosophy and grades higher, he will diminish the value of all preceding reports ever written.** (Pl. Ex. D, p. 033, ¶ 8012.2(e)(2)(a). (Emphasis added.))

-14-

39. Because Colonel Scovel changed his grading philosophy by grading higher on later reports,
Plaintiff, by Marine Corps regulation, was unfairly discriminated against and the report in
question is unfair. (*See* Pl. Ex. D, p. 033, ¶ 8012.2(e).)

40. Plaintiff exercised his right to respond to BCNR from the PERB's decision through a filing
of March 22, 2005, in which Plaintiff requested correction of the inaccurate report and a SSB,
based on the impact of the inaccurate report and Plaintiff's non-selection for promotion by the
FY 2005 lieutenant colonel selection board . (Pl. Ex. AA, pp. 234-335.)

41. The evidence in Plaintiff's March 22, 2005, submission included, *inter alia*, the following:

   a) Letter from Colonel Scovel requesting official change to Plaintiff's record; (Pl. Ex.
   AA, p. 249.)

   b) Letter from a member of the FY 2005 lieutenant colonel selection board expressing
   the opinion that changing the report as requested would have increased the likelihood
   of Plaintiff's selection;  (Pl. Ex. AA, pp. 250-251.)

   c) Evidence that Plaintiff exercised "reasonable diligence" to ensure the accuracy of
   his record before the FY 2004, FY 2005, and FY 2006 lieutenant colonel selection
   boards. (Pl. Ex. AA, pp. 252-334; *See* Pl. Ex. AA, pp. 242-247, ¶¶ 16-27 (explaining
   significance of documentary evidence contained in pp. 252-334.)

42. Plaintiff exercised "reasonable diligence" to ensure the accuracy of his record before the FY
2004, FY 2005, and FY 2006 lieutenant colonel selection boards.

43. Colonel Scovel's change in grading philosophy severely diminished the value of Plaintiff's
report and negatively skews Plaintiff's entire record. (Pl. Ex. AA, pp. 252-334; *see* p. 242, ¶ 16 –

-15-

p. 247 ¶ 27 for explanation of materials.)

44. Before the FY 2004 lieutenant colonel selection board, Plaintiff had approximately 22 officers ranked above him, 26 officers with him and 8 officers below him. (Pl. Ex. AA, pp. 252-254, *see* p. 240, ¶ 12.a for explanation of how numbers were calculated.) A record with 2.5 times the number of officers ranked above the officer as below is not competitive.

45. If Colonel Scovel's report were amended to accurately reflect Plaintiff's performance, Plaintiff's record before the FY 2004 lieutenant colonel selection board would have had approximately 12 officers ranked above him, 15 officers ranked with him, and 29 officers below him. (*Id.*) A record with 2.5 times the number of officers ranked below as above is competitive.

46. Before the FY 2005 lieutenant colonel selection board, Plaintiff had approximately 47 officers ranked above him, 59 officers with him and 48 officers below him. (Pl. Ex. AA, pp. 252, see p. 240, ¶ 12.a for explanation of how numbers were calculated.) A record with a similar number of officers ranked above and below is not competitive.

47. If Colonel Scovel's report were amended to accurately reflect Plaintiff's performance, Plaintiff's record before the FY 2005 lieutenant colonel's selection board would have had approximately 17 officers ranked above him, 44 officers ranked with him, and 94 officers below him. (Pl. Ex. AA, pp. 253-254, see p. 240, ¶ 12.b for explanation of how numbers were calculated.) A record with five times the numbers of officer below as above is very competitive.

48. Colonel Scovel, recognizing this fact, opined in his letter to officially request a change to the report that:

> "Failure to change the report unfairly colors [Plaintiff's] performance, because of the new evaluation system's reliance on comparative assessments. Those who may look at [Plaintiff's] record now or in the

-16-

future would be misled as to his performance during that period and as to his potential. This is not fair to the Marine or the Marine Corps, which relies on the performance evaluation system to make a myriad of personnel decisions. [Plaintiff] has a right to an accurate evaluation. The marking should be changed." (Pl. Ex. AA, p. 249, ¶ 3.)

