# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JACKSON L. MCGRADY,     )
          )
    Plaintiff      )
          )
    v.        )    Case Number:  05CV01651 (GK)
          )
DEPARTMENT OF THE NAVY,   )
GORDON R. ENGLAND, Secretary   )
of the Navy,        )
          )
    Defendants    )

## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment pursuant to Fed.R.Civ.P. 56, because there is no

genuine issue as to any material fact and Plaintiff is entitled to judgment as a matter of law.  In

support of this motion, Plaintiff relies upon his Complaint and Answer thereto; his Memorandum

of Points and Authorities in Support of Plaintiff's Cross-Motion for Summary Judgment; his

Memorandum of Points and Authorities in Opposition to Defendants' Cross-Motion for

Summary Judgment, if any, the Administrative Record filed by Defendants; and all exhibits filed

by the parties in this case.  Plaintiff has also filed with his Cross-Motion for Summary Judgment

a Statement of Material Facts to Which There is No Genuine Issue.  In his opposition, if any,

Plaintiff has filed a Statement of Material Facts to Which There Exists a Genuine Issue. A

proposed Order consistent with this motion is attached hereto.  Plaintiff requests oral argument

on the motion.

Respectfully submitted,

J. L. MCGRADY

**RECEIVED**

JAN 1 0 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

-1-

Plaintiff
820 Bright Street
Fredericksburg, Virginia 22401
540.371.3792

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JACKSON L. MCGRADY,            )
                               )
            Plaintiff          )
                               )
        v.                     )        Case Number: 05CV01651 (GK)
                               )
DEPARTMENT OF THE NAVY,        )
GORDON R. ENGLAND, Secretary   )
of the Navy,                   )
                               )
            Defendants         )

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff seeks judicial review of Defendants' denials of Plaintiff's two requests for a

Special Selection Board (SSB). The procedural posture of the two requests is slightly different

because of the differences in the underlying administrative processing of the requests.

As described in Count I [Captain (Capt) Davidson Fitness Report] of the Complaint,

Plaintiff requested, through the Commandant of the Marine Corps (CMC), that the Secretary of

the Navy (SECNAV) convene a SSB to consider him for promotion to the grade of lieutenant

colonel as relief from the Fiscal Year (FY) 2004 regular selection board's consideration of a

"materially unfair" fitness report written by Capt Davidson in 1990. SECNAV, through the

Board for Correction of Naval Records (BCNR), has already determined that the Capt Davidson

report was inaccurate and unjust and directed correction of the report. However, on April 16,

2004, SECNAV issued a decision denying Plaintiff's SSB request alleging that Plaintiff failed to

exercise "reasonable diligence" to ensure the accuracy of this military record before the

convening of the FY 2004 board. SECNAV has not responded to Plaintiff's request for

-1-

reconsideration, which was received by Defendants on February 9, 2005, and demonstrated that Plaintiff was "reasonable diligent" in ensuring the accuracy of his military records. The issue before the Court under Count I is whether SECNAV's "reasonable diligence" decision violates 10 U.S.C. § 628(g). 10 U.S.C. §628; *see* Plaintiff's Exhibit (Pl. Ex.) 1, pp 001-004. [1]

As described in Count II [Colonel (Col) Scovel Fitness Report] of the Complaint, Plaintiff requested that Defendants amend a fitness report written by Col Scovel in 1999 based on Col Scovel's admission that he has changed his grading philosophy between 1999 and the convening of the FY 2005 lieutenant colonel selection board. Changing grading philosophy is specifically prohibited by Marine Corps Order (MCO) P1610.7E. Pl. Ex. 8, MCO P1610.7E cautions that a rater who changes his/her rating philosophy "unfairly discriminates" against other reports. Pl. Ex. 8, p. 045, ¶ 8012.2(e). Plaintiff also requested that SECNAV convene a SSB to consider him for promotion to the grade of lieutenant colonel as relief from the Fiscal Year (FY) 2005 regular selection board's consideration of Col Scovel's unfair and discriminatory report.

Despite the fact that Col Scovel's report is unfair and discriminatory as defined by Defendants' own regulations, SECNAV, through the BCNR[2], denied Plaintiff's request to amend

---

[1] Plaintiff includes as Plaintiff Exhibits (Pl. Ex.) the applicable statutory and regulatory provisions as well as other relevant documents. For ease of reference Plaintiff has consecutively numbered by hand the exhibits beginning with 001 of the first page of Pl. Ex. 1 and continuing, consecutively, through the last page of Pl. Ex 13, which is marked as 080. An index is placed on top of the exhibits. Citations to the Defendants' Administrative Record (AR) and Plaintiff Exhibits will be to a particular page and paragraph, if available.

[2] BCNR is a board of civilians created by SECNAV under the authority of 10 U.S.C. § 1552. 10 U.S.C. § 1552; *see* Pl. Ex. 2, pp. 005-006. 32 C.F.R. Part 723 govern BCNR's proceedings. BCNR has authority to take final corrective action on behalf of SECNAV concerning applications to amend a military record unless the decision is reserved to SECNAV. 32 C.F.R. §723.6(e)(2); *see* Pl. Ex. 3, pp. 007-008.

Col Scovel's report and, thereafter, denied Plaintiff's SSB request on that basis. The issues before the Court under Count II are: (1) whether SECNAV's decision denying amendment to Col Scovel's report violates an Administrative Procedure Act (APA) standard of review; (2) if SECNAV erred in not amending the record, would the resulting amendment be material; (3) if the amendment was material, was Plaintiff "reasonably diligent" in ensuring the accuracy of his military record before the convening of the FY 2005 regular lieutenant colonel selection board. If a material change is made to the Col Scovel report and Plaintiff was "reasonably diligent," Defendants are required to send Plaintiff's record to a SSB. Pl. Ex. 6, pp. 020-023 (Department of Defense Instruction 1320.11).

To place both claims in context, this section of the brief explains the statutory and regulatory framework applicable to the processing of Plaintiff's request for correction of his military record and his SSB requests. Four areas will be addressed: a) statutory and regulatory framework for convening a SSB based on "material unfairness" in the regular selection board process; b) regular selection board's consideration of an inaccurate or unjust fitness report constitutes "material unfairness"; c) procedures for obtaining correction of an inaccurate or unjust fitness report; and d) this Court's authority to review Defendants' decisions, to direct changes to a fitness report, and to order Plaintiff's case to be considered by a SSB.

### A. STATUTORY AND REGULATORY FRAMEWORK FOR CONVENING A SPECIAL SELECTION BOARD BASED ON "MATERIAL UNFAIRNESS" IN THE REGULAR SELECTION BOARD PROCESS.

A Secretary of a military department (Secretary of the Army, Secretary of the Navy, and

the Secretary of the Air Force) is authorized to convene regular selection boards to select officers for promotion to the next higher grade. 10 U.S.C. § 611; *see* Pl. Ex. 4, p. 009. A Secretary may also convene special selection boards (SSBs) in circumstances where an officer was considered by a regular selection board but there was "material unfairness" in the manner in which the board considered the particular officer. 10 U.S.C. § 628. In determining "material unfairness" the Secretary concerned must find that:

> "the action of the promotion board that considered the person was contrary to law or involved material error of fact or material administrative error, or the board did not have before it for its consideration material information." 10 U.S.C. § 628 b(1)(A) and (B).

The Secretary of the Navy (SECNAV) implemented 10 U.S.C. § 628 through publication of SECNAV Instruction (SECNAVINST) 1401.1B. *See* Pl. Ex. 5, pp. 010-019. SECNAVINST 1401.1B amplifies the meaning of "material unfairness" as:

> "Any error of fact or administrative/procedural error that is more likely than not to have deprived the officer concerned of a fair and impartial consideration by the board is a material error." Pl. Ex. 5, p. 013, ¶ 8(c)(3).

> "Any information that, when properly recorded in, or removed from, an officer's record would have been essential to a substantially accurate, complete and fair portrayal of the officer's career is material information." Pl. Ex. 5, p. 014, ¶ 8(c)(4).

A Secretary is required to convene SSBs under regulations prescribed by the Secretary of Defense. 10 U.S.C. § 628(f)(1). Department of Defense (DoD) Instruction 1320.11 implements the statutory mandates of 10 U.S.C. § 628.[3] *See* Pl. Ex. 6, pp. 020-023. This instruction requires

---

[3] DoD Instruction 1320.11 was issued on September 27, 2005. It replaced DoD Directive 1320.11, which was published on May 6, 1996 and is included as Pl. Ex. 13, pp. 76-80.

a Secretary to convene a SSB in situations where "the decision of the original board involved factual or administrative error, of if the board lacked some material information for consideration." *Id.* at p. 21, ¶ 4.a.[4] This view is consistent with federal case law and reflects the changes in the processing of SSB requests resulting from passage of 10 U.S.C. § 628.

Before enactment of 10 U.S.C. § 628, after an officer showed that his record contained a defective performance evaluation (fitness report), the ultimate burden was on the government to show that the officer would not have been promoted even if his record contained no error. *Richey v. United States*, 322 F.3d 1317, 1323 (Fed. Cir. 2003). However, since the enactment of 10 U.S.C. § 628, a Secretary is not to make such a harmless error determination. *Id.* at 1324 (citing to *Porter v. United States*, 163 F.3d 1304, 1323 (Fed. Cir. 1998), *cert. denied*, 528 U.S. 809, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999)). Instead, the case should be referred to a SSB, which will decide whether to promote the officer based on his corrected military record, and, therefore, the harmless error rule has no application. *Id.*

There is one exception to this rule. The Secretary of Defense will not convene a SSB to "consider any person who may, by maintaining reasonably careful records, have discovered and taken steps to correct the error or omission on which the original board based its decision against promotion." Pl. Ex. 6, p. 21, ¶ 4.2. SECNAVINST 1401.1B reiterates this policy but uses the term "reasonable diligence."

> "Correction of an error in an officer's record, after the officer incurs a failure of selection by the promotion selection board that

---

[4] DoD Instruction 1320.11, ¶ 4.1 specifically references 10 U.S.C. § 628(a) and requires the Secretary to convene an SSB under the circumstances described in that code section. The paragraph does not specifically reference 10 U.S.C. § 628(b). However, the language of ¶ 4.1. echoes the language contained in 10 U.S.C. § 628(b).

was affected by the error, will not necessarily be the basis for the convening of a board." Pl. Ex. 5, pp. 011-012, ¶ 6a.

"A special selection board will not be convened to consider any officer who, through the exercise of reasonable diligence, might have discovered and corrected the error or omission in the official record prior to the convening the promotion selection board that considered, but did not select the officer." Pl. Ex. 5, p. 012, ¶ 6b.

There are no other exceptions or situations in which an officer's SSB request, based on "material unfairness," would be denied.

The Commandant of the Marine Corps (CMC) promulgated the Marine Corps Promotion Manual, which is designated as Marine Corps Order (MCO) P1400.31B. This order defines "reasonable diligence" "as fair, proper, and due degree of care and activity, measured with reference to the particular circumstance; such diligence, care and attention as might be expected from a man/woman of ordinary prudence and activity." Excerpts are attached as Pl. Ex. 7, pp. 024-032.

A Marine Corps officer can avail himself of two, nonexclusive administrative processes in obtaining a final decision on a SSB request. He can file a request through the officer's military chain of command, in which case the CMC will forward his recommendation to SECNAV for a final agency decision. Pl. Ex. 5, p.018, ¶ 17.a. This is the situation presented in Count I of Plaintiff's Complaint. The officer may also submit a SSB request to the BCNR. If BCNR concludes that a SSB is warranted, BCNR can make that recommendation to SECNAV, who will issue a final decision. *Id.* at ¶ 17.b. This is the situation presented in Count II of Plaintiff's Complaint. Regarding Count II, BCNR determined that there was no basis to change Col Scovel's report, and denied Plaintiff's SSB request on that basis without making any

-6-

recommendation to SECNAV.

### B. REGULAR SELECTION BOARD'S CONSIDERATION OF AN INACCURATE OR UNJUST FITNESS REPORT CONSTITUTES "MATERIAL UNFAIRNESS" AND REQUIRES REFERRAL TO A SSB.

Material changes to an inaccurate or unjust fitness report subsequent to consideration by a regular promotion board necessarily means that particular officer was considered by the board in a "materially unfair" manner. Federal courts recognized that substantive changes warranting referral to a SSB include correction of rankings or alterations to some type of comparative assessment, and changing of comments on an evaluation. *See Chisolm v. U.S.,* 65 Fed. Cl. 497 (2005) (directing correction of an Officer Performance Report and referral to a SSB); *Roth v. U.S.,* 378 F.3d 1371 (Fed. Cir. 2004) (ordering upgrading of endorsements on three evaluations, awarding a decoration, directing insertion of administrative comments to cover a date gap in the officer's record, and directing a SSB for the 1993 and 1994 LtCol promotion boards).

Service corrections boards, established under the provisions of 10 U.S.C. § 1552, also have a history of recognizing that substantive changes to an officer's evaluation warrant referral to a SSB. *See Roth* (corrections board found that changing of a mark on officer's evaluation to "Well Above Standard" and "Behavior and Bearing Exemplary" warranted referral to a SSB for the 1987 and 1988 major promotion boards); *Richey v. U.S.* 322 F.3d 1317, 1320-21 (Fed. Cir. 2003) (corrections board finding that an evaluation was substantially inaccurate because of procedural error on the part of the senior rater in the comparative assessment with officers of the same grade and directing change to the "top block" with a subsequent referral to a SSB); *Hasselrig v. U.S.,* 53 Fed. Cl. 111 (2002) (corrections board directed addition of a closing

-7-

evaluation, higher performance ratings on two other evaluations, completion of a degree, and two "Definitely Promote" recommendations with subsequent referral to a SSB). Based on these precedents, a bright line rule emerges that changes in an officer's comparative assessment rating or rankings necessitates referral of the officer's case to a SSB.

