## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JACKSON L. MCGRADY,                    )
                                )
        Plaintiff                    )
                                )
        v.                          )        Case Number:  05CV01651 (GK)
                                )
DEPARTMENT OF THE NAVY,                )
DONALD C. WINTER, Secretary            )
of the Navy,                           )
                                )
        Defendants                   )

## AMENDED COMPLAINT

1. This is a civil action to seek judicial review of Defendants' denial of Plaintiff's two requests that Defendants convene a Special Selection Board (SSB) to consider whether Plaintiff should be selected for promotion to the grade of lieutenant colonel and Plaintiff's request to correct a fitness report (performance evaluation) contained within Plaintiff's official military personnel file.

2. Plaintiff first seeks review of these decisions under the authority of 10 U.S.C. § 628(g).  10 U.S.C. § 628(g) is a special jurisdictional statute giving federal district courts the authority to review a service Secretary's denial, to include a "deemed" denial, of a military member's request to convene a SSB.

3. If the Court finds it lacks jurisdiction to review any of Defendants' decisions under the authority of 10 U.S.C. § 628, Plaintiff seeks judicial review of those decisions under the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* to the extent that statute is applicable to any of Defendants' decisions.  The standard of review under the two statutes is very similar.

RECEIVED

MAY 1 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

   This Court has personal jurisdiction over the parties pursuant to 10 U.S.C. § 628(g) and/or

   5 U.S.C. § 701 *et. seq.* As amplified in the remaining paragraphs of this <u>Jurisdiction and</u>

   <u>Venue</u> section, this case presents a federal question pursuant to 10 U.S.C. § 628, which is

   the federal statute creating military SSBs, or 5 U.S.C. § 701 *et. seq.*, which is the

   Administrative Procedures Act. Venue is proper in this Court pursuant to 28 U.S.C. §

   1391(e) because the Defendants, the U.S. Secretary of Navy and the Department of the

   Navy, reside in this District.

5. Plaintiff was considered by the Fiscal Year (FY) 2004 lieutenant colonel selection board but

   was not selected. The board considered Plaintiff in an unfair manner due to the presence of

   a falsified fitness report written by Captain (Capt) Davidson in Plaintiff's official military

   personnel file. At Plaintiff's request, Defendants, through the Board for Correction of

   Naval Records (BCNR), ordered correction of the Captain Davidson report to reflect that

   Plaintiff was appropriately ranked "1 of 3" instead of "3 of 3." However, on April 14,

   2004, the Secretary of the Navy (Secretary) denied Plaintiff's request to convene a SSB to

   consider Plaintiff for promotion based on his corrected military record. The Secretary

   denied Plaintiff's request alleging that Plaintiff failed to exercise "reasonable diligence" to

   ensure the accuracy of his military record prior to the convening of the selection board.

6. On February 7, 2005, Plaintiff submitted a complete application for a SSB requesting

   reconsideration of the Secretary's April 14, 2004 decision and submitted evidence that

   Plaintiff had been reasonably diligent in ensuring the accuracy of his military record before

the convening of the FY 2004 lieutenant colonel selection board. As of August 9, 2005,

which was six months after Defendants had received Plaintiff's completed SSB application,

the Secretary had neither convened a SSB nor denied Plaintiff's request. As such

Plaintiff's application was deemed to be denied under 10 U.S.C. § 628(g). Plaintiff filed

his original complaint on August 17, 2005, seeking judicial review of the Secretary's

deemed denial of his application.

7. On February 23, 2006, the Secretary issued a final agency decision denying Plaintiff's

February 7, 2005 request again opining that Plaintiff did not exercise "reasonable

diligence" in ensuring the accuracy of his records. The Secretary also added an additional

basis for denial by alleging that the amendment to the Capt Davidson report was not

"material."

8. In this Amended Complaint, Plaintiff, again, seeks judicial review of the Secretary's deemed

denial of his February 7, 2005 SSB application. Per 10 U.S.C. § 628(g)(3)(A)

> "If, six months after receiving a complete application for consideration by
> a special selection board under this section in any case, the Secretary
> concerned has not convened such a board and has not denied consideration
> by such a board in that case, the Secretary shall be deemed for the
> purposes of this subsection to have denied the consideration of the case by
> such a board." 10 U.S.C. § 628(g)(3)(A).

As the Secretary neither convened a special selection board nor denied consideration by

such a board by August 9, 2005, Plaintiff's application is deemed to be denied. The Court

has jurisdiction to review the deemed denial under 10 U.S.C. § 628(g).

9. In the alternative, if, and only if, the Court determines that it lacks jurisdiction to review the

Secretary's deemed denial under 10 U.S.C. § 628, Plaintiff seeks judicial review of the

Secretary's February 23, 2006 final agency decision. The Court has jurisdiction to review

this decision under 5 U.S.C. § 701 et. seq., or, depending on the construction of the

statutory language, 10 U.S.C. § 628.

10. Plaintiff was also considered by the Fiscal Year (FY) 2005 lieutenant colonel selection
board but was not selected. The board considered Plaintiff in an unfair manner due to the
presence of an inaccurate fitness report written by Col (Col) Scovel in Plaintiff's official
military personnel file. Col Scovel changed his grading philosophy since authoring a
fitness report on the Plaintiff several years prior to the convening of the FY 2005 board.

11. A rater's changing his grading philosophy is directly contrary to Defendants' own
regulation, Marine Corps Order (MCO) P1610.7E. Per MCO P1610.7E a rater's change in
grading philosophy "unfairly discriminaite[s]" against earlier reports written by the rater.

12. Col Scovel's change in grading philosophy unfairly discriminates against Plaintiff's earlier
report because the change in grading philosophy diminishes the relative value of Plaintiff's
report. Col Scovel's report as presently configured inaccurately portrays Plaintiff's
performance.

13. On March 22, 2005, Plaintiff requested that Defendants correct the report to be consistent
with Colonel Scovel's current grading philosophy. Plaintiff also requested that Defendants
convene a SSB to consider Plaintiff for selection to lieutenant colonel based on the Col
Scovel report. Plaintiff's complete application demonstrated why he was entitled to
correction of the Colonel Scovel report and that the correction was material. Plaintiff also
provided evidence as to why he was reasonably diligent in ensuring the accuracy of his
military records prior to the convening of the FY 2005 lieutenant colonel board.

14. Per Department of Defense Instruction 1320.11, demonstrating that correction to the Col
Scovel report was warranted, that the correction was material, and that Plaintiff exercised
reasonable diligence in ensuring the accuracy of his military record prior to the convening

4

of the FY 2005 lieutenant colonel board, entitled Plaintiff to be considered by a SSB.

15. On September 2, 2005, the Board for Correction of Naval Records (BCNR) denied Plaintiff's request to correct the Col Scovel report. The BCNR's decision was arbitrary and capricious, not based on substantial evidence, and was otherwise contrary to law.

16. The BCNR also purported to deny Plaintiff's request for an SSB. BCNR lacks authority to issue a final agency decision on a SSB request.

