# Attachment A



**DEPARTMENT OF THE NAVY**
**HEADQUARTERS UNITED STATES MARINE CORPS**
**2 NAVY ANNEX**
**WASHINGTON, DC 20380-1775**

MCO P1610.7E
MMSB-30
3 Dec 98

<u>MARINE CORPS ORDER P1610.7E W/ERRATUM AND CH 1-9</u>

From:   Commandant of the Marine Corps
To:     Distribution List

Subj:   PERFORMANCE EVALUATION SYSTEM (SHORT TITLE:  PES)

Ref:    (a) U.S. Navy Reg. 1990, art. 1129
        (b) MARCORMAN, par 2500.3

Encl:   (1) LOCATOR SHEET

Report Required:  USMC Fitness Report (Report Symbol EXEMPT), par. 1001

1.  <u>Purpose</u>.  To publish the policies, procedures, and standards for the
operation and maintenance of the Marine Corps Performance Evaluation System,
and the submission of fitness reports on sergeants through major generals as
required by references (a) and (b).

2.  <u>Cancellation</u>.  MCO P1610.7D.

3.  <u>Background</u>

    a.  The fitness report provides the primary means for evaluating a
Marine's performance to support the Commandant's efforts to select the best
qualified personnel for promotion, augmentation, resident schooling, command,
and duty assignments.  The completion of fitness reports is a critical
responsibility.  Inherent in this duty is the commitment of our commanders
and all reporting officials to ensure the integrity of the system by giving
close attention to accurate marking and timely reporting.  Every commander
and reporting official must ensure the scrupulous maintenance of this
evaluation system.  Inaccurate marking only serves to dilute the actual value
of each report.

    b.  The Performance Evaluation System (PES) has changed completely,
creating a new paradigm requiring an entirely new approach to performance
reporting.  All commanders, reporting officials, and Marines reported on
(MROs) must completely familiarize themselves and comply with the significant
policy changes contained herein.

DISTRIBUTION STATEMENT A:  Approved for public release; distribution is
unlimited.

MCO P1610.7E
3 Dec 98

4. <u>Effective Date.</u>  1 January 1999.

5. <u>Summary of Revisions</u>.  This Manual not only represents a new Performance Evaluation System but also significant policy and administrative changes that require a complete review.

    a. <u>Fitness Report Form</u>

        (1)  Section A, ADMINISTRATIVE INFORMATION:  Contains basic administrative information.  If available, the automated system downloads much of the data from the Marine Corps Total Force System (MCTFS) and populates the appropriate block in the section.

        (2)  Section B, BILLET DESCRIPTION:  Focuses on the essential elements of the MRO's billet in specific and concise terms.  The Reporting Senior (RS) and the MRO must meet at the beginning of the reporting relationship to establish and formalize a billet description for the MRO.

        (3)  Section C, BILLET ACCOMPLISHMENTS:  Highlights the MRO's significant results and achievements during the reporting period.

        (4)  Sections D through G comprise 4 categories consisting of 13 attributes with definitions and descriptors called Performance Anchored Rating Scales (PARS) that completely define the attribute and levels of performance.  The PARS contain:

            (a) Visible marking gradients that recognize the inherent high quality of our Marines and focus the RS's attention while assigning marks.

            (b) Built in fire walls to protect against inflation.  High and adverse marks must include verifiable, substantive, and quantifiable (where possible) justifications.  This Headquarters reviews and returns reports with unjustified marks.

        (5)  Section H measures the extent to which an officer, as a reporting official, conducted or required others to conduct accurate and timely evaluations.

        (6)  Restricted space and requirement for narrative comments cause the reporting senior (RS) to focus attention on actual performance.

            (a) Comments must be in a bulletized text format.

            (b) Use of UPPERCASE, <u>underlining</u>, "quotation marks," **boldface,** *italics*, and nonstandard punctuation (#!&%?...) in exclamation are not authorized.

        (7)  Section K, REVIEWING OFFICER COMMENTS, formalizes the Reviewing Officer's (RO's) role.  The RO must:

MCO P1610.7E

    (a) Take corrective action to prevent inaccurate reporting and late submission of reports.

    (b) If sufficient observation exists, make a comparative assessment evaluation of all Marines of the MRO's grade whose professional abilities are known to the RO and make comments concerning the MRO's potential.

   (8) Intra-unit comparative markings are eliminated.

   (9) Maximum use of automation capabilities enhance PES procedures, processes, and accountability.

  b. <u>Reporting Senior Profile</u>

   (1) The RS profile, a snapshot of the RS's grading history, reflects all reports written by the RS for each grade and includes all reporting occasions except academic, end of service, and not observed reports.

   (2) Data base maintains a profile for each RS reflecting his or her rating history.

   (3) The RS's reporting history for a particular grade determines the relative value of a specific report.