49. Defendant received Plaintiff's SSB application on March 24, 2005. (Pl. Ex. DD, p. 343.)

50. Defendant will not issue a decision on Plaintiff's request based on Colonel Scovel's inaccurate fitness report prior to the expiration of the deadline imposed by 10 U.S.C. § 628.

## ISSUES

I. Was there "material unfairness", within the meaning of 10 U.S.C. § 628 (b), and Defendants' implementing instructions, in the FY 2004 and FY 2005 lieutenant colonel selection boards as the processes of those boards related to Plaintiff because those boards did not have before them material information and/or Plaintiff's record contained material error based on Captain Davidson's false report or Colonel Scovel's inaccurate report?

II. If there was "material unfairness", does the Secretary's decision to deny Plaintiff's SSB request, based on Plaintiff's alleged failure to exercise reasonable diligence, violate the provisions of 10 U.S.C. § 628 (g)(1)(A) as being: i) arbitrary or capricious; ii) not based on substantial evidence; iii) a result of material error of fact or material administrative error; or iv) otherwise contrary to law?

## ARGUMENT

A.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and

-17-

the moving party is entitled to judgment as a matter of law. (Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).) Summary judgment may be granted based upon the pleadings, supplemental affidavits, and facts developed during the administrative proceedings. (*See Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990).) A moving party is entitled to judgment as a matter of law if the record in the case confirms the non-moving party cannot establish "the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." (*Celotex Corp. v. Catrett*, 477 U.S. at 322-23.) Summary judgment procedures are important in winnowing out meritless claims and preventing the "unwarranted consumption of public and private resources." (*Id.* at 327. *See also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); and *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts.").)

## B.    PLAINTIFF'S FITNESS REPORTS CONTAINED MATERIAL ERROR AND SELECTION BOARD DID NOT HAVE MATERIAL INFORMATION.

The importance of fitness reports in the promotion process cannot be overstated. MCO P1610.7E emphasizes how critical accurate performance reports are to ensure the best individuals are selected for promotion and key assignments. Implicit in that order is the emphasis placed on the competitive markings. In the current performance evaluation system, the comparative markings are known as comparative assessments. Under the previous system, these markings were known as the Value and Distribution marks. Regardless of the name, these numbers rate an individual against his peers. Intuitively, these numbers are important to the selection process.

This is confirmed by Colonel J.E. McCown III who was a member of the FY 2005 lieutenant colonel selection board. (Pl. Ex. AA, p. 257.) He has served on a total of three selection boards. (Pl. Ex. AA, p. 250, ¶ 1.) He notes that selections board place "significant weight . . . on both the reporting seniors' and reviewing officers' comparative assessments." (Pl. Ex. AA, p. 250, ¶ 2.) He further notes that the "relative value markings, provided by the [reporting senior] in the old reports and by the [reviewing officer] in the new reports is one of the few objective, quantifiable tools available to the board members." (Pl. Ex. AA, p. 250, ¶ 2.)

Based on the importance of rankings and comparative assessments in the promotion process, and considering Defendants' definition of materiality, a bright line rule emerges that any change in rankings or comparative assessment markings on an officer's fitness report must be material and requires the Secretary to refer the officer's corrected record to a SSB. This view is consistent with Defendants definition of materiality as "[a]ny error of fact or administrative/procedural error that is more likely than not to have deprived the officer concerned of a fair and impartial consideration by the board is a material error" or "[a]ny information that, when properly recorded in, or removed from, an officer's record would have been essential to a substantially accurate, complete and fair portrayal of the officer's career is material information." (Exhibit C, p. 14, ¶ 8(c)(3).)

1. Count I (Captain Davidson Report). As Plaintiff's record stood before the FY 2004 board, on the "old" fitness report system, Plaintiff had seven officers marked above him, eight marked below him and two marked with him. (Pl. Ex. M, p. 122, ¶ 3.) A record with approximately the same number of officers ranked below as above is not competitive for

promotion. Correcting the error in Captain Davidson's report to reflect that Plaintiff was "1 of

3" instead of "3 of 3" changed Plaintiff's "Value and Distribution" to five marked above him, ten

marked below him, and two marked with him. (*Id.*) A record with twice as many officers ranked

below as above, is competitive.[4] Defendants' admit that the correction improved Plaintiff's

record. (*Id.* at ¶ 4.) If the correction improved Plaintiff's record, it must, necessarily mean that

the change would have increased the likelihood of selection and is, therefore, material. As such,

Plaintiff's case must be referred to a SSB. (*See* Argument, at ¶ B, *supra*.)