## C.  REGULATORY FRAMEWORK FOR OBTAINING CORRECTION OF AN INACCURATE OR UNJUST FITNESS REPORT

Defendants have implemented a comprehensive personnel performance evaluation system, which, for Marine Corps personnel, is governed by Marine Corps Order (MCO) P1610.7E. This order includes rules on writing an officer's performance evaluations. Excerpts are attached as Pl. Ex. 8, pp. 033-052. MCO P1610.7E makes clear that the fitness report is a "vital portion of a Marine's Official Military Personnel File (OMPF)." Pl. Ex. 8, p.36, ¶ 1001.1.a. MCO P1610.7E summarizes the importance of the fitness report as follows:

> "The completed fitness report is the most important information component in manpower management. It is the primary means of evaluating a Marine's performance. The fitness report is the Commandant's primary tool available for the selection of personnel for promotion, retention, augmentation, resident schooling, command, and duty assignments. Therefore the **completion of this report is one of an officer's most critical responsibilities. Inherent in this duty is the commitment of each reporting senior and each reviewing officer to ensure the integrity of the system by close attention to accurate marking and timely reporting.** Every officer serves a role in the scrupulous maintenance of this evaluation system, ultimately important to both the individual and the Marine Corps." Pl. Ex. 8, p. 37-38, ¶ 1004. (Emphasis added.)

MCO P1610.7E provides detailed instruction on completing the report. It also provides an appeal mechanism for reports that an officer believes to be inaccurate. Pl. Ex. 8, p. 43, ¶

5008. Fitness report appeals are governed by MCO 1610.11C. Pl. Ex. 9, pp. 053-063; *see* Pl. Ex. 8. p. 43, ¶ 5008.2. MCO 1610.11C makes clear that a "fitness report accepted . . . for inclusion in the official record of a Marine is presumed to be administratively correct, procedurally complete, and valid according to performance evaluation policy [in existence at the time the report is written]." Pl. Ex. 9, p. 54, ¶ 5.a. This view is consistent with federal case law. *Kosnik v. Secretary of the Air Force*, 31 F. Supp. 2d 151, 158 (D.C. Cir. 1998) (finding a strong presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith); *LaChance v. White*, 174 F.3d 1378, 1381 (Fed.Cir. 1999) (government officials are presumed to act in good faith and this presumption of regularity is the supposition that public officers perform their duties correctly, fairly, in good faith, and in accordance with law and governing regulations, and is valid and binding unless "well-nigh irrefragable proof rebuts or overcomes it").

To contest or appeal a particular report, a Marine must file an application with BCNR through the CMC. Pl. Ex. 8, p. 43, ¶ 5008.2. CMC exercises this authority through the Marine Corps Performance Evaluation Review Board (PERB). PERB operations are governed by MCO 1610.11C. Pl. Ex. 9, pp. 053-063. The PERB acts as the initial action agency for Marine Corps fitness report appeals. Pl. Ex. 9, p. 053, ¶ 4.a.

The PERB relies on the presumption of regularity to support official actions of public officers. Pl. Ex. 9, p. 054, ¶ 5.a. MCO 1610.11C emphasizes the presumption that a "fitness report accepted by the CMC [Manpower Support Branch (MMSB)] for inclusion in the official record of a Marine is presumed to be administratively correct, procedurally complete, and valid according to [MCO P1610.7E]." *Id.* MCO 1610.11C notes, however, that a Marine "may appeal

-9-

any report that they believe is not per established performance evaluation policy, inaccurate or unjust." *Id.* at ¶ 5.b. The burden, based on a preponderance of evidence standard, is on the applicant to "produce evidence of probable material error, substantive inaccuracy, or injustice." *Id.* at p. 057, ¶ 10.a.

In challenging a report, statements from rating officials are important. However, MCO 1610.11C makes clear that statements from "reporting officials who, in retrospect, attempt to refute specific deficiencies cited by them in the contested report(s) are not usually approved. Specific evidence of error in judgment, misinterpretation of facts and circumstances, and so on, must be provided. Statements that merely allude to changed perspectives following some unfavorable event (non selection for promotion, regular appointment, professional schooling, etc.) that may be attributable to the report(s) are of little value." Pl. Ex. 9, p. 059, ¶ 11.b. If the PERB denies an application, it is forwarded to BCNR for final agency action. *Id.* at p. 54, ¶ 5.c.

### D. THIS COURT HAS THE AUTHORITY TO REVIEW DEFENDANTS' DECISION AND DIRECT CHANGES TO A FITNESS REPORT AND ORDER PLAINTIFF'S CASE TO BE CONSIDERED BY A SSB.

This Court has the authority to review a Secretary's denial or deemed denial of a SSB request.[5] 10 U.S.C. § 628(g). The power to review a Secretary's denial of a SSB request would, necessarily, include reviewing the decision to deny alteration of the record that serves as the basis of that request. Alternatively, this Court has the power to review BCNR's refusal to correct the fitness report authored by Col Scovel under 5 U.S.C. § 701 *et. seq.* (Administrative Procedure

---

[5] A deemed denial occurs if the service Secretary fails to issue a final decision within six months after receiving a completed application from an officer requesting a SSB. 10 U.S.C. § 628(g).

-10-

Act). *See Kreis v. Secretary of Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005) (holding that the

decision of a military board for correction of military records denying a request to correct a

military record is subject to review under administrative law principles). Regardless of the

applicable statutory provision, the basis for review is an APA standard of review.

The scope of the Court's review is to determine whether Defendants' decisions to deny

Plaintiff's requests were arbitrary, capricious, an abuse of discretion, contrary to law or

regulations, or unsupported by substantial evidence. 5 U.S.C. § 706(2); *Verplanch v. England*,

257 F. Supp 2d 182, 187 (D.D.C. 2003); *Chappell v. Wallace*, 462 U.S. 296, 303, 76 L. Ed. 2d

586, 103 S. Ct. 2362 (1983). Plaintiff has the burden of satisfying this standard by providing

"cogent and clearly convincing evidence" and must "overcome the presumption that military

administrator discharge their duties correctly, lawfully, and in good faith." *Swann v. Secretary of

the Navy*, 811 F. Supp. 1336, 1339 (N.D.Ind. 1992). This Court, however, is not "empowered to

rubber stamp the Board's decision simply because the supporting evidence may be substantial

when considered by itself and in isolation from the evidence that fairly detracts from the Board's

conclusion." *Id.* at 1340. Notwithstanding the deference that must be afforded to the military, the

Court conducting the review must have sufficient information to determine the decision was

proper. Defendants must provide sufficient information because: (1) it enables the court to give

proper review to the administrative determination; (2) it helps to keep the administrative agency

within proper authority and discretion, as well as helping to avoid and prevent arbitrary,

discriminatory, and irrational action by the agency; and finally, (3) it informs the aggrieved

person of the administrative boards' rationale so he can plan his course of action, including

request for judicial review. Therefore, although the agency need not provide an "extensive

-11-

exegis" of the rationale underlying the decisions, it must sufficiently discuss it's reasoning to allow a court to review its decisions. *Smith v. Dalton*, 927 F. Supp. 1, 5 (D.D.C. 1996).

Defendants' decision must be based on substantial evidence. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Smith* at 5; *Swann* at 1339, citing *American Diversified Goods, Inc. v. NLRB*, 640 F.2d 893,894 (7th Cir. 1981). To establish that Defendants' decisions were not based on "substantial evidence," Plaintiff must demonstrate that the decision is not justified by the evidence presented or is not justified by the decision maker's judgment on matters within its special competence. *Smith v. Dalton*, 927 F. Supp. 1, 5 (D.D.C. 1996). A court cannot give as much deference to an agency determination when an agency does not specify the factual or legal grounds for its decision. *Smith* at 5; *Swarn* at 1342. In reviewing a decision, the Court must examine whether the agency considered all of the evidence before it, and if so, if it stated why the evidence contrary to the final decision was "disregarded or given less weight." *Smith* at 5.

Additionally, federal courts have considered 10 U.S.C. § 1552 and have provided guidance to the service secretaries and the various service corrections boards. This code section creating the boards for correction of military records is remedial legislation giving the boards authority to correct errors or injustices in the records of service personnel, and this should be construed liberally rather than narrowly or technically. *Oleson v. United States*, 172 Ct. Cl. 9 (1965). A correction board has jurisdiction to consider whether a former serviceman's military record should be corrected if it considers such corrections necessary to correct an error or remove an injustice. The Board has a **non-discretionary, judicially enforceable duty** to exercise that power and to correct military records when it determines that an injustice or error has occurred.

*Baxter v. Clayton*, 652 F. 2d 181, 185 (D.C.Cir. 1981).  Although *Baxter* involved a

constitutional issue, other Courts have confirmed this duty to correct an injustice in non-

constitutional cases.  *Smith v. Dalton*, 927 F.Supp. 1, 6 (D.D.C. 1996); *see Guerrero v. Marsh*,

819 F.2 238 (9th Cir 1987); *Dodson v. Department of the Army*, 988 F.2d 1199 (Fed. Cir. 1993);

*Sanders v. United States*, 594 F.2d 804 (1979)(*en banc*); *Yee v. United States*, 512 F.2d 1383

(1975); and *Grieg v. United States,* 640 F.2d 1261 (1981).

## ISSUES

1.  Based on the falsity of Capt Davidson's Report, was there "material unfairness" in the

processes of the FY 2004 regular LtCol selection board?

2.  If there was "material unfairness" based on Capt Davidson's report, does SECNAV's denial

of Plaintiff's SSB request, based on an alleged failure to exercise "reasonable diligence", violate

the provisions of 10 U.S.C. § 628 (g)(1)(A) as being:  i) arbitrary or capricious; ii) not based on

substantial evidence; iii) a result of material error of fact or material administrative error; or iv)

otherwise contrary to law?

3.  Did Defendants' refusal to correct Col Scovel's report violate an APA standard of review?

4.  Based on the inaccuracy of Col Scovel's report was there "material unfairness", within the

meaning of 10 U.S.C. § 628 (b) and Defendants' implementing instructions, in the processes of

the FY 2005 regular LtCol selection board?

5.  If there was "material unfairness" because of Col Scovel's report, does SECNAV have a

reason to deny Plaintiff's SSB request based on an alleged failure to exercise "reasonable

diligence" that would not violate the provisions of 10 U.S.C. § 628 (g)(1)(A) as being:  i)

arbitrary or capricious; ii) not based on substantial evidence; iii) a result of material error of fact or material administrative error; or iv) otherwise contrary to law?

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment may be granted based upon the pleadings, supplemental affidavits, and facts developed during the administrative proceedings. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990). A moving party is entitled to judgment as a matter of law if the record in the case confirms the non-moving party cannot establish "the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322-23. Summary judgment procedures are important in winnowing out meritless claims and preventing the "unwarranted consumption of public and private resources." *Id.* at 327. *See also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); and *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

## ARGUMENT

### I. BASED ON FALSITY OF CAPTAIN DAVIDSON'S REPORT, THERE WAS "MATERIAL UNFAIRNESS" IN THE PROCESSES OF THE FY 2004 REGULAR LIEUTENANT COLONEL SELECTION BOARD.

Throughout the administrative review process, Defendants have not seriously disputed materiality. In SECNAV's April 16, 2004, denial decision, he specifically cited to

-14-

SECNAVINST 1401.1B's requirement for "material error" as a pre-condition to ordering a SSB and that Plaintiff's request is based on "material error of fact." AR p. 31, ¶ 2.  This demonstrates that SECNAV understands the materiality requirement.  SECNAV never argues that the change was not "material" and admits that the presence of the inaccurate report "may have been a competitive concern." AR p. 32, ¶ 4a.  In the concluding section of the decision, the only basis for denial is Plaintiff's alleged failure "to exercise reasonable diligence to ensure his record was substantially accurate and complete before the convening of the board." AR p. 32, ¶ 5.  This fact is bolstered by CMC's July 25, 2005 recommendation on Plaintiff's request for reconsideration. CMC notes that SECNAV's April 16, 2004 denial was "based on the fact that Plaintiff did not exercise reasonable diligence." AR p. 183, ¶ 3.b and c.  CMC again recommends denial based on "reasonable diligence." AR p. 184, ¶ 5.  At this point in the proceedings SECNAV cannot now raise the issue of materiality.[6]  5 U.S.C. § 706(2)(A); *Kreis v Department of the Air Force*, 406 F.3d 684. (D.C. Cir. 2005) (holding that an agency's discretionary order will be upheld, if at all, on the same basis articulated in the order by the agency itself); *Association of Civilian Technicians v. Federal Labor Relations Authority*, 269 F.3d 1112, 1117 (D.D.Cir 2001) (holding that if an agency's decision is to be upheld, it must be upheld on the rationale set forth by the agency; post-hoc rationalizations developed for litigation are insufficient).

## II.  SECRETARY'S DECISION TO DENY PLAINTIFF'S SSB REQUEST BASED ON PLAINTIFF'S ALLEGED FAILURE TO EXERCISE REASONABLE DILIGENCE VIOLATES 10 U.S.C. § 628 (g)(1)(A).