17. If BCNR had not improperly denied Plaintiff's request to amend the Col Scovel report, Plaintiff's case would have been forwarded to the Secretary for a final agency decision. Because of BCNR's improper decision denying correction to the Col Scovel report, the Secretary, after receipt of a complete application for a SSB, neither convened a special board nor denied consideration by such a board. As such, for purposes of 10 U.S.C. § 628, Plaintiff's SSB request is deemed to be denied. The Court has jurisdiction to review the deemed denial, which would necessarily include the decision of the BCNR to not correct the Colonel Scovel report, under 10 U.S.C. § 628(g).

18. In the alternative, if, and only if, the Court determines that it lacks jurisdiction to review the BCNR's decision denying amendment to the Col Scovel report and the Secretary's resulting deemed denial under 10 U.S.C. § 628 of Plaintiff's March 22, 2005 SSB application, Plaintiff seeks judicial review of BCNR's decision to deny correction to the Col Scovel report under 5 U.S.C. § 701 *et. seq.* BCNR, an entity created under the authority of 10 U.S.C. § 1552, is authorized to issue final agency decisions on requests to correct military records. Plaintiff's request to correct the Col Scovel report falls under BCNR's statutory authority. As such, the Court has jurisdiction to review BCNR's decision denying correction to the Col Scovel report under 5 U.S.C. § 701 *et. seq.*

19. In summary, Plaintiff seeks the following:

   a. Review of Defendants' "deemed" denial of Plaintiff's February 7, 2005 application for a
   SSB, which was received by Defendants on February 9, 2005. Plaintiff seeks judicial
   review of this decision under 10 U.S.C. § 628. In the alternative, if, and only if, the
   Court determines that it lacks jurisdiction to review the Secretary's deemed denial under
   10 U.S.C. § 628, Plaintiff seeks judicial review of the Secretary's February 23, 2006 final
   agency decision. The Court has jurisdiction to review this decision under 5 U.S.C. § 701
   *et. seq.* or, depending on the construction of the statutory language, 10 U.S.C. § 628.

   b. Review of Defendant's "deemed" denial of Plaintiff's March 22, 2005 SSB request,
   which was received by Defendants' on March 31, 2005. Review would necessarily
   include the decision by the BCNR to deny correction to the Colonel Scovel report.
   Plaintiff seeks judicial review of this decision under 10 U.S.C. § 628. In the alternative,
   if, and only if, the Court determines that it lacks jurisdiction to review the BCNR's
   decision to deny amendment to the Col Scovel report and the Secretary's resulting
   deemed denial under 10 U.S.C. § 628 of Plaintiff's March 22, 2005 SSB application,
   Plaintiff seeks judicial review of BCNR's decision to deny correction to the Col Scovel
   report under 5 U.S.C. § 701 *et. seq.*

## PARTIES

20. Plaintiff is a major on the active duty list currently serving in the United States Marine
   Corps.

21. Defendant, the Honorable Donald C. Winter, is the Secretary of the Navy and is the named
   Defendant in his official capacity only. He is the proper Defendant for causes of action for

6

review of military SSB decisions as well as final decisions issued by the BCNR.

## FACTUAL BACKGROUND

22. On July 12, 2002, the Commandant of the Marine Corps (CMC) issued Marine
Administrative Message (MARADMIN) 371/02 announcing that the Fiscal Year (FY)
2004 Lieutenant Colonel (LtCol) selection board would convene on October 9, 2003. The
MARADMIN identified an individual Marine's responsibilities to ensure his/her record is
accurate when being considered by the selection board. Per the MARADMIN a Marine
should: (1) submit a photograph; (2) complete suggested Professional Military Education
(PME); (3) personally check the Official Military Personnel File (OMPF) and Master Brief
Sheet (MBS); (4) and send copies of any documents that may not yet be reflected in the
file. Per the MARADMIN, each of these items is under the Marine's control and he/she is
"responsible to ensure the accuracy and completeness" of his/her record.

23. Prior to the convening of the FY 2004 LtCol board Plaintiff took the following actions to
ensure the accuracy of his military records. Plaintiff: a) obtained a copy of his OMPF and
MBS; b) reviewed his OMPF to ensure that all fitness reports were contained within the
OMPF; c) reviewed his MBS to ensure that it reflected PME completed; d) ensured that a
current picture was resident within his OMPF; e) wrote a personal statement to the
President of the FY 2004 LtCol selection board, which included information that was not
reflected in Plaintiff's OMPF. Plaintiff ensured that that the letter had been properly
received by the board. Plaintiff consulted with LtCol Poleto, a career counselor, prior to
the convening of the FY 2004 board.

24. Upon request career counselors will review an officer's record and offer an assessment as
to the officer's competitiveness for promotion. Defendants do not maintain any official

7

records concerning the substance of a career counselor's comments to an officer seeking the counselor's advice. One factor that is analyzed is the officer's Value and Distribution score. The Value and Distribution score identifies the number of officers ranked above, below, and with a particular officer.

25. Plaintiff was considered but not selected for promotion by the FY 2004 lieutenant colonel selection board.

26. In March 2003 Plaintiff met with LtCol McLennan, another agency career counselor. According to LtCol McLennan, an officer with a similar number of officers ranked above and below is considered "mid-pack." A "mid-pack" Value and Distribution score is a cause of "competitive jeopardy" when being considered for promotion. A Value and Distribution score reflecting twice as many officers being ranked below as above, is not a cause of competitive jeopardy, although the record may contain other competitive concerns.

27. In the early spring of 2003 Plaintiff also discussed his military record with Col Crowl. Col Crowl worked on the same staff as Plaintiff and offered his assistance to review Plaintiff's record. Col Crowl has served on numerous officer promotion boards and several special selection boards.

28. Based on his own grading philosophy, Col Crowl identified what he believed to be an inconsistency in a report authored by Col Scovel between his written comments and the ranking on the comparative assessment scale. In that report Col Scovel opined that Plaintiff was among the "top 5% of majors [he] had observed in his 22 years of service." The evaluation covered the reporting period from September 1, 1998 through March 15, 1999. Col Scovel marked Plaintiff in the 5th of 8 blocks on the comparative assessment scale in

8

section K.3 of the report.

29. Col Crowl also discussed with Plaintiff the negative inference that could be drawn from a report authored by Capt Davidson in which Plaintiff was ranked "3 of 3" on a "transfer" fitness report.

30. MCO P1610.7D was the performance evaluation system order that was applicable when Capt Davidson authored the report. Per MCO 1610.7D, a rater (first level supervisor known as a reporting senior, or second level supervisor known as a reviewing officer) was required to directly compare the performance of all the officers of the same rank under the rater's supervision on a set schedule, which was either annually or semi-annually. However, if an officer transferred prior to the annual or semi-annual rating period, the rater was only required to write a report on the transferring officer.

31. A transfer report afforded a rater an opportunity to manipulate the performance evaluation system by rating an officer higher in the comparative assessments than was the officer's due without negatively affecting the rankings of the other officers. Manipulation of this type was sufficiently frequent that being ranked last on a transfer report sends a negative signal to a promotion board.

32. Captain Davison, at the time he wrote the report, was unaware that he could have ranked Plaintiff 1 of 3 on the transfer report without impacting on the other officers under his supervision.

33. Neither LtCol Poleto nor LtCol McLennan expressed any opinion that any individual performance evaluation contained within Plaintiff's OMPF was internally inconsistent, inaccurate, or not prepared in accordance with applicable regulations. Neither LtCol Poleto nor LtCol McLennan identified Col Scovel's report as being internally inconsistent.