   (4) The RS profile also reflects the number of reports submitted late by the RS.  The profile highlights reports received after 60 days from the end of the reporting period.

   (5) Reporting senior profiles will not be reset.

  c. <u>Procedures and Policies</u>

   (1) MRO Worksheet initiated to establish a clear understanding between the RS and MRO of the RS's expectations.  The MRO may use the worksheet to identify (at the end of the reporting period), major accomplishments, PME/self education endeavors and other information for consideration by the RS.

   (2) Master Brief Sheets include a summary for each report reflecting the relative value of the report based on the RS's reporting history for that grade.

   (3) Upon entering the primary promotion zone, an officer's RS profile is included in his or her Official Military Personnel File (OMPF) provided to the promotion board.

   (4) Unit Diary date gap notification advisories implemented for Active and Reserve reporting units.

   (5) Increased emphasis on the role of the senior enlisted advisors to accomplish the objectives of the PES.

3

MCO P1610.7E

    (6)  Civilians in the grade of GS-9/equivalent or above, may be reporting officials if senior to the MRO.

    (7)  Submission of fully observed reports required for academic and training duty lasting 90 or more days, detailing all aspects of a Marine's performance, potential, and professional character, as appropriate.

    (8)  Requirement to report body fat percentage when the MRO's reported weight exceeds the maximum allowable standard.  A body fat percentage exceeding the standard has adverse implications.

    (9)  Any assignment to either the Weight Control or Military Appearance Programs must be reported and is considered adverse.

    (10)  Any failure of a scheduled PFT during the reporting period must be reported and is considered adverse.

    (11)  Instructions on reporting procedures established for reservists performing Active Duty Special Work (ADSW) orders.

    (12)  New occasion code "Change of Status (CS)" created for members of the Selected Marine Corps Reserve who transfer to the Individual Ready Reserve (IRR) or when IRR members complete an ADSW assignment lasting 31 days or longer.

    (13)  New occasion code "From Temporary Duty (FD)" created to recognize the termination of temporary duty or ADSW orders lasting 31 days or longer.

    (14)  Option to omit End of Service (EN) fitness report for Marines retiring or transferring to the Fleet Marine Corps Reserve (FMCR), unless adverse.

    (15)  Requirement to forward reports prepared within an operational battalion or squadron via the unit's command element.

    (16)  Revised annual fitness report submission schedule supports promotion board schedules.

    (17)  A gap of 31 days or longer constitutes a date gap in performance records.

    (18)  Requirement to report all disciplinary action via a DC report.

    (19)  Reporting requirements for drug offenses and alcohol related issues redefined.

    (20)  Reporting requirements for Marines in a UA or deserter status redefined.

    (21)  Facsimile (FAX) instructions and policy defined.

MCO P1610.7E

(22)  Policy compliance measures established for early identification of, and initiation of corrective action for, reporting officials displaying undesirable reporting trends.

6.  <u>Recommendations</u>.  Submit recommendations concerning the Performance Evaluation System to the Commandant of the Marine Corps (MMSB-30) via the chain of command.

7.  <u>Action</u>.  Commanders must ensure that they, all reporting officials, and Marines (sergeant and above) under them are well versed in the spirit and intent of this Manual.

8.  <u>Certification</u>.  Reviewed and **approved this date**.

C. E. MUTTER

DISTRIBUTION:  PCN 10202100000

    Copy to:  7000130 (75)
              7000110 (75)
              7000093/8145001 (2)
              7000099, 144/8145005 (1)

5

PERFORMANCE EVALUATION SYSTEM

CHAPTER 1

CONCEPTS AND OVERVIEW

1001.  **SCOPE**

1.  The Marine Corps Performance Evaluation System (PES) provides for the periodic reporting, recording, and analysis of the performance and professional character of Marines in the grades of sergeant through major general.  Its fundamental concepts are accuracy, accountability, simplicity, and consistency of policy and evaluation methods.  Achieving these concepts requires standardization of the evaluation chain, supervision throughout the system, and the education of all participants in the system.  Reporting seniors document their observations and assessment of the performance and character of a Marine on the USMC Fitness Report, NAVMC 10835A-E and NAVMC 11297 (Addendum Page), see Appendixes B and C.  The fitness report document, through written communication to the Commandant of the Marine Corps (CMC), provides a history of a Marine's performance and potential.

→ **NOTE:**  You may access the blank fitness report via the locally installed Windows Front End (WinFE) Application, Version 3.0, which can be downloaded from the Personnel Management Support Branch (MMSB), Headquarters Marine Corps website at https://www.mmsb.usmc.mil.  You may also access a FormFlow version of the form from the Marine Corps Electronic Forms System (MCEFS), http://www.hqmc.usmc.mil/ar/recmgmt.nsf.  The fitness report, addendum page, and the graphic on page five are listed separately on this website.