Throughout the administrative review process, Defendants have never disputed

materiality. In fact, Defendants concede the issue of materiality in the decision to deny

Plaintiff's SSB request. In that decision Defendants specifically cited to SECNAVINST

1401.1B's requirement for material error as a pre-condition to ordering a SSB. (Pl. Ex. N, p.

133, ¶ 1.) The decision characterizes Plaintiff's request as one based on "material error of fact".

(Pl. Ex. N, p. 33, ¶ 2.) The decision notes that the presence of the inaccurate report "may have

been a competitive concern." (Pl. Ex. N, p. 134, ¶ 4a.) In the concluding section of the decision,

the only basis for denial is Plaintiff's alleged failure "to exercise reasonable diligence to ensure

his record was substantially accurate and complete before the convening of the board." (Pl. Ex.

---

[4] Plaintiff's initial SSB request included statements from two other officers who were considered
by the FY 2004 selection board. One officer, who the career counselors thought less competitive
for promotion because of "limited" occupational field credibility and having few different types
of position within his occupational specialty, was selected for promotion. He had 5 ranked above
and 13 below. (Pl. Ex. M, p. 125, ¶ 7.) Another officer, who the career counselors thought was
very competitive for promotion, was not selected but had 20 officers ranked above and 21 below.
(Pl. Ex. M, p. 127, ¶ 5.) Subsequently, that officer was able to have a fitness report removed
from his record, which resulted in his rankings being 10 above and 21 below. **The career
counselors thought that having twice as many ranked below as above is very competitive.**
(*Id.*) This also explains the first officer's selection despite the career counselor's concerns. From

-20-

N, p. 134, ¶ 5.) There is no mention of material error. In an advisory opinion on Plaintiff's request to correct Colonel Scovel's report, Defendants again admitted that the only basis for denying Plaintiff's request for a SSB stemming from Captain Davidson's report was Plaintiff alleged "failure to exercise reasonable diligence in correcting the fitness report." (Pl. Ex. BB, p. 338, ¶ 2.b.) Given these admissions, Defendants cannot, now, reasonably argue that the correction was not material.

   2. <u>Count II (Colonel Scovel Report)</u>. In response to the PERB's denial of Plaintiff's request to correct Colonel Scovel's comparative assessment marking, Plaintiff submitted a reply to the BCNR detailing, *inter alia*, the legal basis for requesting a SSB to include the issue of materiality and reasonable diligence. (Pl. Ex. AA, pp. 234 -- 335.) Plaintiff noted that if Colonel Scovel had not changed his grading philosophy or graded Plaintiff according to his current philosophy at the time of the report in question, Plaintiff's comparative assessments before the FY 2004, FY 2005, and FY 2006 lieutenant colonel selection boards would have been dramatically strengthened.

   To demonstrate materiality Plaintiff provided the comparative assessment numbers as they would have likely appeared before the FY 2005 lieutenant colonel selection board and how the comparative assessment numbers would change if Colonel Scovel's report were corrected.[5]

---

this evidence, it follows that the FY 2004 selection board placed dispositive weight on rankings.
[5] Colonel Scovel's change in grading philosophy affected the FY 2004 board, as well as the FY 2005 and FY 2006 boards. Relief is appropriate for each board. Relief is most appropriate for the FY 2005 board for several reasons. First, Colonel McCown was on the FY 2005 board and is in a unique position to assess how Colonel Scovel's change in grading philosophy may have affected the FY 2005 board. Second, Colonel Scovel's changing philosophy would have had a greater negative impact on Plaintiff at the FY 2005 board vis-à-vis the FY 2004 board. Further,

Before the FY 2005 lieutenant colonel selection board, Plaintiff had approximately 47 officers ranked above him, 59 officers with him, and 48 officers below him. (Pl. Ex. AA, p. 241, ¶ 7.b.) A record with a similar number of officers above and below is not competitive. If Colonel Scovel's fitness report were corrected to accurately portray Plaintiff's performance, Plaintiff would have approximately 17 officers above him, 44 officers with him, and 94 officers below him. (*Id.*) A record with fives times as many officers ranked below as above is highly competitive. (*See* footnote 4.)