---

[6] Plaintiff extensively examined the issue of "materiality" in his submissions to BCNR by developing independent evidence that the FY 2004 board placed dispositive weight on first lieutenant rankings by examining and comparing the records of other officers who did and did not get selected fir promotion.  *See* AR pp. 137-139, ¶¶ 12-19; AR pp. 2-4, ¶¶ 5-11.

When requesting a SSB, MCO P1400.31B requires the officer to provide a detailed account of the actions the officer took to ensure the accuracy of his records. Pl. Ex. 7, p. 029, ¶ 5002.2(c). In compliance with this order Plaintiff, in his original September 16, 2003 SSB request, identified that prior to the convening of the FY 2004 LtCol board, he took steps to ensure the completeness and accuracy of his record. He requested a copy of his Official Military Personnel File (OMPF) and a copy of his Master Brief Sheet (MBS). He reviewed his OMPF to ensure that all of his fitness reports were contained within the OMPF. He reviewed his MBS to ensure that it accurately reflected that Plaintiff had completed suggested professional military education classes. He ensured that his current picture was resident within his OMPF. He wrote a personal statement to the President of the FY 2004 LtCol selection board and checked the officer promotions website to ensure that the material had been properly received by the board. AR pp. 112 - 113, ¶ 12. These actions meet the requirements identified in Marine Administrative Message (MARADMIN) 371/02, which announced the convening of the FY 2004 lieutenant colonel selection board. AR pp. 155-158. The MARADMIN identifies an individual Marine's responsibilities in ensuring the accuracy of his record. AR p. 157, ¶ 4.a.

Despite Plaintiff's description of the actions he had taken to ensure the accuracy of his record, SECNAV denied Plaintiff's SSB request on April 16, 2004, for lack of "reasonable diligence" and was premised on Defendants' view that "[Plaintiff] reasonably should have known of the nature of the ranking and should have taken appropriate steps to highlight or correct the fitness report prior to the FY 2004 USMC LtCol Board convening." AR p. 32, ¶ 4.a. This conclusory statement is wholly without support. The decision does not identify or apply any

-16-

objective factors that would allow SECNAV to support such a decision or provide a basis for meaningful judicial review. *Homer v. Secretary of the Air Force*, 226 F.Supp.2d 222 (D.D.C. 2002) (holding, in a nonselection for promotion case, that the Department of the Air Force's rationale that "the selection process is highly competitive and there is no guarantee that the applicant would have been promoted under any circumstances" provided no actual reason for the agency's decision and only highlighted "the Air Force's failure to identify the substantive criteria that were used in that process and to explain the reason that Plaintiff did not satisfy those criteria").

Recognizing this fact and hoping to ascertain if Defendants had conducted any objective analysis, Plaintiff filed a Privacy Act (PA) request for documents under 5 U.S.C. § 552a. AR p. 76. What followed was a seven-month series of requests, phone calls, a personal file review, and administrative appeals. *See* AR pp. 77-104. Ultimately, Defendants provided Plaintiff with a Staff Judge Advocate (SJA) legal opinion written for CMC. AR pp. 89-92.

The SJA opinion identifies the legal standards applicable for SSB requests and identifies eight factors to be used to determine "reasonable diligence." AR p. 90, ¶ 4.d. The second of the eight factors is whether the officer reviewed his/her official record with a career counselor. Although the SJA opinion purports to analyze all the identified factors, the *only* factor considered by the SJA relates to career counselor contact. The SJA's ultimate opinion was that there is "[n]o evidence suggest[ing] that [Plaintiff] contacted a career counselor prior to the board. Applying the factors [used to determine reasonable diligence], we conclude that he did not exercise reasonable diligence." AR p. 91, ¶ 5.c. Defendants made this conclusion despite the fact that Defendants have not published any mandatory requirement that an officer see a career

-17-

counselor prior to the convening of a promotion boar. Complaint ¶ 50 and Answer thereto. Defendants have not published a mandatory requirement that an officer provide evidence of career counselor contact as a prerequisite for submitting a request for a SSB. *Id.*

Regardless, contrary to Defendants' assumption, Plaintiff *did* see a career counselor prior to the convening of the FY 2004 LtCol selection board. Defendants' now admit this fact. Complaint ¶ 8 and Answer thereto. Further, Defendants, in their decision and recommendations, do not contest that Plaintiff satisfied the requirements enunciated in MARADMIN 371/02 that identifies the individual's responsibility to ensure the accuracy of his record. Defendants do not even seriously contest Plaintiff's argument, as described in his request for reconsideration, that he was "reasonable diligent" using all of the applicable factors enunciated in the SJA memo. AR pp. 40-46, ¶¶ 16-31. However, instead of recommending that Plaintiff's request be granted, CMC's July 25, 2005 recommendation continues to maintain that Plaintiff failed to exercise "reasonable diligence" and posits alternative grounds for the recommendation.

CMC continues to assert that Plaintiff "should have reasonably known the nature of the rankings and he should have taken appropriate steps to highlight or correct the fitness report prior to the FY 04 USMC Lieutenant Colonel Board convening." AR p. 184, ¶ 4.e. CMC questions why Plaintiff did not discover the error at an earlier point in time given the frequency of Plaintiff's review of his record. AR p. 183, ¶ 4.b. CMC asks why Plaintiff did not state why Capt Davidson chose to admit the falsification after such a long time and after Plaintiff failed selection for promotion. AR p. 184, ¶ 4.c. Finally, CMC opines that there were other competitive concerns within Plaintiff's record. AR p. 184, ¶ 4.d. CMC's recommendation is simply that, a recommendation. However, assuming *arguendo* that it would have been adopted

-18-

by SECNAV, the rationale articulated cannot withstand judicial review. CMC's recommendation provides no rationale for why Plaintiff should have known of the "nature" of the report.

### A. Plaintiff had no Reasonable Basis to Question the "Nature" of the Report Until Capt Davidson Admitted he had Falsified the Report.

In Plaintiff's February 7, 2005 reconsideration request, he rebutted SECNAV's April 16, 2004 conclusion that Plaintiff "reasonably should have known the nature of the ranking and should have taken appropriate steps to highlight or correct the fitness report prior to the FY04 LtCol Board convening." *See* AR pp.44–48, ¶¶ 27-39. **In his recommendation of July 25, 2005, CMC does not address any of Plaintiff's arguments.** *See Smith v. Dalton*, 927 F. Supp. 1, 5, (D.D.C. 1996) (finding that the Court must examine whether or not the agency has considered all of the evidence before it, and if so, if it has stated why the evidence contrary to the final decision was "disregarded or given less weight").

Plaintiff noted that the logic of SECNAV's unsupported conclusion, as is CMC's current recommendation, is predicated on the supposed "nature" of the report. AR p. 44, ¶ 27. Defendants never articulate their view of the report's "nature." To the extent an inference can be drawn from the record, Defendants' view is contradictory. Plaintiff noted in his reconsideration request that paragraph 3(e) of SECNAV's April 16, 2004 decision (AR pp. 32) attempts to minimize the importance of the report by noting that it was resident within Plaintiff's military record when he was selected to captain and major.[7]  AR. p. 44, ¶ 27 (Plaintiff's February 7, 2005 Request for Reconsideration). However, the implication of paragraph 4(a) of SECNAV's April

16, 2004 decision (AR pp. 32) is that the report on its face somehow evidenced an impropriety that should have put Plaintiff on notice to immediately contest the report.[8]

Plaintiff explained that this latter conclusion is unsupportable. It is directly contradicted by: (1) the fact that the career counselor did not identify the error; (2) BCNR's observations and conclusions; (3) the reviewing officer's observations; (4) the fact that this was a transfer report; and (5) the long-standing presumption of regularity that attaches to all official records.

    1. **Career Counselor Contact.** As explained in his submission to BCNR, Plaintiff met with LtCol Poleto, a career counselor, prior to the convening of the FY 2004 LtCol selection board. AR p. 41, ¶ 19. During this counseling, LtCol Poleto "gave no indication that she believed that a reporting senior had inaccurately ranked Plaintiff with two other lieutenants. Neither did she opine that [Plaintiff's] reviewing officer failed to properly execute his reviewing officer duties by simply accepting the reporting senior's markings." AR p. 42, ¶ 21 (Plaintiff's February 7, 2005 Request for Reconsideration).

Defendants place great reliance on career counselor contact. However, Defendants admit that Plaintiff did see a career counselor. The career counselor did not identify that the rankings on the report were false and Defendants now become silent as to the role of the career counselor. Career counselor contact is either important or it is not. If it is not important, Plaintiff's initial SSB request should not have been denied on that basis. If it is important and the career counselor could not identify the "nature" of the report, it is arbitrary and capricious to say that Plaintiff should have been able to identify the report's "nature." Plaintiff should be entitled to rely on the

---

[7] CMC's July 25, 2005 recommendation contains the same verbiage. AR p. 183, ¶ 4.a.
[8] CMC's July 25, 2005 recommendation contains similar language. AR p. 184, ¶ 4.e.

career counselor's advice. In fact, one of the SJA factors for determining reasonable diligence is whether the "officer reasonably relied on any department or section of the Marine Corps to ensure the accuracy of his/her official record." AR p. 28, ¶ 4.d(6). Career counselors are assigned to the Officer Counseling and Evaluation Section of the Marine Corps Personnel Management Division. *See* AR p. 132 (signature block). This section is assigned code MMOA-4. *See* AR. p. 131. As such, Plaintiff should be entitled to rely on the LtCol Poleto's review. Again, if she could not detect the falsity of the report, Defendants' efforts to argue that Plaintiff should have cannot survive review under 10 U.S.C. § 628(g).

2. **BCNR Observations.** Included with Plaintiff's request for reconsideration was BCNR's decision that directed the change to the rankings on the Capt Davidson report. AR pp. 109-114. BCNR observed "the comments [in Section C] were entirely favorable; and the observed marks assigned were the highest possible, except the mark of "EX" (excellent)(second best) in item 13f, training personnel." AR p. 110, ¶ 3.c. The Reviewing Officer also "provided his own commendatory comments." *Id.* The reporting senior determined that Plaintiff was appropriately ranked "3 of 3" outstanding officers. The reviewing officer concurred in the ranking and said that he "[w]holeheartedly agree[d] with the RS's Evaluation." *Id.* The BCNR did not identify any reason that the report should have been contested at the time that it was written. BCNR is the naval entity charged with ensuring the accuracy of military records and, therefore, has expertise in that area. Their opinion indicates that, at the time the report in question was authored, it appeared to be valid. Presumably, this is why the BCNR found Plaintiff's petition to be timely filed. AR p. 109, ¶ 3.b. If BCNR did not determine the

-21-

false "nature" of the report, there is no basis to believe that Plaintiff would have known of the falsity of the report.

       3. **Reviewing Officer Observations.** The reviewing officer for the Capt Davidson report was (then) Major Wilk. AR p. 120. Plaintiff initially contacted (now) Col Wilk after the PERB recommended denial of Plaintiff's May 6, 2003 request to alter the rankings on Capt Davidson's fitness report. AR pp. 115-126 (Plaintiff's May 6, 2003 request). This stemmed, in part, from the PERB's observation that Major Wilk "fully supported [Capt Davidson's] evaluation and added his own strong commentary . . . [and] included absolutely no disagreement in the '3 of 3' breakout." AR p. 129-130, ¶ 2.b  Plaintiff obtained a statement from Col Wilk. AR pp. 141-142. Plaintiff included the statement with his August 12, 2003 rebuttal to BCNR. AR pp. 133-153. In its August 26, 2003 decision (AR pp. 109-114), BCNR placed significant reliance on Col Wilk's statement and quoted extensively from his letter. AR p. 112.

Plaintiff included a copy of Col Wilk's letter, as well as the BCNR's decision, in his February 7, 2005 request for reconsideration. Of particular significance was that Col Wilk previously served a tour in the Marine Corps Performance Evaluation Review Branch and had reviewed PERB petitions in the past. AR p. 141, ¶ 3. Based on this experience, he viewed Capt Davidson's admission with a "jaundiced" eye. *Id.* Because of this, Col Wilk called Capt Davidson to discuss the matter. *Id.* After this conversation Col Wilk believed that Capt Davidson had manipulated the rankings. *Id.* **Col Wilk states that he "did not suspect at the time [the report was written] that [Capt Davidson] had manipulated the rankings." AR p. 142, ¶ 4. Further, he "had no basis to question or change [Capt Davidson's] markings" and relied on Capt Davidson's assessment.** *Id.* at ¶ 5 (emphasis added).

-22-

In his request for reconsideration Plaintiff argued that if Col Wilk, as the reviewing officer, did not have any basis to question the reporting senior's markings or have any indication that the markings had been manipulated, neither would the Plaintiff. AR pp. 44-45, ¶ 29. Plaintiff noted that just like the PERB, the reviewing officer's endorsement only solidified Plaintiff's view of the command's assessment of his performance. *Id.*

Col Wilk did not have a basis to question the report at the time it was written. BCNR agreed based on its decision that Plaintiff's application was timely filed and its decision to change the report. CMC's current recommendation ignores these facts and is not based on substantial evidence.