Neither LtCol Poleto nor LtCol McLennon discussed the negative inference to be drawn from Capt Davidson's ranking Plaintiff 3 of 3 on a transfer fitness report. Neither Lieutenant Colonel Poleto nor Lieutenant Colonel McLennon expressed an opinion that Captain Davidson had falsified the rankings.

34. Based on the content and markings of Colonel Scovel's report on Plaintiff, there was nothing to indicate that Col Scovel would change his grading philosophy when he authored later reports on other officers. Based on the content and markings of Capt Davidson's report, there was nothing to indicate that Capt Davidson had falsified the rankings.

35. LtCol Poleto identified a report authored by LtCol, now General Hagee and currently serving as the Commandant of the Marine Corps (CMC), in which Plaintiff was not ranked as "outstanding" and was listed as among the top ¼ of 38 lieutenants, as being less than positive.    The report was for the period ending December 31, 1989.

36. In preparing for the FY 2005 lieutenant colonel selection board, Plaintiff solicited a number of senior officers, who were familiar with Plaintiff's personal performance, seeking letters of recommendation to bolster the strength of Plaintiff's record. The following individuals provided such letters: Lieutenant General Hanlon, Commanding General Marine Corps Combat Development Command; Brigadier General Composto, Commanding General, Marine Corps Base, Quantico; Colonel R. Favors, Marine Corps Base, Quantico, and Colonel D.L. Wright, Marine Corps Base, Quantico.

37. It is not unusual for officers being considered for promotion to obtain letters of recommendation from senior officers.

38. Plaintiff also sought to obtain letters from General Hagee; Col Scovel; and Capt (now Mr.) Davidson in an attempt to ameliorate the negative inferences that a selection board might

draw from their reports or otherwise place their markings and comments in context.

39. It is not unusual for officers to seek letters of clarification from previous raters in an attempt to place remarks or rankings contained within a fitness report in context in an effort to lessen any negative inferences that can be drawn from a particular report. This is especially true after an officer has been considered but not selected for promotion by a prior promotion board.

40. In July 2003, Plaintiff attempted to obtain a letter of clarification from CMC concerning the report identified by LtCol Poleto. General Hagee, declined to provide a letter based on his belief that providing such a letter would unduly influence a selection board based on his position as CMC.

41. Capt Davidson provided a letter, dated April 3, 2003. In the letter Capt Davidson did not merely place the ranking in context. In the letter Capt Davidson admitted that "[a]t the time of the report [Plaintiff] was the more accomplished officer of the three and [Capt Davidson] should have ranked [Plaintiff] 1 of 3." In the letter Capt Davidson states that he "ranked [Plaintiff], who was already a regular officer, behind the two other officers, both of whom were [reserve officers], in an effort to increase their chances for augmentation."

42. Col Scovel provided a letter dated September 2, 2003, concerning a report written by Col Scovel on the Plaintiff for the reporting period ending March 15, 1999. In the letter Col Scovel admitted that he had inflated his grading philosophy since writing the report on Plaintiff. Specifically, Col Scovel now equates a "top 5%" comment to a mark in the 7th of 8 blocks in section K.3 of the report. Col Scovel marked Plaintiff in the 5th block of section K.3 of the report.

**BCNR Orders Correction of Capt Davidson Report Despite CMC Denial Recommendation.**

43. On May 6, 2003, Plaintiff submitted a petition to the Board for Correction of Naval Records (BCNR) seeking correction of the Captain Davidson report, to reflect a ranking of "1 of 3" instead of "3 of 3". Plaintiff's petition included a copy of Capt Davidson April 3, 2003 letter.

44. Plaintiff submitted his request through the Marine Corps' Performance Evaluation Board (PERB) as required by Secretary of the Navy Instruction 5420.193. The PERB acts on behalf of the Commandant of the Marine Corps (CMC). The operation of the PERB is governed by Marine Corps Order (MCO) 1610.11C.

45. A Marine "may appeal any report that he or she believes is incorrect, inaccurate, or in violation of the policies and instructions in [MCO P1610.7E] once the report is a matter of official record." A Marine "may appeal any report that they believe is not per established performance evaluation policy, inaccurate or unjust."

46. CMC, through the PERB, recommend denial of Plaintiff's petition by memorandum dated July 16, 2003. CMC determined that Captain Davidson "made a moral and conscious decision to rank [Plaintiff] as '3 of 3'." CMC found that "the report is both administratively correct and procedurally complete as written and filed." CMC believed that the performance evaluation [] was done accurately, timely, and based on the reporting official's knowledge **at the time."** CMC placed reliance on the fact that (then) Major Wilk, Capt Davidson's superior, endorsed the report and "included absolutely no disagreement in the '3 of 3' breakout."

47. Per the provisions of MCO 1610.7D, Col Wilk, as the reviewing officer, was required to make an independent assessment of Plaintiff's performance. He was required to make an

independent assessment of the rankings.

48. By letter of August 12, 2003. Plaintiff submitted his response to CMC's recommendation to BCNR who would make a final decision on Plaintiff's petition. Plaintiff's submission included a statement from (now) Col Wilk.

49. Col Wilk previously served a tour in the Marine Corps Performance Evaluation Review Branch. He reviewed PERB petitions in the past as part of his official duties. Based on this experience, he viewed Capt Davidson's admission with a "jaundiced" eye. Col Wilk called Capt Davidson to discuss the assertions made in Capt Davidson's April 3, 2003 letter. After this conversation Col Wilk believed that Capt Davidson had improperly manipulated the rankings.

50. Col Wilk "did not suspect at the time [the report was written] that [Capt Davidson] had manipulated the rankings." Col Wilk "had no basis to question or change [Capt Davidson's] markings" and relied on Capt Davidson's assessment. Col Wilk simply accepted Capt Davidson's rankings without exercising any independent judgment as to the rankings.

51. BCNR twice asked the PERB if it would reconsider Plaintiff's application. BCNR asked the PERB if it would reconsider the Plaintiff's application in light of the additional evidence and argument presented by the Plaintiff in his August 12, 2003. The PERB refused both times.

52. The performance evaluation written by Capt Davidson's was approximately 13 years old at the time Plaintiff filed the petition to correct it. In his petition to the BCNR requesting a change to Capt Davidson's ranking, Plaintiff identified that he discovered the error on March 31, 2003. Plaintiff identified that he did not discover the error until Capt Davidson informed Plaintiff that Capt Davidson inappropriately ranked Plaintiff in an attempt to increase the chances of two other officers for augmentation. Plaintiff noted that he had not

spoke with Capt Davidson from the time Plaintiff left the "8th Marine Regiment in approximately May 1991 until 2003."

53. The Secretary determined that Plaintiff's petition was "timely" within the meaning of 10 U.S.C. § 1552. The Secretary did not waive the limitations period in the interest of justice as he is allowed to do under 10 U.S.C. § 1552(b). 10 U.S.C. § 1552(b) requires the filing of an application to correct a military record within three years after discovery the error.

54. On August 23, 2003, BCNR granted Plaintiff's application. BCNR directed that the rankings on the Captain Davidson's report be changed to reflect that Plaintiff was appropriately ranked "1of 3". BCNR directed that Plaintiff's failure of selection before the FY 2004 board be expunged.