The fitness report is:

    a.  A vital portion of a Marine's Official Military Personnel File (OMPF) held at Headquarters Marine Corps (HQMC) by the Personnel Management Support Branch (MMSB).

    b.  Not a communication to, nor a counseling document for, the Marine.

2.  The PES comprises the policies, procedures, and responsibilities for the preparation, processing, and maintenance of fitness reports.  Reports must provide accurate and complete profiles of the professional qualities of Marines.

3.  For purposes of brevity, this Manual uses the term reporting officials to simultaneously refer to the reporting senior (RS), the reviewing officer (RO), and the third officer sighter when appropriate.  Abbreviations:

    a.  RS's and RO's mean possessive forms.

    b.  RSs and ROs mean plural form.

    c.  MRO refers to the Marine reported on.

1002.  **PURPOSE**.  Primarily, the PES supports the centralized selection, promotion, and retention of the most qualified Marines of the Active and Reserve Components.  Secondarily, the PES aids in the assignment of personnel and supports other personnel management decisions as required.

# Attachment B

1003                    PERFORMANCE EVALUATION SYSTEM

1003. **OBJECTIVES OF THE SYSTEM**.  For a credible and accurate recording of the history of an individual's performance, the PES must accomplish the following objectives:

1. **Accurate Fitness Reports**.  The evaluation must:

    a.  Reflect an assessment of performance of assigned duties and responsibilities against an understood set of requirements, individual capacity, and professional character.

    b.  Center on individual performance during a designated period of observation.

    c.  Report fact and the reporting official's objective judgments based on Marine Corps standards; not conjecture.

    d.  Ensure narrative portions of the evaluation are clear in their meaning and free of ambiguities and innuendoes.

2. **Preventing Inflation**.  Countering inflation begins with the reporting officials, specifically the RS and RO, who must accurately report a Marine's performance.

    a.  The design of this report limits the ability of RSs to unjustifiably or artificially inflate a Marine's performance.

    b.  Reports must be based on a Marine's performance vice sociability. Reporting officials can inadvertently render these controls ineffective by preparing and submitting fitness reports that fail to adhere to both the letter and the spirit of this Manual.

3. **Timely Receipt**.  Timely receipt of fitness reports (within 30 days of the end of the reporting period) by HQMC ensures complete and accurate updates of Marines' OMPFs.  As a leadership responsibility, reporting officials and commanders must ensure timely submission of fitness reports.

4. **Ensuring Complete Records**.  The submission of administratively and procedurally correct fitness reports will expedite processing, thereby ensuring a complete, continuous record of each Marine's performance and potential.

5. **Providing Information for Selection Boards**.  Fair and accurate personnel management decisions require complete fitness report records for all Marines. The culmination of accurate, fair, and timely fitness reports is a documented history of individual performance and potential required by HQMC selection boards.

1004. **SIGNIFICANCE OF THE FITNESS REPORT**.  The Commandant's guidance for the PES is:  "The completed fitness report is the most important information component in manpower management. It is the primary means of evaluating a Marine's performance. The fitness report is the Commandant's primary tool

1-4
Ch 9

available for the selection of personnel for promotion, retention, augmentation, resident schooling, command, and duty assignments.  Therefore, the completion of this report is one of an officer's most critical responsibilities.  Inherent in this duty is the commitment of each reporting senior and reviewing officer to ensure the integrity of the system by close attention to accurate marking and timely reporting.  Every officer serves a role in the scrupulous maintenance of this evaluation system, ultimately important to both the individual and the Marine Corps.  Inflationary markings only serve to dilute the actual value of each report, rendering the fitness report ineffective. Reviewing officials will not concur with inflated reports."

1005.  **KEY CONCEPTS**

→ 1.  **Fairness**.  The fitness report is a communication between reporting officials and the CMC, via the commander with oversight responsibilities (see paragraphs 1007.4 and 2007).  Reporting officials must provide fair and thorough evaluations.

   a.  Reviewing officers and commanders must take active roles in mentoring and communicating with RSs when an RS has not adhered to the spirit and intent of this Manual.

   b.  Influence or pressure by ROs or commanders to modify fitness report marks or comments is unacceptable, except to ensure that reporting officials adhere to Marine Corps policy.

2.  **Focus**.  The fitness report is a documentation of observations and assessments of individual performance, personal qualities, character, and potential to serve at a more senior level.  The fitness report is not:

   a.  A disciplinary tool.

   b.  A lever to exert influence.

   c.  A counseling document for the MRO.

3.  **Measurement**.  Reporting seniors must evaluate against missions, duties, tasks, and standards as communicated by the RS to the MRO.  Measure Marines against known Marine Corps values and soldierly virtues, not against a personal set of precepts and unreasonable expectations.