Colonel J.E. McCown III, a member of the FY 2005 lieutenant colonel section board, noted that changing Plaintiff's record to reflect Colonel Scovel's change in grading philosophy "would result in a significant improvement in his comparative value marks." (Pl. Ex. AA, p. 251, ¶ 4.) "[S]uch a shift in the over/under numbers would have altered, in [Plaintiff's] favor, one of the key criterion used in making selection decisions and would have increased the possibility of his selection." (*Id.* at ¶ 5.)

BCNR provided a copy of Plaintiff's brief (Exhibit AA), to MMPR who issued an advisory opinion on Plaintiff's request for a SSB. (Pl. Ex. BB, pp. 338 – 339.) Although Plaintiff extensively briefed the issue, the advisory opinion does not address materiality and appears to concede the point. However, the advisory opinion recommends denial of the SSB based on Plaintiff's alleged "failure in identifying and correcting the error prior to being

---

Colonel Scovel's letter definitively shows that his grading philosophy had changed by the time of the convening of the FY 05 board. Third, Plaintiff was "in-zone" for the FY 2005 board as opposed to "above-zone" for the FY 2006 board. The odds of an officer being selected "in-zone" are significantly greater than being selected "above-zone". SECNAVINST 1401.11B, paragraph 8, indicates that, when an SSB is warranted, the "special selection board will be approved for the first promotion selection board that was affected by the same error, unless the officer specifies

considered by the FY 2005 USMC Lieutenant Colonel Selection Board." (Pl. Ex. BB, p. 339, ¶ 3.)

## C.  IF THERE WAS MATERIAL UNFAIRNESS, SECRETARY IS *REQUIRED* TO SEND PLAINTIFF'S CASE TO A SSB

Before enactment of 10 U.S.C. § 628, after an officer showed that his record contained a defective performance evaluation, the ultimate burden was on the government to show that the officer would not have been promoted had his record contained no error. (*See Richey v. United States*, 322 F.3d 1317, 1323 (C.A. Fed. Cir. 2003).)  However, since the enactment of 10 U.S.C. § 628, a Secretary is not to make such a harmless error determination. ( *Id.* at 1324 (citing to *Porter v. Unites States*, 163 F.3d 1304, 1323 (C.A. Fed. Cir 1998), *cert. denied*, 528 U.S. 809, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999)).)  Instead, under 10 U.S.C. § 628, as interpreted in *Porter*, the case should be referred to an SSB, which will decide whether to promote the officer based on his corrected military record, and, therefore, the harmless error rule has no application. (*Id.* )

## D.  DEFENDNATS' DENIALS OF PLAINTIFF'S SSB REQUEST VIOLATES 10 U.S.C. § 628(g)(1)(A).

1. <u>Count I (Captain Davidson Report)</u>.  Defendants denied Plaintiff's SSB request for lack of "reasonable diligence" and was premised on Defendants' view that "[Plaintiff] reasonably should have known of the nature of the ranking and should have taken appropriate steps to highlight or correct the fitness report prior to the FY 2004 USMC Lieutenant Colonel Board convening." (Pl. Ex. N, p. 134, ¶

the particular board for which relief is sought . . . ."

4.a.) The statement is conclusory and is without support.[6]   The decision does not

identify or apply any objective factors that would have allowed the Secretary to

make an informed decision or provide this Court a basis for review.

In Homer v. Secretary of the Air Force, 226 F.Supp.2d 222 (Dist. Ct. DC

2002) this Court reviewed a Department of the Air Force decision regarding an

officer's failure for selection.  The agency rationale was that "the selection process

is highly competitive and there is no guarantee that the applicant would have been

promoted under any circumstances."  This Court held that this explanation provided

no actual reason for the agency's decision and noted that the "justification only

highlights the Air Force's failure to identify the substantive criteria that were used

in that process and to explain the reason that Plaintiff did not satisfy those criteria."