4. **Transfer Report.**   In his request for reconsideration, Plaintiff emphasized that the report at issue was a "transfer" report. AR p. 45, ¶ 30. As highlighted by Col Wilk, Capt Davidson could have marked Plaintiff accurately without affecting the chances of the other lieutenants for augmentation. AR pp. 141-142, ¶ 3. This is because a rater was only required to write an evaluation on the transferring officer and not any of the other officers under the rater's supervision. Pl. Ex. 10, p. 65, ¶ 7. Given this fact, being ranked other than first on a transfer report sends a negative signal to a promotion board, although there is no basis to contest the report. *Id.* It is surprising that the reporting senior would not have known this and buttressed Plaintiff's belief that the reporting senior truly believed that Plaintiff was appropriately 3 of 3. AR p. 45, ¶ 30. The reviewing officer's endorsement cemented Plaintiff's view, just as it did the PERB's. *Id.*

5. **Presumption of Regularity.**   When written, the report could not be construed as adverse under the performance evaluation guidelines such that Plaintiff could have

-23-

contested the report. AR pp. 45-46, ¶ 31; Pl. Ex. 10, p. 65, ¶ 7. Plaintiff argued that being ranked "3 of 3" outstanding officers and not receiving the highest mark in each observed category provides no basis to challenge the report. AR pp. 45-46, ¶ 31. Plaintiff noted that requiring officers to contest every report in which they were not ranked the highest in every category would lead to absurd results. *Id.* Absent some evidence of wrongdoing or a conspiracy between these two officers to manipulate the report, Plaintiff had no reasonable basis upon which to challenge the report. *Id.* Plaintiff had no evidence to rebut the strong presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith. *Id.* (citing to *Kosnik v. Secretary of the Air Force*, 31 F. Supp. 2d 151, 158 (D.C. Cir 1998) and *LaChance v. White*, 174 F.3d 1378, 1381 (Fed.Cir. 1999)).

In his February 7, 2005 request for reconsideration, Plaintiff also argued that both the CMC and SECNAV were bound by their prior determinations and findings during the processing of his request to alter the rankings and they should not now make contrary conclusions merely to deny Plaintiff's SSB request. AR pp. 46-48, ¶¶ 32-39. **Again, CMC in his July 25, 2005 recommendation does not address either of these arguments.**

6. **CMC Bound by His Determination Through the PERB.** CMC, acting through the PERB, denied Plaintiff's May 6, 2003 request (AR pp. 115-126) to change the rankings on Capt Davidson report. AR pp. 129-130. In Plaintiff's application to the PERB, he included Capt Davidson's letter admitting to the falsification. AR pp. 121-122. In the face of the presented evidence, the PERB found that the report was "both administratively correct and procedurally complete as written and filed." AR p. 129, ¶ 3. The PERB determined that "the contested fitness report should remain as configured." AR p. 130, ¶ 4.

-24-

If CMC, through the PERB, found that Capt Davidson's letter provided an insufficient basis to change the report, CMC cannot now logically argue that Plaintiff failed to exercise reasonable diligence by not contesting the report at an earlier point in time, e.g. prior to Capt Davidson admitting his misconduct. If Plaintiff had sought correction at an earlier point in time, the PERB would have still denied the request as evidenced by their denial even with Capt Davidson's letter. It follows that there was no reasonable basis to challenge the report at the time it was written and is in conflict with CMC's contention that Plaintiff should have known of the "nature" of the report at the time it was written and taken steps to correct the report at an earlier point in time. Quite simply, CMC's positions are contradictory. CMC takes his current position in an effort to improperly deny Plaintiff's SSB request.

       7. **CMC and SECNAV Bound by BCNR Determination**. SECNAV's April 16, 2004 denial of Plaintiff's SSB request, as well as CMC's denial recommendation of July 25, 2005 fail to account for SECNAV's August 26, 2003 decision directing correction of the Capt Davidson record to reflect that Plaintiff was properly ranked "1 of 3." A copy of the August 26, 2003, Secretarial decision was included with Plaintiff's February 7, 2005 request for reconsideration. AR pp. 56-61.

SECNAV, acting through BCNR, is authorized to correct any military record. 10 U.S.C. § 1552(a); *see* Pl. Ex. 2. However, "[n]o correction may be made . . . unless the claimant . . . files a request for the correction within three years after he discovers the error or injustice." However, BCNR may excuse a failure to file within the three-year period if the board finds it to be "in the interest of justice." *Id.* Plaintiff's application to BCNR specifically noted that, while the report was written in 1990, Plaintiff did not discover the error or falsity until 2003. AR p.

115, ¶ 11.b. BCNR found Plaintiff's "[application - DD Form 149] was filed in a timely

manner." AR p. 56, ¶ 3.b. BCNR did not waive the limitations period in the "interest of justice."

This determination necessarily means that SECNAV found there was no reasonable basis

for contesting the report until discovery of the error until 2003.[9]  SECNAV's determination that

Plaintiff discovered the error in 2003 was made on August 26, 2003. AR p. 61. SECNAV's

decision stating that Plaintiff failed to exercise reasonable diligence and denying his request for a

SSB was made on April 16, 2004. AR p. 33. These decisions are inapposite. SECNAV cannot

determine that Plaintiff discovered the error in 2003 but then later determine that Plaintiff should

have sought to correct the error at an earlier point in time when the error was unknown to the

Plaintiff. SECNAV is bound by his August 26, 2003 determination. A contrary conclusion

violates 10 U.S.C. § 1552(a)(4), which states that a correction under 10 U.S.C. § 1552 is final

and conclusive on all officers of the United States, which would include the SECNAV and CMC.

Given SECNAV's August 26, 2003 decision Defendants cannot now argue that Plaintiff did not

exercise reasonable diligence in an effort to deny his SSB request. **CMC's July 25, 2005**

**recommendation does not address this important statutory issue.** *See Smith v. Dalton*, 927 F.

Supp. 1, 5, (D.D.C. 1996).

### B. Fraudulent Report Not Determinable by Record Review.

CMC's July 25, 2005 recommendation questions why Plaintiff did not discover the error

at an earlier point in time given the frequency of Plaintiff's review of his record. AR p. 183, ¶

4.b. CMC's recommendation does not methodically analyze the factors articulate by his SJA for

determining reasonable diligence. AR pp. 183-184, ¶ 4; *see* AR p. 28, ¶ 4.d (SJA'a reasonable

diligence factors).  However, CMC's comment is covered by factor 7, which addresses the nature of the error and whether it would have been detected by a reasonably prudent officer.  *Id.* In Plaintiff's rebuttal, he demonstrated why he exercised reasonable diligence using the SJA's factors.  AR pp. 40-48.  Plaintiff specifically noted that, "[b]ecause the error in this case involved the reporting senior's intentional falsification of a fitness report coupled with the reviewing officer's failure to exercise independent judgment concerning the rankings, it was impossible to detect the mistake until the reporting senior admitted his wrongdoing." AR p. 43, n 7.  Plaintiff then analyzed the factors addressed in paragraph A.1-A.5, *supra*, that demonstrate that there was no basis to question the report at an earlier point in time.  CMC's recommendation is not based on substantial evidence and ignores contrary evidence contained in the record.

## C.  Plaintiff Contacted Capt Davidson Seeking Clarification of Report.

CMC's July 25, 2005 recommendation questions why Plaintiff did not explain why Capt Davidson chose to admit the falsification after such a long time and after Plaintiff failed selection for promotion.  AR p. 184, ¶ 4.c.  Plaintiff questions the validity of this point as it relates to reasonable diligence, especially when SECNAV did not raise the point in his April 16, 2004 decision and in light of SECNAV's August 26, 2003 decision that Plaintiff's BCNR application was timely.  *See* ¶ II.A.7 of Argument, *supra*.  Regardless, Plaintiff stated in his application to correct the record that he discovered the error on March 31, 2003.  AR p. 115, ¶ 11.a.  Plaintiff identified that he did not discover the error until *Capt Davidson told Plaintiff* that Capt Davidson inappropriately ranked Plaintiff in an attempt to increase the chances of two other officers for augmentation.  AR p. 115, ¶¶ 10 and 11.b.  Further, Plaintiff noted that he had not spoken with

---

[9] This was after the October 9, 2002, convening date of the FY 2004 LtCol board.  AR p. 155.

Capt Davidson from the time he left the "8th Marine Regiment in approximately May 1991 until 2003." AR p. 118. It is clear on the face of the record that Plaintiff contacted Capt Davidson and was the initiating cause of Capt Davidson's letter. This is consistent with Plaintiff's identification that he contacted Col Wilk seeking a statement. AR pp. 134-135, ¶ 5.

Plaintiff contacted Capt Davidson in an attempt to put the rankings in context in an effort to ameliorate the "coded" adverse inference that could be drawn from not being ranked first on a transfer report, even though there was no basis to officially appeal the report. *See* Pl. Ex. 10, p. 065, ¶ 7 (Col Crowl Declaration). This is not unusual. Officers frequently seek to obtain and submit these types of letters to promotion boards, especially after not being selected for promotion. *Id.* at ¶ 9. During this conversation Capt Davidson, instead of merely placing his marks in context, admitted to falsifying the ranking and agreed to provide a letter to that effect.

Plaintiff notes that in July 2003 he contacted CMC for a letter of clarification concerning a report that he had written on Plaintiff when CMC was a LtCol. Pl. Ex 11, enclosure 3, p. 072. As explained in that e-mail, a career counselor noted the report could have been "problematic" and that it could be viewed "negatively." *Id.* at ¶¶ 3 and 4. Plaintiff included a proposed letter. Pl. Ex. 11, enclosure 4, p. 073.[10] General Hagee declined to provide the clarification out of a concern that, given his current position as Commandant of the Marine Corps, a promotion board would be unduly influenced. Pl. Ex. 11, p. 069, ¶ 7. Although not in the administrative record, General Hagee, who is the CMC, had direct knowledge that Plaintiff contacted him seeking a

---

[10] This type of letter is substantively different than that signed by Captain Davidson and would not have supported an actual change to the report but would have put the remarks in context and lessened the negative impact that could have been drawn from the report.

clarification. It is a reasonable inference that Plaintiff similarly contacted Capt Davidson.

Plaintiff also explained how he obtained the Capt Davidson letter to Capt Gaffney, an attorney within the Office of the SJA to CMC. Pl. Ex. 11, p. 069-069, ¶¶ 2-4. Capt Gaffney was responsible for reviewing SSB requests and on March 17, 2005, called Plaintiff with this very question. Plaintiff explained that he sought statements from several officers to include the CMC, in an effort to put a "gloss" on the markings and comments. *Id.* After explaining this, Plaintiff sent an e-mail to LtCol Carberry, Capt Gaffney's superior, identifying that Plaintiff has spoken with Capt Gaffney. Pl. Ex. 11, p. 069, ¶¶ 5 and 6; *see* Pl. Ex. 11, enclosure (1), p. 070. In his e-mail Plaintiff noted Defendants' characterization of the SSB process as "interactive." *Id.; see* AR p. 106, ¶ 2 (noting the "interactive nature of special selection boards may require this headquarters to contact you"). No further contact from Defendants' or their representatives was forthcoming. Pl. Ex. 11, p. 069, ¶ 6. Plaintiff memorialized the conversation, albeit on April 5, 2005, in a memorandum for the record. Pl. Ex. 11, p. 069, ¶ 6; *see* Pl. Ex. 11, enclosure 2, p. 071.

Based on the above and to the extent it is a valid criterion for determining "reasonable diligence," CMC cannot reasonably question how Plaintiff obtained the letter as a basis to recommended denial of Plaintiff's SSB request. The record evidence supports that Plaintiff contacted Capt Davidson seeking a letter of clarification. Obtaining letters of clarification from rating officials is a common practice. CMC knew that Plaintiff sought a letter from him, which supports the inference that Plaintiff contacted Capt Davidson. Finally, CMC's attorneys had direct knowledge of how Plaintiff obtained the letter.

### D. Defendants Acknowledge that Rankings Were a Competitive Concern.

CMC opines that there were "other" competitive concerns within Plaintiff's record. AR p.

184, ¶ 4.d. Plaintiff questions the relevance of this statement to the issue of "reasonable diligence." The only possible relevance would relate to "materiality." However, as previously identified, SECNAV's April 16, 2004, denial is based solely on "reasonable diligence" as is the conclusion contained in CMC's current recommendation. Regardless, implicit in CMC's statement is that Plaintiff's rankings were a competitive concern. This is confirmed by the advisory opinion to BCNR that the change would improve Plaintiff's record. AR p. 131, ¶ 4. This meets Defendants definition of "material unfairness." Pl. Ex. 5, p. 013, ¶ 8(c)(3). As such, it is irrelevant whether there were other competitive concerns in Plaintiff's record. CMC is attempting to use a "harmless error test," e.g. Plaintiff would not have been promoted even if his record did not contain the error stemming from Capt Davidson's report. This is the incorrect test.

Since the enactment of 10 U.S.C. § 628, a Secretary is not to make such a harmless error determination. *Richey v. United States*, 322 F.3d 1317, 1324 (C.A. Fed. Cir. 2003) (citing to *Porter v. United States*, 163 F.3d 1304, 1323 (C.A. Fed. Cir 1998), *cert. denied*, 528 U.S. 809 (1999)). Instead, under 10 U.S.C. § 628 the case should be referred to a SSB, which will decide whether to promote the officer based on his corrected military record. *Id.* This is consistent with the requirements of Department of Defense Instruction1320.11. Pl. Ex. 6, p. 21, ¶ 4.1.

As Plaintiff explained in his initial SSB request, it is Department of Defense policy that a SSB be convened "if the decision of the original board that considered the officer was contrary to law or involved factual or administrative error, or if the board lacked some material information for consideration." AR p. 2, ¶ 3; *see* Pl. Ex. 6, p. 021, ¶ 4.1. Under this Department of Defense Instruction, once materiality is established, the only valid basis for denial of a SSB request is the officer's failure to maintain "reasonably careful records." Pl. Ex. 6, p. 021, ¶ 4.2.