55. Changing the markings to reflect that Plaintiff was "1 of 3" instead of "3 of 3" changed Plaintiff 's Value and Distribution score to reflect five officers marked above him, ten marked below him and two marked with him. This change improved Plaintiff's military record.

56. Even though BCNR directed the correction of the Captain Davidson report, the BCNR was not required to remove Plaintiff's failure of selection to lieutenant colonel.

57. BCNR ordered removal of Plaintiff's failure of selection by the FY 2004 lieutenant colonel board because the presence of the uncorrected report caused Plaintiff to be considered by the FY 2004 board in an unfair manner.

## Secretary Denies Plaintiff's Request for SSB Based on Capt Davidson Report.

58. On September 16, 2003, Plaintiff requested that he be considered for promotion by a Special Selection Board (SSB) as relief from the FY 2004 LtCol selection board's

consideration of Capt Davidson's falsified report. This request was sent to the Secretary through the Commandant of the Marine Corps (CMC).

59. SSB requests are of an "interactive nature." Because of this "interactive nature", those persons responsible for processing SSB requests may contact the requestor to clarify any questions about the request.

60. By letter dated February 16, 2004, CMC recommended to the Secretary of the Navy that Plaintiff's petition for a SSB be denied based on his view that Plaintiff failed to exercise "reasonable diligence" to ensure the accuracy of his record prior to the convening of the FY 2004 lieutenant colonel selection board. In the analysis section of the memorandum, CMC concludes that Plaintiff "reasonably should have known the nature of the ranking" and should have taken steps to correct the report before the convening of the FY 2004 board. The fifth paragraph of the memo is labeled "Conclusion." CMC concluded that Plaintiff's

> "request does not meet the requirements for a special selection board per [SECNAVINST 1401.1B]; he failed to exercise due diligence to ensure his record was substantially accurate and complete before the convening of the board."

61. CMC's recommendation for denial rests solely on Plaintiff's alleged failure to exercise "reasonable diligence." CMC does not recommend denial based on an alleged lack of "materiality" of the change of the rankings.

62. On April 16, 2004 Secretary adopted CMC's February 16, 2004 recommendation without further comment or analysis. Secretary adopted the CMC's rationale as the agency's final decision.

63. The decision does not identify any objective criteria that were used to reach the "reasonable diligence" determination. CMC's failure to provide any objective criteria made it impossible for the Secretary of the Navy to make a reasoned decision in denying Plaintiff's

request for an SSB.

64. CMC's denial recommendation to the Secretary of the Navy based on a failure to exercise reasonable diligence is inconsistent with CMC's initial position that the admission from Captain Davidson provided an insufficient basis to change the report. If Plaintiff had sought an amendment to the Capt Davidson report prior to Capt Davidson's admission that he falsified the rankings, CMC, through the PERB, would not have amended the report. This is proven by the fact that CMC did not amend the report even when provided with Capt Davidson's admission. CMC cannot rationally recommend denial based on Plaintiff's alleged failure to contest the point at an earlier point in time when Plaintiff was unaware of the falsification given that CMC did not change the report even with knowledge of the falsification. This flaw must be imputed to the Secretary's final decision.

65. The CMC's denial recommendation based on "reasonable diligence" is also inconsistent with the Secretary's decision that Plaintiff's petition to change Captain Davidson's report was timely filed with the BCNR.

66. The CMC's denial recommendation and the Secretary of the Navy's denial of Plaintiff's request for a SSB based on "reasonable diligence" violates 10 U.S.C. § 1552(a) (4) as the Secretary of the Navy had previously determined that the Plaintiff timely filed his petition with BCNR to change Captain Davidson's report.

**Plaintiff Submit's Privacy Act Request Seeking Basis for Denial of SSB Request.**

67. Plaintiff filed a Privacy Act (5 U.S.C. § 552a) (PA) request on May 5, 2004, seeking the documents contained in Plaintiff's SSB file, which is maintained by Headquarters Marine Corps, Manpower, Promotions Branch (MMPR). SSB files are records within the meaning of the PA. Ms. Tracy Ross was the PA coordinator that handled Plaintiff's request.

68. Plaintiff hoped to obtain the objective criteria upon which Secretary based his conclusion that

Plaintiff failed to exercise reasonable diligence.

69. On or about June 7, 2004, Ms. Susan Reed, an Officer Special Selection Specialist and Defendants' employee working in Headquarters Marine Corps, Code MMPR, told Plaintiff that a legal memorandum was filed in Plaintiff's SSB file. At that time, MMPR routinely filed legal opinions in the SSB files.

70. On or about June 7, 2004, Plaintiff told Ms. Susan Reed that Plaintiff believed that the Secretary's April 14, 2004 decision was flawed. In response Ms. Susan Reed informed Plaintiff that he should submit a request for reconsideration identifying the deficiencies in the Secretary's decision.

71. As of June 22, 2004, the legal memorandum was still contained within Plaintiff's SSB file. Per his request, Plaintiff was allowed to physically view his SSB file on September 27, 2004. The legal memorandum was not present in Plaintiff's SSB file at that time.

72. On September 29, 2004, Plaintiff sent a letter to Ms. Tracy Ross identifying that the legal memorandum had been removed and specifically asked for its production. On November 5, 2004, Defendants denied Plaintiff a copy of the legal memorandum. Defendants reply stated that the legal memorandum was not filed in a PA file but was filed in a "general and administrative record file", which was not covered by the PA. Access to the legal memorandum was then denied based on a (b)(5) exception under the Freedom of Information Act (5 U.S.C. 552) (FOIA).

73. Plaintiff requested reconsideration citing to several e-mails between Plaintiff and Ms. Reed and Mr. Sunday, both Defendants' employees within MMPR, indicating that the legal memorandum had been filed in Plaintiff's SSB file. Plaintiff also cited to his belief that it had been MMPR's standard practice to file the legal opinion in the SSB files.

74. On December 3, 2004, Ms. Tracy Ross, the FOIA/PA coordinator handling the request responded that she "confirmed with knowledgeable personnel in MMPR that the subject

17

SJA memo had indeed been filed into [Plaintiff's] Special Selection Board Request file . . .

a nonexempt System, the SJA memo must be disclosed to [Plaintiff] in its entirety."

75. Defendants removed the legal memorandum from Plaintiff's SSB file and placed it into a

"general and administrative record file" after receiving Plaintiff's PA May 5, 2004 request.

76. Prior to August 17, 2005, Defendants never averred to Plaintiff that the legal memorandum

had been misfiled. If Defendants had merely misfiled the SJA memorandum, it would not

have been subject to release under the PA.

77. On December 3, 2004, Defendant provided Plaintiff a copy of a legal memorandum

authored on behalf of the Staff Judge Advocate (SJA) to the Commandant, "SJA TO CMC

COMMENT ON MMPR-1 r/s of 5 Dec 03" dated December 18, 2003.


**Plaintiff Requests Reconsideration of SSB Denial Based on SJA Factors and is Denied.**

78. The SJA's legal opinion identified eight criteria for determining "reasonable diligence."

The *only* factor analyzed was career counselor contact. The legal memo concluded "[n]o

evidence suggests that [Plaintiff] contacted a career counselor prior to the board. Applying

the [8 identified factors], we conclude that [Plaintiff] did not exercise reasonable

diligence."