4.  **Ethics**.  Professional ethics constitute one of the foundations of the PES. Reporting officials must preserve the high standards of Marine Corps integrity and moral courage.  Personal biases have absolutely no place in the process.

5.  **Avoiding Zero Defects**.  Reporting officials must consider that Marines develop by having the latitude to make mistakes.  Reporting officials must encourage initiative, aggressiveness, creativity, courage, and development of warfighting skills and not dampen them by fear of making mistakes.  Attaining perfection certainly is a legitimate goal, but rarely is it a reality.  The realistic goal is to experience, learn, and grow professionally.

# Attachment C



Headquarters, U.S.    MCO P1400.31B
Marine Corps    PCN 10201150100

---

# MARINE CORPS PROMOTION MANUAL, VOLUME 1 OFFICER PROMOTIONS (SHORT TITLE: MARCORPROMMAN, VOL 1, OFFPROM)

DISTRIBUTION STATEMENT A:  Approved for public release; distribution is unlimited

---



**DEPARTMENT OF THE NAVY**
**HEADQUARTERS UNITED STATES MARINE CORPS**
**2 NAVY ANNEX**
**WASHINGTON, DC 20380-1775**

MCO P1400.31B
MMPR-1
22 Feb 2000

MARINE CORPS ORDER P1400.31B

From:   Commandant of the Marine Corps
To:     Distribution List

Subj:   MARINE CORPS PROMOTION MANUAL, VOLUME 1, OFFICER
        PROMOTIONS (SHORT TITLE: MARCORPROMMAN, VOL 1, OFFPROM)

Encl:   (1) LOCATOR SHEET

1.  Purpose.  To promulgate the basic instructions relating to the
administration of officer promotions in the United States Marine
Corps.

2.  Cancellation.  MCO P1400.31A.

3.  Background

    a. Officers are selected for promotion for their potential to
carry out the duties and responsibilities of the next higher grade
based upon past performance as indicated in their official military
personnel file. Promotions should not be considered a reward for past
performance, but as incentive to excel in the next higher grade.

    b. This Manual is designed to provide detailed information on all
aspects of the officer promotion system.  The information contained
herein is applicable to active-duty list and Reserve active-status
list officers.  In the event this Manual contradicts higher authority
guidance, the latter supersedes this Manual.

4.  Summary of Revision.  This is a complete revision of the previous
Manual, and should be reviewed in its entirety.  Symbols to denote
deleted, revised, or added chapters/paragraphs are not reflected.
This volume contains the most recent amendments to the Defense
Officer Personnel Management Act (DOPMA), the Reserve Officer
Personnel Management Act (ROPMA), the Warrant Officer Personnel
Management Act (WOPMA), and title 10, U.S. Code.

5. Recommendations.
Recommendations for changes to the Manual are invited and should be
submitted via the appropriate chain of command to:

**DISTRIBUTION STATEMENT A:  Approved for public release;
distribution is unlimited**

MCO P1400.31B
22 Feb 2000

COMMANDANT OF THE MARINE CORPS (MMPR-1)
HEADQUARTERS, UNITED STATES MARINES CORPS
HARRY LEE HALL
17 LEJEUNE ROAD, QUANTICO, VA 22134-5104

6.  Reserve Applicability.  This Manual is applicable to the Marine Corps Reserve.

7.  Certification.  Reviewed and approved this date.

T. P. MURRAY

By direction

DISTRIBUTION:  PCN 10201150100

Copy to:  7000110  (55)
          7000128  (30)
          7000027, 119  (5)
          7000060, 093, 116, 122, 130, 138/8145004  (2)
          7000006, 024, 025, 144/8145001  (1)

2

for promotions to captain through colonel.  AR warrant officers compete within their same MOS for promotion to CWO3 through CWO5.

5.  Specialist Officers.  The paramount prerequisite of this program is that the individual possesses unusual talent that would not be available within the Regular Marine Corps in the event of national mobilization. Specialist Officers are appointed to meet mobilization needs and are not required to perform active duty obligation except in the event of a national emergency.


1011.  ZONES


1.  The promotion zone is defined as a promotion eligibility category consisting of officers from the most senior to the most junior officer eligible for consideration before a selection board in the same grade and competitive category.  SecNavInst 1420.1_ and section 623 of title 10, U.S. Code require that before the convening of selection boards to consider officers for promotion to any grade above first lieutenant, the Secretary of the Navy shall establish a promotion zone for officers serving in each grade and competitive category to be considered by the selection board.