The same rationale applies to Plaintiff's case.  There is nothing in the decision that

avails itself of review.

Recognizing this fact, and hoping to ascertain if Defendants had conducted

---

[6] Because Defendant's decision does not identify any substantive criteria, or provide any analysis and that the lack of reasonable diligence determination was premised on alleged lack of career counselor contact, Plaintiff does not attempt to address Defendant's contention that Plaintiff should have know of the "nature" of the report such that he should have contested it at an earlier point in time.  However, Plaintiff extensively analyzed this issue in his request for reconsideration.  (Pl. Ex. W, pp. 184 –188, ¶¶ 27-39.)  The most significant points were that:  1) Lieutenant Colonel Poleto did not identify any irregularity or basis to contest the report; 2) the BCNR's observations that the comments on the report were "entirely favorable" and that the reporting senior provided his own "commendatory comments" showed that there was no basis to contest the report; 3) comments from the reviewing officer that he has no reason to suspect the falsity when he signed the report; 4) this was a transfer report in which Captain Davidson could have ranked Plaintiff appropriately without affecting other officers, a fact that was unknown by Captain Davidson at the time; and 5) the longstanding presumption of regularity of official documents.

any objective analysis, Plaintiff on May 5, 2004, submitted a request under the provisions of 5 U.S.C. § 552a (Privacy Act (PA)). (Pl. Ex. O, p. 136.) What followed was a seven-month series of requests, phone calls, a personal file review, and appeals. (*See* Pl. Ex. P – U.)[7] Ultimately, Defendant provided Plaintiff with a copy of a Staff Judge Advocate (SJA) legal opinion written to the Commandant of the Marine Corps that purported to analyze Plaintiff's reasonable diligence based on articulated objective factors. (Pl. Ex. V, pp. 170 – 173.)

The SJA opinion identifies the legal standards applicable for SSB requests and identifies eight factors to be used to determine "reasonable diligence". (Pl. Ex. V, p. 171, ¶ 4.d.) The second of the eight factors is whether the officer reviewed his/her official record with a career counselor within a reasonable period of time prior to a board. Of the eight listed criteria, the only factor analyzed by the SJA relates to career counselor contact.[8] Specifically, the SJA's ultimate opinion that Plaintiff failed to exercise reasonable diligence is premised on the observation that there is "[n]o evidence suggest[ing] that [Plaintiff] contacted a career counselor prior to the

---

[7] Plaintiff notes that an employee from MMPR, the holder of Plaintiff's SSB record, told him that the SJA memorandum was contained within his SSB file. When MMPR transmitted the documents in response to Plaintiff's PA request to the PA coordinator, MMPR represented to the PA coordinator that the SJA memorandum was filed in a "general and administrative record file" and not in Plaintiff's SSB file. (Pl. Ex. S. p. 153.) It was only after Plaintiff requested reconsideration from the PA coordinator, and again cited to the e-mail traffic with MMPR employees indicating that the SJA memorandum was contained within the SSB file, that it was released. (Pl. Ex. T, p. 165.)

[8] Because the SJA opinion only analyzed one of the eight criteria, there is no need to analyze the remainder of the criteria in this Motion. However, Plaintiff did analyze all of the factors in his request for reconsideration demonstrating that he met all of the factors or they were not applicable. (*See* Pl. Ex. W, pp. 182-188, ¶¶ 22-39.)

board. Applying the factors [used to determine reasonable diligence], we conclude that he did not exercise reasonable diligence."[9] (Pl. Ex. V, p. 172, ¶ 5.c.)