-30-

SECNAVINST 1401.1B is consistent with the instruction but uses the term "reasonable

diligence" in ensuring the accuracy of the records. Pl. Ex. 5, p. 012, ¶ 6.b.

## III. DEFENDANTS' REFUSAL TO CORRECT COLONEL SCOVEL'S REPORT VIOLATES AN APA STANDARD OF REVIEW

On December 9, 2004, Plaintiff submitted an application to BCNR, through the PERB, to

correct the markings on a fitness report authored by Col Scovel. AR pp. 580-591.[11] The report

at issue was for the evaluation period ending in March 15, 1999. AR pp. 584, ¶ 3.b. Plaintiff's

application included a letter from Col Scovel AR pp. 589-590. The basis for the request was that

Col Scovel at the time he authored the report thought Plaintiff was among the "top 5% of majors

[he] had observed in his 22 years of service" and marked Plaintiff in the 5th block of section K.3

of the fitness report believing at the time that this was consistent with a "top 5%" comment. AR

p. 589, ¶ 2; p. 588 (Copy of Fitness Report). The letter goes on to indicate that, in the

intervening years since the report was written, Col Scovel changed how he rates individual

officers. He now believes that a "top 5%" comment equates to a mark in the 7th block of section

K.3 and is how he now marks officers whose performance warrants a "top 5%" comment. AR p.

590, ¶ 4.

Col Scovel's letter clearly evidenced that he changed his grading philosophy over time in

direct contravention of MCO P 1610.7E. As such, the report is not "per established performance

---

[11] The certification for Volume II of the AR is in error. Mr. Pfeiffer is the Executive Director of the BCNR but he is not located within the Headquarters Marine Corps, Promotion Branch, Quantico, Virginia. Further, Captain Dronberger certified that Major McWaters provided the record. Again, this is incorrect. Despite these deficiencies, Plaintiff agrees that the documents contained in Volume II of the AR are a substantially accurate representation of what was before BCNR when it denied Plaintiff's request to amend Col Scovel's report and a SSB.

evaluation policy". Ergo, the report is not valid and is inaccurate and its continued presence, in its current configuration, in Plaintiff's record is unjust. However, the PERB, instead of correcting Plaintiff's report as required by MCO 1610.11C, posits two theories to improperly deny Plaintiff's request to modify the report. Plaintiff, in his rebuttal to the PERB's opinion, which was submitted to BCNR, explained why the PERB's reasoning was flawed. AR pp. 467-567. However, the BCNR did not address any of Plaintiff's contentions. Instead, the BCNR simply endorsed the PERB's decision. Given BCNR's "substantial concur[ance]" with the PERB's opinion and the lack of any additional analysis, the BCNR has adopted the PERB's decision as its own. Further compounding its error, the BCNR failed to follow its own regulations in making its decision and the decision is internally inconsistent.

## A. PERB'S DECISION IGNORES THE EVIDENCE AND IS CONTRARY TO REGULATION.

Plaintiff divined two bases for the PERB's denial. The first is that Col Scovel simply had a change in perception of Plaintiff's performance over time and does not provide a basis for relief. AR pp. 459-460, ¶ 3.a. The second basis is that the report was accurate at the time it was written and, therefore, it is immaterial if it later became inaccurate. AR p. 460, ¶. 3.b.

### 1. Col Scovel's Perception of Plaintiff's Performance Did Not Change.

In its opinion the PERB notes "nothing in the spirit or intent of [MCO P1610.7] provides reporting officials with the advantage of *hindsight*, combined with *subsequent* years of experience and observation, to change previously assigned evaluative grades or comparative assessments." Further, this paragraph uses the phrase *"reflection over a period of more than five*

-32-

*years*, and a generalized belief that *'inflation has returned.'*" AR pp. 459-460, ¶ 3.a. (Emphasis added). All the emphasized words are indicative that the PERB thought Col Scovel's' comments merely represented a change in perception or perspective over time. Per MCO 1610.11C, changing or altering the markings on a fitness report is not warranted when a rater's perception of a subordinate's performance changes over time or when the reviewing officer has "changed perspectives." Pl. Ex. 9, p. 059, ¶ 11.b.

The PERB's conclusion misapplies the evidence. Col Scovel's perception of Plaintiff's performance did not change over time. The change was Col Scovel's grading philosophy, which was in direct contravention of MCO P1610.7E. As Plaintiff stressed in his December 9, 2004 application to the PERB (AR pp. 582-595), Col Scovel thought Plaintiff was a "top 5%" performer at the time the report was written and still maintains that Plaintiff was a "top 5%" performer. AR p. 583, ¶ 6; *see* pp. 589-590 (Col Scovel letter). When the report was written, Col Scovel marked Plaintiff in the 5th block of section K.3 believing that this was consistent with a "top 5%" comment. However, because of his change in grading philosophy, Col Scovel now equates a "top 5%" comment to a mark in the 7th block of section K.3. AR p. 589-590, ¶¶ 3-4.

In his March 22, 2005 rebuttal to the BCNR from the PERB's opinion, Plaintiff again stressed that Col Scovel's view of Plaintiff's performance had not changed and that what had changed was Col Scovel's grading philosophy. AR p. 469, ¶ 5. BCNR did not address this error. Col Scovel's change in philosophy materially affects Plaintiff's comparative assessment, as discussed in paragraph IV, *infra*, and BCNR's failure to change the marking is unfair and unjust.

## 2. **Report Accurate When Written But Is Now Inaccurate Because**

## Col Scovel Failed to Adhere to the Provisions of MCO P1610.7E.

The PERB decision found that the report was accurate at the time it was written.[12]  It then

concludes that because it was accurate when it was written, there is no basis for relief.  This

conclusion is erroneous because, despite the fact that it may have been accurate when written, the

report became inaccurate over time as Col Scovel, in contravention of MCO P1610.7E, changed

his grading philosophy.   This resulted in an inaccurate and unjust portrayal of Plaintiff's

performance record before the FY 2005 LtCol selection board because the inaccurate report

negatively skewed Plaintiff's performance history given the current performance evaluation

system's reliance on comparative assessments.

The PERB notes that a fitness report is a "snapshot of the Marine reported on **at the time**

any given report is reviewed." AR p. 460, ¶ 3.b.  (Emphasis in original).  This was true under the

"old" performance evaluation system and was a "point in time" comparison. AR p. 483, ¶ 2.

Assuming that this is, in fact, what the PERB meant, the view ignores that the current

performance evaluation system is a "dynamic" system and the relative value of a report changes

over time as the reviewing officer continues to write additional reports.  Pl. Ex. 8, p. 044-045, ¶

8012.2; see AR p. 483, ¶ 2 (Col McCown Statement); Pl. Ex. 10, p. 065, ¶ 8 (Col Crowl

Declaration).  It is also possible that the PERB simply misread or misapplied the order.

Paragraph 8012.2.b and paragraph 8012.2.d of MCO P1610.7E refer to a raters profile as being a

---

[12] Plaintiff does not contest that the report was accurate **at the time** it was written. Plaintiff makes
this concession as he was one of the first, if not the first, reports written by Colonel Scovel under
the current system.  The current evaluation system was implemented in December 1998.  Pl. Ex.
8, p. 33.  The report was for the period ending March 15, 1999.  Thus, the report was accurate, by
definition, as Plaintiff was Colonel Scovel's baseline in establishing his grading philosophy.

**"snapshot of the [rater's] rating history."** (Emphasis added). Obviously, the "Marine reported on" is not the rater. The point of these paragraphs in the MCO is to emphasize to the raters that their grading philosophy must remain consistent over time. Given that the profile is a "snapshot", the grading philosophy of the rater must remain consistent for the "snapshot" to be meaningful. Quite simply, the PERB's statement that a fitness report is a "snapshot of the Marine reported on **at the time** any given report is reviewed," is wrong and misapplies MCO P1610.7E..

The PERB acknowledged Plaintiff's contention of Col Scovel's inflation. AR p. 459 ¶ 2. However, it never addresses the issue except to say that "[i]t is imperative that reporting officials understand the significance that their grading philosophy remains consistent over time." AR p. 460, ¶ 3.b. The PERB's opinion ignores that, in Plaintiff's case, Col Scovel's grading philosophy did not remain consistent over time and he clearly acknowledges this change in the letter submitted to the PERB. The PERB discounts Col Scovel's perspective/perception that "inflation has returned" by treating it as a generic opinion. AR p. 460, ¶ 3.a. This misses the point. If Col Scovel had merely stated this opinion as a general observation about how grading philosophy has changed since the inception of the new performance evaluation system, that opinion, by itself, would not be a basis for relief. However, the opinion is highly relevant to the extent it has impacted on Col Scovel's personal grading philosophy. The PERB and BCNR failed to address this point.

In stressing the importance of a consistent grading philosophy, the PERB cites to subparagraph 8012.2 of MCO P1610.7E, which discusses the rater's "Profile Dynamics."

-35-

However, the PERB's opinion does not discuss why consistency is important, even though it is contained in the very same subparagraph. Specifically,

> "[reporting officials] must accurately and fairly assess the performance of their subordinates; **[reporting officials] who fail to do so will unwittingly and _unfairly discriminate_ against either earlier reports or subsequent reports.**" Pl. Ex. 8, p.045, ¶ 8012.2(e)(Emphasis added).
>
> . . .
>
> Reporting seniors who attempt to change their rating philosophy may either positively or negatively affect the relative value of reports for MROs they previously rated. Para. 8012.2(e)(2). **When the rater changes his philosophy and grades higher, he will diminish the value of all preceding reports ever written.** _Id._ at ¶ 8012.2(e)(2)(a). (Emphasis added).

Plaintiff's is the situation described in subparagraph 8012.2(e)(2)(a). Col Scovel admits that his grading philosophy changed. He initially rated a "top 5%" comment in the 5th block of section K.3. He now rates a "top 5%" in the 7th block of section K.3. The PERB's decision is in error. Plaintiff specifically explained the PERB's flawed rational to the BCNR. The BCNR improperly rejected the evidence in adopting the PERB's decision and failed to address Plaintiff's claims of regulatory error.

The PERB notes that Col Scovel's letter of September 2, 2003, is merely an endorsement for promotion and not a request to change the mark. AR pp. 459-460, ¶ 3.a. Regardless, Plaintiff submitted to the BCNR another letter from Col Scovel requesting official change. AR p. 482. Col Scovel opines that:

> "Failure to change the report unfairly colors Major McGrady's performance because of the new evaluation system's reliance on comparative assessments. Those who may look at Major McGrady's record now or in the future would be misled as to his performance during that period and as to his potential. This is not fair to the Marine or the Marine Corps, which relies on the

-36-

performance evaluation system to make a myriad of personnel decisions. Major McGrady has a right to an accurate evaluation. The marking should be changed." *Id.* at ¶ 3.

## B. ADDITIONAL BASES ON WHICH BCNR'S DECISION VIOLATES APA STANDARD OF REVIEW

In addition to ratifying the shortcomings of the PERB's decision, BCNR's decision was problematic in other respects. BCNR treated the letters of Capt Davidson and Col Scovel in a dissimilar manner. BCNR implicitly admitted that the Col Scovel report was unfair and inaccurate but still decided not to order its correction. Finally, BCNR's decision fails to comport with its published regulations.

### 1. BCNR Treated Two Cases Differently

Although they differ as to the source, e.g. falsification verses inflation of grading philosophy, both Capt Davidson's and Col Scovel's reports are similar in that the marks unfairly color Plaintiff's performance. There is no rational basis for the disparate outcome. It is axiomatic that an agency must treat similar cases in a similar manner unless there is a legitimate reason for failing to do so. *Kreis v. Secretary of Air Force*, 406 F.3d 684, (D.C.Cir. 2005).

On the Capt Davidson report, BCNR issued a six-page report detailing the evidence and analyzing Plaintiff's contentions and ultimately concluded that the report should be changed. AR pp. 56-61. Included was an opinion from MMOA-4 (Officer Counseling and Evaluation Division) that the requested change would increase the likelihood of Plaintiff's selection for promotion. AR pp. 62-63. This stands in stark contrast to BCNR's report on Plaintiff's application to correct Col Scovel's report.