79. CMC considered the SJA's opinion prior to issuing his recommendation to deny Plaintiff's

September 16, 2003 SSB request. The SJA's memorandum was a factor in CMC's

ultimate recommendation that that Plaintiff failed to exercise "reasonable diligence."

80. Defendants have not published any requirement that an officer being considered for

promotion by a selection board must see a career counselor before the convening of the

board. Defendants have not published a requirement for an officer to provide evidence of

career counselor contact as a prerequisite for requesting a SSB or as a prerequisite for CMC

to recommend a SSB.

81. On February 7, 2005, Plaintiff submitted a request for reconsideration of the Secretary's decision based on, *inter alia*, the fact that Plaintiff did see a career counselor. Defendants acknowledge that Plaintiff met with a career counselor prior to the convening of the FY 2004 selection board.

82. On March 17, 2005, Capt Gaffney spoke with Plaintiff concerning his February 7, 2005, request for reconsideration. Capt Gaffney was an attorney within the Office of the SJA to CMC whose duties included the review of SSB requests. Capt Gaffney asked Plaintiff how he had obtained the letter from Capt Davidson. Plaintiff explained that he sought statements from several officers, to include Capt Davidson, Col Scovel, and General Hagee (CMC), in an effort to put a "gloss" on the markings and comments contained within their reports. Plaintiff identified to Capt Gaffney that Capt Davidson did more than place a "gloss" on the rankings by admitting that he falsified the report.

83. After explaining how he had obtained the Capt Davidson letter to Capt Gaffney, Plaintiff sent an e-mail to LtCol Carberry, Capt Gaffney's superior, identifying that Plaintiff had spoken with Capt Gaffney. In his e-mail Plaintiff noted Defendants' characterization of the SSB process as "interactive." In that e-mail Plaintiff also requested an opportunity to address any further questions or concerns about his request. LtCol Carberry responded that "[i]f we need anything cleared up, we'll give you a ring." Neither Defendants nor any of his agents further contacted Plaintiff with any questions or concerns about his request.

84. On July 25, 2005, CMC issued a recommendation to deny Plaintiff's request for reconsideration. In his recommendation CMC questions why Plaintiff did not discover the error at an earlier point in time given the frequency of Plaintiff's review of his record. CMC states that Plaintiff did not state why Capt Davidson chose to admit the falsification after such a long time and after Plaintiff failed selection for promotion. CMC opines that there were other competitive concerns within Plaintiff's record. CMC asserts that Plaintiff

"should have reasonably known the nature of the rankings and he should have taken appropriate steps to highlight or correct the fitness report prior to the FY 04 USMC Lieutenant Colonel Board convening." The recommendation concludes that Plaintiff "failed to exercise reasonable diligence to ensure his record was substantially accurate and complete before the convening of the board and has not provided any additional information to refute the [original] decision." CMC does not recommend denial based on "materiality."

85. Plaintiff filed his original Complaint on August 17, 2005. Several days before filing that Complaint, Plaintiff spoke with LtCol Carberry to ascertain the status of Plaintiff's SSB request. LtCol Carberry told Plaintiff that his request was then with the Navy's Judge Advocate General (Code 13), Administrative Law Branch. Based on his conversation with personnel within Code 13, LtCol Carberry indicated to Plaintiff that a final decision should be issued on his request within a matter of weeks.

86. As part of their official duties, attorneys assigned to Code 13, review requests for reconsideration of previously denied SSB petitions.

87. In his February 7, 2005, request for reconsideration, Plaintiff noted that "[b]ecause the error in this case involved the reporting senior's intentional falsification of a fitness report coupled with the reviewing officer's failure to exercise independent judgment concerning the rankings, it was impossible to detect the mistake until the reporting senior admitted his wrongdoing."

88. Defendants have not published any requirement for an applicant requesting an SSB to explain how a statement was obtained. Plaintiff provided Defendants' agent, Capt Gaffney, with a specific explanation of how Plaintiff obtained the statement. It was evident from Plaintiff's application that he had contacted Capt Davidson and was consistent with Plaintiff's contacting CMC for a personal statement.

20

89. By opining that there were other competitive concerns in Plaintiff's record, CMC admits that the rankings were a competitive concern.

90. CMC's April 15, 2005 recommendation that Plaintiff "should have reasonably known the nature of the rankings" ignores the evidence cited by Plaintiff that contradicts this view. Plaintiff specifically cited to the fact that he had contacted a career counselor prior to the convening of the FY 2004 board, that BCNR considered Plaintiff's application to correct the Capt Davidson report to be timely, Col Wilk did not suspect the falsity of Capt Davidson's ranking and did not exercise independent judgment in his endorsement of the rankings, the report in question was a "transfer" report, and the presumption of regularity. CMC's recommendation did not address one of these issues.

91. Defendant received Plaintiff's SSB application, dated February 7, 2005, on February 9, 2005.

92. As of August 9, 2005, Defendants had neither issued a decision nor convened a SSB to consider Plaintiff's case.

93. The Secretary issued a final agency decision on Plaintiff's SSB application on February 23, 2006. The Secretary concurred with CMC's recommendation. While continuing to assert that Plaintiff failed to exercise reasonable diligence, the Secretary also determined that the change to the Capt Davidson report was not "material" and found that this provided an additional basis to deny Plaintiff's SSB application. The Secretary's April 14, 2004 denial was not based on "materiality."

94. The Secretary's concurrence of CMC's recommendation necessarily means that the Secretary has adopted CMC's recommendations as part of the final agency decision.

95. The Secretary's final decision ignores the evidence cited by Plaintiff that contradicts the Secretary's conclusion concerning "reasonable diligence." Plaintiff specifically cited to the fact that he had contacted a career counselor prior to the convening of the FY 2004 board,

that BCNR considered Plaintiff's application to correct the Capt Davidson report to be timely, Col Wilk did not suspect the falsity of Capt Davidson's ranking and did not exercise independent judgment in his endorsement of the rankings, the report in question was a "transfer" report, and the presumption of regularity. The Secretary's decision did not address even one of these issues.

96. The Secretary did not address Plaintiff's claim that denying Plaintiff's request for reconsideration violated 10 U.S.C. § 1552(a)(4) based on his decision of August 26, 2003 determination to correct the rankings on the Capt Davidson report and expunge Plaintiff's failure of selection by the FY 2004 lieutenant colonel board.

97. Defendants treated Plaintiff's February 7, 2005 request as a new request. Defendants did not limit their review to the issues previously decided by the Secretary in his April 14, 2004 decision. Defendants made a *de novo* review of Plaintiff's SSB application.

98. In reaching the determination in his February 23, 2006 decision that the change in the rankings was not material, the Secretary notes that:

> "there is no evidence that, at the time the report was written, the reporting senior failed to consider all issues pertaining to the three first lieutenants he was evaluating. To the contrary, the fitness report was accurate, and based on the reporting senior's opinion at the time. Subsequent regret over the consequence of a ranking decision does not alone constitute material error and reconsideration after the fact, motivated by an individual failing of selection, does not form the basis for granting a Special Selection Board."