2.  Company and Field Grade Officers.  For the grades of CWO2 through CWO5 and captain through colonel, three primary promotion zones exist: above-zone, in-zone, and below-zone.

    a.  Above-Zone (Above the Promotion Zone).  Above-zone officers have been previously considered in the in-zone population, and not selected for promotion by a regularly scheduled board.  These officers will incur an additional failure(s) of selection if not selected by the selection board.

    b.  In-Zone (Promotion Zone).  In-zone officers have neither failed of selection for promotion nor have been removed from a promotion list.  In-zone officers consist of the primary eligible population for consideration by the selection board, and if not selected, the officer will incur a failure of selection.  It is common to have officers whose lineal precedence falls within the above-zone population, but are in-zone officers.  These officers will be given the same consideration as any other in-zone case. This zone is used to generate the authorized number of officers to select and the selection opportunity.

    c.  Below-Zone (Below the Promotion Zone).  Below-zone officers are junior to the junior officer in the promotion zone.  Below-zone officers are eligible for consideration, but if not selected, they will not incur a failure of selection.  Not all

# Attachment D

CHAPTER 4

POST-BOARD ACTIONS

4000.  UNDERLINE_BOARD REPORT.  Upon completion of deliberations, a selection board report will be prepared by Personnel Management Division (MMPR) in accordance with DoDInst 1320.14_.  The board report contains a list of all selectees and the following administrative documents as specified in the precept: statistical analysis; precept; a list of the officers eligible for consideration for promotion; notice of convening; promotion plan; sampling of records; and an update material log.  The board report must be signed and certified by each board member and recorder.

4001.  UNAUTHORIZED RELEASE OF BOARD PROCEEDINGS.  Sections 616(e) and 14104 of title 10, U.S. Code, DoDInst 1320.14_, and SecNavInst 1412.9_ prohibit the disclosure of the proceedings of selection boards to any person not a member of a board.  In addition, SecNavInst 1420.1_ further states that no member of a selection board may counsel officers who failed of selection by that board.  Board presidents are charged to brief the members and recorders of the board, both upon convening and immediately prior to adjournment, that proceedings, deliberations, materials, and any other information pertaining to the board are not releasable except as authorized by the Secretary of the Navy, the Secretary of Defense, or the President.  Officers who fail of selection before a board may be counseled by the Officer Career Counseling Section, Officer Assignment Branch (MMOA-4) or the Reserve Career Management Team, Reserve Affairs (RAM-6), as appropriate.

4002.  FAILURE OF SELECTION

1.  Definition.  An officer in a grade below colonel who is in or above the promotion zone established for the grade and competitive category under sections 574, 623, and 14302 of title 10, U.S. Code and is considered but not selected for promotion by a selection board convened under section 573, 611(a), and 14101(a) of title 10, U.S. Code shall be considered to have failed of selection for promotion.

2.  Effects.  Such officers will continue to be considered by subsequent selection boards until they retire, separate, or are selected for promotion.  First lieutenants who twice fail of selection to captain will not be considered by subsequent boards.  Officers who have twice failed of selection for promotion may be subject to mandatory separation, retirement, or removal from the

# Attachment E



**DEPARTMENT OF THE NAVY**
OFFICE OF THE SECRETARY
1000 NAVY PENTAGON
WASHINGTON, D.C. 20350-1000

SECNAVINST 1401.1B
Pers-26
Pers-93
25 April 1997

SECNAV INSTRUCTION 1401.1B

From:   Secretary of the Navy
To:     All Ships and Stations

Subj:   SPECIAL PROMOTION SELECTION BOARDS FOR COMMISSIONED AND
        WARRANT OFFICERS IN THE NAVY AND MARINE CORPS

Ref:    (a)  SECNAVINST 1421.7B (NOTAL)
        (b)  Title 10, United States Code
        (c)  SECNAVINST 1420.1A
        (d)  DoD Directive 1320.11 of 6 May 96, Special Selection
             Boards (NOTAL)
        (e)  SECNAVINST 1401.3
        (f)  SECNAVINST 1920.6A

1.  <u>Purpose</u>.  To set forth revised requirements to convene
special selection boards to consider officers and warrant
officers eligible for promotion in or above the promotion zone
who were either not considered by a selection board, or who were
considered, but due to defects in the board's proceedings as to
them, did not receive lawful or proper consideration.  This
instruction is a complete revision and should be reviewed in its
entirety.  Symbols to denote deleted, revised or added paragraphs
are not reflected.

2.  <u>Cancellation</u>.  SECNAVINST 1401.1A.

3.  <u>Applicability</u>

    a.  The provisions of this instruction are applicable to
officers on the active duty lists, the reserve active status
lists, and the warrant officer active duty lists in the Navy and
Marine Corps.  Special promotion selection boards for officers on
the active duty lists are authorized only in cases where the
promotion selection board in question convened on or after 15
September 1981, and for officers on the reserve active status
lists only in cases where the promotion selection board in
question is convened on or after 1 October 1995.

    b.  Special selection boards for officers on the reserve
warrant officer active status lists are covered in reference (a).