Contrary to Defendant's assumption, Plaintiff did see a career counselor prior to convening of the FY 2004 lieutenant colonel selection board. Plaintiff spoke with Lieutenant Colonel Frances Poleto, a career counselor from MMOA-4 by telephone on 4 Oct 2002. Plaintiff was unaware that career counselor contact was used as a touchstone for making reasonable diligence determinations and did not identify this fact in his initial request for a SSB.[10] During the phone counseling, Lieutenant Colonel Poleto gave no indication that she

---

[9] The SJA opinion does not analyze why failure to contact a career counselor necessarily equates to a lack of reasonable diligence. Using career counselor contact as a substantive criterion for making a reasonable diligence determination makes an implicit assumption that the career counselor would have been able to identify the error. Without this assumption, the criterion would be arbitrary. An officer should not be determined to have failed to exercise reasonable diligence because he failed to perform a futile act. Ergo, the requirement to see a career counselor is subsumed, to a large degree if not totally, by an analysis of the "nature" of the error (Factor 7 of the SJA's memorandum). In Plaintiff's case it would be unreasonable to assume that a counselor would know that a report was improperly manipulated merely by looking at the document's face. As such, even if Plaintiff had not contacted a counselor, such a failure should not have led to a finding of a lack of reasonable diligence because of the nature of the error.

[10] The only published, substantive criteria identified by Plaintiff were those listed in Marine administrative message (MARADMIN) 371/02. (Pl. Ex. AA, pp. 258-261.) CMC issues a message before each selection board. It identifies an individual's responsibilities to ensure his/her record is accurate. (Id. at p. 259, ¶ 4.) Per the MARADMIN a Marine should: (1) submit a photograph; (2) complete suggested professional military education; (3) personally check the Official Military Personnel File (OMPF) and Master Brief Sheet (MBS); (4) and send copies of any documents that may not yet be reflected in the file. Each of these items is under the Marine's control and he/she is "responsible to ensure the accuracy and completeness" of his/her record. The MARADMIN puts everyone on notice of what is expected of a Marine to ensure his record is ready for the board. Thus, these recommendations provide appropriate "substantive criteria" for determining "reasonable diligence". These were the factors that Plaintiff addressed in his original request. (Pl. Ex. M, p. 112, ¶ 12). Plaintiff notes that this MARADMN does not require an officer to see a career counselor before the convening of a promotion board but states that

-26-

believed that Captain Davidson had improperly ranked Plaintiff with two other lieutenants. Neither did she opine that the reviewing officer of that report failed to properly execute his reviewing officer duties by simply accepting the reporting senior's markings. Lieutenant Colonel Poleto did not indicate that she believed that Colonel Scovel's comments and comparative assessments markings were inconsistent.

    **a. Deemed Denial Not Based on Substantial Evidence**. Given that Plaintiff did see a career counselor before the convening of the FY 2004 lieutenant colonel selection board and submitted evidence of that fact in his request for reconsideration, Defendants' deemed denial is not based on substantial evidence.

    **b. Deemed Denial Contrary to Law**. Defendants' denial of Plaintiff's SSB request violates 10 U.S.C. § 1552 (Corrections of Military Records; Claims Incident Thereto). This code section establishes a three-year statute of limitations from the time of the discovery of the error. (10 U.S.C. § 1552(b).) In Plaintiff's request to change the rankings on Captain Davidson's report, Defendant affirmatively determined that Plaintiff's petition "was filed in a timely manner." (Pl. Ex. L, p. 103, ¶ 3.b.) This determination is "final and conclusive on all officers of the United States." (10 U.S.C. § 1552(a)(4).) As such, Defendant cannot now legally argue that Plaintiff failed to exercise reasonable diligence by failing to contest the report at the time it was written. In fact, Defendants' determination that Plaintiff's petition was timely necessarily means that Plaintiff exercised due diligence.

    **c. Other Evidence**. There is much other evidence in this case demonstrating that

---

"after checking their records, officers who have specific concerns about some aspect of their record may contact the career counselors, CMC (MMOA-4) for assistance." (Pl. Ex. AA, p. 260,

Defendants have acted arbitrarily and capriciously. The fact that CMC, through the PERB, determined that there was no basis to initially change Plaintiff's record and then determined that Plaintiff failed to exercise reasonable diligence is arbitrary and capricious. If CMC determined that Captain Davidson's admission and the supporting evidence that he improperly manipulated the report of another officer were insufficient to change the report, CMC cannot logically argue that Plaintiff should have contested the report at an earlier point in time. The arbitrary manner in which CMC processed this case is further demonstrated by his refusal, through the PERB, to reconsider Plaintiff's case, despite being asked to do so twice by BCNR after Plaintiff provided specific evidence addressing the PERB's rationale for denial. (Pl. Ex. K, p. 100.)