Despite its "careful and conscientious consideration of the entire record," BCNR's 2 page decision does nothing more than ratify the decision of the PERB. AR pp. 651-652. The BCNR's decision does not articulate any standards or provide any relevant analysis in light of the PERB's 1 ½ page decision and Plaintiff's rebuttal consisting of 15 single spaced pages of relevant analysis and approximately 80-pages of supporting documentation. *See Chisolm v. United States*, 65 Fed. Cl. 497, 499 (2005) (finding that a corrections board acts in an arbitrary and capricious manner in disregarding contrary evidence without analysis and accepting as dispositive conclusory statements). Plaintiff identified to the BCNR that the PERB's decision misapplies the applicable orders and fails to consider Col Scovel's disregard for MCO P1610.7E's admonition to not change rating philosophy. BCNR's failure to address Plaintiff's contentions of regularity impropriety violates 32 C.F.R. 723.3(e)(4). Further, there is no opinion from MMOA-4 as to the impact of the requested change on Plaintiff's selection for promotion.[13]

### 2. BCNR Implicitly Admits Col Scovel's Report was Unfair and Inaccurate.

BCNR's decision notes that Plaintiff may continue to submit Col Scovel's letter to future boards. AR p. 562. This statement, quite frankly, constitutes an admission by Defendants that Col Scovel's report is inaccurate. The only purpose for submitting Col Scovel's letter is to attempt to ameliorate the unfairness and inaccuracy in Plaintiff's record caused by Col Scovel's inflation of his grading philosophy in contravention of MCO P1610.7E. Instead of correcting the

---

[13] Plaintiff speculates the decision's deficiencies are attributable to BCNR's efforts to meet the statutory deadline of 10 U.S.C. § 628. By letter of August 19, 2005, BCNR provided to Plaintiff with MMPR's interim opinion for comment. AR pp. 461-462. Plaintiff responded on August 26, 2005, again, detailing the deficiencies of the PERB opinion and the MMPR's interim opinion. AR pp. 568-570. Plaintiff further noted the pendancy of his complaint in this Court.

record, BCNR simply says to include Col Scovel's letter. However, this does not make Plaintiff whole. Col McCown, a member of the FY 2005 LtCol promotion board, notes that Col Scovel's letter "does not constitute a change to [Plaintiff's] official record, thereby submitting the contents to the subjective opinion of the Board members." AR p. 484, ¶ 4. Plaintiff notes that the PERB is composed of the same pool of officers who would be called upon to serve on promotion boards. The fact that the PERB rejected correction of the report indicates that it was likely that the officers comprising the FY 2005 LtCol promotion board also rejected or gave little weight to Col Scovel's letter identifying his change in grading philosophy. *See* Pl. Ex. 10, p. 066, ¶ 11 (Col Crowl Declaration opining that the letter, likely, was given little weight as it did not constitute any type of official change to the record). Thus, Plaintiff did not receive the benefit of a favorable comparable assessment that would have come from an accurate report nor was he given that benefit based on submission of Col Scovel's letter to the selection boards. This is a clearly presented injustice and BCNR should have taken action to remedy it. Indeed, "when a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate." *Roth v. U.S.* 378 F.3d 1371, 1381 (Fed. Cir. 2004) (*citing* to Yee v. United States, 206 Ct. Cl. (1975).

### 3. **Because PERB Applied a Preponderance of the Evidence Standard, BCNR Cannot simply adopt the PERB's decision as it uses a Substantial Evidence Standard.**

The PERB and BCNR rely on the presumption of regularity in official records, but it can be rebutted. The PERB requires the petitioner to produce "relevant evidence tending to prove that the allegations contained in the application are more likely true than not." Pl. Ex. 9, p.057, ¶

---

AR p. 570, ¶ 9. BCNR issued its final decision on September 2, 2005.

10.a. However, BCNR only requires the production of "substantial evidence" to defeat the presumption of regularity. 32 C.F.R. § 723.3(e)(2); see Pl. Ex. 12.

There is nothing inherently wrong with the PERB imposing a higher standard of proof on the petitioner to rebut the presumption of regularity than the BCNR. Since all Marine Corps applications must go through the PERB to BCNR, it makes sense from a conservation of resources standpoint to allow the PERB to correct those records in cases where there is preponderant evidence, without the need for BCNR to make a determination. However, this means that the BCNR may not, per its regulations, simply accept the PERB's determinations.

In denying Plaintiff's petition to change the report, the PERB made an implicit finding that Plaintiff failed to produce preponderant evidence that would overcome the presumption of regularity. Instead of merely "substantially concurring" in the PERB's opinion, BCNR should have weighed anew the evidence tending to rebut the presumption of regularity under a "substantial evidence" standard. It did not and thus violated 32 C.F.R. § 723.3(e)(2). Pl. Ex. 12, p. 75.

## IV. BASED ON THE INACCURACY OF COLONEL SCOVEL'S REPORT, THERE WAS "MATERIAL UNFAIRNESS" WITHIN THE MEANING OF 10 U.S.C. § 628(b) AND DEFENDANTS' IMPLEMENTING INSTRUCTIONS IN THE PROCESSES OF THE FY 2004 – FY 2006 REGULAR LIEUTENANT COLONEL SELECTION BOARDS.

In response to the PERB's denial of Plaintiff's request to correct Col Scovel's comparative assessment marking, Plaintiff replied to BCNR detailing, *inter alia*, the legal basis for requesting a SSB to include the issues of materiality and reasonable diligence. AR pp. 467 – 567. Plaintiff noted that if Col Scovel graded Plaintiff according to his current philosophy,

Plaintiff's comparative assessments before the FY 2005 LtCol selection board would have been dramatically strengthened and increased the likelihood of his selection.

In support of this conclusion, Plaintiff's March 22, 2005 submission included a letter from Col J.E. McCown. AR pp. 483-484.  He has served on three selection boards. AR p. 483, ¶ 1.  He notes that selection boards place "significant weight . . . on both the reporting seniors' and reviewing officers' comparative assessments." AR p. 483.  He further notes that the "relative value markings, provided by the [reporting senior] in the old reports and by the [reviewing officer] in the new reports is one of the few objective, quantifiable tools available to the board members." AR p. 483. Col McCown was a member of the FY 2005 LtCol selection board. AR pp. 490.  He noted that "an official change to Col Scovel's report would result in a significant improvement in [Plaintiff's] comparative value marks." AR p. 484, ¶ 4.  Col McCown expressed that if Col Scovel's markings had been accurate, the resulting

> "shift in the over/under numbers would have  altered, in
> [Plaintiff's] favor, one of the key criterion used in making selection
> decision and would have increased the possibility of his selection."
> AR p. 484, ¶ 5.

Based on this letter alone, it is certain that correction of Col Scovel marking would improve Plaintiff's record and his chance for selection.  This meets Defendants' definition of "materiality."  To demonstrate Col McCown's comment that the requested change would result in "significant improvement" to Plaintiff's over/under numbers, Plaintiff provided the comparative assessment numbers as they would have likely appeared before the FY 2005 selection board and how the comparative assessment numbers would change if Col Scovel's report were corrected.

Before the FY 2005 LtCol selection board, Plaintiff had approximately 47 officers ranked above him, 59 officers with him and 48 officers below him. AR pp. 486-487; *see* p. 474 ¶ 12.b; AR p. 473, n. 7 (explaining how these numbers were derived from the Master Brief Sheets). A record with a similar number of officers ranked above and below is not competitive. If Col Scovel's report were amended to accurately reflect Plaintiff's performance under Col Scovel's current grading philosophy, Plaintiff's record before the FY 2005 LtCol selection board would have had approximately 17 officers ranked above him, 44 officers ranked with him, and 94 officers below him. AR p. 474, ¶ 12.b. A record with five times the numbers of officer below as above is highly competitive and almost always promoted. Pl. Ex. 10, p. 066, ¶ 12.

The importance of comparative assessment cannot be overstated. Comparative assessments are one of the few objective criteria that a promotion board receives. Given the dramatic impact on Plaintiff's comparative assessments based upon Col Scovel's change in grading philosophy and the importance placed on the comparative assessment by the selection board, this must constitute material error. Under *Richey* an SSB should be convened to consider Plaintiff's case.

## V.  THE SECRETARY 'S DECISION TO DENY PLAINTIFF'S SSB REQUEST VIOLATES 10 U.S.C. § 628 (g)(1)(A).

Based on the analysis above it is clear that BCNR erred in not correcting Col Scovel's report as requested by Plaintiff and that such a correction is "material" within the meaning of 10 U.S.C. § 628. The only remaining issue is whether Plaintiff exercised reasonable diligence to ensure the accuracy of his record prior to the convening of the 2005 LtCol promotion board.

BCNR did not reach the issue of "reasonable diligence" as it, albeit improperly, denied to change Col Scovel's report. However, the Officer Promotion Branch of the Marine Corps' Manpower Division (Code MMPR) issued an advisory opinion recommending denial of Plaintiff's SSB request based on alleged "failure in identifying and correcting the error prior to being considered by the FY 2005 USMC Lieutenant Colonel Selection Board." AR p. 461-462, ¶ 3. As an initial point, this is wrong. Plaintiff "identified" the error to the board by submission of Col Scovel's letter. This is one of the SJA's "reasonable diligence" criteria. However, as noted by the PERB (AR pp. 459-460, ¶ 3.a), Col Crowl (Pl. Ex. 10, ¶ 11), and Col McCown (AR p. 484, ¶ 4), the letter would have been viewed as merely an endorsement for promotion and not had any official impact on Plaintiff's cumulative assessment numbers. As such, although the error was identified, it did not serve as a substitute for an accurate report.

In Plaintiff's SSB request, he very specifically detailed what actions he had taken before the convening of both the FY 2004, and FY 2005 LtCol selection board. AR pp. 475-479, ¶¶ 16-25. Plaintiff demonstrated that he was diligent based on the SJA's stated criteria and that he fulfilled his responsibilities to ensure the accuracy of his military records as identified in the applicable MARADMIN. Like Defendants now, MMPR does not dispute any of Plaintiff's assertion concerning the actions he took to ensure the accuracy of his record. MMPR does not provide any substantive analysis to support its recommendation but summarily concludes that Plaintiff failed to exercise reasonable diligence.

Like Defendants, Plaintiff should be allowed to rely on the presumption of regularity. Two career counselors from MMOA-4 reviewed Plaintiff's record and never identified any possible inconsistency between Col Scovel's comments and rankings. Even though Col Crowl

-43-

identified the possible inconsistency, he noted that, what he perceived as a possible discrepancy, could have been explained by Col Scovel being a tough grader and that there was, in fact, no inconsistency. Pl. Ex. 10, p. 066, ¶ 10. Absent evidence to the contrary, Plaintiff should be entitled to presume that Col Scovel followed applicable orders when authoring subsequent performance evaluations.

## CONCLUSION

Like Defendants, Plaintiff should be allowed to rely on the presumption of regularity. Under the guise of "reasonable diligence," Plaintiff should not be required before each selection board to query each of his rating officials to determine if they were continuing to follow applicable regulations or improperly manipulating a report. Defendants place the onus on Plaintiff to discover the improper conduct of Defendants' own officials. Defendants take this extreme and untenable position in an effort to deny Plaintiff's SSB request. Defendants' decisions under both Counts I and II of this Complaint fail under an APA standard of review and should be reversed.

Under Count I, Defendants' assertions that Plaintiff should have known of the "nature" of the report are without basis and ignores the overwhelming evidence that indicates the report was accurate on its face. It is only when Capt Davidson admitted the falsification of the rankings that Plaintiff was put on notice of the error. SECNAV determined that Plaintiff discovered the error in 2003, which requires a finding that Plaintiff was "reasonably diligent." SECNAV cannot now ignore that determination and develop a contradictory rationale to deny Plaintiff's SSB request. Under Count II, Defendants' supervisor, Col Scovel, failed to maintain a consistent grading philosophy in contravention of established orders. Defendants' orders admit that this is unfair

-44-

and results in an inaccurate report. Defendants' position that Col Scovel, simply, should not have changed his grading philosophy and their subsequent refusal to make official correction to the military record is arbitrary. Plaintiff was severely disadvantaged by Col Scovel's report and Defendants' should have taken action to make appropriate corrections to Plaintiff's record and send his record to a SSB. These facts are not, genuinely, in dispute and Plaintiff should be granted summary judgment.

Respectfully submitted,

Jackson L. McGrady

Dated:  January 9, 2006

Plaintiff
820 Bright Street
Fredericksburg, VA 22401
540.371.3792

-45-

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JACKSON L. MCGRADY,                    )
                                       )
       Plaintiff                   )
                                       )
       v.                          )      Case Number:  05CV01651 (GK)
                                       )
DEPARTMENT OF THE NAVY,                )
GORDON R. ENGLAND, Secretary           )
of the Navy,                           )
                                       )
       Defendants                  )

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS ON WHICH THERE IS NO**
**GENUINE ISSUE**

Pursuant to LCvR 56.1, and in support of his Motion for Summary Judgment, Plaintiff now

files this Statement of Material Facts for Which There is No Genuine Issue.

1.  On July 12, 2002, the Commandant of the Marine Corps (CMC) issued Marine

Administrative Message (MARADMIN) 371/02 announcing that the Fiscal Year (FY) 2004

Lieutenant Colonel (LtCol) selection board would convene on October 9, 2003.  AR p. 155.   The

MARADMIN identified an individual Marine's responsibilities to ensure his/her record is

accurate when being considered by the selection board. AR p. 157, ¶ 4.  Per the MARADMIN a

Marine should: (1) submit a photograph; (2) complete suggested Professional Military Education

(PME); (3) personally check the Official Military Personnel File (OMPF) and Master Brief Sheet

(MBS); (4) and send copies of any documents that may not yet be reflected in the file.  *Id.*  Each

of these items is under the Marine's control and he/she is "responsible to ensure the accuracy and

-1-

completeness" of his/her record. *Id.*

2.  Prior to the convening of the FY 2004 LtCol board Plaintiff took the following actions to ensure the accuracy of his military records. Plaintiff: a) obtained a copy of his OMPF and MBS; b) reviewed his OMPF to ensure that all fitness reports were contained within the OMPF; c) reviewed his MBS to ensure that it reflected PME completed; d) ensured that a current picture was resident within his OMPF (AR p. 159); e) wrote a personal statement to the President of the FY 2004 LtCol selection board, including various enclosures, and ensured that that the materials had been properly received by the board. AR p. 161-167[1] (Personal Letter to President of FY 2004 board); AR p. 4, ¶ 12 (detailing actions taken by Plaintiff to ensure accuracy of his record); AR pp. 42-43, ¶¶ 23-25 (detailing actions taken by Plaintiff to ensure accuracy of his record). Plaintiff also consulted with LtCol Poleto, a career counselor, prior to the convening of the FY 2004 board. Complaint ¶ 8 and Answer thereto. Defendants do not maintain any official records concerning the substance of a career counselor's comments to an officer seeking their advice. *See* Complaint ¶¶ 8 and 12 and Answers thereto.