99. In the PERB's recommendation of July 16, 2003, to deny Plaintiff's request to correct the rankings on the Captain Davidson report, notes the following points:

a. "the PERB concluded that the report is administratively correct and procedurally complete as written and filed."

b. "Captain Davison obviously considered all issues pertaining to the three First Lieutenants on whom he was writing."

c. "Opinions may change and waver with time. However, reconsideration after the fact, or those motivated by an individual failing selection, should not be used to change a performance evaluation that was done accurately, timely and based on the reporting

official's knowledge *at the time*."

100. The Secretary's February 23, 2006 rationale regarding materiality is essentially the same as the PERB's rationale for recommending denial of Plaintiff's request to change the rankings on the Capt Davidson report.

101. The PERB's July 16, 2003 recommendation was enclosure (2) to BCNR's August 26, 2003 decision regarding Plaintiff's request to correct the rankings on the Captain Davidson report. BCNR, acting on behalf of the Secretary, ordered correction of the Captain Davidson report noting that

> "[u]pon review and consideration of all the evidence of record, and not withstanding the contents of [the PERB's July 16, 2003 recommendation], the Board finds an injustice warranting the requested fitness report modification and removal of [Plaintiff's] failure of selection to lieutenant colonel."

102. The Secretary's August 26, 2003 decision to correct the Capt Davidson report specifically rejects the rationale adopted by the Secretary in his February 23, 2006 decision.

103. When BCNR directed the correction of the Captain Davidson report, the BCNR was not required to remove Plaintiff's failure of selection to lieutenant colonel. BCNR ordered removal of Plaintiff's failure of selection by the FY 2004 lieutenant colonel board because the presence of the uncorrected report caused Plaintiff to be considered by the FY 2004 in an unfair manner.

104. MCO P1610.7D was the applicable order regulating the issuance of fitness report at the time Captain Davidson authored his report on the Plaintiff. Per MCO P1610.7D, a reporting senior is required to write an observed fitness report if the length of the reporting period is greater than 90-days. A reporting senior has discretion to either write an observed or not observed fitness report if the reporting period is less than 90-days.

105. Per Department of Defense Instruction 1320.11, if the decision of an original selection

board involved a factual or administrative error, or if the board lacked some material information for consideration, and the officer, having maintained reasonably, did not discover the error or omission, the Secretary is required to convene a SSB to consider the officer's case.

106. Defendants are required to follow directives and instructions issued by the Secretary of Defense.

## Col Scovel Report –BCNR Denial to Correct and Secretary's Deemed SSB Denial.

107. On December 3, 1998, the Marine Corps "Performance Evaluation System (PES) [ ] changed completely, creating a new paradigm requiring an entirely new approach to performance reporting." MCO P1610.7E governs the present performance evaluation system. Under this new system, an officer's first level supervisor called a "reporting senior" develops a "Rating Senior Profile." This profile gives relative value to every report ever written by the [reporting senior]." This is also true of the second level supervisor, known as a "reviewing officer." These profiles are considered "dynamic" because they develop over time. "The relative value of each report is based on how the report compares to the [rater's] rating history for a given grade." Because the [rater's] profile is a snapshot of the [rater's] rating history, [raters] must understand the significance of the need for their rating philosophy to remain consistent throughout their career." MCO P1610.7E states that:

> "[reporting officials] must accurately and fairly assess the performance of their subordinates; **[reporting officials] who fail to do so will unwittingly and _unfairly_ _discriminate_ against either earlier reports or subsequent reports."**
> . . .
> Reporting seniors who attempt to change their rating philosophy may either positively or negatively affect the relative value of reports for MROs they previously rated. Para. 8012.2(e)(2). **When the rater changes his philosophy and grades higher, he will diminish the value**

**of all preceding reports ever written.**

108. Plaintiff submitted Col Scovel's September 2, 2003, letter to the FY 2005 lieutenant colonel selection board. Plaintiff was not selected for promotion by the FY 2005 board.

109. On December 9, 2004, Plaintiff submitted an application to BCNR, through the PERB, seeking to correct the comparative assessment rating on the Col Scovel report. The basis for the request was Col Scovel's change in rating philosophy since he acted as the reviewing officer of Plaintiff's report. Col Scovel at the time he authored the report thought Plaintiff was among the "top 5% of majors [he] had observed in his 22 years of service" and marked Plaintiff in the 5th block of section K.3 of the fitness report believing at the time that this was consistent with a "top 5%" comment. Col Scovel now marks officers whose performance rates a "top 5%" comment in the 7th block of section K.3.

110. CMC, through the PERB, recommended denial of the request by memorandum dated January 28, 2005. CMC found that the performance appraisal written by Col Scovel was correct at the time it was written. CMC found that Col Scovel's letter was merely an endorsement for promotion and not an official request to change Plaintiff's record. However, the PERB noted that such a request would not have made a difference in the decision. CMC notes the importance of a consistent grading philosophy citing to Marine Corps Order MCO P1610. 7E (Performance Evaluation System Manual) subparagraph 8012.2, which discusses the rater's "Profile Dynamics." CMC reasoned that the report should remain in Plaintiff's Official Military Personnel File (OMPF) as written.

111. Plaintiff exercised his right to respond to BCNR from the PERB's decision through a filing of March 22, 2005. Plaintiff demonstrated that he was entitled under Defendants' regulations to a corrected report. Plaintiff also demonstrated that the requested correction was material and that Plaintiff was reasonably diligent in ensuring the accuracy of his

records prior to the convening of the FY 2005 board. This entitled Plaintiff, under

Department of Defense Instruction 1320.11, to a SSB.

112. Plaintiff's March 22, 2005 submission included another letter from Col Scovel, dated

February 17, 2005, requesting official change to Plaintiff's record. Col Scovel opined in

his letter to officially request a change to the report that:

> "Failure to change the report unfairly colors [Plaintiff's] performance
> because of the new evaluation system's reliance on comparative
> assessments. Those who may look at [Plaintiff's] record now or in the
> future would be misled as to his performance during that period and as to
> his potential. This is not fair to the Marine or the Marine Corps, which
> relies on the performance evaluation system to make a myriad of
> personnel decisions. [Plaintiff] has a right to an accurate evaluation. The
> marking should be changed."

113. Col Scovel's change in grading philosophy over time is in violation of the policies and

instructions contained in MCO P1610.7E. Further, the report gives an inaccurate portrayal

of Plaintiff's performance. Because Col Scovel changed his grading philosophy by grading

higher on later reports, Plaintiff was unfairly discriminated against under the definition of

Defendants' own order. Colonel Scovel's report on Plaintiff became inaccurate over time

as Colonel Scovel inflated later reports by assigning a higher comparative assessment for

equivalent performance. In order for an earlier report to accurately reflect the performance

of an officer, the rater cannot inflate later reports of other officers.

114. Plaintiff's March 22, 2005, submission to the BCNR also included a letter from Col J.E.

McCown. Col McCown was a member of the FY 2005 LtCol selection board. Col

McCown states that if Col Scovel's markings had been accurate, the resulting

> "shift in the over/under numbers would have altered, in [Plaintiff's] favor,
> one of the key criterion used in making selection decision and would have
> increased the possibility of his selection."

115. On September 4, 2003, which was the date the FY 2005 LtCol selection board convened,

Plaintiff, under the current performance evaluation system, had approximately 47 officers ranked above him, 59 officers with him and 48 officers below him.