SECNAVINST 1401.1B

2 5 APR 1997

4. <u>Definitions</u>.  The following definitions apply throughout this instruction.

a. <u>Promotion Selection Board</u>.  A board convened under 10 U.S.C. §611 or §14101 and the annual promotion plans to consider for promotion to the next higher grade officers in the Navy or Marine Corps (except Naval Reserve Warrant officers).

b. <u>Special Selection Board</u>.  A selection board convened under 10 U.S.C. §628 or §14502 to consider for promotion officers who either were not considered by a promotion selection board as a result of error, or who were considered, but due to defects in the board's proceedings as to them did not receive lawful or proper consideration.

5. <u>Background</u>

a. References (b) and (c) prescribe rules and procedures for convening promotion selection boards to consider eligible officers on the active duty lists, the reserve active status lists and on the warrant officer active duty lists of the Navy and Marine Corps for promotion to the next higher grade.  When, because of administrative error, the record of an officer in or above the promotion zone is not considered by a promotion selection board, the Secretary of the Navy (SECNAV) is required to convene a special selection board under §628 and §14502 of reference (b), as implemented by reference (d), to consider that officer for promotion.

b. SECNAV is authorized by §628 and §14502 of reference (b), and encouraged by paragraph D2 of reference (d), to convene a special selection board to consider cases of officers who were in or above the promotion zone before a promotion selection board, but not selected, if SECNAV determines that the action of that board was contrary to law, or involved material error of fact or material administrative error, or that the board lacked some material information for consideration.

c. Requests for special selection boards may be initiated by an individual officer.  Requests will be considered and approved per paragraph 17.

6. <u>Policy</u>

a. Special selection boards will be used only to consider the records of officers, and make recommendations to SECNAV with regard to selection for promotion, in cases where an error or omission precluded an officer's consideration, or proper

2

SECNAVINST 1401.1B
2 5 APR 1997

consideration, by a promotion selection board.  Correction of an error in an officer's record, after the officer incurs a failure of selection by the promotion selection board that was affected by the error, will not necessarily be the basis for convening a special selection board.

b.  A special selection board will not be convened to consider any officer who, through the exercise of reasonable diligence, might have discovered and corrected the error or omission in the official record prior to convening the promotion selection board that considered, but did not select the officer.

7.  <u>Officers Not Considered Due to Administrative Error</u>

a.  SECNAV shall, upon determination that an administrative error prevented consideration of an officer's record before a promotion selection board, convene a special selection board to consider the record of the officer concerned.  The Chief of Naval Operations (CNO) or the Commandant of the Marine Corps (CMC), as appropriate, or their respective designee, shall provide narrative comments and recommendations, as appropriate, for consideration by SECNAV in making determinations under the provision of this paragraph.

b.  Failure to submit the record of an officer to the promotion selection board for that officer's grade and competitive category prior to the date that the board adjourned and forwarded its report to SECNAV shall constitute administrative error if:

(1) The officer was on, or subject to placement on, the active duty list, the reserve active status list or the warrant officer active duty list, of the Navy or Marine Corps on or before the date the board convened, and

(2) The officer should have been considered by the board as an in-zone or above-zone eligible officer.

8.  <u>Officers Considered by a Promotion Selection Board, but not Recommended for Promotion</u>

a.  A special selection board may be convened when SECNAV determines that an officer on the active duty list, the reserve active status list, or the warrant officer active duty list, was not recommended for promotion by a promotion selection board as an in-zone or above-zone eligible because:

3

SECNAVINST 1401.1B
25 APR 1997

(1) The promotion selection board, which considered the officer for promotion, acted contrary to law;

(2) The action of the promotion selection board involved material error of fact or material administrative error; or

(3) The promotion selection board did not have material information before it for its consideration.

b. A determination that a promotion selection board acted contrary to law, that material error of fact or material administrative error occurred, or that material information was not considered by a promotion selection board, shall be made by SECNAV. SECNAV will consider the comments and recommendations of the CNO or CMC, as appropriate, or their respective designee. All requests for SECNAV determination shall be reviewed by the Judge Advocate General (JAG). JAG shall provide advice to SECNAV concerning any question of law, or mixed question of law and fact, that JAG determines has been raised by a request or by the comments and recommendations made on the request.

c. The following principles apply regarding SECNAV determinations under subparagraph 8a:

(1) Any act of a promotion selection board that violates §575, §616, or §14108 of reference (b) is contrary to law.

(2) Any act of a promotion selection board that deprives the officer concerned of a constitutional or statutory right is contrary to law.

(3) Any error of fact or administrative/procedural error that is more likely than not to have deprived the officer concerned of a fair and impartial consideration by the board is a material error.