The SJA memorandum is also indicative of the arbitrary manner in which Plaintiff's case has been processed. As explained in footnote 9, using career counselor contact as a basis for a finding of a lack reasonable diligence is arbitrary when there is no likelihood that a career counselor could have identified the error. Further, using career counselor contact, when it not a published requirement, is also arbitrary. (*See* footnote 10 explaining that CMC publishes an administrative message detailing what officers must do to prepare their records before a promotion board – contacting a career counselor is not a requirement.) Using this factor as a touchstone is even more egregious given the fact that the career counselors do not even maintain records of the officers counseled.

Plaintiff submitted his initial request for a SSB on September 16, 2003. After seven months, one month beyond the statutory limit, Defendants responded on April 16, 2004. Instead of appealing that decision to this Court, which might have remanded for the lack of any

¶ 4.a.)

substantive criteria upon which it could base a review, Plaintiff worked for an additional seven

months to ascertain the rationale for the decision.  After finally determining that the denial was

based on assumed lack of career counselor contact, Plaintiff asked for reconsideration on

February 7, 2005, and submitted evidence that he did, in fact, see a career counselor.  The scope

of Defendants' reconsideration should be whether the evidence submitted by Plaintiff, to include

his sworn statement, desk calendar, and the details of the counseling, are sufficient to show that

he did speak with a career counselor prior to the convening of the board. Given the limited scope

of review, Defendants should have been able to meet the statutorily imposed deadline for making

a decision on this point.[11]

    Perhaps the most disturbing evidence of Defendants' arbitrary and capricious processing

of Plaintiff's case is MMPR's attempt to subvert Plaintiff's rights under 5 U.S.C. § 552a (Privacy

Act).  Fortunately for Plaintiff, am employee from MMPR informed Plaintiff that the SJA

memorandum was contained within his SSB file.  (*See* Pl. Ex.Q, 144-149.)  However, when

Defendants' responded to Plaintiff's PA request, MMPR had apparently refiled the SJA

memorandum in a "general and administrative file" in an attempt to avoid releasing it to Plaintiff.

(*See* Pl. Ex. S, p. 153, final paragraph.)  It was only after Plaintiff requested reconsideration

from the release authority, with supporting e-mails from MMPR employees indicating that the

---

[11] Although Plaintiff continues to dispute whether career counselor contact is a valid criterion for
determining reasonable diligence, there can be no reasonable doubt that Plaintiff did see a career
counselor before the Convening of the FY 2004 lieutenant colonel selection board.  As such,
Defendants cannot now attempt to articulate an alterative basis for denial of Plaintiff's SSB
request for the purposes of this litigation.  (*See Southern Pacific Transp. Co. v. I.C.C.,* 69 F.3d
583, 588 (D.C. Cir. 1995) (holding that agency is barred from advancing in reviewing court even
somewhat differing reasoning from that it expressed at time that it took agency action).)

SJA memo was filed within Plaintiff's SSB file, that Defendants admitted that the SJA memorandum had indeed been filed in Plaintiff's SSB records and complied with the law by releasing the memo to Plaintiff. (Pl. Ex. T, p. 165.) (*See also* footnote 7.)

    2. <u>Count II (Colonel Scovel Report)</u>. Defendants' have not yet issued a final decision on Plaintiff's SSB request based on Colonel Scovel's report, which is due on September 24, 2005. Certainly, MMPR's recommendation is not binding on the BCNR. However, analysis of MMPR's opinion reveals its conclusory nature and lack of any substantive analysis. In Plaintiff's SSB request, he very specifically detailed what actions he had taken before the convening of the FY 2004, FY 2005, and FY 2006 lieutenant colonel selection boards using the SJA's stated criteria. This analysis proves that Plaintiff was reasonably diligent in ensuring the accuracy of his record. Plaintiff submitted a 15-page, single-spaced brief detailing his actions. (Pl. Ex. AA, pp. 234-248). Included with the brief were approximately 80 pages of supporting documentary evidence. (Id. at pp. 249-335.) MMPR's interim two-page opinion does not even attempt to address the analysis advanced by Plaintiff. This fact demonstrates the arbitrary and capricious manner in which MMPR views this process. This fact is further highlighted by the lack of logic of the position.