3.  In March 2003, after Plaintiff was not selected for promotion by the FY 2004 LtCol board, he contacted LtCol McLennan, another agency career counselor. Complaint ¶ 12 and Answer thereto. In May 2003 Plaintiff also discussed his military record with Colonel (Col) Crowl. AR p. 479, ¶ 25; Pl. Ex. 10, p. 64, ¶ 2 (Col Crowl Declaration). Col Crowl worked on the same staff as Plaintiff and offered his assistance to review Plaintiff's record. Pl. Ex. 10, p. 64, ¶¶ 1-2. Col Crowl has extensive experience with promotion board processes. Compl. ¶ 13 and Answer

---

[1] There was a copy error on page 161 of the Administrative Record. Another copy of Plaintiff's letter to the FY 04 selection board is located at page 518 of the Administrative Record.

thereto; Pl. Ex. 10, ¶ 3. Based on his own grading philosophy, Col Crowl identified what he believed to be an inconsistency in a report authored by Col Scovel between his written comments and the ranking on the comparative assessment scale. AR p. 479 ¶ 25; Pl. Ex. 10, p. 66, ¶ 10. In that report Col Scovel opined that Plaintiff was among the "top 5% of majors [he] had observed in his 22 years of service." AR p. 588, ¶ K.4 (copy of fitness report). The evaluation covered the reporting period from September 1, 1998 through March 15, 1999. AR p. 584, ¶ 3.b. However, Col Scovel marked Plaintiff in the 5th of 8 blocks on the comparative assessment scale in section K.3 of the report. AR p. 588. Col Crowl also discussed with Plaintiff the negative inference that could be drawn from a report authored by Capt Davidson in which Plaintiff was ranked "3 of 3" on a "transfer" fitness report. AR p. 119-120; Pl. Ex. 10, p. 66, ¶ 9.

4. Neither LtCol Poleto nor LtCol McLennan mentioned either of the points raised by Col Crowl. AR p. 477, ¶ 20; AR p. 479, ¶ 24. LtCol Poleto identified a report authored by Lieutenant Colonel, now General, Hagee in which Plaintiff was not ranked as "outstanding" and was listed as among the top ¼ of 38 lieutenants, as being less than positive. Pl. Ex. 11, p. 69, ¶ 7.

5. In preparing for the FY 2005 LtCol board, Plaintiff sought and obtained letters of recommendations from high-ranking agency officials AR pp. 534-539. Based on the comments of LtCol Poleto and Col Crowl, Plaintiff also sought to obtain letters from General Hagee, Col Scovel and Capt Davidson addressing their comments and rankings in an effort to ameliorate any negative inferences. Pl. Ex. 11, p. 68, ¶ 3; *see* Pl. Ex. 10, p. 66, ¶ 9. General Hagee declined to provide a letter of clarification out of a concern that, given his current position as CMC, his letter would carry undue weight with a promotion board. Pl. Ex. 11, p. 69, ¶ 7. Capt Davidson agreed

-3-

to provide a letter (AR pp. 22-23) but rather than merely place his markings in context, Capt Davidson admitted that he had falsified the rankings in order to increase the other officer's chances for augmentation from the reserve forces to the regular forces. AR p. 22. Specifically, he ranked the Plaintiff as "3 of 3" but admitted that Plaintiff was properly ranked "1of 3" at the time the report was written. *Id.* Col Scovel agreed to provide a letter and admitted that, although the comment and marking were accurate at the time of the report, he had inflated his grading philosophy over the intervening years. AR pp. 535-536. Under his current grading philosophy, Col Scovel equates a "top 5%" comment to a mark in the 7th of 8 blocks. AR p. 536, ¶ 4.

### Count I  (Capt Davidson Report)

6.   On May 6, 2003 based on Capt Davidson's admission, Plaintiff filed an application to the Board for Correction of Naval Records (BCNR) through CMC's designated representative, the Performance Evaluation Review Board (PERB), seeking to correct the rankings on the performance evaluation. AR pp. 115-126. The PERB acts as the initial action agency for Marine Corps fitness report appeals. Pl. Ex. 5, p. 39, ¶ 4.a. "Neither applicants nor their agents are authorized to appear before the PERB; however, the [PERB] may obtain more information from the applicant, the reporting officials, persons in the chain of command, or anyone thought to have firsthand knowledge of the case." Pl. Ex. 9, p. 54, ¶ 4.b. "The vote of the PERB members is by secret ballot." *Id.* at ¶ 4.c.

7.   CMC, through the PERB, recommended denial of Plaintiff's request. AR 129-130. CMC found that "the report is both administratively correct and procedurally complete as written and filed." AR p. 129, ¶ 3. CMC placed significant weight on the fact that (then) Major Wilk, Capt

-4-

Davidson's superior, endorsed the report. *Id.* at ¶ 3.b; *see* AR p. 120 (copy of report showing Major Wilk's endorsement).

8.   Plaintiff responded to CMC's recommendation, arguing why the decision was incorrect. AR pp. 133-153. Included in Plaintiff's response was a statement from (now) Col Wilk. AR pp. 141-142. Col Wilk previously served a tour in the Marine Corps Performance Evaluation Review Branch and had reviewed PERB petitions in the past. AR p. 141, ¶ 3. Based on this experience, he viewed Capt Davidson's admission with a "jaundiced" eye. *Id.* Because of this, Col Wilk called Capt Davidson to discuss the matter. *Id.* After this conversation Col Wilk believed that Capt Davidson had manipulated the rankings. *Id.* Col Wilk states that he "did not suspect at the time [the report was written] that [Capt Davidson] had manipulated the rankings." AR p. 142, ¶ 4 (Col Wilk Declaration). Further, he "had no basis to question or change [Capt Davidson's] markings" and relied on Capt Davidson's assessment. AR p. 142, ¶ 5. Upon learning of Capt Davidson's falsification, Col Wilk admitted that he simply accepted Capt Davidson's rankings without exercising any independent judgment. AR p. 142, ¶ 5.

9.   In his submission to the BCNR requesting a change to Capt Davidson's ranking, Plaintiff identified that he discovered the error on March 31, 2003. AR p. 115, ¶ 11.a. Plaintiff identified that he did not discover the error until Capt Davidson informed Plaintiff that Capt Davidson inappropriately ranked Plaintiff in an attempt to increase the chances of two other officers for augmentation. AR p. 115, ¶¶ 10 and 11.b. Plaintiff noted that he had not spoke with Capt Davidson from the time he left the "8th Marine Regiment in approximately May 1991 until 2003." AR p. 118, ¶ 4.

10. Although the performance evaluation written by Capt Davidson's was approximately 13

-5-

years old at the time Plaintiff filed his application to correct it, SECNAV determined that

Plaintiff's application was "timely". AR p. 56, ¶ 3.b.  10 U.S.C. § 1552(b) requires the filing of

an application within three years after discovery the error.  SECNAV did not waive the

limitations period in the interest of justice as he is allowed to do under 10 U.S.C. § 1552(b).

11. Based on this evidence, BCNR twice asked the PERB to reconsider its position and was

refused both times.  AR p. 154.  BCNR ultimately granted Plaintiff's application and directed

that the rankings be changed to reflect that Plaintiff was appropriately ranked "1of 3" and

directed that Plaintiff's failure of selection before the FY 2004 board be expunged.  AR 61, ¶¶ a

and b.

12. On September 16, 2003, Plaintiff requested that he be considered for promotion by a Special

Selection Board (SSB) as relief from the FY 2004 LtCol selection board's consideration of Capt

Davidson's inaccurate report.  AR pp. 1-23.  This request was sent to SECNAV through the

Commandant of the Marine Corps (CMC).  *Id.*

13. SSB requests are of an "interactive nature."  AR p. 106, ¶ 3.  Because of this "interactice

nature", those persons responsible for processing SSB requests may contact the requestor to

clarify any questions about the request.  *Id.*

14. By letter dated April 28, 2004, CMC notified Plaintiff that his request for a SSB had been

denied.  AR p. 72.  Included with the letter was the CMC's MEMORANDUM FOR THE

SECRETARY OF THE NAVY, dated 16 Feb 04.  AR pp. 73-75.  In the analysis section of the

memo, CMC concludes that Plaintiff "reasonably should have known the nature of the ranking"

and should have taken steps to correct the report before the convening of the FY 2004 board.  AR

74, ¶ 4.a.  The fifth paragraph of the memo is labeled "<u>Conclusion.</u>"  CMC concluded that

-6-

Plaintiff's

> "request does not meet the requirements for a special selection
> board per [SECNAVINST 1401.1B]; he failed to exercise due
> diligence to ensure his record was substantially accurate and
> complete before the convening of the board." AR 74, ¶ 5.

15. On April 16, 2004 SECNAV adopted CMC's recommendation without further comment or

analysis. AR p. 75. The decision does not identify any objective criteria that were used to reach

the "reasonable diligence" determination. *See* AR 73-75.

16. Plaintiff filed a Privacy Act (5 U.S.C. § 552a) (PA) request on May 5, 2004, seeking the

contents of Plaintiff's SSB file, which is maintained by Headquarters Marine Corps, Manpower,

Promotions Branch (MMPR). AR p. 76. Plaintiff ultimately received a legal memorandum,

dated December 18, 2003, authored by the Staff Judge Advocate (SJA) to CMC. AR pp. 27-30.

17. The SJA's legal opinion identified eight criteria for determining "reasonable diligence." AR

pp. 28-29, ¶ 4.d. However, the *only* factor analyzed was career counselor contact. *See* AR pp.

28-29. The legal memo concluded "[n]o evidence suggests that [Plaintiff] contacted a career

counselor prior to the board. Applying the [8 identified factors], we conclude that [Plaintiff] did

not exercise reasonable diligence." AR p. 29, ¶ 5.c.

18. CMC has not published any requirement that an officer being considered for promotion by a

selection board must see a career counselor before the convening of the board. Complaint ¶ 50

and Answer thereto. CMC has not published a requirement for an officer to provide evidence of

career counselor contact as a prerequisite for requesting a SSB or as a prerequisite for CMC to

recommend a SSB. *Id.*

19. On February 7, 2005, Plaintiff submitted a request for reconsideration (AR pp. 34-180) of the

Secretary's decision based on, *inter alia*, the fact that Plaintiff did see a career counselor. AR pp.

41-42, ¶¶ 19-21. Defendants, now, acknowledge that Plaintiff met with a career counselor prior

to the convening of the FY 2004 selection board. Complaint ¶ 8 and Answer thereto.

20. On March 17, 2005, Capt Gaffney spoke with Plaintiff concerning his February 7, 2005,

request for reconsideration. Pl. Ex. 11, p. 68, ¶ 2. Capt Gaffney was an attorney within the

Office of the SJA to CMC whose duties included the review of SSB requests. *Id.* Capt Gaffney

asked Plaintiff how he had obtained the letter from Capt Davidson. *Id.* Plaintiff explained that

he sought statements from several officers to include Capt Davidson, and CMC, in an effort to

put a "gloss" on the markings and comments. *Id.* at ¶¶ 3-4.

21. After explaining how he had obtained the Capt Davidson letter to Capt Gaffney, Plaintiff sent

an e-mail to LtCol Carberry, Capt Gaffney's superior, identifying that Plaintiff has spoken with

Capt Gaffney. Pl. Ex. 11, p. 69, ¶¶ 5 and 6; *see* Pl. Ex. 11, enclosure (1), p. 70. In his e-mail

Plaintiff noted Defendants' characterization of the SSB process as "interactive." *Id.*; *see* AR p.

106, ¶ 2 (noting the "interactive nature of special selection boards may require this headquarters

to contact you"). In that e-mail Plaintiff also requested an opportunity to address any further

questions or concerns about his request. *Id.* LtCol Carberry responded that "[i]f we need

anything cleared up, we'll give you a ring." *Id.* Neither Defendants nor Defendants' attorney

further contacted Plaintiff with any questions or concerns about his request. Pl. Ex. 11, p. 69, ¶

6.

22. SECNAV has not issued a decision on Plaintiff's request for reconsideration. *See* AR p. 185.

CMC did issue a recommendation on Plaintiff's request for reconsideration, which is dated July

25, 2005. AR 182-185.

23. In his recommendation CMC questions why Plaintiff did not discover the error at an earlier point in time given the frequency of Plaintiff's review of his record. AR p. 183, ¶ 4.b. CMC states that Plaintiff did not state why Capt Davidson chose to admit the falsification after such a long time and after Plaintiff failed selection for promotion. AR p. 184, ¶ 4.c. CMC opines that there were other competitive concerns within Plaintiff's record. AR p. 184, ¶ 4.d. CMC asserts that Plaintiff "should have reasonably known the nature of the rankings and he should have taken appropriate steps to highlight or correct the fitness report prior to the FY 04 USMC Lieutenant Colonel Board convening." AR p. 184, ¶ 4.e. The recommendation concludes that Plaintiff "failed to exercise reasonable diligence to ensure his record was substantially accurate and complete before the convening of the board and has not provided any additional information to refute the [original] decision." AR p. 184, ¶ 5.

24. In his February 7, 2005, request for reconsideration, Plaintiff noted that he reviewed his military record before each promotion board and before applying for the Excess Leave Program and the Special Education Program, for which he was selected. AR p. 42, ¶ 22. Plaintiff also noted that "[b]ecause the error in this case involved the reporting senior's intentional falsification of a fitness report coupled with the reviewing officer's failure to exercise independent judgment concerning the rankings, it was impossible to detect the mistake until the reporting senior admitted his wrongdoing." AR p. 43, n.7.