116. A record with a similar number of officers ranked above and below is not competitive

117. If Col Scovel's report were corrected as requested by Plaintiff in his March 22, 2005 request to BCNR, Plaintiff's record on September 4, 2003, would have had approximately 17 officers ranked above him, 44 officers ranked with him, and 94 officers below him.

118. A record with five times the numbers of officer below as above is very competitive.

119. Plaintiff included the figures identified in paragraphs 115 and 117 in his March 25, 2005 submission and explained how they were derived.

120. CMC issued Marine Administrative Message (MARADMIN) 332/03 announcing the FY 2005 LtCol selection board. The MARADMIN identified an individual Marine's responsibilities to ensure his/her record is accurate when being considered by the selection board. Per the MARADMIN a Marine should: (1) submit a photograph; (2) complete suggested Professional Military Education (PME); (3) personally check the Official Military Personnel File (OMPF) and Master Brief Sheet (MBS); (4) and send copies of any documents that may not yet be reflected in the file. Per the MARADMIN, each of these items is under the Marine's control and he/she is "responsible to ensure the accuracy and completeness" of his/her record.

121. In his March 25, 2005 submission, Plaintiff submitted evidence that he met the criteria listed in MARADMIN 332/03. Specifically, Plaintiff demonstrated that he a) obtained a copy of his Official Military Personnel File (OMPF) and Master Brief Sheet (MBS); b) reviewed his OMPF to ensure that all fitness reports were contained within the OMPF; c) reviewed his MBS to ensure that it reflected he was PME complete; d) ensured that a current picture was resident within his OMPF;  e) wrote a personal statement to the

President of FY 2005 selection board, including various enclosures, and ensured that that the materials had been properly received by the board. Plaintiff also submitted evidence that he consulted with a career counselor before the FY 2005 selection board.

122. When processing the request to alter Capt Davidson's report, BCNR obtained an advisory opinion from MMOA-4 on the effect the change would have on the competitiveness of Plaintiff's record. BCNR did not obtain an advisory opinion concerning the effect on the competitiveness of Plaintiff's record based on a change to Col Scovel's report.

123. On September 1, 2005, a three-member panel of the BCNR considered Plaintiff's request. BCNR concluded that Plaintiff's evidence "was insufficient to establish the existence of probable material error or injustice." The "Board substantially concurred with the comments contained in the report of the PERB". The "Board found no defect in [Plaintiff's] performance record" although the BCNR noted that Plaintiff "may submit [Col Scovel's] letters to future selection boards."

124. In cases denying an application without a hearing, BCNR must issue its determination in writing and include a brief statement of the grounds for denial. 32 C.F.R. 723.3(e)(3). When denying an application for relief, BCNR is required to issue a statement that "shall include the reasons for the determination that relief should not be granted, including the applicant's claims of constitutional, statutory and/or regulatory violations that were rejected, together with all the essential facts upon which the denial is based." 32 C.F.R. 723.3(e)(4).

125. The PERB based its recommendation to deny Plaintiff's request, at least in part, on its view that Col Scovel merely had a change in perception over time of Plaintiff's performance. BCNR failed to address Plaintiff's contention that Col Scovel's perception of

Plaintiff's performance had not changed but that it was Col Scovel's grading philosophy

that had changed. BCNR failed to address Plaintiff's claim that Col Scovel's failure to

adhere to the requirements of MCO P 1610.7E to not change his grading philosophy

resulted in Plaintiff's fitness report being inaccurate.

126. BCNR's authorization to submit Col Scovel's February 17, 2005 and September 2, 2003

letters to future boards constitutes an acknowledgement that Col Scovel's fitness report is

inaccurate and unjust. Submitting Col Scovel's letters to future boards is not the equivalent

of making an official change to Col Scovel's report.

127. BCNR relies on a presumption of regularity to support the official actions of public

officers and, in the absence of substantial evidence to the contrary, will presume that they

have properly discharged their official duties. 32 C.F.R. 723(e)(2).

128. The PERB relies on the presumption of regularity to support official actions of public

officers. To rebut the presumption before the PERB, a petitioner must produce "relevant

evidence tending to prove that the allegations contained in the application are more likely

true than not."

129. BCNR uses a lower standard of proof to rebut the presumption of regularity to support

the acts of public officials. As such, BCNR may not simply adopt the conclusion of the

PERB that an applicant failed to produce sufficient evidence to rebut the presumption. As

BCNR uses a lower standard, it must weigh the evidence anew.

130. Neither MARADMIN 371/02 nor 332/03 requires or suggests that an officer being

considered for promotion contact previous raters to ascertain if they authored false

performance evaluations. Neither MARADMIN requires or suggests that an officer being

considered for promotion contact previous raters to ascertain if they were following

applicable regulations by not changing their grading philosophy when authoring later
performance evaluations.

131. Defendants have not published any regulation or guidance that requires or suggests that
an officer being considered for promotion contact their previous raters to determine if they
falsified reports or otherwise failed to adhere to applicable regulations in writing later
reports.

132. Plaintiff's March 22, 2005 SSB request was received by Defendants on March 31, 2005.
As of the date of this Amended Complaint, the Secretary neither convened a special
selection board nor denied consideration by such a board.

### COUNT I
(Captain Davidson Report)
(Failure to Provide SSB for FY 2004 Board)
(Jurisdiction based on Secretary's deemed denial under 10 U.S.C. § 628)

133. The allegations contained in paragraphs 1 through 9, 19 through 106, and 130 through
131 are incorporated herein by reference.

134. Federal law permits the Defendants to convene a special selection board (SSB) when the
previous action of a promotion board was contrary to law, involved material error of fact or
material administrative error, or the board did not have material information before it for its
consideration. 10 U.S.C. 628. The Defendant's implementing regulations, Secretary of the
Navy Instruction 1401.1B, states that any error of fact or administrative/procedural error
that is more likely than not to have deprived the officer concerned of a fair and impartial
consideration by the board is a material error. Furthermore, any information that, when
properly recorded in, or removed from, an officer's record would have been essential to a
substantially accurate, complete and fair portrayal of the officer's career is material

information. A Court of the United States may review a determination by the Defendants

not to convene a SSB under 10 U.S.C. § 628. The Court may set aside the Defendant's

determination if the Court finds the determination to be (i) arbitrary or capricious; (ii) not

based on substantial evidence; (iii) a result of material error of fact or material

administrative error; or (iv) otherwise contrary to law. The changing of Captain Davidson's

report to reflect that Plaintiff was properly ranked 1 of 3 instead of 3 of 3 on a transfer

report had a material effect on Plaintiff's record. Plaintiff was also reasonably diligent in

ensuring the accuracy of his military records prior to the convening of the FY 2004

lieutenant colonel selection board. Defendants are required to convene a SSB in such

circumstances to consider whether Plaintiff should be selected for promotion based on his

corrected military record. Defendants' deemed denial of Plaintiff's request for a SSB is

arbitrary and capricious, not based on substantial evidence, a result of material error of fact

or material administrative error, or is contrary to law.

### COUNT II
(Captain Davidson Report)
(Failure to Provide SSB for FY 2004 Board)
(Jurisdiction based on Secretary's February 23, 2006 denial under 5 U.S.C. § 701 *et. seq.* or
10 U.S.C. § 628)

135. The allegations contained in paragraphs 1 through 9, 19 through 106, and 130 through

131 are incorporated herein by reference.