(4) Any information that, when properly recorded in, or removed from, an officer's record would have been essential to a substantially accurate, complete, and fair portrayal of the officer's career is material information.

d. Officers have a duty to review their records periodically to ensure their records are complete and accurate. Records that provide a substantially accurate, complete, and fair portrayal of the officer's career are especially important when that officer is being considered for selection for promotion. An officer's request for consideration by a special selection board must

4

SECNAVINST 1401.1B

2 5 APR 1997

detail the steps the officer took to ensure the completeness and accuracy of the official record prior to the convening of the board which considered, but failed to select, the officer.

e.  If an officer has failed of selection for promotion to the next higher grade before a promotion selection board more than once, and if more than one of these failures involved the same error as determined under subparagraph 8a, the officer's case normally shall be considered by only one special selection board.  This special selection board will be approved for the first promotion selection board that was affected by the same error, unless the officer specifies the particular board for which relief is sought, or other circumstances exist indicating that relief for a subsequent board is more appropriate.

9.  <u>Sampling of Records</u>.  The CNO and the CMC shall take appropriate action within their respective services to ensure the preparation by promotion selection boards of a sampling of records of officers of each competitive category who were recommended for promotion, and records of officers of each competitive category who were not recommended for promotion by the promotion selection board.  They or their respective designees will also prescribe the method by which the sampling of records will be selected for their respective services.  The sampling of records shall enable a special selection board to evaluate an officer's record according to the procedures at paragraph 12b.  Sample records shall be retained for a period of at least seven calendar years.  Written communications to the board by officers whose records are retained will also be retained with the records.  Each board president shall deliver the sampling of records to Chief of Naval Personnel (CNP), or Director, Personnel Management Division (MM), Headquarters, Marine Corps, as appropriate.  CNP and Director, Personnel Management Division, respectively, are designated as the custodians of all sample records retained under this instruction.

10.  <u>Presentation of Records to Special Selection Boards</u>.  The record of an officer presented to a special selection board will be modified as necessary to reflect the record of the officer as it would have appeared to the board that should have considered the officer or, if corrected, would have appeared to the board that considered the officer.  Special selection boards will compare the modified record to the sample records, retained under §628 and §14502 of reference (b), from the corresponding promotion selection board.

5

SECNAVINST 1401.1B
2 5 APR 1997

11.  **Special Selection Board Membership**.  Special selection board membership shall be in accordance with §573, §612, or §14102 of reference (b) and reference (e).

12.  **Special Selection Board Procedures and Reports**

a.  Special selection boards shall be convened by precept, addressed to the president of the board, and signed by SECNAV. The precept will appoint the president and members of the board and will include instructions governing the proceedings of the board.  Guidance issued to a special selection board will be consistent with that provided to the promotion selection board that failed to consider, or failed to properly consider, the officer whose record is before the board for consideration.  All guidance shall be approved by SECNAV.

b.  The sample of records provides a relative base from which special selection boards determine which eligible officers, in the opinion of a majority of the members of the board, are fully qualified for promotion and when compared to the officers whose sample records were considered:

(1) Are better qualified for promotion than any of the officers who failed of selection for promotion before the promotion selection board; and

(2) Are comparable to those officers who were selected for promotion before the promotion selection board.

c.  Special selection boards shall submit a written board report to SECNAV signed by each member and the recorder of the board, certifying that the board has carefully considered the record of each officer whose name was furnished to it.  The report will contain a list of those officers considered and recommended for promotion and those officers considered and not recommended for promotion.  The report shall be forwarded for approval by an appropriate official via first, CNP (Navy boards); second, CNO or CMC, as appropriate; third, JAG for legal review; and fourth, SECNAV.  Additionally, the board shall notify SECNAV, by separate memorandum, of the name of each officer whose record, in the opinion of a majority of the members of the board, should be required to show cause for retention on active duty or in an active status under §1181 and §14902 of reference (b) and reference (f) because of substandard performance of duty, misconduct, moral or professional dereliction, or because the officer's retention is not clearly consistent with the interests of national security.

6

SECNAVINST 1401.1B
2 5 APR 1997

d.  Except as authorized or required by SECNAV, Secretary of Defense (SECDEF), or the President, the proceedings and report of a special selection board, including specific information regarding the sample records used and how each officer's record was rated, shall not be disclosed to any person not a member or recorder of the board.

13.  Effect of Nonselection

a.  If a special selection board convened under paragraph 7 does not recommend for promotion an officer whose name was furnished to it for consideration as in-zone or above-zone, the officer shall be considered to have failed of selection for promotion.

b.  If a special selection board convened under paragraph 8 does not recommend for promotion an officer whose name was furnished to it for consideration, the officer shall not incur any additional failure of selection.