    Colonel Scovel's letter was dated September 2, 2004 and the board convened on September 4, 2004. It is absurd to believe that Plaintiff could avail himself of the administrative process to correct his record in two-days. The position is even more arbitrary given that PERB's denial of Plaintiff's request and the fact that Defendants will not meet their statutory 6-month deadline in this case. The only thing Plaintiff could do, and did, was to submit a personal letter

-30-

to the promotion board and include Colonel Scovel's letter. Under the SJA's factors, submitting a letter to the board and identifying known errors are indicia of reasonable diligence. (*See* Pl. Ex. V, p. 171, ¶ 4.d; factor (5).)

MMPR's opinion is also inconsistent with the PERB's decision. Defendants cannot logically argue that the PERB found no basis to change Colonel Scovel's report and then find Plaintiff failed to exercise reasonable diligence in ensuring the accuracy of his record prior to the convening date of the FY 2005 lieutenant colonel selection board.

MMPR's absurd position is further undermined by the fact that Plaintiff spoke with two career counselors and they never identified any inconsistency between Colonel Scovel's comments and his comparative assessment markings.[12] It was Colonel Crowl, the Marine Corps Base, Quantico inspector at the time, who identified the possible inconsistency based on his own grading philosophy. Defendants cannot take the position that, after consulting with two career counselors, that Plaintiff is was required to continue to seek the advice of other officers concerning his record. That fact that Plaintiff went beyond what was required as established by the SJA's factors, further demonstrates that Plaintiff acted with reasonable diligence.

In both Counts I and II, Defendants place the burden on Plaintiff to ascertain his raters' failure to follow applicable regulations. Defendants place heavy reliance, as they should, on the presumed regularity of official records. (*See* Pl. Ex. E, p. 40, ¶ 5.c.) However, Plaintiff should also be entitled to rely on this presumption. It was only after Plaintiff contacted these officers,

---

[12] Plaintiff also spoke Lieutenant Colonel McLennon, another career counselor from MMOA-4, in March 2003. Again, he did not identify and perceived inconsistency between Colonel Scovel's comments and his comparative assessment markings.

admittedly after failure for selection before the 2004 lieutenant colonel selection board, seeking

letters to put their marks in context or otherwise mitigate their markings for the next promotion

board that Plaintiff discovered that Captain Davidson had improperly manipulated the rankings

and that Colonel Scovel did not heed the admonishment contained in MCO P1610.7E to not

change his rating philosophy over time.[13]  Reasonable diligence cannot require that an officer

query each of his former raters before each board to ascertain if the raters did something

improper or were inflating their reports in contravention of published order.  Such a requirement

is unworkable and flies in the face of *Kosnik* and *LaChance*.


## CONCLUSION

There are no material facts in dispute.  Plaintiff is entitled to relief and this Court must

direct the correction of Colonel Scovel's fitness report on Plaintiff and order Defendants to send

Plaintiff's corrected record to a SSB as relief for both the FY 2004 and the FY 2005 lieutenant

colonel selection boards.

---

[13] Plaintiff also contacted CMC concerning one of his reports written on Plaintiff when CMC was
a lieutenant colonel.  Plaintiff sought a letter to clarify a comment on the report to the effect that
Plaintiff was "among the top ¼ of first lieutenant in the battalion" after being told that the
comment could be viewed negatively by a promotion board.  (Pl. Ex FF).  Plaintiff did not
believe this was the intent.  However, CMC, through his military attaché, denied Plaintiff's
request as CMC thought, given his current position, it would unduly influence a board.

## ORAL ARGUMENT

Plaintiff requests oral argument on the motion.

## PROPOSED ORDER

Plaintiff includes a proposed order with this motion, with certificate of service.

Respectfully submitted,

Jackson L. McGrady
Plaintiff
820 Bright Street
Fredericksburg, Virginia
540.371.3792

Dated: September 7, 2005

-33-