25. It is not unusual for officers to seek to obtain letters of clarification from previous raters in an attempt to place remarks or rankings contained within a fitness report in context in an effort to lessen any negative inferences, especially after not being selected for promotion. Pl. Ex. 10, p. 66, ¶ 9.

26. In July 2003, Plaintiff attempted to obtain a letter of clarification from CMC concerning a report that he had written on Plaintiff while CMC was a lieutenant colonel. Pl. Ex. 11, p. 60, ¶ 7.

27. Plaintiff consulted with LtCol Poleto, a career counselor, prior to the convening of the FY 2004 board. Complaint ¶ 8 and Answer thereto. During this consultation, LtCol Poleto "gave no indication that she believed that Capt Davidson had inaccurately ranked Plaintiff with two other lieutenants." AR p. 42, ¶ 21. LtCol Poleto did not opine that Major Wilk failed to properly execute his reviewing officer duties by simply accepting the reporting senior's markings. *Id.*

28. Per Department of Defense Instruction 1320.11, once "materiality", within the meaning of 10 U.S.C. § 628, is established, the only valid basis for denial of a SSB request is the officer's failure to maintain "reasonably careful records." Pl. Ex. 6, p. 21, ¶ 4.2.

29. Defendants are required to follow directives and instructions issued by the Secretary of Defense.

### Count II (Col Scovel Report)

30. On December 3, 1998, the Marine Corps "Performance Evaluation System (PES) [ ] changed completely, creating a new paradigm requiring an entirely new approach to performance reporting." Pl. Ex. 8, p. 33, ¶ 3.b (Marine Corps Order P1610.7E – Performance Evaluation System Manual). Under this new system, an officer's first level supervisor called a "reporting senior" develops a "Rating Senior Profile." *Id.* at ¶ 8012. This profile gives relative value to every report ever written by the [reporting senior]." *Id.* This is also true of the second level supervisor, known as a "reviewing officer." *Id.* at ¶ 8012.e. These profiles are considered "dynamic" because they develop over time. *Id.* at ¶ 8012.2.a. "The relative value of each report

is based on how the report compares to the [rater's] rating history for a given grade." *Id.* at

8012.2.b. Because the [rater's] profile is a snapshot of the [rater's] rating history, [raters] must

understand the significance of the need for their rating philosophy to remain consistent

throughout their career." *Id.* at ¶ 8012.2.d. MCO P1610.7E notes that:

> "[reporting officials] must accurately and fairly assess the
> performance of their subordinates; **[reporting officials] who fail
> to do so will unwittingly and *unfairly discriminate* against
> either earlier reports or subsequent reports.**" (Pl. Ex. D, p. 033,
> ¶ 8012.2(e)(Emphasis added.))
>
> . . .
>
> Reporting seniors who attempt to change their rating philosophy
> may either positively or negatively affect the relative value of
> reports for MROs they previously rated. Para. 8012.2(e)(2). **When
> the rater changes his philosophy and grades higher, he will
> diminish the value of all preceding reports ever written.** (Pl.
> Ex. D, p. 033, ¶ 8012.2(e)(2)(a). (Emphasis added.))

31. Plaintiff submitted Col Scovel's letter to the FY 2005 LtCol board. AR p. 535-536. Plaintiff

was not selected for promotion by the FY 2005 board.

32. On December 9, 2004, Plaintiff submitted an application to BCNR, through the PERB,

seeking to correct the comparative assessment rating on the Col Scovel fitness report. AR p.

580-595. The basis for the request was Col Scovel's change in rating philosophy over a period of

time since he acted as the reviewing officer of Plaintiff's fitness report. AR pp. 589-590. Col

Scovel at the time he authored the report thought Plaintiff was among the "top 5% of majors [he]

had observed in his 22 years of service" and marked Plaintiff in the 5th block of section K.3 of

the fitness report believing at the time that this was consistent with a "top 5%" comment. AR p.

589, ¶ 2 (Col Scovel Letter); AR p. 588 (Copy of Fitness Report). The letter goes on to indicate

that, in the intervening years since the report was written, Col Scovel changed how he rates

individual officers. He now believes that a "top 5%" comment equates to a mark in the 7th block

of section K, and is how he now marks officers whose performance rates a "top 5%" comment.

AR p. 590, ¶ 4.

33. CMC, through the PERB, recommended denial of the request. AR pp. 465-466. CMC found

that the performance appraisal written by Col Scovel was correct at the time it was written. AR

p. 465, ¶ 3. CMC found that Col Scovel's letter was merely an endorsement for promotion and

not an official request to change Plaintiff's record. AR p. 465-466, ¶ 3.a. However, the PERB

noted that such a request would not have made a difference in the decision. *Id.* CMC notes the

importance of a consistent grading philosophy citing to Marine Corps Order MCO P1610. 7E

(Performance Evaluation System Manual) subparagraph 8012.2, which discusses the rater's

"Profile Dynamics." AR p. 466, ¶ 3.b. CMC reasoned that the report should remain in

Plaintiff's Official Military Personnel File (OMPF) as written. AR p. 466, ¶ 4.

34. By letter of March 22, 2005, Plaintiff submitted additional materials and argument to the

BCNR in response to CMC's decision. AR pp. 467-567. Included with these materials was

another letter from Col Scovel requesting official change to Plaintiff's record. AR pp. 482. Col

Scovel opined in his letter to officially request a change to the report that:

> "Failure to change the report unfairly colors [Plaintiff's]
> performance because of the new evaluation system's reliance on
> comparative assessments. Those who may look at [Plaintiff's]
> record now or in the future would be misled as to his performance
> during that period and as to his potential. This is not fair to the
> Marine or the Marine Corps, which relies on the performance
> evaluation system to make a myriad of personnel decisions.
> [Plaintiff] has a right to an accurate evaluation. The marking
> should be changed." AR p. 482, ¶ 3.

35. Col Scovel's change in grading philosophy over time is in violation of the policies and instructions contained in MCO P1610.7E. Further, the report gives an inaccurate portrayal of Plaintiff's performance. AR p. 482, ¶ 3; Pl. Ex. 8, p. 45, ¶ 8012.2.e(2)(a). Because Col Scovel changed his grading philosophy by grading higher on later reports, Plaintiff was unfairly discriminated against under the definition of Defendants' own order. Pl. Ex. 8, p. 45, ¶ 8012.e(2)(a).

36. A Marine "may appeal any report that he or she believes is incorrect, inaccurate, or in violation of the policies and instructions in [MCO p1610.7E] once the report is a matter of official record." Pl. Ex. 8, p. 43, ¶ 5008.1. A Marine "may appeal any report that they believe is not per established performance evaluation policy, inaccurate or unjust." Pl. Ex 9, p. 54, ¶ 5.a. (Marine Corps Order 1610.11C – Performance Evaluation Appeals).

37. Plaintiff's March 22, 2005, submission also included a letter from Col J.E. McCown. AR 483-484. Col McCown was a member of the FY 2005 LtCol selection board. AR pp. 490. Col McCown states that if Col Scovel's markings had been accurate, the resulting

> "shift in the over/under numbers would have altered, in
> [Plaintiff's] favor, one of the key criterion used in making selection
> decision and would have increased the possibility of his selection."
> AR 484, ¶ 5.

38. Before the FY 2005 LtCol selection board, Plaintiff, under the current evaluation system, had approximately 47 officers ranked above him, 59 officers with him and 48 officers below him. AR pp. 486-487; *see* AR p. 474 ¶ 12.b; AR p. 473 n. 7 (explaining how numbers were derived from the applicable Master Brief Sheets). A record with a similar number of officers ranked

-13-

above and below is not competitive. *See* AR p. 19, ¶ 5.

39. If Col Scovel's report were amended to accurately reflect Plaintiff's performance under Col

Scovel's current grading philosophy, Plaintiff's record before the FY 2005 LtCol's selection

board would have had approximately 17 officers ranked above him, 44 officers ranked with him,

and 94 officers below him. AR p. 474, ¶ 12.b. A record with five times the numbers of officer

below as above is very competitive. Pl. Ex. 10, p. 66, ¶ 12.

40. CMC issued Marine Administrative Message (MARADMIN) 332/03 announcing the FY

2005 LtCol selection board. AR pp. 495-498. The MARADMIN lists the individual Marine's

responsibilities to ensure that their records are prepared for the promotion board. AR pp. 497-

498, ¶ 4. Plaintiff submitted evidence that he met the criteria listed in MARADMIN 332/03.

Specifically, Plaintiff demonstrated that he a) obtained a copy of his Official Military Personnel

File (OMPF) (AR p.547) and Master Brief Sheet (MBS) (AR pp. 486-487; b) reviewed his

OMPF to ensure that all fitness reports were contained within the OMPF; c) reviewed his MBS

to ensure that it reflected he was PME complete; d) ensured that a current picture was resident

within his OMPF (AR p. 548); e) wrote a personal statement to the President of each LtCol

selection board, including various enclosures, and ensured that that the materials had been

properly received by the board. AR 491-567; *see* pp. 475-480, ¶¶ 16-27 (explaining significance

of documentary evidence contained in pp. 491-567.) Plaintiff also submitted evidence that he

consulted with a career counselor before the FY 2005 selection boards. Complaint ¶ 12 and

Answer thereto. Defendants' do not dispute that Plaintiff took any of these actions. *See* AR pp.

27-30 (SECNAV's April 16, 2004 denial); AR pp. 461-462 (Promotions Branch August 9, 2005,

Advisory Opinion); AR 651-652 (BCNR's September 2, 2005, denial)

-14-

41. During the processing of Plaintiff's request on Col Scovel's report, BCNR obtained an

opinion from the promotions branch of the Marine Corps (Code: MMPR), which was dated

August 9, 2005. AR pp. 461-462. MMPR's only opinion was that if the report were changed

that Plaintiff's SSB request should be denied for "failure in identifying and correcting the error

prior to being considered by the FY 05 USMC LtCol Promotion Selection Board." AR p. 462, ¶

3. By letter dated August 17, 2005, BCNR forwarded a copy of MMPR's interim opinion to the

Plaintiff for comment. AR pp. 651-652. On August 26, 2005, Plaintiff responded and, again,

explained the deficiencies in MMPR's recommendation. AR pp. 568-570.

42. When processing the request to alter Capt Davidson's report, BCNR obtained an advisory

opinion from MMOA-4 on the effect the change would have on the competitiveness of Plaintiff's

record. AR pp. 131-132. BCNR did not obtain an advisory opinion concerning the effect on the

competitiveness of Plaintiff's record based on a change to Col Scovel's report.

43. On September 1, 2005, a three-member panel of the BCNR gave considered Plaintiff's

request. AR pp. 651-652. BCNR concluded that Plaintiff's evidence "was insufficient to

establish the existence of probable material error or injustice." *Id.* The "Board substantially

concurred with the comments contained in the report of the PERB". *Id.* The "Board found no

defect in [Plaintiff's] performance record" although the BCNR noted that Plaintiff "may submit

[Col Scovel's] letter to future selection boards." *Id.*

44. In cases denying an application without a hearing, BCNR must issue its determination in

writing and include a brief statement of the grounds for denial. 32 C.F.R. 723.3(e)(3). When

denying an application for relief, BCNR is required to issue a statement that "shall include the

reasons for the determination that relief should not be granted, including the applicant's claims of

-15-

constitutional, statutory and/or regulatory violations that were rejected, together with all the essential facts upon which the denial is based." 32 C.F.R. 723.3(e)(4).

45. The Board relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties.  32 C.F.R. 723(e)(2).

46. The PERB relies on the presumption of regularity to support official actions of public officers.  Pl. Ex. 9, p. 54, ¶ 5.a.  To rebut the presumption before the PERB, a petitioner must produce "relevant evidence tending to prove that the allegations contained in the application are more likely true than not."  Pl. Ex. 9, p. 57, ¶ 10.a.

Respectfully submitted,

Jackson L. McGrady

Dated:  January 9, 2006

Plaintiff
820 Bright Street
Fredericksburg, VA 22401
540.371.3792

-16-

I hereby certify that on the 9th day of January, 2006, I, J. L. McGrady, sent by U.S. mail, return receipt requested, postage prepaid, a copy of the following documents:

1.  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;

2.  PLAINTIFF'S STATEMENT OF MATERIAL FACTS ON WHICH THERE IS NO GENUINE ISSUE

3.  PLAINTIFF 'S MOTION FOR SUMMARY JUDGMENT

4.  PROPOSED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

to the following addresses:


Clerk of Court
United States District Court
for the District of Columbia
333 Constitution Ave., NW
Washington DC 20001


Gordon R. England, Secretary of the Navy
Office of the General Counsel
Navy Litigation Office
720 Kennon Street SE Bldg 36, Rm 233
Washington Navy Yard DC 20374-5013

Department of the Navy
Office of the General Counsel
Navy Litigation Office
720 Kennon Street SE Bldg 36, Rm 233
Washington Navy Yard DC 20374-5013


Mr. K. L. Wainstein
U.S. Attorney for the District of Columbia
555 4th St. NW
Washington, DC 20530

Honorable Alberto Gonzalez
U.S. Department of Justice
950 Pennsylvania Avenue
Washington DC 20530-0001


J. L. MCGRADY
Plaintiff
820 Bright Street
Fredericksburg, Virginia 22401
540.371.3792