136. Count II is pled in the alternative. Specifically, if any only if, the Court finds that it lacks

jurisdiction to review the Secretary's deemed denial of Plaintiff's application for an SSB

(Count I), Plaintiff seeks judicial review of the Secretary's February 23, 2006 final agency

decision to deny Plaintiff's SSB application. The Court has jurisdiction to review this

decision under 5 U.S.C. § 701 *et. seq.*, or, depending on the construction of the statutory

language, 10 U.S.C. § 628. As the standards under both statutes are so similar, Plaintiff

31

does not list a separate count for each jurisdictional statute.

137. Paragraph 134 is incorporated herein by reference except that Count II seeks judicial review of the Secretary's February 23, 2006 final agency decision regarding Plaintiff's February 7, 2005 SSB application as opposed to the Secretary's deemed denial of that application. The decision by the Secretary in refusing to provide Plaintiff with consideration by a SSB, was either

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law; or

(E) unsupported by substantial evidence;

and the decision therefore violated the provisions of the Administrative Procedures Act, 5 U.S.C. § 706. This unlawful action denied Plaintiff his right under 10 U.S.C. § 628 to consideration by a SSB. In the alternative, the Secretary's decision is arbitrary and capricious, not based on substantial evidence, a result of material error of fact or material administrative error, or is contrary to law under the provisions of 10 U.S.C. § 628.

### COUNT III
(Colonel Scovel Report)
(Failure to Provide SSB for FY 2005 Board)
(Jurisdiction based on Secretary's deemed denial under 10 U.S.C. § 628)

138. The allegations contained in paragraphs 1 through 4, 10 through 21, and 107 through 132 are incorporated herein by reference.

139. Federal law permits the Defendants to convene a special selection board (SSB) when the previous action of a promotion board was contrary to law, involved material error of fact or

material administrative error, or the board did not have material information before it for its

consideration. 10 U.S.C. 628. The Defendant's implementing regulations, Secretary of the

Navy Instruction 1401.1B, states that any error of fact or administrative/procedural error

that is more likely than not to have deprived the officer concerned of a fair and impartial

consideration by the board is a material error. Furthermore, any information that, when

properly recorded in, or removed from, an officer's record would have been essential to a

substantially accurate, complete and fair portrayal of the officer's career is material

information. A Court of the United States may review a determination by the Defendants

not to convene a SSB. The Court may set aside the Defendant's determination if the Court

finds the determination to be (i) arbitrary or capricious; (ii) not based on substantial

evidence; (iii) a result of material error of fact or material administrative error; or (iv)

otherwise contrary to law. BCNR's denial of Plaintiff's request to correct the Colonel

Scovel report violated this standard. Because of BCNR's improper decision, the Secretary,

after receipt of a complete application for a SSB, neither convened a special board nor

denied consideration by such a board. Plaintiff's demonstration that correction to the

Colonel Scovel report was warranted, that the amendment was material, and that Plaintiff

exercised reasonable diligence in ensuring the accuracy of his military record prior to the

convening of the FY 2005 lieutenant colonel board, entitled Plaintiff to be considered by a

SSB. Defendants' deemed denial of Plaintiff's request for a SSB is arbitrary and

capricious, not based on substantial evidence, a result of material error of fact or material

administrative error, and is contrary to law.

### COUNT IV
(Colonel Scovel Report)
(Failure to Correct Colonel Scovel Report by BCNR)
(Jurisdiction based on 5 U.S.C. § 701 *et. seq.* )

140. The allegations contained in paragraphs 1 through 4, 10 through 21, and 107 through 132

are incorporated herein by reference.

141. Count IV is pled in the alternative to Count III. Paragraph 139 is incorporated herein by

reference except that Count IV seeks judicial review only of BCNR's decision denying

correction to the Colonel Scovel report. Specifically, if any only if, the Court finds that it

lacks jurisdiction to review the Secretary's deemed denial of Plaintiff's application for an

SSB, to include the BCNR's underlying denial to correct the Colonel Scovel report, under

10 U.S.C. § 628, Plaintiff seeks judicial review of BCNR's September 2, 2005 denial of

Plaintiff's request to correct the colonel Scovel report. The action by the BCNR, acting for

the Defendants, in refusing to provide any relief to Plaintiff, was either

   (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

   (B) contrary to constitutional right, power, privilege, or immunity;

   (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

   (D) without observance of procedure required by law; or

   (E) unsupported by substantial evidence;

and the BCNR's decision therefore violated the provisions of the Administrative Procedures

Act, 5 U.S.C. § 706. This unlawful action denied Plaintiff his right under 10 U.S.C. § 1552, to

have his records corrected by the BCNR when an injustice or error had actually occurred.


## Requested Relief

WHEREFORE, Plaintiff prays that this Court

a. Set aside Defendants' determination not to correct the Colonel Scovel report and order

the Defendants to correct Plaintiff's record to accurately reflect Plaintiff's performance

under Colonel Scovel's current grading philosophy by changing the comparative

assessment in block K.3 of the report by marking Plaintiff in the 7th block instead of the 5th

block.

b. Set aside Defendant's deemed denial of Plaintiff's February 7, 2005 application for an SSB and remand the case back to Defendants who shall provide Plaintiff with consideration by a SSB as he was considered in an unfair manner by the FY 2004 lieutenant colonel board and the board lacked material information about Plaintiff's performance or, in the alternative, set aside Defendant's February 23, 2006 denial of Plaintiff's February 7, 2005 application for an SSB and remand the case back to Defendants who shall provide Plaintiff with consideration by a SSB as he was considered in an unfair manner by the FY 2004 lieutenant colonel board and the board lacked material information about Plaintiff's performance;

c. Set aside Defendants' deemed denial of Plaintiff's March 22, 2005, request for an SSB and remand the case back to Defendants who shall provide Plaintiff with consideration by a SSB as he was considered in an unfair manner by the FY 2005 lieutenant colonel board and the board lacked material information about Plaintiff's performance ;

d. Order other equitable and statutory relief that this Court deems appropriate;

e. Award to Plaintiff, against Defendants, payment of all costs incurred in this action, as well as attorney's fees expended by the Plaintiff in obtaining legal advice on the filing of this case.

Respectfully submitted,

J. L. McGrady
Plaintiff
820 Bright Street
Fredericksburg, Virginia 22401
540.371.3792

35

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of May, 2006 I, J. L. McGrady, sent by first class U.S. mail, postage prepaid, a copy of Plaintiff's Amended Complaint to the following addresses:

Clerk of Court
United States District Court
for the District of Columbia
333 Constitution Ave., NW
Washington DC 20001

Donald C. Winter, Secretary of the Navy
Office of the General Counsel
Navy Litigation Office
720 Kennon Street SE Bldg 36, Rm 233
Washington Navy Yard DC 20374-5013

Department of the Navy
Office of the General Counsel
Navy Litigation Office
720 Kennon Street SE Bldg 36, Rm 233
Washington Navy Yard DC 20374-5013

Mr. K. L. Wainstein
U.S. Attorney for the District of Columbia
555 4th St. NW
Washington, DC 20530

Honorable Alberto Gonzalez
U.S. Department of Justice
950 Pennsylvania Avenue
Washington DC 20530-0001

J. L. MCGRADY
Plaintiff
820 Bright Street
Fredericksburg, Virginia 22401
540.371.3792