14.  Promotion of Officer Selected by Special Selection Boards. If the report of a special selection board convened under this instruction, as approved by the President, Secretary of Defense, or SECNAV, as appropriate, recommends for promotion to the next higher grade an officer whose name was furnished to it for consideration, such officer shall, as soon as practicable, be appointed to the next higher grade, unless the officer's appointment is delayed under reference (b).  An officer promoted as a result of the recommendation of a special selection board shall, upon promotion, have the same date of rank, the same effective date for the pay and allowances of that officer's grade, and the same position on the active duty list, the reserve active status list, or the warrant officer active duty list, as that officer would have had if that officer had been recommended for promotion by the promotion selection board for which the special selection board was held that should have considered, or that considered but failed to select, that officer.

15.  Scheduling of Special Selection Boards and Notification of Officers to be Considered

a.  As per paragraph D4 of reference (d), a special selection board, barring extenuating circumstances, such as a heavy caseload, shall be convened and the results made known to affected officers within 180 days after SECNAV determines that a special selection board is warranted.  The results of special selection boards shall be made known to affected officers in a timely manner.

7

SECNAVINST 1401.1B
25 APR 1997

b. Officers to be considered for promotion by a special selection board shall be notified at least 30 days before the board convenes that they will be considered. Such officers shall be provided an opportunity to send written communications to the board in the same manner as that provided for promotion selection boards.

c. If, within 30 days of convening a special selection board, an additional eligible officer is identified, consideration of that officer may be deferred to a subsequent special selection board. Alternatively, the officer may waive the 30-day notice requirement, so long as the eligible officer has an adequate opportunity to communicate with the board. The officer must either exercise the right to communicate in writing with the president of the board or send a written statement (which may be by message) to CNP (Pers-26 or 93), or to Headquarters, Marine Corps (Code MMPR-1), as appropriate, acknowledging the waiver.

d. Communications with special selection boards shall contain only materials referring to events prior to the convening date of the promotion selection board which failed to consider, or to properly consider, the officer. All third party correspondence concerning the officer must be forwarded to the president of the board by that officer. Communications must be received not later than the convening date of the special selection board.

16. <u>Retention of Statistical Data</u>. CNO or CMC, as appropriate, shall calculate and retain the following statistics for each special selection board for seven years:

a. Statistical data regarding the number of officers considered for promotion to each grade;

b. The number of officers selected for promotion to each grade and the number of officers considered, but not selected, for promotion to each grade;

c. The number of officers considered by the special selection board who were not considered by the appropriate promotion selection board due to administrative error; and

d. The number of officers considered by the special selection board on the basis of legal or other material error regarding previous consideration by the appropriate promotion selection board.

8

SECNAVINST 1401.1B

2 5 APR 1997

17. <u>Action</u>

    a.  The CNO or CMC, as appropriate, or their respective designees, shall, unless approved under paragraph 18d, request a Secretarial determination under paragraphs 7 or 8 in any case in which it is alleged or discovered that the circumstances discussed in those paragraphs might warrant referral of the officer's case to a special selection board. In the case of an officer who was previously considered by a promotion selection board, but not selected, CNO or CMC shall forward comments and recommendations for consideration by SECNAV via JAG.  JAG shall thoroughly review each case and provide advice to SECNAV concerning any question of law, or mixed question of law and fact, which JAG determines has been raised by the request or by the comments and recommendations provided.

    b.  The Board for Correction of Naval Records (BCNR) may, in appropriate cases, conclude that an individual's case warrants referral to a special selection board.  In order to ensure consistency and uniformity in the referral of cases to special selection boards, the BCNR shall refer all such cases to CNO or CMC, as appropriate.  CNO or CMC shall forward comments and recommendations concerning the particular case to the Director, BCNR.  If the BCNR concludes from the comments and recommendations that the case warrants a special selection board, the BCNR shall refer the case, including CNO or CMC comments and recommendations, to SECNAV.

    c.  An officer who believes that he or she has been improperly excluded from consideration before a promotion selection board, or who believes that lawful or material error, as described in this instruction, occurred before a promotion selection board in his or her case, will bring supporting information to the attention of the CNO or CMC, as appropriate.

        CNO or CMC, as appropriate, may approve special selection board requests in cases where they can clearly determine an officer was denied consideration by a regular promotion selection board because of an administrative error.  Should reasonable doubt exist, or a recommendation of disapproval be warranted, the cause will be forwarded to SECNAV for a final determination.

SECNAVINST 1401.1B
2 5 APR 1997
18.  <u>Report</u>.  The report required in paragraph 12(c) is
exempt from reports control by SECNAVINST 5214.2B.

Richard Danzig
Acting

Distribution:
SNDL Parts 1 and 2
MARCORPS PCN 71000000000 and 71000000100
BUPERS (Pers-26 and Pers-93, 50 copies each)

SECNAV/OPNAV Directives Control Office
Washington Navy Yard Building
901 M Street SE
Washington DC  20374-5074 (20 copies)

Order from:
Navy Inventory Control Point
Cog "I" Material
700 Robbins Avenue
Philadelphia PA  19111-5098

Stocked:  300 copies

10