## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JACKSON L. MCGRADY,      )
                   )
      Plaintiff        )
                   )
      v.             )     Case Number:  05CV01651 (GK)
                   )
DONALD C. WINTER      )
Secretary of the Navy,      )
et al.,               )
                   )
      Defendants    )

## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment pursuant to Fed.R.Civ.P. 56, because there is no genuine issue as to any material fact and Plaintiff is entitled to judgment as a matter of law.  In support of this motion, Plaintiff relies upon his Amended Complaint and Answer thereto; his Memorandum of Points and Authorities in Support of Plaintiff's Cross-Motion for Summary Judgment; his Memorandum of Points and Authorities in Opposition to Defendants' Cross-Motion for Summary Judgment, if any, the Administrative Record filed by Defendants; and all exhibits filed by the parties in this case.  Plaintiff has also filed with his Cross-Motion for Summary Judgment a Statement of Material Facts to Which There is No Genuine Issue.  In his opposition, Plaintiff has filed a Statement of Material Facts to Which There Exists a Genuine Issue. A proposed Order consistent with this motion is attached hereto.  Plaintiff requests oral argument on the motion.

                                   Respectfully submitted,

J L. MCGRADY
Plaintiff
820 Bright Street
Fredericksburg, Virginia 22401
540.371.3792

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JACKSON L. MCGRADY,                    )
                                       )
       Plaintiff                   )
                                       )
       v.                          )      Case Number:  05CV01651 (GK)
                                       )
DEPARTMENT OF THE NAVY,                )
DONALD C. WINTER, Secretary            )
of the Navy,                           )
                                       )
       Defendants                  )


## PLAINTIFF'S STATEMENT OF MATERIAL FACTS ON WHICH THERE IS NO GENUINE ISSUE

Pursuant to LCvR 56.1, and in support of his Motion for Summary Judgment, Plaintiff now files this Statement of Material Facts for Which There is No Genuine Issue.


1.  On July 12, 2002, the Commandant of the Marine Corps (CMC) issued Marine Administrative Message (MARADMIN) 371/02 announcing that the Fiscal Year (FY) 2004 Lieutenant Colonel (LtCol) selection board would convene on October 9, 2003. AR p. 155.  The MARADMIN identified an individual Marine's responsibilities to ensure his/her record is accurate when being considered by the selection board. AR p. 157, ¶ 4. Per the MARADMIN a Marine should: (1) submit a photograph; (2) complete suggested Professional Military Education (PME); (3) personally check the Official Military Personnel File (OMPF) and Master Brief Sheet (MBS); (4) and send copies of any documents that may not yet be reflected in the file. *Id.* Each of these items is under the Marine's control and he/she is "responsible to ensure the accuracy and

completeness" of his/her record. *Id.*

2. The responsibilities contained in the MARADMIN are exhaustive of an officer's responsibilities in preparing for a promotion board. *See* Amended Complaint ¶ 120 and Answer thereto.

3. Prior to the convening of the FY 2004 LtCol board Plaintiff took the following actions to ensure the accuracy of his military records. Plaintiff: a) obtained a copy of his OMPF and MBS; b) reviewed his OMPF to ensure that all fitness reports were contained within the OMPF; c) reviewed his MBS to ensure that it reflected PME completed; d) ensured that a current picture was resident within his OMPF (AR p. 159); e) wrote a personal statement to the President of the FY 2004 LtCol selection board, including various enclosures, and ensured that that the materials had been properly received by the board. AR p. 161-167[1] (Personal Letter to President of FY 2004 board); AR p. 4, ¶ 12 (detailing actions taken by Plaintiff to ensure accuracy of his record); AR pp. 42-43, ¶¶ 23-25 (detailing actions taken by Plaintiff to ensure accuracy of his record). Plaintiff also consulted with LtCol Poleto, a career counselor, prior to the convening of the FY 2004 board. Amended Complaint ¶ 81 and Answer thereto.

4. Plaintiff was considered but not selection for promotion by the FY 2004 LtCol selection board. Amended Complaint ¶ 25 and Answer thereto.

5. In March 2003, Plaintiff contacted LtCol McLennan, another agency career counselor. Complaint ¶ 12 and Answer thereto.[2]

---

[1] There was a copy error on page 161 of the Administrative Record. Another copy of Plaintiff's letter to the FY 04 selection board is located at page 518 of the Administrative Record.

[2] Defendants' Answer to the Amended Complaint indicated that Defendants lacked knowledge or

6. In May 2003 Plaintiff also discussed his military record with Colonel (Col) Crowl. AR p. 479, ¶ 25; Pl. Ex. 10, p. 64, ¶ 2 (Col Crowl Declaration). Col Crowl worked on the same staff as Plaintiff and offered his assistance to review Plaintiff's record. Pl. Ex. 10, p. 64, ¶¶ 1-2. Col Crowl has extensive experience with promotion board processes. *Id.* at ¶ 3. Based on his own grading philosophy, Col Crowl identified what he believed to be an inconsistency in a report authored by Col Scovel between his written comments and the ranking on the comparative assessment scale. AR p. 479 ¶ 25; Pl. Ex. 10, p. 66, ¶ 10.

7. In that report Col Scovel opined that Plaintiff was among the "top 5% of majors [he] had observed in his 22 years of service." AR p. 588, ¶ K.4 (copy of fitness report). The evaluation covered the reporting period from September 1, 1998 through March 15, 1999. AR p. 584, ¶ 3.b. Col Scovel marked Plaintiff in the 5th of 8 blocks on the comparative assessment scale in section K.3 of the report. AR p. 588.

8. Col Crowl also discussed with Plaintiff the negative inference that could be drawn from a report authored by Capt Davidson in which Plaintiff was ranked "3 of 3" on a "transfer" fitness report. AR p. 119-120; Pl. Ex. 10, p. 66, ¶ 9.

9. Neither LtCol Poleto nor LtCol McLennan mentioned either of the points raised by Col Crowl. AR p. 477, ¶ 20; AR p. 479, ¶ 24. LtCol Poleto identified a report authored by Lieutenant Colonel, now General, Hagee in which Plaintiff was not ranked as "outstanding" and was listed as among the top ¼ of 38 lieutenants, as being less than positive. Pl. Ex. 11, p. 69, ¶ 7.

---

information on this point. Therefore, Plaintiff cites to the original Complaint in which it was admitted by the Defendants.

10. In preparing for the FY 2005 LtCol board, Plaintiff sought and obtained letters of

recommendations from high-ranking agency officials AR pp. 534-539. Based on the comments

of LtCol Poleto and Col Crowl, Plaintiff also sought to obtain letters from General Hagee, Col

Scovel and Capt Davidson addressing their comments and rankings in an effort to ameliorate any

negative inferences. Pl. Ex. 11, p. 68, ¶ 3; *see* Pl. Ex. 10, p. 66, ¶ 9.

11. General Hagee declined to provide a letter of clarification out of a concern that, given his

current position as Commandant of the Marine Corps (CMC), his letter would carry undue

weight with a promotion board. Pl. Ex. 11, p. 69, ¶ 7.

12. Capt Davidson agreed to provide a letter (AR pp. 22-23) but rather than merely place his

markings in context, Capt Davidson admitted that he had falsified the rankings in order to

increase the other officer's chances for augmentation from the reserve forces to the regular

forces. AR p. 22. Specifically, he ranked the Plaintiff as "3 of 3" but admitted that Plaintiff was

properly ranked "1of 3" at the time the report was written. *Id.*

13. Col Scovel provided a letter stating that, although the comment and marking were accurate at

the time of the report, he had inflated his grading philosophy over the intervening years. AR pp.

535-536. Under his current grading philosophy, Col Scovel equates a "top 5%" comment to a

mark in the 7th of 8 blocks. AR p. 536, ¶ 4.


**Count I  (Capt Davidson Report)**

14. On May 6, 2003 based on Capt Davidson's admission, Plaintiff filed an application to the

Board for Correction of Naval Records (BCNR) through CMC's designated representative, the

Performance Evaluation Review Board (PERB), seeking to correct the rankings on the

-4-

performance evaluation. AR pp. 115-126. The PERB acts as the initial action agency for Marine Corps fitness report appeals. Pl. Ex. 5, p. 39, ¶ 4.a. "Neither applicants nor their agents are authorized to appear before the PERB; however, the [PERB] may obtain more information from the applicant, the reporting officials, persons in the chain of command, or anyone thought to have firsthand knowledge of the case." Pl. Ex. 9, p. 54, ¶ 4.b. "The vote of the PERB members is by secret ballot." *Id.* at ¶ 4.c.

15. CMC, through the PERB, recommended denial of Plaintiff's request. AR pp. 129-130. CMC found that "the report is both administratively correct and procedurally complete as written and filed." AR p. 129, ¶ 3. CMC noted the fact that (then) Major Wilk, Capt Davidson's superior, endorsed the report. *Id.* at ¶ 3.b; *see* AR p. 120 (copy of report showing Major Wilk's endorsement).

16. Plaintiff responded to CMC's recommendation, arguing why the decision was incorrect. AR pp. 133-153. Included in Plaintiff's response was a statement from (now) Col Wilk. AR pp. 141-142. Col Wilk previously served a tour in the Marine Corps Performance Evaluation Review Branch and had reviewed PERB petitions in the past. AR p. 141, ¶ 3. Based on this experience, he viewed Capt Davidson's admission with a "jaundiced" eye. *Id.* Because of this, Col Wilk called Capt Davidson to discuss the matter. *Id.* After this conversation Col Wilk believed that Capt Davidson had manipulated the rankings. *Id.* Col Wilk states that he "did not suspect at the time [the report was written] that [Capt Davidson] had manipulated the rankings." AR p. 142, ¶ 4 (Col Wilk Declaration). Further, he "had no basis to question or change [Capt Davidson's] markings" and relied on Capt Davidson's assessment. AR p. 142, ¶ 5. Upon learning of Capt Davidson's falsification, Col Wilk admitted that he simply accepted Capt

-5-

Davidson's rankings without exercising any independent judgment. AR p. 142, ¶ 5.

17. In his submission to the BCNR requesting a change to Capt Davidson's ranking, Plaintiff identified that he discovered the error on March 31, 2003. AR p. 115, ¶ 11.a. Plaintiff identified that he did not discover the error until Capt Davidson informed Plaintiff that Capt Davidson inappropriately ranked Plaintiff in an attempt to increase the chances of two other officers for augmentation. AR p. 115, ¶¶ 10 and 11.b. Plaintiff noted that he had not spoken with Capt Davidson from the time he left the "8th Marine Regiment in approximately May 1991 until 2003." AR p. 118, ¶ 4.

18. Although the performance evaluation written by Capt Davidson's was approximately 13 years old at the time Plaintiff filed his application to correct it, the Secretary determined that Plaintiff's application was "timely". AR p. 56, ¶ 3.b. 10 U.S.C. § 1552(b) requires the filing of an application within three years after discovery the error. The Secretary did not waive the limitations period in the interest of justice as he is allowed to do under 10 U.S.C. § 1552(b).

19. Based on this evidence, BCNR twice asked the PERB to reconsider its position and was refused both times. AR p. 154. BCNR ultimately granted Plaintiff's application and directed that the rankings be changed to reflect that Plaintiff was appropriately ranked "1of 3" and directed that Plaintiff's failure of selection before the FY 2004 board be expunged. AR 61, ¶¶ a and b.

20. On September 16, 2003, Plaintiff requested that he be considered for promotion by a Special Selection Board (SSB) as relief from the FY 2004 LtCol selection board's consideration of Capt Davidson's inaccurate report. AR pp. 1-23. This request was sent to the Secretary through the CMC. *Id.*

21. SSB requests are of an "interactive nature." AR p. 106, ¶ 3. Because of this "interactive nature", those persons responsible for processing SSB requests may contact the requestor to clarify any questions about the request. *Id.*

22. By letter dated April 28, 2004, CMC notified Plaintiff that his request for a SSB had been denied. AR p. 72. Included with the letter was the CMC's MEMORANDUM FOR THE SECRETARY OF THE NAVY, dated 16 Feb 04. AR pp. 73-75. In the analysis section of the memo, CMC concludes that Plaintiff "reasonably should have known the nature of the ranking" and should have taken steps to correct the report before the convening of the FY 2004 board. AR 74, ¶ 4.a. The fifth paragraph of the memo is labeled "Conclusion." CMC concluded that Plaintiff's

> "request does not meet the requirements for a special selection
> board per [SECNAVINST 1401.1B]; he failed to exercise due
> diligence to ensure his record was substantially accurate and
> complete before the convening of the board." AR 74, ¶ 5.

23. On April 16, 2004 the Secretary adopted CMC's recommendation without further comment or analysis. AR p. 75. The decision does not identify any objective criteria that were used to reach the "reasonable diligence" determination. *See* AR 73-75.

24. Plaintiff filed a Privacy Act (5 U.S.C. § 552a) (PA) request on May 5, 2004, seeking the contents of Plaintiff's SSB file, which is maintained by Headquarters Marine Corps, Manpower, Promotions Branch (MMPR). AR p. 76. Plaintiff ultimately received a legal memorandum, dated December 18, 2003, authored by the Staff Judge Advocate (SJA) to CMC. AR pp. 27-30.

25. The SJA's legal opinion identified eight criteria for determining "reasonable diligence." AR pp. 28-29, ¶ 4.d. The only factor analyzed was career counselor contact. *See* AR pp. 28-29. The

legal memo concluded "[n]o evidence suggests that [Plaintiff] contacted a career counselor prior to the board. Applying the [8 identified factors], we conclude that [Plaintiff] did not exercise reasonable diligence." AR p. 29, ¶ 5.c.

26. Defendants have not published any requirement that an officer being considered for promotion by a selection board must see a career counselor before the convening of the board. Amended Complaint ¶ 80 and Answer thereto. CMC has not published a requirement for an officer to provide evidence of career counselor contact as a prerequisite for requesting a SSB or as a prerequisite for CMC to recommend a SSB.[3] Complaint ¶ 50 and Answer thereto.

27. On February 7, 2005, Plaintiff submitted a request for reconsideration (AR pp. 34-180) of the Secretary's decision based on, *inter alia*, the fact that Plaintiff did see a career counselor. AR pp. 41-42, ¶¶ 19-21. Defendants, now, acknowledge that Plaintiff met with a career counselor prior to the convening of the FY 2004 selection board. Amended Complaint ¶ 81 and Answer thereto.

28. On March 17, 2005, Capt Gaffney spoke with Plaintiff concerning his February 7, 2005, request for reconsideration. Pl. Ex. 11, p. 68, ¶ 2; *see* Amended Complaint ¶ 82 and Answer thereto. Capt Gaffney was an attorney within the Office of the SJA to CMC whose duties included the review of SSB requests. Pl. Ex. 11, p. 68, ¶ 2. Capt Gaffney asked Plaintiff how he had obtained the letter from Capt Davidson. *Id.* Plaintiff explained that he sought statements from several officers to include Capt Davidson, and CMC, in an effort to put a "gloss" on the markings and comments. *Id.* at ¶¶ 3-4.

---

[3] In the Answer to the Amended Complaint, ¶ 80, Defendants assert this is overbroad and so deny; hence the cite to the original Complaint in which Defendants admit CMC has not published a mandatory requirement for an officer to provide evidence of career counselor before the convening of a promotion board prior to the officer submitting an application for a SSB.

-8-

29. After explaining how he had obtained the Capt Davidson letter to Capt Gaffney, Plaintiff sent an e-mail to LtCol Carberry, Capt Gaffney's superior, identifying that Plaintiff has spoken with Capt Gaffney. Pl. Ex. 11, p. 69, ¶¶ 5 and 6; *see* Pl. Ex. 11, enclosure (1), p. 70; *see* Amended Complaint ¶ 82 and Answer thereto. In his e-mail Plaintiff noted Defendants' characterization of the SSB process as "interactive." Pl. Ex. 11, p. 69, ¶¶ 5 and 6; *see* Pl. Ex. 11, enclosure (1), p. 70; *see* AR p. 106, ¶ 2 (noting the "interactive nature of special selection boards may require this headquarters to contact you"). In that e-mail Plaintiff also requested an opportunity to address any further questions or concerns about his request. *Id.* LtCol Carberry responded that "[i]f we need anything cleared up, we'll give you a ring." *Id.* Neither Defendants nor Defendants' attorney further contacted Plaintiff with any questions or concerns about his request. Pl. Ex. 11, p. 69, ¶ 6.

30. CMC did issue a recommendation on Plaintiff's request for reconsideration, which is dated July 25, 2005. AR 182-185. The Secretary issued his decision on February 23, 2006. AR Vol. I (certified May 17, 2006), pp. 002-003.

31. In his recommendation CMC questions why Plaintiff did not discover the error at an earlier point in time given the frequency of Plaintiff's review of his record. AR p. 183, ¶ 4.b. CMC states that Plaintiff did not state why Capt Davidson chose to admit the falsification after such a long time and after Plaintiff failed selection for promotion. AR p. 184, ¶ 4.c. CMC opines that there were other competitive concerns within Plaintiff's record. AR p. 184, ¶ 4.d. CMC asserts that Plaintiff "should have reasonably known the nature of the rankings and he should have taken appropriate steps to highlight or correct the fitness report prior to the FY 04 USMC Lieutenant Colonel Board convening." AR p. 184, ¶ 4.e. The recommendation concludes that Plaintiff

"failed to exercise reasonable diligence to ensure his record was substantially accurate and complete before the convening of the board and has not provided any additional information to refute the [original] decision." AR p. 184, ¶ 5.

32. In his February 7, 2005, request for reconsideration, Plaintiff noted that he reviewed his military record before each promotion board and before applying for the Excess Leave Program and the Special Education Program, for which he was selected. AR p. 42, ¶ 22. Plaintiff also noted that "[b]ecause the error in this case involved the reporting senior's intentional falsification of a fitness report coupled with the reviewing officer's failure to exercise independent judgment concerning the rankings, it was impossible to detect the mistake until the reporting senior admitted his wrongdoing." AR p. 43, n.7.

33. It is not unusual for officers to seek to obtain letters of clarification from previous raters in an attempt to place remarks or rankings contained within a fitness report in context in an effort to lessen any negative inferences, especially after not being selected for promotion. Pl. Ex. 10, p. 66, ¶ 9.

34. In July 2003, Plaintiff attempted to obtain a letter of clarification from CMC concerning a report that he had written on Plaintiff while CMC was a lieutenant colonel. Pl. Ex. 11, p. 60, ¶ 7.

35. Plaintiff consulted with LtCol Poleto, a career counselor, prior to the convening of the FY 2004 board. Amended Complaint ¶ 81 and Answer thereto. During this consultation, LtCol Poleto "gave no indication that she believed that Capt Davidson had inaccurately ranked Plaintiff with two other lieutenants." AR p. 42, ¶ 21. LtCol Poleto did not opine that Major Wilk failed to properly execute his reviewing officer duties by simply accepting the reporting senior's markings. *Id.*

-10-

36. The Secretary's decision of February 23, 2006, denied Plaintiff's request for a SSB finding that "there is no material error" and that Plaintiff failed to exercise "reasonable diligence" to ensure the accuracy of his record. AR Vol. I (certified May 17, 2006), pp. 002-003.

37. In finding that the error was not material, the Secretary's February 23, 2006 decision concluded that the Davidson report was "accurate, timely, and based on the reporting senior's opinion at the time." AR Vol. I (certified May 17, 2006), pp. 002.

38. On August 26, 2003, the Secretary, through the BCNR, determined that the Davidson report was inaccurate at the time it was written concluding that Plaintiff "should have been ranked '1 of 3,' rather than '3 of 3.'" AR p. 60. The Secretary further found that the report "must be so modified to reflect [Davidson's] true opinion of the [Plaintiff's] ranking." *Id.*

39. For FY 2004 and FY 2005, the promotion rate for captains was 99%. The promotion rate for major was 90%. The promotion rate for lieutenant colonels was 70%. Pl. Ex. 13, ¶ 7. p. 077, enclosures 3 and 4, pp. 085-090.

40. The Davidson report was governed by MCO P1610.7D. Pl. Ex. 13, ¶ 10. Under that order, lieutenant reports were due on a semi-annual basis, e.g every six months. *Id.* A supervisor was required to write an observed or full report on the lieutenant if the supervisor had observed the lieutenant for at least 31 days. *Id.*

41. Per Department of Defense Instruction 1320.11, once "materiality", within the meaning of 10 U.S.C. § 628, is established, the only valid basis for denial of a SSB request is the officer's failure to maintain "reasonably careful records." Pl. Ex. 6, p. 21, ¶ 4.2.

42. Defendants are required to follow directives and instructions issued by the Secretary of Defense. Amended Complaint ¶ 106 and Answer thereto.

-11-

43. Code 13 of the Navy's Office of the Staff Judge Advocate is responsible for processing SSB requests. *See* Adams' Declaration submitted by Defendants on February 24, 2006, Document Number 28 (indicating Code 13 is responsible for processing SSB requests). On or about August 15, 2005 Mr. Bryan Wood, the Deputy Counsel to CMC spoke with Plaintiff. Pl. Ex. 13, ¶ 3, p. 76. Mr. Wood told Plaintiff that he had spoken with personnel from Code 13 and that a final decision would be issued on Plaintiff's SSB request in a matter of weeks. *Id.*; *see id.* at p. 79 (e-mail of August 12, 2005 from Mr. Wood to Plaintiff indicating that he would obtain information about his request).

44. In the first part of August 2005, Plaintiff spoke with LtCol Carberry in an effort to obtain information concerning the status of his SSB request. Pl. Ex. 13, ¶ 2. LtCol Carberry informed Plaintiff that he had spoken with personnel from Code 13 and that a final decision would be issued in a matter of weeks.

45. Plaintiff filed his original Complaint on August 17, 2005.


### Count II (Col Scovel Report)

46. On December 3, 1998, the Marine Corps "Performance Evaluation System (PES) [ ] changed completely, creating a new paradigm requiring an entirely new approach to performance reporting." Pl. Ex. 8, p. 33, ¶ 3.b (Marine Corps Order P1610.7E – Performance Evaluation System Manual). Under this new system, an officer's first level supervisor called a "reporting senior" develops a "Rating Senior Profile." *Id.* at ¶ 8012. This profile gives relative value to every report ever written by the [reporting senior]." *Id.* This is also true of the second level supervisor, known as a "reviewing officer." *Id.* at ¶ 8012.e. These profiles are considered

"dynamic" because they develop over time. *Id.* at ¶ 8012.2.a. "The relative value of each report

is based on how the report compares to the [rater's] rating history for a given grade." *Id.* at

8012.2.b. Because the [rater's] profile is a snapshot of the [rater's] rating history, [raters] must

understand the significance of the need for their rating philosophy to remain consistent

throughout their career." *Id.* at ¶ 8012.2.d. MCO P1610.7E notes that:

> "[reporting officials] must accurately and fairly assess the
> performance of their subordinates; **[reporting officials] who fail
> to do so will unwittingly and *unfairly discriminate* against
> either earlier reports or subsequent reports**." (Pl. Ex. D, p. 033,
> ¶ 8012.2(e)(Emphasis added.))
> . . .
> Reporting seniors who attempt to change their rating philosophy
> may either positively or negatively affect the relative value of
> reports for MROs they previously rated. Para. 8012.2(e)(2). **When
> the rater changes his philosophy and grades higher, he will
> diminish the value of all preceding reports ever written.** (Pl.
> Ex. D, p. 033, ¶ 8012.2(e)(2)(a). (Emphasis added.))

47. Plaintiff submitted Col Scovel's letter to the FY 2005 LtCol board. AR p. 535-536. Plaintiff

was not selected for promotion by the FY 2005 board. Amended Complaint ¶ 10 and Answer

thereto.

48. On December 9, 2004, Plaintiff submitted an application to BCNR, through the PERB,

seeking to correct the comparative assessment rating on the Col Scovel fitness report. AR p.

580-595. The basis for the request was Col Scovel's change in rating philosophy over a period of

time since he acted as the reviewing officer of Plaintiff's fitness report. AR pp. 589-590. Col

Scovel at the time he authored the report thought Plaintiff was among the "top 5% of majors [he]

had observed in his 22 years of service" and marked Plaintiff in the 5th block of section K.3 of

the fitness report believing at the time that this was consistent with a "top 5%" comment. AR p.

-13-

589, ¶ 2 (Col Scovel Letter); AR p. 588 (Copy of Fitness Report). The letter goes on to indicate

that, in the intervening years since the report was written, Col Scovel changed how he rates

individual officers. He now believes that a "top 5%" comment equates to a mark in the 7th block

of section K and is how he now marks officers whose performance rates a "top 5%" comment.

AR p. 590, ¶ 4.

49. CMC, through the PERB, recommended denial of the request. AR pp. 465-466. CMC found

that the performance appraisal written by Col Scovel was correct at the time it was written. AR

p. 465, ¶ 3. CMC found that Col Scovel's letter was merely an endorsement for promotion and

not an official request to change Plaintiff's record. AR p. 465-466, ¶ 3.a. However, the PERB

noted that such a request would not have made a difference in the decision. *Id.* CMC notes the

importance of a consistent grading philosophy citing to Marine Corps Order MCO P1610. 7E

(Performance Evaluation System Manual) subparagraph 8012.2, which discusses the rater's

"Profile Dynamics." AR p. 466, ¶ 3.b. CMC reasoned that the report should remain in

Plaintiff's Official Military Personnel File (OMPF) as written. AR p. 466, ¶ 4.

50. By letter of March 22, 2005, Plaintiff submitted additional materials and argument to the

BCNR in response to CMC's decision. AR pp. 467-567. Included with these materials was

another letter from Col Scovel requesting official change to Plaintiff's record. AR pp. 482. Col

Scovel opined in his letter to officially request a change to the report that:

> "Failure to change the report unfairly colors [Plaintiff's]
> performance because of the new evaluation system's reliance on
> comparative assessments. Those who may look at [Plaintiff's]
> record now or in the future would be misled as to his performance
> during that period and as to his potential. This is not fair to the
> Marine or the Marine Corps, which relies on the performance
> evaluation system to make a myriad of personnel decisions.

-14-

[Plaintiff] has a right to an accurate evaluation. The marking
should be changed." AR p. 482, ¶ 3.

51. Col Scovel's change in grading philosophy over time is not in keeping with the policies and

instructions contained in MCO P1610.7E. Per MCO P1610.7E, the report gives an inaccurate

portrayal of Plaintiff's performance. AR p. 482, ¶ 3; Pl. Ex. 8, p. 45, ¶ 8012.2.e(2)(a). Because

Col Scovel changed his grading philosophy by grading higher on later reports, Plaintiff was

unfairly discriminated against under the definition of Defendants' own order. Pl. Ex. 8, p. 45, ¶

8012.e(2)(a).

52. A Marine "may appeal any report that he or she believes is incorrect, inaccurate, or in

violation of the policies and instructions in [MCO p1610.7E] once the report is a matter of

official record." Pl. Ex. 8, p. 43, ¶ 5008.1. A Marine "may appeal any report that they believe is

not per established performance evaluation policy, inaccurate or unjust." Pl. Ex 9, p. 54, ¶ 5.a.

(Marine Corps Order 1610.11C – Performance Evaluation Appeals).

53. Plaintiff's March 22, 2005, submission included a letter from Col J.E. McCown. AR 483-

484. Col McCown was a member of the FY 2005 LtCol selection board. AR pp. 490. Col

McCown states that if Col Scovel's markings had been accurate, the resulting

> "shift in the over/under numbers would have altered, in
> [Plaintiff's] favor, one of the key criterion used in making selection
> decision and would have increased the possibility of his selection."
> AR 484, ¶ 5.

54. Before the FY 2005 LtCol selection board, Plaintiff, under the current evaluation system, had

approximately 47 officers ranked above him, 59 officers with him and 48 officers below him.

AR pp. 486-487; *see* AR p. 474 ¶ 12.b; AR p. 473 n. 7 (explaining how numbers were derived from the applicable Master Brief Sheets). A record with a similar number of officers ranked above and below is not competitive. *See* AR p. 19, ¶ 5.

55. If Col Scovel's report were amended to accurately reflect Plaintiff's performance under Col Scovel's current grading philosophy, Plaintiff's record before the FY 2005 LtCol's selection board would have had approximately 17 officers ranked above him, 44 officers ranked with him, and 94 officers below him. AR p. 474, ¶ 12.b. A record with five times the numbers of officer below as above is very competitive. Pl. Ex. 10, p. 66, ¶ 12.

56. CMC issued Marine Administrative Message (MARADMIN) 332/03 announcing the FY 2005 LtCol selection board. AR pp. 495-498. The MARADMIN lists the individual Marine's responsibilities to ensure that their records are prepared for the promotion board. AR pp. 497-498, ¶ 4.

57. The responsibilities contained in the MARADMIN are exhaustive of an officer's responsibilities in preparing for a promotion board. Amended Complaint ¶ 120 and Answer thereto.

58. Plaintiff submitted evidence that he met the criteria listed in MARADMIN 332/03. Specifically, Plaintiff demonstrated that he a) obtained a copy of his Official Military Personnel File (OMPF) (AR p.547) and Master Brief Sheet (MBS) (AR pp. 486-487; b) reviewed his OMPF to ensure that all fitness reports were contained within the OMPF; c) reviewed his MBS to ensure that it reflected he was PME complete; d) ensured that a current picture was resident within his OMPF (AR p. 548); e) wrote a personal statement to the President of each LtCol selection board, including various enclosures, and ensured that that the materials had been

-16-

properly received by the board. AR 491-567; *see* pp. 475-480, ¶¶ 16-27 (explaining significance of documentary evidence contained in pp. 491-567.) Plaintiff also submitted evidence that he consulted with a career counselor before the FY 2005 selection boards. AR p. 479, ¶ 24.

59. During the processing of Plaintiff's request on Col Scovel's report, BCNR obtained an opinion from the promotions branch of the Marine Corps (Code: MMPR), which was dated August 9, 2005. AR pp. 461-462. MMPR's only opinion was that if the report were changed that Plaintiff's SSB request should be denied for "failure in identifying and correcting the error prior to being considered by the FY 05 USMC LtCol Promotion Selection Board." AR p. 462, ¶ 3. By letter dated August 17, 2005, BCNR forwarded a copy of MMPR's interim opinion to the Plaintiff for comment. AR pp. 651-652. On August 26, 2005, Plaintiff submitted a rebuttal to the MMPR opinion. AR pp. 568-570.

60. When processing the request to alter Capt Davidson's report, BCNR obtained an advisory opinion from MMOA-4 on the effect the change would have on the competitiveness of Plaintiff's record. AR pp. 131-132. BCNR did not obtain an advisory opinion concerning the effect on the competitiveness of Plaintiff's record based on a change to Col Scovel's report. Amended Complaint ¶ 122 and Answer thereto.

61. On September 1, 2005, a three-member panel of the BCNR considered Plaintiff's request. AR pp. 651-652. BCNR concluded that Plaintiff's evidence "was insufficient to establish the existence of probable material error or injustice." *Id.* The "Board substantially concurred with the comments contained in the report of the PERB". *Id.* The "Board found no defect in [Plaintiff's] performance record" although the BCNR noted that Plaintiff "may submit [Col Scovel's] letter to future selection boards." *Id.*

-17-

62. In cases denying an application without a hearing, BCNR must issue its determination in writing and include a brief statement of the grounds for denial. 32 C.F.R. 723.3(e)(3). When denying an application for relief, BCNR is required to issue a statement that "shall include the reasons for the determination that relief should not be granted, including the applicant's claims of constitutional, statutory and/or regulatory violations that were rejected, together with all the essential facts upon which the denial is based." 32 C.F.R. 723.3(e)(4).

63. The Board relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties. 32 C.F.R. 723(e)(2).

64. The PERB relies on the presumption of regularity to support official actions of public officers. Pl. Ex. 9, p. 54, ¶ 5.a. To rebut the presumption before the PERB, a petitioner must produce "relevant evidence tending to prove that the allegations contained in the application are more likely true than not." Pl. Ex. 9, p. 57, ¶ 10.a.

Respectfully submitted,

Jackson L. McGrady
Plaintiff

Dated: August 23, 2006                          820 Bright Street
Fredericksburg, VA 22401
540.371.3792

-18-

TABLE OF CONTENTS
For
Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's
Motion for Summary Judgment

Page

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. CAPTAIN DAVIDSON FITNESS REPORT - COURT HAS
   JURISDICTION TO REVIEW DEEMED DENIAL OR
   SECRETARY'S FEBRUARY 23, 2006 DECISION. . . . . . . . . . . . . . . . . . . . . . 2

   A. Jurisdiction Under 10 U.S.C. § 628 - Based on Deemed Denial. . . . . . . 3

       1. Secretary's February 2006 Decision was Issued Merely for
          Purpose of Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   B. 10 U.S.C. § 628 Applies to "Request for Reconsideration" or it
      Does Not. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. COLONEL SCOVEL FITNESS REPORT - COURT HAS
    JURISDICTION TO REVIEW DEEMED DENIAL OF SSB OR
    REFUSAL TO CORRECT REPORT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A. Court has Jurisdiction Under 10 U.S.C. § 628. . . . . . . . . . . . . . . . . . . . 9

    B. Court has Jurisdiction Under 5 U.S.C. § 701 *et. seq.* . . . . . . . . . . . . . . 9

STATUTORY AND REGULATORY FRAMEWORK FOR REQUESTING
SPECIAL SELECTION BOARD AND CORRECECTING MILITARY
RECORDS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   I. STATUTORY AND REGULATORY FRAMEWORK FOR CONVENING A
      SPECIAL SELECTION BOARD BASED ON "MATERIAL UNFAIRNESS"
      IN THE REGULAR SELECTION BOARD PROCESS. . . . . . . . . . . . . . . . . . 10

   II. REGULAR SELECTION BOARD'S CONSIDERATION OF AN
       INACCURATE     OR UNJUST FITNESS REPORT CONSTITUTES
       "MATERIAL UNFAIRNESS" AND REQUIRES REFERRAL TO A SSB. . . 13

   III. REGULATORY FRAMEWORK FOR OBTAINING CORRECTION
        OF AN INACCURATE OR UNJUST FITNESS REPORT . . . . . . . . . . . . . 14

ARBITRARY AND CAPRICIOUS LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . .  17

SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

    I.  DEFENDANTS HAVE CONCEDED THE ISSUE OF MATERIALITY,
        AND THE RECORD ESTABLISHES THAT THE CHANGE TO THE
        DAVIDSON REPORT WAS "MATERIAL". . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        A.  Secretary's April 2004 Decision Concedes Issue of Materiality. . . . . . . 21

        B.  Secretary's February 23, 2006 decision Contradicts His August 26, 2003
           Decision Issued Through the Board for Correction of Naval Records. .  22

        C.  Secretary Ignores Plaintiff's Evidence of Materiality. . . . . . . . . . . . . . .  24

           1.  Being Ranked Last on a Transfer Report Sends Negative Signal 24

           2.  Selection/Non-Selection of Peers. Each board is independent. .  25

           3.  Career Counselor Thought Change was "Competitive Concern" 27

           4.  Promotion Opportunities Decrease as Officer Becomes More
              Senior. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

           5.  Change to Davidson Report Meets Secretary's Definition of
              Materiality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    II.  SECRETARY'S DECISION TO DENY PLAINTIFF'S SSB REQUEST BASED
        ON PLAINTIFF'S ALLEGED FAILURE TO EXERCISE REASONABLE
        DILIGENCE VIOLATES 10 U.S.C. § 628 (g)(1)(A). . . . . . . . . . . . . . . . . . . .  29

        A.  Plaintiff had no Reasonable Basis to Question the "Nature" of the
           Report Until Capt Davidson Admitted he had Falsified the Report. . . . 32

           1.  Career Counselor Contact. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

           2.  BCNR Observations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

3.  Reviewing Officer Observations. . . . . . . . . . . . . . . . . . . . . . . .    35

4.  Transfer Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    37

5.  Presumption of Regularity. . . . . . . . . . . . . . . . . . . . . . . . . . . 37

6.  CMC Bound by His Determination Through the PERB. . . . . . .  38

7.  CMC and SECNAV Bound by BCNR Determination. . . . . . . . 39.

B.  Fraudulent Report Not Determinable by Record Review. . . . . . . . . . .  40

C.  Plaintiff Contacted Capt Davidson Seeking Clarification of Report. . . . 41

D.  Defendants Acknowledge that Rankings Were a Competitive Concern. 44

III.  DEFENDANTS' REFUSAL TO CORRECT COLONEL SCOVEL'S REPORT
      VIOLATES AN APA STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . 45

A.  PERB'S DECISION IGNORES THE EVIDENCE AND IS CONTRARY
    TO REGULATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

    1.  Col Scovel's Perception of Plaintiff's Performance Did Not
        Change. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    46

    2.  Report Accurate When Written But Is Now Inaccurate Because Col
        Scovel Failed to Adhere to the Provisions of MCO P1610.7E. . .47

B.  ADDITIONAL BASES ON WHICH BCNR'S DECISION VIOLATES
    APA STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

    1.  BCNR Treated Two Cases Differently . . . . . . . . . . . . . . . . . . . 51

    2.  BCNR Implicitly Admits Col Scovel's Report was Unfair and
        Inaccurate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

    3.  Because PERB Applied  a Preponderance of the Evidence Standard,
        BCNR Cannot simply adopt the PERB's decision as it uses a
        Substantial Evidence Standard. . . . . . . . . . . . . . . . . . . . . . . . . 54

IV. BASED ON THE INACCURACY OF COLONEL SCOVEL'S REPORT,
THERE WAS "MATERIAL UNFAIRNESS" WITHIN THE MEANING
OF 10 U.S.C. § 628(b) AND DEFENDANTS' IMPLEMENTING
INSTRUCTIONS IN THE PROCESSES OF THE FY 2004 – FY 2006
REGULAR LIEUTENANT COLONEL SELECTION BOARDS. . . . . . . 55

V. THE SECRETARY 'S DECISION TO DENY PLAINTIFF'S SSB REQUEST
VIOLATES 10 U.S.C. § 628 (g)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

.

-iv-

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JACKSON L. MCGRADY,       )
                          )
        Plaintiff         )
                          )
        v.            )     Case Number:  05CV01651 (GK)
                          )
DEPARTMENT OF THE NAVY,   )
DONALD C. WINTER, Secretary   )
of the Navy,               )
                          )
        Defendants    )

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff seeks judicial review of Defendants' denials of his two requests for a Special Selection Board (SSB) to consider whether he should be selected for promotion to the grade of lieutenant colonel. Subsumed in the second SSB request is review of Defendants' denial of Plaintiff's request to correct a fitness report (performance evaluation).  This decision is also independently reviewable by the Court.

This brief will first establish the jurisdictional basis for review.  Second, the brief explain the statutory and regulatory framework for Plaintiff's SSB requests and to correct his military record.  Third, the brief will articulate the applicable legal standards for review under 10 U.S.C. § 628, 5 U.S.C. § 701 *et. seq*. (Administrative Procedures Act (APA)), and for summary judgment. Fourth, the brief will identify the issues.  Fifth, the brief will argue why Defendants decisions violate the applicable standard of review.

## JURISDICTION

Plaintiff's first SSB request stems from corrections, ordered by Defendants, to a fitness report authored by Captain (Capt) Davidson on the Plaintiff. The second SSB request stems from inaccuracies in another fitness report authored by Colonel (Col) Scovel. Final agency decisions have been issued in both cases. However, depending on the Court's interpretation of Plaintiff's claims, jurisdiction will be based on either 10 U.S.C. § 628 or 5 U.S.C. § 701 *et. seq.*, which will impact on the proper content of the administrative record.

## I. CAPTAIN DAVIDSON FITNESS REPORT - COURT HAS JURDISDICTION TO REVIEW DEEMED DENIAL OR SECRETARY'S FEBRUARY 23, 2006 DECISION.

Plaintiff was considered, but not selected, by the Fiscal Year (FY) 2004 lieutenant colonel selection board. Plaintiff's official military personnel file, which was considered by the board, included a fitness report authored by Capt Davidson. After release of the board results, Defendants, at Plaintiff's request, ordered correction of the Davidson report to reflect that Plaintiff was properly ranked "1 of 3" instead of "3 of 3." AR pp. 56-61. Based on this directed change, Plaintiff submitted a request to the Secretary of the Navy (hereinafter "Secretary") to convene a SSB as a remedy for the FY 2004 board's improper consideration of the Davidson report. AR pp. 1-23. On April 16, 2004, the Secretary denied Plaintiff's request finding that Plaintiff failed to exercise "reasonable diligence" to ensure the accuracy of his military record prior to the convening of the selection board. AR p. 33. This decision was subject to review under 10 U.S.C. § 628.

Instead of seeking judicial review at that time, Plaintiff submitted another SSB request,

-2-

styled as a request for reconsideration. AR pp. 34-114 and 155-180. Part of the impetus in

asking for reconsideration was that Plaintiff obtained a legal memorandum indicating Plaintiff's

first request was denied because he did not provide evidence of career counselor contact prior to

the convening of the board. AR pp. 27-30, ¶ 5.c. Plaintiff did make counselor contact and

submitted evidence of this fact. AR pp. 41-42, ¶¶ 19-21.

The Secretary received the reconsideration request on February 9, 2005. Amended

Complaint ¶ 91 and Answer thereto. Plaintiff filed his original Complaint on August 17, 2005

seeking judicial review. The Secretary subsequently issued a final agency decision on February

23, 2006. AR Vol. I (certified May 17, 2006) pp. 002-003.

### A. Jurisdiction Under 10 U.S.C. § 628 - Based on Deemed Denial.

Plaintiff's second request, even if styled as a request for reconsideration, falls within the

statutory language of 10 U.S.C. § 628. Specifically, Plaintiff's reconsideration request meets the

"complete application" requirement of the statute.[1] 10 U.S.C. §628; *see* Plaintiff's Exhibit (Pl.

Ex.) 1, pp. 001-004.[2] Given this fact, the Secretary had six months in which to either convene a

_____

[1] "If, six months after receiving a *complete application* for consideration by a special selection board under this section in any case, the Secretary concerned has not convened such a board and has not denied consideration by such a board in that case, the Secretary shall be deemed for the purposes of this subsection to have denied the consideration of the case by such a board." 10 U.S.C. § 628(g)(3)(A) (emphasis added).

[2] Plaintiff includes as Plaintiff Exhibits (Pl. Ex.) applicable statutory and regulatory provisions and other relevant documents. For ease of reference Plaintiff consecutively, hand-numbered the exhibits from 001 of the first page of Pl. Ex. 1 through 097, which is the last page of Pl. Ex 13. An index is placed on top of the exhibits. Citations to the Defendants' Administrative Record (AR) and Plaintiff Exhibits will be to a particular page and paragraph, if available.

SSB or deny the request; otherwise, the request is deemed to be denied.  10 U.S.C. § 628(g).

The Secretary's receipt of the request on February 9, 2005 meant that the request was deemed

denied as of August 9, 2005 and Plaintiff was free to seek judicial review.  Plaintiff filed his

original Complaint on August 17, 2005.  In response, Defendants submitted a certified record

which included the Secretary's original decision of April 16, 2004, and the CMC's July 25, 2005

recommendation on Plaintiff's request for reconsideration.  Given that the Court's jurisdiction is

based on the deemed denial, inclusion of the Secretary's February 23, 2006 decision in the

administrative record is inappropriate or otherwise should not be considered given the *post hoc*

nature of the decision and its impact on the disputed elements in the litigation.  This issue is

important as the Secretary's April 16, 2004 decision concedes the issue of materiality.  The

Secretary's February 23, 2006 decision places materiality directly at issue.  Thus, depending on

the proper content of the administrative record, materiality may or may not be an element of the

litigation.

### 1. Secretary's February 2006 Decision was Issued Merely for Purpose of Litigation.[3]

Plaintiff maintains the February 2006 decision is a *post hoc* rationalization and not

---

[3] Paragraph I of the Argument section should also be considered in deciding that the February 23, 2006 decision was issued for purposes of litigation.  In that section, Plaintiff explains why the April 16, 2004 decision conceded materiality and demonstrates that Defendants have continually characterized that decision as being based on "reasonable diligence" to include the fact that the February 2006 decision contradicts the Secretary's August 26, 2003 decision, and contradicts CMC's characterization of the Secretary's April 16, 2004 decision, which was authored by CMC.

properly considered by the Court. Plaintiff notes the following factors that support this

contention.[4] First, prior to filing his original Complaint on August 17, 2005, but during the

month of August 2005, Plaintiff contacted LtCol Carberry, an attorney within the office of the

Staff Judge Advocate to the Commandant and whose responsibilities include oversight of SSB

requests, seeking information about his February 7, 2005 request. Pl. Ex. 13 (Plaintiff's

Declaration), ¶ 2, p. 76. LtCol Carberry later, orally informed Plaintiff that LtCol Carberry

contacted personnel within the Navy's Office of the Staff Judge Advocate (Code 13) and

indicated that a final decision would be issued in a matter of weeks. *Id*; *See* Adams' Declaration

submitted by Defendants on February 24, 2006, Document Number 28 (indicating Code 13 is

responsible for processing SSB requests). Plaintiff also contacted Mr. Bryan Wood who agreed

to seek information concerning the status of the SSB request. *Id*. at ¶ 3 and enclosure (1) (e-mail

dated August 12, 2005 between Plaintiff and Mr. Wood), p. 79. At the time Mr. Wood was the

Deputy Counsel to the Commandant of the Marine Corps. *Id*. at ¶ 3. Between the date of the e-

mail and the filing of the original Complaint, Mr. Wood orally told Plaintiff that he spoke with

Code 13 and that a final decision was expected in a matter of weeks. *Id*.

     The Secretary's decision did not issue in a matter of a few weeks or even a few months.

Instead, the Secretary issued his decision some six months after the Complaint was filed. The

---

[4] At the April 25, 2006 Status Conference, the Court instructed Defendants to file the Secretary's
February 23, 2006 decision as a supplement to the administrative record. Plaintiff requested that
Defendants be required to file a motion to supplement the record to test Plaintiff's position that
the decision was issued purely for the purposes of litigation. The Court declined, but in response
to Plaintiff's concern about preserving the issue, instructed Plaintiff to raise the issue in the
dispositive motions.

decision issued after Plaintiff had engaged in several communications, to include a conference call, with opposing counsel and agency counsel in an attempt to narrow the issues, which included specific discussion of the fact that the Secretary did not raise the issue of materiality in his April 16, 2004 decision. Pl. Ex. 13, ¶ 6, p. 77, and enclosure 2 (e-mails from November 3 and December 5 from Plaintiff to opposing counsel regarding the fact that the April 16, 2004 decision was not based on materiality), pp. 081-084. The decision issued only after Plaintiff timely submitted his January 9, 2006 motion for summary judgment in which he specifically noted that the Secretary's previous decision did not raise the issue of materiality. Immediately after submission of that motion, there were a plethora of extension requests and ultimately a request to stay the proceedings by Defendants to allow the Secretary to issue a decision.[5] The Secretary's decision was issued on February 23, 2006 and upheld the original basis for denial and also added materiality as an additional basis. AR Vol. I (Certified May 17, 2006), pp 002-003.

The *post hoc* nature of the February 23, 2006 decision is further demonstrated by the fact that the decision on Plaintiff's request for reconsideration took over 12 months compared to seven months for Plaintiff's original request. Further, in Plaintiff's original request, the Secretary required only two months to issue a decision after receiving CMC's recommendation. This two

---

[5] As of January 9, 2006, per the Court's Order, cross motions were due on January 13, 2006. Plaintiff submitted his motion on January 9, 2006. On or about January 10, 2006, opposing counsel contacted Plaintiff requesting a two week extension. Plaintiff agreed to a one week extension. On January 12, 2006, due to personnel circumstances of opposing counsel, Plaintiff consented to a two week delay. Defendants' motion was due on January 27, 2006. On January 26, 2006, Defendants requested Plaintiff to consent to a one day extension. On January 27, 2005 Defendants motioned for an 18 day extension. On February 8, 2006, Defendants filed a motion to stay the proceeding with the explicit purpose of allowing the Secretary to issue a decision.

month time frame would have also been consistent with the reports by LtCol Carberry and Mr. Wood in August 2005 that a decision was expected in a few weeks given that the CMC issued his recommendation on July 25, 2006. Instead, the Secretary required seven months to issue a decision after receiving CMC's recommendation in Plaintiff's request for reconsideration. Given the timing and sequence of events, the Secretary's motivation is clear; and his decision should be stricken from the administrative record or at least not considered by the Court.[6]

### B.    10 U.S.C. § 628 Applies to "Request for Reconsideration" or it Does Not.

Congress created a special jurisdictional statute for federal court review Secretarial decisions relating to SSBs. Given this fact, if a Complaint logically invokes 10 U.S.C. § 628, that statute should be used instead of torturing the language to exclude review, which has the effect of making the decision reviewable under the APA.

In this case, 10 U.S.C. § 628 either applies or it does not. If the statute applies, the proper record for review would not include the Secretary's February 23, 2006 decision as jurisdiction is based on the Secretary's deemed denial for his failure to issue a decision within the six months limitations period. If the statute does not apply, the current administrative record is the appropriate basis for review, but jurisdiction is founded in 5 U.S.C. § 701 *et. seq.* (Administrative Procedures Act (APA)). Again, this issue is important as it determines the proper content of the administrative record.

---

[6] The timing and sequence of events gives rise to an adverse inference in other cases. *See generally* 5 U.S.C. 1221(e) (allowing employee to demonstrate that employee's protected disclosure was a contributing factor based, merely, on the temporal proximity of the disclosure and the adverse personnel action). An adverse inference should be drawn in this case as well.

## II. COLONEL SCOVEL FITNESS REPORT - COURT HAS JURDISDICTION TO REVIEW DEEMED DENIAL OF SSB OR REFUSAL TO CORRECT REPORT.

Plaintiff was considered, but not selected, by the Fiscal Year (FY) 2005 lieutenant colonel selection board. Plaintiff's official military personnel file, which was considered by the board, included a fitness report authored by Col Scovel. By letter dated December 9, 2004, Plaintiff requested Defendants to correct the fitness based on Col Scovel's admission that he has changed his grading philosophy between 1999, when he wrote the report, and the convening of the FY 2005 lieutenant colonel selection board. AR p. 582-583. Changing grading philosophy is contrary to the intent of Marine Corps Order (MCO) P1610.7E. Pl. Ex. 8. MCO P1610.7E cautions that a rater who changes his/her rating philosophy "unfairly discriminates" against other reports. Pl. Ex. 8, p. 045, ¶ 8012.2(e). Plaintiff also requested the Secretary to convene a SSB to consider him for promotion to the grade of lieutenant colonel as relief from the Fiscal Year (FY) 2005 regular selection board's consideration of Col Scovel's unfair and discriminatory report. AR, pp. 467-567, 472, ¶ 10.

Despite the fact that Col Scovel's report is unfair and discriminatory as defined by Defendants' own regulations, the Secretary, through the BCNR[7], denied Plaintiff's request to correct Col Scovel's report. If BCNR's decision was in error, the Court has authority to review the Secretary's failure to convene a SSB under 10 U.S.C. § 628. In the alternative, the Court has

---

[7] BCNR is a board of civilians created by SECNAV under the authority of 10 U.S.C. § 1552. 10 U.S.C. § 1552; *see* Pl. Ex. 2, pp. 005-006. 32 C.F.R. Part 723 govern BCNR's proceedings. BCNR has authority to take final corrective action on behalf of SECNAV concerning applications to amend a military record unless the decision is reserved to SECNAV. 32 C.F.R. §723.6(e)(2); *see* Pl. Ex. 3, pp. 007-008.

the authority to review the BCNR's decision under the APA.

**A. Court has Jurisdiction Under 10 U.S.C. § 628.** Plaintiff submitted a "complete application" within the meaning of the statute. Plaintiff's submission demonstrated that there was error, that the error was material, and that Plaintiff exercised reasonable diligence to ensure the accuracy of his record. Demonstration of these facts, error, material error, reasonable diligence, entitles Plaintiff to a SSB. Pl. Ex. 6, p. 21, ¶ 4 (Department of Defense Instruction 1320.11). As such, the Secretary's failure to either convene a SSB or deny Plaintiff's request within six months of receipt constitutes a deemed denial reviewable by the Court.

**B. Court has Jurisdiction Under 5 U.S.C. § 701 _et. seq._** If the Court does not assert its jurisdiction under 10 U.S.C. § 628 to review the deemed denial, the Court can review BCNR's refusal to correct the Scovel report under 5 U.S.C. § 701 _et. seq._ (Administrative Procedure Act). _See Kreis v. Secretary of Air Force_, 406 F.3d 684, 686 (D.C. Cir. 2005) (holding that the decision of a military board for correction of military records denying a request to correct a military record is subject to review under administrative law principles). The standard of review of under 10 U.S.C. § 628 is very similar to the APA and will be treated as, essentially, the same.

## STATUTORY AND REGULATORY FRAMEWORK FOR REQUESTING SPECAL SELECTION BOARD AND CORRECECTING MILITARY RECORDS

This section of the brief addresses three areas: 1) statutory and regulatory framework for convening a SSB based on "material unfairness" in the regular selection board process; 2) regular selection board's consideration of an inaccurate or unjust fitness report constitutes "material

unfairness"; and 3) procedures for obtaining correction of an inaccurate or unjust fitness report.

## I. STATUTORY AND REGULATORY FRAMEWORK FOR CONVENING A SPECIAL SELECTION BOARD BASED ON "MATERIAL UNFAIRNESS" IN THE REGULAR SELECTION BOARD PROCESS.

A Secretary of a military department (Secretary of the Army, Secretary of the Navy, and the Secretary of the Air Force) is authorized to convene regular selection boards to select officers for promotion to the next higher grade. 10 U.S.C. § 611; *see* Pl. Ex. 4, p. 009.  A Secretary may also convene special selection boards (SSBs) in circumstances where an officer was considered by a regular selection board but there was "material unfairness" in the manner in which the board considered the particular officer. 10 U.S.C. § 628.  In determining "material unfairness" the Secretary concerned must find that:

> "the action of the promotion board that considered the person was contrary to law or involved material error of fact or material administrative error, or the board did not have before it for its consideration material information." 10 U.S.C. § 628 b(1)(A) and (B).

Department of Defense (DoD) Instruction 1320.11 implements the statutory mandates of 10 U.S.C. § 628. *See* Pl. Ex. 6, pp. 020-023.  DoD Instruction 1320.11 establishes DoD policy on convening SSBs and provides that:

> "Each Military Department *shall* use a Special Selection Board for the reasons listed in Section 628(a) . . . *or* if the decision of the *original* board involved a factual or administrative error, *or* if the board lacked some material information for its consideration." Pl. Ex. 6, p. 21, ¶ 4.1 (emphasis added).[8]

---

[8] The latter half of this paragraph mirrors the language of 10 U.S.C. § 628(b), which allows the service Secretary discretion to convene a board.  However, the Secretary of Defense, through issuance of DoD Instruction 1320.11, takes away this discretion.

The only exception to this rule is that a SSB:

> "shall not . . . consider any person who may, by maintaining
> reasonably careful records, have discovered and taken steps to
> correct that error or omission on which the original board based
> its decision against promotion." Pl. Ex. 6, p. 21, ¶ 4.2.

Under this DoD instruction once Plaintiff establishes error, materiality and reasonable

diligence, the Secretary has no choice but to convene a SSB. A service Secretary is required to

convene SSBs under regulations prescribed by the Secretary of Defense. 10 U.S.C. § 628(f)(1).

The Secretary of the Navy implemented 10 U.S.C. § 628 through publication of Secretary of the

Navy Instruction (SECNAVINST) 1401.1B.[9] *See* Pl. Ex. 5, pp. 010-019. SECNAVINST

1401.1B is consistent with DoD Instruction 1320.11 but amplifies the meaning of "material

unfairness" as:

> "Any error of fact or administrative/procedural error that is more
> likely than not to have deprived the officer concerned of a fair and
> impartial consideration by the board is a material error." Pl. Ex. 5,
> p. 013, ¶ 8(c)(3).

> "Any information that, when properly recorded in, or removed
> from, an officer's record would have been essential to a
> substantially accurate, complete and fair portrayal of the officer's
> career is material information." Pl. Ex. 5, p. 013, ¶ 8(c)(4).

SECNVAINST 1401.1B also echoes the DoD requirement that a SSB will not be

convened if the officer should have discovered and corrected the error prior to the convening of

the board but uses the term "reasonable diligence."

> "Correction of an error in an officer's record, after the officer

---

[9] SECNAVINST 1401.1B provides no indication as to whether it has been approved by the
Secretary of Defense. Secretary of Defense approval is required before the instruction can be
effective. 10 U.S.C. § 628(j). Regardless, as long as SECNAVINST 1401.1B is consistent with
DoD Instruction 1320.11, there cannot be any harmful error.

incurs a failure of selection by the promotion selection board that was affected by the error, will not necessarily be the basis for the convening of a board." Pl. Ex. 5, pp. 011-012,  ¶ 6a.

"A special selection board will not be convened to consider any officer who, through the exercise of reasonable diligence, might have discovered and corrected the error or omission in the official record prior to the convening the promotion selection board that considered, but did not select the officer." Pl. Ex. 5, p. 012, ¶ 6b.

There are no other exceptions or situations in which an officer's SSB request, based on "material unfairness," would be denied. *See* Pl. Ex. 5. In fact, if the Secretary were to articulate any other exceptions, it would be in contravention of the DoD Instruction.

The Commandant of the Marine Corps (CMC) promulgated the Marine Corps Promotion Manual, which is designated as Marine Corps Order (MCO) P1400.31B. This order defines "reasonable diligence" "as fair, proper, and due degree of care and activity, measured with reference to the particular circumstance; such diligence, care and attention as might be expected from a man/woman of ordinary prudence and activity." Excerpts are attached as Pl. Ex. 7, pp. 024-032.

DoD and Department of the Navy regulations relating to SSBs are consistent with federal case law and reflects the changes in the processing of SSB requests resulting from passage of 10 U.S.C. § 628. Before enactment of 10 U.S.C. § 628, after an officer showed that his record contained a defective performance evaluation (fitness report), the ultimate burden was on the government to show that the officer would not have been promoted even if his record contained no error. *Richey v. United States*, 322 F.3d 1317, 1323 (Fed. Cir. 2003). However, since the enactment of 10 U.S.C. § 628, a Secretary is not to make such a harmless error determination. *Id.* at 1324 (citing to *Porter v. United States*, 163 F.3d 1304, 1323 (Fed. Cir. 1998), *cert. denied*, 528

-12-

U.S. 809, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999)). Instead, the case should be referred to a SSB, which will decide whether to promote the officer based on his corrected military record, and, therefore, the harmless error rule has no application. *Id.*

A Marine Corps officer can avail himself of two, nonexclusive administrative processes in obtaining a final decision on a SSB request. He can file a request through the officer's military chain of command, in which case the CMC will forward his recommendation to SECNAV for a final agency decision. Pl. Ex. 5, p.018, ¶ 17.a.   This is the situation presented in the Davidson Report. The officer may also submit a SSB request to the BCNR. If BCNR concludes that a SSB is warranted, BCNR can make that recommendation to SECNAV, who will issue a final decision. *Id.* at ¶ 17.b.  This is the situation presented in the Scovel Report

## II. REGULAR SELECTION BOARD'S CONSIDERATION OF AN INACCURATE OR UNJUST FITNESS REPORT CONSTITUTES "MATERIAL UNFAIRNESS" AND REQUIRES REFERRAL TO A SSB.

Material changes to an inaccurate or unjust fitness report subsequent to consideration by a regular promotion board necessarily means that particular officer was considered by the board in a "materially unfair" manner. Federal courts recognized that substantive changes warranting referral to a SSB include correction of rankings or alterations to some type of comparative assessment, and changing of comments on an evaluation. *See Chisolm v. U.S.,* 65 Fed. Cl. 497 (2005) (directing correction of an Officer Performance Report and referral to a SSB); *Roth v. U.S.,* 378 F.3d 1371 (Fed. Cir. 2004) (ordering upgrading of endorsements on three evaluations, awarding a decoration, directing insertion of administrative comments to cover a date gap in the officer's record, and directing a SSB for the 1993 and 1994 LtCol promotion boards).

-13-

Service corrections boards, established under the provisions of 10 U.S.C. § 1552, also have a history of recognizing that substantive changes to an officer's evaluation warrant referral to a SSB. *See Roth* (corrections board found that changing of a mark on officer's evaluation to "Well Above Standard" and "Behavior and Bearing Exemplary" warranted referral to a SSB for the 1987 and 1988 major promotion boards); *Richey v. U.S.* 322 F.3d 1317, 1320-21 (Fed. Cir. 2003) (corrections board finding that an evaluation was substantially inaccurate because of procedural error on the part of the senior rater in the comparative assessment with officers of the same grade and directing change to the "top block" with a subsequent referral to a SSB); *Hasselrig v. U.S.*, 53 Fed. Cl. 111 (2002) (corrections board directed addition of a closing evaluation, higher performance ratings on two other evaluations, completion of a degree, and two "Definitely Promote" recommendations with subsequent referral to a SSB). Based on these precedents, a bright line rule emerges that changes in an officer's comparative assessment rating or rankings necessitates referral of the officer's case to a SSB.

## III. REGULATORY FRAMEWORK FOR OBTAINING CORRECTION OF AN INACCURATE OR UNJUST FITNESS REPORT

Defendants have implemented a comprehensive personnel performance evaluation system, which, for Marine Corps personnel, is governed by Marine Corps Order (MCO) P1610.7E. This order includes rules on writing an officer's performance evaluations. Excerpts are attached as Pl. Ex. 8, pp. 033-052. MCO P1610.7E makes clear that the fitness report is a "vital portion of a Marine's Official Military Personnel File (OMPF)." Pl. Ex. 8, p.36, ¶ 1001.1.a. MCO P1610.7E summarizes the importance of the fitness report as follows:

"The completed fitness report is the most important information

-14-

component in manpower management. It is the primary means of evaluating a Marine's performance. The fitness report is the Commandant's primary tool available for the selection of personnel for promotion, retention, augmentation, resident schooling, command, and duty assignments. Therefore the **completion of this report is one of an officer's most critical responsibilities. Inherent in this duty is the commitment of each reporting senior and each reviewing officer to ensure the integrity of the system by close attention to accurate marking and timely reporting.** Every officer serves a role in the scrupulous maintenance of this evaluation system, ultimately important to both the individual and the Marine Corps." Pl. Ex. 8, p. 37-38, ¶ 1004. (Emphasis added.)

MCO P1610.7E provides detailed instruction on completing the report. It also provides an appeal mechanism for reports that an officer believes to be inaccurate. Pl. Ex. 8, p. 43, ¶ 5008. Fitness report appeals are governed by MCO 1610.11C. Pl. Ex. 9, pp. 053-063; *see* Pl. Ex. 8. p. 43, ¶ 5008.2. MCO 1610.11C makes clear that a "fitness report accepted . . . for inclusion in the official record of a Marine is presumed to be administratively correct, procedurally complete, and valid according to performance evaluation policy [in existence at the time the report is written]." Pl. Ex. 9, p. 54, ¶ 5.a. This view is consistent with federal case law. *Kosnik v. Secretary of the Air Force*, 31 F. Supp. 2d 151, 158 (D.C. Cir. 1998) (finding a strong presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith); *LaChance v. White*, 174 F.3d 1378, 1381 (Fed.Cir. 1999) (government officials are presumed to act in good faith and this presumption of regularity is the supposition that public officers perform their duties correctly, fairly, in good faith, and in accordance with law and governing regulations, and is valid and binding unless "well-nigh irrefragable proof rebuts or overcomes it").

To contest or appeal a particular report, a Marine must file an application with BCNR

-15-

through the CMC. Pl. Ex. 8, p. 43, ¶ 5008.2. CMC exercises this authority through the Marine

Corps Performance Evaluation Review Board (PERB). PERB operations are governed by MCO

1610.11C. Pl. Ex. 9, pp. 053-063. The PERB acts as the initial action agency for Marine Corps

fitness report appeals. Pl. Ex. 9, p. 053, ¶ 4.a.

The PERB relies on the presumption of regularity to support official actions of public

officers. Pl. Ex. 9, p. 054, ¶ 5.a. MCO 1610.11C emphasizes the presumption that a "fitness

report accepted by the CMC [Manpower Support Branch (MMSB)] for inclusion in the official

record of a Marine is presumed to be administratively correct, procedurally complete, and valid

according to [MCO P1610.7E]." *Id.* MCO 1610.11C notes, however, that a Marine "may appeal

any report that they believe is not per established performance evaluation policy, inaccurate or

unjust." *Id.* at ¶ 5.b. The burden, based on a preponderance of evidence standard, is on the

applicant to "produce evidence of probable material error, substantive inaccuracy, or injustice."

*Id.* at p. 057, ¶ 10.a.

In challenging a report, statements from rating officials are important. However, MCO

1610.11C makes clear that statements from "reporting officials who, in retrospect, attempt to

refute specific deficiencies cited by them in the contested report(s) are not usually approved.

Specific evidence of error in judgment, misinterpretation of facts and circumstances, and so on,

must be provided. Statements that merely allude to changed perspectives following some

unfavorable event (non selection for promotion, regular appointment, professional schooling,

etc.) that may be attributable to the report(s) are of little value." Pl. Ex. 9, p. 059, ¶ 11.b. If the

PERB denies an application, it is forwarded to BCNR for final agency action. *Id.* at p. 54, ¶ 5.c.

-16-

## ARBITRARY AND CAPRICIOUS LEGAL STANDARD

The scope of the Court's review is to determine whether Defendants' decisions to deny

Plaintiff's requests were arbitrary, capricious, an abuse of discretion, contrary to law or

regulations, or unsupported by substantial evidence. 5 U.S.C. § 706(2); *Verplanch v. England,*

257 F. Supp 2d 182, 187 (D.D.C. 2003); *Chappell v. Wallace*, 462 U.S. 296, 303, 76 L. Ed. 2d

586, 103 S. Ct. 2362 (1983). Plaintiff has the burden of satisfying this standard by providing

"cogent and clearly convincing evidence" and must "overcome the presumption that military

administrator discharge their duties correctly, lawfully, and in good faith." *Swann v. Secretary of*

*the Navy*, 811 F. Supp. 1336, 1339 (N.D.Ind. 1992). This Court, however, is not "empowered to

rubber stamp the Board's decision simply because the supporting evidence may be substantial

when considered by itself and in isolation from the evidence that fairly detracts from the Board's

conclusion." *Id*. at 1340. Notwithstanding the deference that must be afforded to the military, the

Court conducting the review must have sufficient information to determine the decision was

proper. Defendants must provide sufficient information because: (1) it enables the court to give

proper review to the administrative determination; (2) it helps to keep the administrative agency

within proper authority and discretion, as well as helping to avoid and prevent arbitrary,

discriminatory, and irrational action by the agency; and finally, (3) it informs the aggrieved

person of the administrative boards' rationale so he can plan his course of action, including

request for judicial review. Therefore, although the agency need not provide an "extensive

exegis" of the rationale underlying the decisions, it must sufficiently discuss it's reasoning to

allow a court to review its decisions. *Smith v. Dalton*, 927 F. Supp. 1, 5 (D.D.C. 1996).

Defendants' decision must be based on substantial evidence. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Smith* at 5; *Swann* at 1339, citing *American Diversified Goods, Inc. v. NLRB*, 640 F.2d 893,894 (7th Cir. 1981). To establish that Defendants' decisions were not based on "substantial evidence," Plaintiff must demonstrate that the decision is not justified by the evidence presented or is not justified by the decision maker's judgment on matters within its special competence. *Smith v. Dalton*, 927 F. Supp. 1, 5 (D.D.C. 1996). A court cannot give as much deference to an agency determination when an agency does not specify the factual or legal grounds for its decision. *Smith* at 5; *Swarn* at 1342. In reviewing a decision, the Court must examine whether the agency considered all of the evidence before it, and if so, if it stated why the evidence contrary to the final decision was "disregarded or given less weight." *Smith* at 5.

Additionally, federal courts have considered 10 U.S.C. § 1552 and have provided guidance to the service secretaries and the various service corrections boards. This code section creating boards for correction of military records is remedial legislation giving the boards authority to correct errors or injustices in the records of service personnel, and this should be construed liberally rather than narrowly or technically. *Oleson v. United States*, 172 Ct. Cl. 9 (1965). A correction board has jurisdiction to consider whether a former serviceman's military record should be corrected if it considers such corrections necessary to correct an error or remove an injustice. The Board has a **non-discretionary, judicially enforceable duty** to exercise that power and to correct military records when it determines that an injustice or error has occurred. *Baxter v. Clayton,* 652 F. 2d 181, 185 (D.C.Cir. 1981). Although *Baxter* involved a constitutional issue, other Courts have confirmed this duty to correct an injustice in non-

-18-

constitutional cases. *Smith v. Dalton*, 927 F.Supp. 1, 6 (D.D.C. 1996); s*ee Guerrero v. Marsh*, 819 F.2 238 (9th Cir 1987); *Dodson v. Department of the Army*, 988 F.2d 1199 (Fed. Cir. 1993); *Sanders v. United States*, 594 F.2d 804 (1979)(*en banc*); *Yee v. United States*, 512 F.2d 1383 (1975); and *Grieg v. United States,* 640 F.2d 1261 (1981).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment may be granted based upon the pleadings, supplemental affidavits, and facts developed during the administrative proceedings. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990). A moving party is entitled to judgment as a matter of law if the record in the case confirms the non-moving party cannot establish "the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322-23. Summary judgment procedures are important in winnowing out meritless claims and preventing the "unwarranted consumption of public and private resources." *Id*. at 327. *See also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); and *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

## ISSUES

1. Based on the falsity of Capt Davidson's Report, was there "material unfairness" in the

-19-

processes of the FY 2004 regular LtCol selection board?

2.  If there was "material unfairness", was the Secretary's denial based on a failure to exercise "reasonable diligence": i) arbitrary or capricious; ii) not based on substantial evidence; iii) a result of material error of fact or material administrative error; or iv) otherwise contrary to law?

3.  Did Defendants' refusal to correct Col Scovel's report violate an APA standard of review?

4.  Based on the inaccuracy of Col Scovel's report was there "material unfairness", within the meaning of 10 U.S.C. § 628 (b) and Defendants' implementing instructions, in the processes of the FY 2005 regular LtCol selection board?

5.  If there was "material unfairness" because of Col Scovel's report, does SECNAV have a reason to deny Plaintiff's SSB request based on an alleged failure to exercise "reasonable diligence" that would not violate the provisions of 10 U.S.C. § 628 (g)(1)(A) as being: i) arbitrary or capricious; ii) not based on substantial evidence; iii) a result of material error of fact or material administrative error; or iv) otherwise contrary to law?

## ARGUMENT

### I. DEFENDANTS HAVE CONCEDED THE ISSUE OF MATERIALITY, AND THE RECORD ESTABLISHES THAT THE CHANGE TO THE DAVIDSON REPORT WAS "MATERIAL".

This section of the brief argues addresses three main point. First, the issue of materiality was conceded in the Secretary's April 16, 2004 decision. Second, the **Secretary's February 23, 2006 decision relies on rationale that the Secretary specifically rejected in issuing his August 26, 2003 decision.** Third, assuming Defendants did raise the issue of materiality in the properly certified record, Defendants' determination that the change was not material violates an

APA standard of review.

    A. **Secretary's April 2004 Decision Concedes Issue of Materiality.** Throughout the administrative process, Defendants have not disputed materiality until issuance of the Secretary's February 2006 decision. In the Secretary's April 16, 2004, denial decision, he specifically cited to SECNAVINST 1401.1B's requirement for "material error" as a pre-condition to ordering a SSB and that Plaintiff's request is based on "material error of fact." AR p. 31, ¶ 2. This proves that the Secretary understood the materiality requirement. The Secretary never argues that the change was not "material" and admits that the presence of the inaccurate report "may have been a competitive concern." AR p. 32, ¶ 4a. In the "Conclusion" of the decision, the only basis for denial is Plaintiff's alleged failure "to exercise reasonable diligence to ensure his record was substantially accurate and complete before the convening of the board." AR p. 32, ¶ 5.

    This conclusion is bolstered by CMC's July 25, 2005 recommendation on Plaintiff's request for reconsideration. This recommendation characterizes the basis for the Secretary's April 16, 2004 decision. Specifically, CMC notes that the Secretary's April 16, 2004 denial was "based on the fact that Plaintiff did not exercise reasonable diligence." AR p. 183, ¶ 3.b. CMC further states that the Secretary "denied [Plaintiff's] request due to his failure to exercise reasonable diligence in correcting the fitness report before the FY04 USMC Lieutenant Colonel Promotion Selection Board convened." *Id.* at 3.c. There is no hint that the April 16, 2004 decision was based on materiality.

    The CMC's July 25, 2005 characterization is highly relevant for another reason. It was CMC who authored the April 16, 2004 denial decision. The Secretary merely adopted CMC's

-21-

recommendation and provided no further comment or analysis. AR. pp. 30-33, 33. As it was the

CMC who authored the April 16, 2004 decision, CMC's characterization of the contents of that

decision as being based on "reasonable diligence" should be given dispositive weight. This view

is, again, consistent with CMC's July 25, 2005 recommendation in which CMC recommends

denial based on "reasonable diligence." AR p. 184, ¶ 5. This view of the April 16, 2004

decision is also consistent with the Promotions Branch characterized of the April 2004 decision

as being based on "reasonable diligence." AR p. 461, ¶ 2.b

Quite frankly, Defendants raise the issue of materiality for the first time in the Secretary's

February 23, 2006 decision. As discussed above, this decision is not properly part of the

administrative record if jurisdiction is based on 10 U.S.C. § 628 or should otherwise not be

considered. *Kreis v Department of the Air Force*, 406 F.3d 684. (D.C. Cir. 2005) (holding that

an agency's discretionary order will be upheld, if at all, on the same basis articulated in the order

by the agency itself); *Association of Civilian Technicians v. Federal Labor Relations Authority*,

269 F.3d 1112, 1117 (D.D.Cir 2001) (holding that if an agency's decision is to be upheld, it must

be upheld on the rationale set forth by the agency; post-hoc rationalizations developed for

litigation are insufficient).

### B. Secretary's February 23, 2006 decision Contradicts His August 26, 2003 Decision Issued Through the Board for Correction of Naval Records.

On materiality, the Secretary's February 23, 2006 decision notes that:

> "there is no evidence that, at the time the report was written, the reporting
> senior failed to consider all issues pertaining to the three first lieutenants
> he was evaluating. To the contrary, the fitness report was accurate, and
> based on the reporting senior's opinion at the time. Subsequent regret
> over the consequence of a ranking decision does not alone constitute

material error and reconsideration after the fact, motivated by an
individual failing of selection, does not form the basis for granting a
Special Selection Board." AR Vol. I (certified on May 17, 2006) pp. 002-
003.

The recommendation of the Performance Evaluation Review Board (PERB),

dated July 16, 2003, was to deny Plaintiff's request to correct Davidson report noting:[10]

"the PERB concluded that the report is administratively correct and
procedurally complete as written and filed."
. . .
"Captain Davison obviously considered all issues pertaining to the three First
Lieutenants on whom he was writing."
. . .
"Opinions may change and waver with time. However, reconsideration after
the fact, or those motivated by an individual failing selection, should not be
used to change a performance evaluation that was done accurately, timely and
based on the reporting official's knowledge *at the time*." AR pp. 129-130, ¶ 3
(emphasis in original).

The Secretary's February 23, 2006 rationale regarding materiality is the same as the PERB's

rationale for recommending denial to correct Davidson's rankings

The PERB's July 16, 2003 recommendation was enclosure (2) to the August 26, 2003

decision of the Board for Correction of Naval Records (BCNR) regarding Plaintiff's request to

correct the rankings on the Davidson report. BCNR. AR p. 56 (first page of BCNR decision

listing PERB recommendation as enclosure 2). Acting on behalf of the Secretary, BCNR ordered

correction of the Captain Davidson report noting:

"[u]pon review and consideration of all the evidence of record, **and not
withstanding the contents of [the PERB's July 16, 2003
recommendation]**, the Board finds an injustice warranting the requested
fitness report modification and removal of [Plaintiff's] failure of selection
to lieutenant  colonel."  AR p. 060  (emphasis added).

---

[10] Marine Corps personnel must route petitions to BCNR through the PERB. The PERB, on
behalf of the Commandant of the Marine Corps, issues a recommended disposition.

-23-

The Secretary's August 26, 2003 decision to correct the Davidson report specifically rejects the rationale adopted by the Secretary in his February 23, 2006 decision. This is plain error. In fact, the Secretary's February 23, 2006 decision violates 10 U.S.C. § 1552 (a)(4), which states that a correction under this section is final and conclusive on all officers of the United States. The Secretary, as an officer of the United States, is bound by his original determination. Plaintiff raised this point in the administrative process. AR p. 047-048, ¶¶ 37-39. Defendants never addressed the statutory violation.

C. **Secretary Ignores Plaintiff's Evidence of Materiality.**

The Secretary's February 23, 2006 decision fails to address any of the evidence submitted by the Plaintiff demonstrating that the change was material. Specifically, the Secretary ignores the fact that the report was a "transfer" report. Second, the Secretary ignores the evidence presented that the FY 2004 board placed dispositive weight on first lieutenant rankings as evidenced by Plaintiff's peers who did and did not get promoted. Third, the career counselor indicated it was a competitive concern. Fourth, the Secretary's decision fails to appreciate that promotional opportunities narrow as an officer becomes more senior. Finally, plain application of the Defendants' own order demonstrates that the change was material.

1. **Being Ranked Last on a Transfer Report Sends Negative Signal.** The Secretary avoids any analysis of the fact that the Davidson report was a transfer report. On a transfer report the supervisor is not requires to write evaluations on his other subordinates. *See* Defendants' Undisputed Facts, n. 3. Given this fact, a supervisor could "game" the system by

artificially inflating the rankings on the subordinate without affecting the promotional opportunities for the other officers. This type of manipulation on a transfer report was sufficiently pervasive that being ranked last sends a strong negative signal to a promotion board. *See* Pl. Ex. 10, p 65. ¶¶ 6-7 (Colonel Crowl Declaration opining that, based on his experience serving on numerous promotion boards, because of the ability to manipulate the system, being ranked last on a transfer report is very negative).

The Secretary also placed reliance on the idea that this was only a four month report. AR Vol. I (certified May 17, 2006), p. 003. However, this is misplaced. The Davidson report was governed by MCO P1610.7D. Pl. Ex. 13, ¶ 10. Under that order, lieutenant reports were due on a semi-annual basis, e.g every six months. *Id.* A supervisor was required to write an observed or full report on the lieutenant if the supervisor had observed the lieutenant for at least 31 days. *Id.* As such, the report was likely given the same weight as any other regular report. The fact that it was a four month report does not negate the effect of being ranked last on a transfer report or that it is used to calculate the over and under numbers. This fact is evidenced by the opinion of MMOA-4 which included the numbers of the Davidson report in making their assessment. AR p. 14 ¶ 3.

**2. Selection/Non-Selection of Peers. Each board is independent.** Plaintiff extensively examined the issue of "materiality" in his submissions to BCNR by developing independent evidence that the FY 2004 board placed dispositive weight on first lieutenant rankings. *See* AR pp. 137-139, ¶¶ 12-19; AR pp. 2-4, ¶¶ 5-11. Specifically, Plaintiff submitted

-25-

declarations from two officers who had similar career patterns as the Plaintiff and who both consulted career counselors prior to the convening of the FY 2004 board.

The counselors thought that officer one would not be selected for promotion because of his limited time in his current occupational specialty as well as his lack of diversity within his occupational specialty. *See* AR p. 17. However, officer one was subsequently selected by the 2004 board for promotion. *Id.* The counselors thought that officer two "was very competitive, particularly given [his] superb reports with the 22D MEU (SOC)" and would be selected for promotion. *See* AR p. 19. However, officer two was not selected for promotion by the 2004 board. *Id.* This result can only be explained by the difference in their rankings.

Officer one had 5 officers ranked above him and 13 below. AR. p. 17. Officer two had 20 officers ranked above him and 21 below. AR p. 19. Given these ratios, and the assumption that promotion boards apply like criteria to similarly situated officers, the FY 04 lieutenant colonel board placed dispositive weight on competitive rankings. This is the only way to reconcile the opinions of the career counselors and the selection of officer one and the non-selection of officer two.

Before the FY 2004 board, Plaintiff had 7 officers ranked above and 8 below. AR p. 14, ¶ 3. This ratio is very similar to officer two. After correction of the Davidson report, Plaintiff's ratio was 5 above and 10 below. This is close to the ratio of officer one. This demonstrates that a corrected Davidson report would have increased the likelihood of Plaintiff's selection and demonstrates the materiality of the change.

CMC's July 25, 2005 recommendation touches briefly on this issue by stating that there must have been other competitive concerns besides the rankings, such as MOS credibility, given

Plaintiff's non-selection before the FY 2005 and FY 2006 boards. AR. p. 184, ¶ 4.d. This

position ignores that officer one, described above, also had limited MOS credibility but was still

selected. MOS credibility, at least before the FY 2004, was not the basis for Plaintiff's non-

selection.

Quite simply, each selection board is composed of different officers who may place more

emphasis on certain selection criteria than other boards. Again, the record evidence shows that

the FY 2004 board placed dispositive weight on lieutenant rankings. This is likely why DoD

Instruction 1320.11 requires the convening of a SSB if the "original" board process was flawed.

Pl. Ex. 6, p. 21, ¶ 4.1. Plaintiff emphasized this point in his original request. AR p. 2, ¶ 3. It is

irrelevant what happened before the FY 2005 and FY 2006 board as to the issue of whether the

Secretary should convene a SSB as relief for the FY 2004 board's consideration of the Davidson

report.

### 3. Career Counselor Thought Change was "Competitive Concern."

Defendants staffed Plaintiff's request to correct the ranking on the Davidson report through

MMOA-4 for an advisory opinion on the issue of materiality. That opinion states that the change

in the rankings would "improve" Plaintiff's record. AR p. 14, ¶ 4. This makes the change

"material." In his February 23, 2006 decision the Secretary never addressed the MMOA-4

opinion, even though it is directly contrary to his ultimate conclusion on materiality.

### 4. Promotion Opportunities Decrease as Officer Becomes More Senior. The

Secretary placed a great deal of reliance on the fact that the Davidson fitness report was present

in Plaintiff's military record when he was promoted to captain and major and leads to his

conclusion that the change was not material. This reasoning is fatally flawed for the simple

reason that promotional opportunities dramatically decrease as an officer becomes more senior.

For FY 2004 and FY 2005, the promotion rate for captains was 99%. The promotion rate for

major was 90%. The promotion rate for lieutenant colonels was 70%. Pl. Ex. 13, ¶ 7. p. 077,

enclosures 3 and 4, pp. 085-090. Given this fact, any negative aspect of a military record is

magnified in later promotion boards. Quite simply, a report that did not keep an individual from

getting prompted to captain or major may very well be a report that prevents an individual from

getting promoted to lieutenant colonel.

### 5. Change to Davidson Report Meets Secretary's Definition of Materiality.

The above evidence and analysis also demonstrates that the change in the ranking ratio resulting

from correction of the Davidson report meets the definition of "material unfairness" of

SECNAVINST 1401.1B. That instruction defines "material unfairness" as:

> "Any error of fact or administrative/procedural error that is more
> likely than not to have deprived the officer concerned of a fair and
> impartial consideration by the board is a material error." Pl. Ex. 5,
> p. 013, ¶ 8(c)(3).

> "Any information that, when properly recorded in, or removed
> from, an officer's record would have been essential to a
> substantially accurate, complete and fair portrayal of the officer's
> career is material information." Pl. Ex. 5, p. 014, ¶ 8(c)(4).

Given the FY 2004 board's apparent reliance on the ranking ratio, the effect of the change

in Plaintiff's ratio, as compared to officer one and two, and the fact that this was a transfer report,

it is more likely than not that Plaintiff was deprived of fair and impartial consideration by the

board. Further, based on the same evidence, a properly recorded, accurate ranking was essential

-28-

to a substantially accurate, complete and fair portrayal of Plaintiff's career.

## II. SECRETARY'S DECISION TO DENY PLAINTIFF'S SSB REQUEST BASED ON PLAINTIFF'S ALLEGED FAILURE TO EXERCISE REASONABLE DILIGENCE VIOLATES 10 U.S.C. § 628 (g)(1)(A).

When requesting a SSB, MCO P1400.31B requires the officer to provide a detailed account of the actions the officer took to ensure the accuracy of his records. Pl. Ex. 7, p. 029, ¶ 5002.2(c). In compliance with this order Plaintiff, in his original September 16, 2003 SSB request, identified that prior to the convening of the FY 2004 LtCol board, he took steps to ensure the completeness and accuracy of his record. AR pp. 4-5, ¶ 12. He requested a copy of his Official Military Personnel File (OMPF) and a copy of his Master Brief Sheet (MBS). *Id.* He reviewed his OMPF to ensure that all of his fitness reports were contained within the OMPF. *Id.* He reviewed his MBS to ensure that it accurately reflected that Plaintiff had completed suggested professional military education classes. *Id.* He ensured that his current picture was resident within his OMPF. *Id.* He wrote a personal statement to the President of the FY 2004 LtCol selection board and checked the officer promotions website to ensure that the material had been properly received by the board. *Id.* These actions meet the requirements identified in Marine Administrative Message (MARADMIN) 371/02, which announced the convening of the FY 2004 lieutenant colonel selection board. AR pp. 155-158.

The MARADMIN identifies an individual Marine's responsibilities in ensuring the accuracy of his record. AR p. 157, ¶ 4.a. This list is *exhaustive* of the officer's responsibilities to ensure the completeness of his records before the convening of a promotion board. Amended Complaint ¶ 120 and Answer thereto. As such, Plaintiff was not required to contact each of his

supervisors prior to the promotion board and query whether they had falsified their reports or otherwise were failing to adhere to the requirements of the applicable performance evaluation system.

Despite Plaintiff's description of the actions he had taken to ensure the accuracy of his record, the Secretary denied Plaintiff's SSB request on April 16, 2004, for lack of "reasonable diligence" and was premised on Defendants' view that "[Plaintiff] reasonably should have known of the nature of the ranking and should have taken appropriate steps to highlight or correct the fitness report prior to the FY 2004 USMC LtCol Board convening." AR p. 32, ¶ 4.a. This conclusory statement is wholly without support. The decision does not identify or apply any objective factors that would allow SECNAV to support such a decision or provide a basis for meaningful judicial review. *Homer v. Secretary of the Air Force*, 226 F.Supp.2d 222 (D.D.C. 2002) (holding, in a nonselection for promotion case, that the Department of the Air Force's rationale that "the selection process is highly competitive and there is no guarantee that the applicant would have been promoted under any circumstances" provided no actual reason for the agency's decision and only highlighted "the Air Force's failure to identify the substantive criteria that were used in that process and to explain the reason that Plaintiff did not satisfy those criteria").

Recognizing this fact and hoping to ascertain if Defendants had conducted any objective analysis, Plaintiff filed a Privacy Act (PA) request for documents under 5 U.S.C. § 552a. AR p. 76. What followed was a seven-month series of requests, phone calls, a personal file review, and administrative appeals. *See* AR pp. 77-104. Ultimately, Defendants provided Plaintiff with a Staff Judge Advocate (SJA) legal opinion written for CMC. AR pp. 89-92; AR pp. 27-30

(duplicate copy).

The SJA opinion identifies the legal standards applicable for SSB requests and identifies eight factors to be used to determine "reasonable diligence." AR p. 90, ¶ 4.d. The second of the eight factors is whether the officer reviewed his/her official record with a career counselor. Although the SJA opinion purports to analyze all the identified factors, the *only* factor considered by the SJA relates to career counselor contact. The SJA's ultimate opinion was that there is "[n]o evidence suggest[ing] that [Plaintiff] contacted a career counselor prior to the board. Applying the factors [used to determine reasonable diligence], we conclude that he did not exercise reasonable diligence." AR p. 91, ¶ 5.c. Defendants made this conclusion despite the fact that Defendants have not published any mandatory requirement that an officer see a career counselor prior to the convening of a promotion board. Amended Complaint ¶ 80 and Answer thereto. Defendants have not published a mandatory requirement that an officer provide evidence of career counselor contact as a prerequisite for submitting a request for a SSB. *See* Complaint ¶ 50 and Answer thereto.[11]

Regardless, contrary to Defendants' assumption, Plaintiff *did* see a career counselor prior to the convening of the FY 2004 LtCol selection board. Defendants now admit this fact. Amended Complaint ¶ 81 and Answer thereto. Further, Defendants, in their decision and recommendations, do not contest that Plaintiff satisfied the requirements enunciated in MARADMIN 371/02 that identifies the individual's responsibility to ensure the accuracy of his

---

[11] In the Answer to the Amended Complaint, ¶ 80, Defendants assert this is overbroad and so deny; hence the cite to the original Complaint in which Defendants admit CMC has not published a mandatory requirement for an officer to provide evidence of career counselor before the convening of a promotion board prior to the officer submitting an application for a SSB.

record. Defendants do not even seriously contest Plaintiff's argument, as described in his request

for reconsideration, that he was "reasonable diligent" using all of the applicable factors

enunciated in the SJA memo. AR pp. 40-46, ¶¶ 16-31.  However, instead of recommending that

Plaintiff's request be granted, The Secretary, incorporating CMC's  July 25, 2005

recommendation, continues to maintain that Plaintiff failed to exercise "reasonable diligence"

and posits alternative grounds for the recommendation.

  Defendants continue to assert that Plaintiff "should have reasonably known the nature of

the rankings and he should have taken appropriate steps to highlight or correct the fitness report

prior to the FY 04 USMC Lieutenant Colonel Board convening." AR p. 184, ¶ 4.e.    Defendnats

questions why Plaintiff did not discover the error at an earlier point in time given the frequency

of Plaintiff's review of his record. AR p. 183, ¶ 4.b. Defendants ask why Plaintiff did not state

why Capt Davidson chose to admit the falsification after such a long time and after Plaintiff

failed selection for promotion. AR p. 184, ¶ 4.c. Finally, Defendants opines that there were

other competitive concerns within Plaintiff's record. AR p. 184, ¶ 4.d. CMC's recommendation

as adopted by the Secretary, cannot withstand judicial review.  CMC's recommendation provides

no rationale for why Plaintiff should have known of the "nature" of the report.


### A. Plaintiff had no Reasonable Basis to Question the "Nature" of the Report Until Capt Davidson Admitted he had Falsified the Report.

  In Plaintiff's February 7, 2005 reconsideration request, he rebutted the Secretary's  April

16, 2004 conclusion that Plaintiff "reasonably should have known the nature of the ranking and

should have taken appropriate steps to highlight or correct the fitness report prior to the FY04

LtCol Board convening." *See* AR pp.44-48, ¶¶ 27-39. **In his decision of February 23, 2006, the Secretary does not address any of Plaintiff's arguments.** *See Smith v. Dalton*, 927 F. Supp. 1, 5, (D.D.C. 1996) (finding that the Court must examine whether or not the agency has considered all of the evidence before it, and if so, if it has stated why the evidence contrary to the final decision was "disregarded or given less weight").

Plaintiff noted that the logic of the Secretary's unsupported conclusion, is predicated on the supposed "nature" of the report. AR p. 44, ¶ 27. Defendants never articulate their view of the report's "nature." To the extent an inference can be drawn from the record, Defendants' view is contradictory. Plaintiff noted in his reconsideration request that paragraph 3(e) of the Secretary's April 16, 2004 decision, contained at AR pp. 32, attempts to minimize the importance of the report by noting that it was resident within Plaintiff's military record when he was selected to captain and major.[12] AR. p. 44, ¶ 27 (Plaintiff's February 7, 2005 Request for Reconsideration). However, the implication of paragraph 4(a) of the April 16, 2004 decision, contained at AR p. 32) is that the report on its face somehow evidenced an impropriety that should have put Plaintiff on notice to immediately contest the report.[13]

Plaintiff explained that this latter conclusion is unsupportable. It is directly contradicted by: (1) the fact that the career counselor did not identify the error; (2) BCNR's observations and conclusions; (3) the reviewing officer's observations; (4) the fact that this was a transfer report; and (5) the long-standing presumption of regularity that attaches to all official records.

1. **Career Counselor Contact.** As explained in his submission to BCNR,

---

[12] CMC's July 25, 2005 recommendation contains the same verbiage. AR p. 183, ¶ 4.a.

Plaintiff met with LtCol Poleto, a career counselor, prior to the convening of the FY 2004 LtCol

selection board. AR p. 41, ¶ 19. During this counseling, LtCol Poleto "gave no indication that

she believed that a reporting senior had inaccurately ranked Plaintiff with two other lieutenants.

Neither did she opine that [Plaintiff's] reviewing officer failed to properly execute his reviewing

officer duties by simply accepting the reporting senior's markings." AR p. 42, ¶ 21 (Plaintiff's

February 7, 2005 Request for Reconsideration).

Defendants place great reliance on career counselor contact. However, Defendants admit

that Plaintiff did see a career counselor. The career counselor did not identify that the rankings

on the report were false and Defendants now become silent as to the role of the career counselor.

Career counselor contact is either important or it is not. If it is not important, Plaintiff's initial

SSB request should not have been denied on that basis. If it is important and the career counselor

could not identify the "nature" of the report, it is arbitrary and capricious to say that Plaintiff

should have been able to identify the report's "nature." Plaintiff should be entitled to rely on the

career counselor's advice. In fact, one of the SJA factors for determining reasonable diligence is

whether the "officer reasonably relied on any department or section of the Marine Corps to

ensure the accuracy of his/her official record." AR p. 28, ¶ 4.d(6). Career counselors are

assigned to the Officer Counseling and Evaluation Section of the Marine Corps Personnel

Management Division. *See* AR p. 132 (signature block). This section is assigned code MMOA-

4. *See* AR. p. 131. As such, Plaintiff should be entitled to rely on the LtCol Poleto's review.

Again, if she could not detect the falsity of the report, Defendants' efforts to argue that Plaintiff

should have cannot survive review under 10 U.S.C. § 628(g).

---

[13] CMC's July 25, 2005 recommendation contains similar language. AR p. 184, ¶ 4.e.

2. **BCNR Observations.** Included with Plaintiff's request for reconsideration was BCNR's decision that directed the change to the rankings on the Capt Davidson report. AR pp. 109-114. BCNR observed "the comments [in Section C] were entirely favorable; and the observed marks assigned were the highest possible, except the mark of "EX" (excellent)(second best) in item 13f, training personnel." AR p. 110, ¶ 3.c. The Reviewing Officer also "provided his own commendatory comments." *Id.* The reporting senior determined that Plaintiff was appropriately ranked "3 of 3" outstanding officers. The reviewing officer concurred in the ranking and said that he "[w]holeheartedly agree[d] with the RS's Evaluation." *Id.* The BCNR did not identify any reason that the report should have been contested at the time that it was written. BCNR is the naval entity charged with ensuring the accuracy of military records and, therefore, has expertise in that area. *See* 10 U.S.C. § 1552. Their opinion proves that, at the time the report in question was authored, it appeared to be valid. Presumably, this is why the BCNR found Plaintiff's petition to be timely filed. AR p. 109, ¶ 3.b. If BCNR did not determine that Plaintiff should have known of the false "nature" of the report at the time it was written, there is no basis for the Secretary to now find that Plaintiff should have know of the false "nature" of the report at an earlier point in time. The Secretary never addressed this inconsistency.

3. **Reviewing Officer Observations.** The reviewing officer for the Capt Davidson report was (then) Major Wilk. AR p. 120. Plaintiff initially contacted (now) Col Wilk after the PERB recommended denial of Plaintiff's May 6, 2003 request to alter the rankings on Capt Davidson's fitness report. This stemmed, in part, from the PERB's observation that Major

-35-

Wilk "fully supported [Capt Davidson's] evaluation and added his own strong commentary . . . [and] included absolutely no disagreement in the '3 of 3' breakout." AR p. 129-130, ¶ 2.b Plaintiff obtained a statement from Col Wilk. AR pp. 141-142. Plaintiff included the statement with his August 12, 2003 rebuttal to BCNR. AR pp. 133-153. In its August 26, 2003 decision (AR pp. 109-114), BCNR placed significant reliance on Col Wilk's statement and quoted extensively from his letter. AR p. 112.

Plaintiff included a copy of Col Wilk's letter, as well as the BCNR's decision, in his February 7, 2005 request for reconsideration. Of particular significance was that Col Wilk previously served a tour in the Marine Corps Performance Evaluation Review Branch and had reviewed PERB petitions in the past. AR p. 141, ¶ 3. Based on this experience, he viewed Capt Davidson's admission with a "jaundiced" eye. *Id.* Because of this, Col Wilk called Capt Davidson to discuss the matter. *Id.* After this conversation Col Wilk believed that Capt Davidson had manipulated the rankings. *Id.* **Col Wilk states that he "did not suspect at the time [the report was written] that [Capt Davidson] had manipulated the rankings." AR p. 142, ¶ 4. Further, he "had no basis to question or change [Capt Davidson's] markings" and relied on Capt Davidson's assessment.** *Id.* at ¶ 5 (emphasis added).

In his request for reconsideration Plaintiff argued that if Col Wilk, as the reviewing officer, did not have any basis to question the reporting senior's markings or have any indication that the markings had been manipulated, neither would the Plaintiff. AR pp. 44-45, ¶ 29. Plaintiff noted that just like the PERB, the reviewing officer's endorsement only solidified Plaintiff's view of the command's assessment of his performance. *Id.* This was because **Col Wilk was required to make an independent assessment of the rankings.** Amended

-36-

Complaint ¶ 47 and Answer thereto. The Secretary never addresses this point or the fact that two of his officers failed in their duties, one by falsely manipulating the evaluation system and the other by failing to make an independent assessment of the rankings as he was required to do.

        4. **Transfer Report.** In his request for reconsideration, Plaintiff emphasized that the report at issue was a "transfer" report. AR p. 45, ¶ 30. As highlighted by Col Wilk, Capt Davidson could have marked Plaintiff accurately without affecting the chances of the other lieutenants for augmentation. AR pp. 141-142, ¶ 3. This is because a rater was only required to write an evaluation on the transferring officer and not any of the other officers under the rater's supervision. Pl. Ex. 10, p. 65, ¶ 7. Given this fact, being ranked other than first on a transfer report sends a negative signal to a promotion board, although there is no basis to contest the report. *Id.* It is surprising that the reporting senior would not have known this and buttressed Plaintiff's belief that the reporting senior truly believed that Plaintiff was appropriately 3 of 3. AR p. 45, ¶ 30. The reviewing officer's endorsement cemented Plaintiff's view, just as it did the PERB's. *Id.*

        5. **Presumption of Regularity.** When written, the report could not be construed as adverse under the performance evaluation guidelines such that Plaintiff could have contested the report. AR pp. 45-46, ¶ 31; Pl. Ex. 10, p. 65, ¶ 7. Plaintiff argued that being ranked "3 of 3" outstanding officers and not receiving the highest mark in each observed category provides no basis to challenge the report. AR pp. 45-46, ¶ 31. Plaintiff noted that requiring officers to contest every report in which they were not ranked the highest in every category would lead to absurd results. *Id.* Absent some evidence of wrongdoing or a conspiracy

-37-

between these two officers to manipulate the report, Plaintiff had no reasonable basis upon which to challenge the report. *Id.* Plaintiff had no evidence to rebut the strong presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith. *Id.* (citing to *Kosnik v. Secretary of the Air Force*, 31 F. Supp. 2d 151, 158 (D.C. Cir 1998) and *LaChance v. White*, 174 F.3d 1378, 1381 (Fed.Cir. 1999)). The Secretary never addresses this point.

In his February 7, 2005 request for reconsideration, Plaintiff also argued that both the CMC and the Secretary were bound by their prior determinations and findings during the processing of his request to alter the rankings and they should not now make contrary conclusions merely to deny Plaintiff's SSB request. AR pp. 46-48, ¶¶ 32-39. **Again, neither CMC in his July 25, 2005 recommendation nor the Secretary's February 23, 2006 decision address either of these arguments.**

### 6. CMC Bound by His Determination Through the PERB. CMC,

acting through the PERB, denied Plaintiff's May 6, 2003 request, located at AR pp. 115-126, to change the rankings on Capt Davidson report. AR pp. 129-130. In Plaintiff's application to the PERB, he included Capt Davidson's letter admitting to the falsification. AR pp. 121-122. In the face of the presented evidence, the PERB found that the report was "both administratively correct and procedurally complete as written and filed." AR p. 129, ¶ 3. The PERB determined that "the contested fitness report should remain as configured." AR p. 130, ¶ 4.

If CMC, acting through the PERB, found that Capt Davidson's letter provided an insufficient basis to change the report, CMC cannot logically argue that Plaintiff failed to

-38-

exercise reasonable diligence by not contesting the report at an earlier point in time, e.g. prior to

Capt Davidson admitting his misconduct. If Plaintiff had sought correction at an earlier point in

time, the PERB would have still denied the request as evidenced by their denial even with Capt

Davidson's letter. It follows that there was no reasonable basis to challenge the report at the time

it was written and is in conflict with CMC's contention, and the Secretary's ultimate decision,

that Plaintiff should have known of the "nature" of the report at the time it was written and taken

steps to correct the report at an earlier point in time. Quite simply, CMC's positions are

contradictory. CMC takes his current position in an effort to improperly deny Plaintiff's SSB

request.

### 7. **CMC and SECNAV Bound by BCNR Determination**. The

Secretary's April 16, 2004 decision, his February 23, 2006 decision, which includes CMC's denial

recommendation of July 25, 2005, fail to account for the Secretary's August 26, 2003 decision

directing correction of the Capt Davidson record to reflect that Plaintiff was properly ranked "1 of

3." A copy of the August 26, 2003, Secretarial decision was included with Plaintiff's February 7,

2005 request for reconsideration. AR pp. 56-61.

SECNAV, acting through BCNR, is authorized to correct any military record. 10 U.S.C.

§ 1552(a); *see* Pl. Ex. 2. However, "[n]o correction may be made . . . unless the claimant . . .

files a request for the correction within three years after he discovers the error or injustice."

However, BCNR may excuse a failure to file within the three-year period if the board finds it to

be "in the interest of justice." *Id.* Plaintiff's application to BCNR specifically noted that, while

the report was written in 1990, Plaintiff did not discover the error or falsity until 2003. AR p.

115, ¶ 11.b. BCNR found Plaintiff's "[application - DD Form 149] was filed in a timely

manner." AR p. 56, ¶ 3.b. BCNR did not waive the limitations period in the "interest of justice."

This determination necessarily means that the Secretary found there was no reasonable

basis for contesting the report until discovery of the error until 2003.[14]   The Secretary's

determination that Plaintiff discovered the error in 2003 was made on August 26, 2003. AR p.

61. The Secretary's decision stating that Plaintiff failed to exercise reasonable diligence and

denying his request for a SSB was made on April 16, 2004. AR p. 33. These decisions are

inapposite. The Secretary cannot determine that Plaintiff discovered the error in 2003 but then

later determine that Plaintiff should have sought to correct the error at an earlier point in time

when the error was unknown to the Plaintiff. The Secretary is bound by his August 26, 2003

determination. A contrary conclusion violates 10 U.S.C. § 1552(a)(4), which states that a

correction under 10 U.S.C. § 1552 is final and conclusive on all officers of the United States,

which would include the Secretary and CMC. Given the Secretary's August 26, 2003 decision

Defendants cannot now argue that Plaintiff did not exercise reasonable diligence in an effort to

deny his SSB request. **The Secretary does not address this important statutory issue.** *See*

*Smith v. Dalton*, 927 F. Supp. 1, 5, (D.D.C. 1996).

### B. Fraudulent Report Not Determinable by Record Review.

CMC's July 25, 2005 recommendation questions why Plaintiff did not discover the error

at an earlier point in time given the frequency of Plaintiff's review of his record. AR p. 183, ¶

4.b. CMC's recommendation does not methodically analyze the factors articulate by his SJA for

---

[14] This was after the October 9, 2002, convening date of the FY 2004 LtCol board. AR p. 155.

determining reasonable diligence.  AR pp. 183-184, ¶ 4; *see* AR p. 28, ¶ 4.d (SJA'a reasonable

diligence factors).   However, CMC's comment is covered by factor 7, which addresses the

nature of the error and whether it would have been detected by a reasonably prudent officer.  *Id.*

In Plaintiff's rebuttal, he demonstrated why he exercised reasonable diligence using the SJA's

factors.  AR pp. 40-48.  Plaintiff specifically noted that, "[b]ecause the error in this case involved

the reporting senior's intentional falsification of a fitness report coupled with the reviewing

officer's failure to exercise independent judgment concerning the rankings, it was impossible to

detect the mistake until the reporting senior admitted his wrongdoing." AR p. 43, n 7.   Plaintiff

then analyzed the factors addressed in paragraph A.1-A.5, *supra*, that demonstrate that there was

no basis to question the report at an earlier point in time.  CMC's recommendation and the

Secretary's ultimate decision is not based on substantial evidence and ignores contrary evidence

contained in the record.

### C. Plaintiff Contacted Capt Davidson Seeking Clarification of Report.

CMC's July 25, 2005 recommendation questions why Plaintiff did not explain why Capt

Davidson chose to admit the falsification after such a long time and after Plaintiff failed selection

for promotion.  AR p. 184, ¶ 4.c.  Plaintiff questions the validity of this point as it relates to

reasonable diligence, especially when the Secretary did not raise the point in his April 16, 2004

decision and in light of the Secretary's August 26, 2003 decision that Plaintiff's BCNR

application was timely.  *See* ¶ II.A.7 of Argument, *supra*.  Regardless, Plaintiff stated in his

application to correct the record that he discovered the error on March 31, 2003.  AR p. 115, ¶

11.a.  Plaintiff identified that he did not discover the error until *Capt Davidson told Plaintiff* that

-41-

Capt Davidson inappropriately ranked Plaintiff in an attempt to increase the chances of two other officers for augmentation. AR p. 115, ¶¶ 10 and 11.b. Further, Plaintiff noted that he had not spoken with Capt Davidson from the time he left the "8th Marine Regiment in approximately May 1991 until 2003." AR p. 118. It is clear on the face of the record that Plaintiff contacted Capt Davidson and was the initiating cause of Capt Davidson's letter. This is consistent with Plaintiff's identification that he contacted Col Wilk seeking a statement. AR pp. 134-135, ¶ 5.

Plaintiff contacted Capt Davidson in an attempt to put the rankings in context in an effort to ameliorate the "coded" adverse inference that could be drawn from not being ranked first on a transfer report, even though there was no basis to officially appeal the report. See Pl. Ex. 10, p. 065, ¶ 7 (Col Crowl Declaration). This is not unusual. Officers frequently seek to obtain and submit these types of letters to promotion boards, especially after not being selected for promotion. Id. at ¶ 9. During this conversation Capt Davidson, instead of merely placing his marks in context, admitted to falsifying the ranking and agreed to provide a letter to that effect.

Plaintiff notes that in July 2003 he contacted CMC for a letter of clarification concerning a report that he had written on Plaintiff when CMC was a LtCol. Pl. Ex 11, enclosure 3, p. 072. As explained in that e-mail, a career counselor noted the report could have been "problematic" and that it could be viewed "negatively." Id. at ¶¶ 3 and 4. Plaintiff included a proposed letter. Pl. Ex. 11, enclosure 4, p. 073.[15] General Hagee declined to provide the clarification out of a concern that, given his current position as Commandant of the Marine Corps, a promotion board

---

[15] This type of letter is substantively different than that signed by Captain Davidson and would not have supported an actual change to the report but would have put the remarks in context and lessened the negative impact that could have been drawn from the report.

would be unduly influenced. Pl. Ex. 11, p. 069, ¶ 7. General Hagee, who is the CMC, had direct knowledge that Plaintiff contacted him seeking a clarification. It is a reasonable inference that Plaintiff similarly contacted Capt Davidson.

Plaintiff also explained how he obtained the Capt Davidson letter to Capt Gaffney, an attorney within the Office of the SJA to CMC. Pl. Ex. 11, p. 068-069, ¶¶ 2-4. Capt Gaffney was responsible for reviewing SSB requests and on March 17, 2005, called Plaintiff with this very question. Plaintiff explained that he sought statements from several officers to include the CMC, in an effort to put a "gloss" on the markings and comments. *Id.* After explaining this, Plaintiff sent an e-mail to LtCol Carberry, Capt Gaffney's superior, identifying that Plaintiff has spoken with Capt Gaffney. Pl. Ex. 11, p. 069, ¶¶ 5 and 6; *see* Pl. Ex. 11, enclosure (1), p. 070. In his e-mail Plaintiff noted Defendants' characterization of the SSB process as "interactive." *Id.*; *see* AR p. 106, ¶ 2 (noting the "interactive nature of special selection boards may require this headquarters to contact you"). No further contact from Defendants' or their representatives was forthcoming. Pl. Ex. 11, p. 069, ¶ 6. Plaintiff memorialized the conversation, albeit on April 5, 2005, in a memorandum for the record. Pl. Ex. 11, p. 069, ¶ 6; *see* Pl. Ex. 11, enclosure 2, p. 071.

Based on the above and to the extent it is a valid criterion for determining "reasonable diligence," CMC cannot reasonably question how Plaintiff obtained the letter as a basis to recommended denial of Plaintiff's SSB request. The record evidence supports that Plaintiff contacted Capt Davidson seeking a letter of clarification. Obtaining letters of clarification from rating officials is a common practice. CMC knew that Plaintiff sought a letter from him, which supports the inference that Plaintiff contacted Capt Davidson. Finally, CMC's attorneys had direct knowledge of how Plaintiff obtained the letter.

-43-

### D. Defendants Acknowledge that Rankings Were a Competitive Concern.

CMC opines that there were "other" competitive concerns within Plaintiff's record. AR p. 184, ¶ 4.d. Implicit in CMC's statement is that Plaintiff's rankings were a competitive concern. This is confirmed by the advisory opinion to BCNR that the change would improve Plaintiff's record. AR p. 131, ¶ 4. This meets Defendants definition of "material unfairness." Pl. Ex. 5, p. 013, ¶ 8(c)(3). As such, it is irrelevant whether there were other competitive concerns in Plaintiff's record.

CMC is attempting to use a "harmless error test," e.g. Plaintiff would not have been promoted even if his record did not contain the error stemming from Capt Davidson's report. This is the incorrect test. Since the enactment of 10 U.S.C. § 628, a Secretary is not to make such a harmless error determination. *Richey v. United States*, 322 F.3d 1317, 1324 (C.A. Fed. Cir. 2003) (citing to *Porter v. United States*, 163 F.3d 1304, 1323 (C.A. Fed. Cir 1998), *cert. denied*, 528 U.S. 809 (1999)). Instead, under 10 U.S.C. § 628 the case should be referred to a SSB, which will decide whether to promote the officer based on his corrected military record. *Id.* This is consistent with the requirements of Department of Defense Instruction1320.11. Pl. Ex. 6, p. 21, ¶ 4.1.

As Plaintiff explained in his initial SSB request, it is Department of Defense policy that a SSB be convened "if the decision of the original board that considered the officer was contrary to law or involved factual or administrative error, or if the board lacked some material information for consideration." AR p. 2, ¶ 3; *see* Pl. Ex. 6, p. 021, ¶ 4.1. Under this Department of Defense Instruction, once materiality is established, the only valid basis for denial of a SSB request is the

-44-

officer's failure to maintain "reasonably careful records." Pl. Ex. 6, p. 021, ¶ 4.2.

SECNAVINST 1401.1B is consistent with the instruction but uses the term "reasonable

diligence" in ensuring the accuracy of the records. Pl. Ex. 5, p. 012, ¶ 6.b.

## III. DEFENDANTS' REFUSAL TO CORRECT COLONEL SCOVEL'S REPORT VIOLATES AN APA STANDARD OF REVIEW

On December 9, 2004, Plaintiff submitted an application to BCNR, through the PERB, to

correct the markings on a fitness report authored by Col Scovel. AR pp. 580-591.[16] The report

at issue was for the evaluation period ending in March 15, 1999. AR pp. 584, ¶ 3.b. Plaintiff's

application included a letter from Col Scovel AR pp. 589-590. The basis for the request was that

Col Scovel at the time he authored the report thought Plaintiff was among the "top 5% of majors

[he] had observed in his 22 years of service" and marked Plaintiff in the 5th block of section K.3

of the fitness report believing at the time that this was consistent with a "top 5%" comment. AR

p. 589, ¶ 2; p. 588 (Copy of Fitness Report). The letter goes on to indicate that, in the

intervening years since the report was written, Col Scovel changed how he rates individual

officers. He now believes that a "top 5%" comment equates to a mark in the 7th block of section

K.3 and is how he now marks officers whose performance warrants a "top 5%" comment. AR p.

590, ¶ 4.

Col Scovel's letter clearly evidenced that he changed his grading philosophy over time in

direct contravention of MCO P 1610.7E. As such, the report is not "per established performance

---

[16] The certification for Volume II of the AR is in error. Mr. Pfeiffer is the Executive Director of the BCNR but he is not located within the Headquarters Marine Corps, Promotion Branch, Quantico, Virginia. Further, Captain Dronberger certified that Major McWaters provided the record. Again, this is incorrect.

evaluation policy". Ergo, the report is not valid and is inaccurate and its continued presence, in its current configuration, in Plaintiff's record is unjust. However, the PERB, instead of correcting Plaintiff's report as required by MCO 1610.11C, posits two theories to improperly deny Plaintiff's request to modify the report. Plaintiff, in his rebuttal to the PERB's opinion, which was submitted to BCNR, explained why the PERB's reasoning was flawed. AR pp. 467-567. However, the BCNR did not address any of Plaintiff's contentions. Instead, the BCNR simply endorsed the PERB's decision. Given BCNR's "substantial concur[ance]" with the PERB's opinion and the lack of any additional analysis, the BCNR has adopted the PERB's decision as its own. Further compounding its error, the BCNR failed to follow its own regulations in making its decision and the decision is internally inconsistent.

### A. PERB'S DECISION IGNORES THE EVIDENCE AND IS CONTRARY TO REGULATION.

Plaintiff divined two bases for the PERB's denial. The first is that Col Scovel simply had a change in perception of Plaintiff's performance over time and does not provide a basis for relief. AR pp. 459-460, ¶ 3.a. The second basis is that the report was accurate at the time it was written and, therefore, it is immaterial if it later became inaccurate. AR p. 460, ¶. 3.b.

#### 1. <u>Col Scovel's Perception of Plaintiff's Performance Did Not Change.</u>

In its opinion the PERB notes "nothing in the spirit or intent of [MCO P1610.7] provides reporting officials with the advantage of *hindsight*, combined with *subsequent* years of experience and observation, to change previously assigned evaluative grades or comparative assessments." Further, this paragraph uses the phrase *"reflection over a period of more than five*

-46-

*years,* and a generalized belief that *'inflation has returned.'*" AR pp. 459-460, ¶ 3.a. (Emphasis added). All the emphasized words are indicative that the PERB thought Col Scovel's' comments merely represented a change in perception or perspective over time. Per MCO 1610.11C, changing or altering the markings on a fitness report is not warranted when a rater's perception of a subordinate's performance changes over time or when the reviewing officer has "changed perspectives." Pl. Ex. 9, p. 059, ¶ 11.b.

The PERB's conclusion misapplies the evidence. Col Scovel's perception of Plaintiff's performance did not change over time. The change was Col Scovel's grading philosophy, which was in direct contravention of MCO P1610.7E. As Plaintiff stressed in his December 9, 2004 application to the PERB (AR pp. 582-595), Col Scovel thought Plaintiff was a "top 5%" performer at the time the report was written and still maintains that Plaintiff was a "top 5%" performer. AR p. 583, ¶ 6; *see* pp. 589-590 (Col Scovel letter). When the report was written, Col Scovel marked Plaintiff in the 5th block of section K.3 believing that this was consistent with a "top 5%" comment. However, because of his change in grading philosophy, Col Scovel now equates a "top 5%" comment to a mark in the 7th block of section K.3. AR p. 589-590, ¶¶ 3-4.

In his March 22, 2005 rebuttal to the BCNR from the PERB's opinion, Plaintiff again stressed that Col Scovel's view of Plaintiff's performance had not changed and that what had changed was Col Scovel's grading philosophy. AR p. 469, ¶ 5. BCNR did not address this error. Col Scovel's change in philosophy materially affects Plaintiff's comparative assessment, as discussed in paragraph IV, *infra,* and BCNR's failure to change the marking is unfair and unjust.

-47-

2. **Report Accurate When Written But Is Now Inaccurate Because Col Scovel Failed to Adhere to the Provisions of MCO P1610.7E.**

The PERB decision found that the report was accurate at the time it was written.[17]  It then concludes that because it was accurate when it was written, there is no basis for relief.  This conclusion is erroneous because, despite the fact that it may have been accurate when written, the report became inaccurate over time as Col Scovel, in contravention of MCO P1610.7E, changed his grading philosophy.  This resulted in an inaccurate and unjust portrayal of Plaintiff's performance record before the FY 2005 LtCol selection board because the inaccurate report negatively skewed Plaintiff's performance history given the current performance evaluation system's reliance on comparative assessments.

The PERB notes that a fitness report is a "snapshot of the Marine reported on **at the time** any given report is reviewed." AR p. 460, ¶ 3.b.  (Emphasis in original).  This was true under the "old" performance evaluation system and was a "point in time" comparison.  *See* AR p. 483, ¶ 2.  Assuming that this is, in fact, what the PERB meant, the view ignores that the current performance evaluation system is a "dynamic" system and the relative value of a report changes over time as the reviewing officer continues to write additional reports.  Pl. Ex. 8, p. 044-045, ¶ 8012.2; *see* AR p. 483, ¶ 2 (Col McCown Statement); Pl. Ex. 10, p. 065, ¶ 8 (Col Crowl Declaration).  It is also possible that the PERB simply misread or misapplied the order.

---

[17] Plaintiff does not contest that the report was accurate **at the time** it was written. Plaintiff makes this concession as he was one of the first, if not the first, reports written by Colonel Scovel under the current system, which was implemented in December 1998. Pl. Ex. 8, p. 33. The report was for the period ending March 15, 1999. Thus, the report was accurate, by definition, as Plaintiff was Colonel Scovel's baseline in establishing his grading philosophy.

-48-

Paragraph 8012.2.b and paragraph 8012.2.d of MCO P1610.7E refer to a raters profile as being a **"snapshot of the [rater's] rating history."** AR p. 44 (emphasis added). Obviously, the "Marine reported on" is not the rater. The point of these paragraphs in the MCO is to emphasize to the raters that their grading philosophy must remain consistent over time. Given that the profile is a "snapshot," the grading philosophy of the rater must remain consistent for the "snapshot" to be meaningful. Quite simply, the PERB's statement that a fitness report is a "snapshot of the Marine reported on **at the time** any given report is reviewed," is wrong and misapplies MCO P1610.7E. Plaintiff explained this in his rebuttal to the PERB's recommendation. AR p. 469, ¶ 6. BCNR never addressed this point.

The PERB acknowledged Plaintiff's contention of Col Scovel's inflation. AR p. 459 ¶ 2. However, it never addresses the issue except to say that "[i]t is imperative that reporting officials understand the significance that their grading philosophy remains consistent over time." AR p. 460, ¶ 3.b. The PERB's opinion ignores that, in Plaintiff's case, Col Scovel's grading philosophy did not remain consistent over time and he clearly acknowledges this change in the letter submitted to the PERB. The PERB discounts Col Scovel's perspective/perception that "inflation has returned" by treating it as a generic opinion. AR p. 460, ¶ 3.a. This misses the point. If Col Scovel had merely stated this opinion as a general observation about how grading philosophy has changed since the inception of the new performance evaluation system, that opinion, by itself, would not be a basis for relief. However, the opinion is highly relevant to the extent it has impacted on Col Scovel's personal grading philosophy. Plaintiff explained this in his rebuttal to the PERB's recommendation. AR pp. 468-469, n. 1. BCNR failed to address this point.

In stressing the importance of a consistent grading philosophy, the PERB cites to

-49-

subparagraph 8012.2 of MCO P1610.7E, which discusses the rater's "Profile Dynamics."

However, the PERB's opinion does not discuss why consistency is important, even though it is

contained in the very same subparagraph. Specifically,

> "[reporting officials] must accurately and fairly assess the
> performance of their subordinates; **[reporting officials] who fail
> to do so will unwittingly and _unfairly discriminate_ against
> either earlier reports or subsequent reports.**" Pl. Ex. 8, p.045, ¶
> 8012.2(e)(Emphasis added).
> . . .
> Reporting seniors who attempt to change their rating philosophy
> may either positively or negatively affect the relative value of
> reports for MROs they previously rated. Para. 8012.2(e)(2). **When
> the rater changes his philosophy and grades higher, he will
> diminish the value of all preceding reports ever written.** _Id._ at ¶
> 8012.2(e)(2)(a). (Emphasis added).

Plaintiff's is the situation described in subparagraph 8012.2(e)(2)(a). Col Scovel admits

that his grading philosophy changed. He initially rated a "top 5%" comment in the 5th block of

section K.3. He now rates a "top 5%" in the 7th block of section K.3. The PERB's decision is in

error. Plaintiff specifically explained the PERB's flawed rational to the BCNR. AR p. 470, ¶ 7.

The BCNR improperly rejected the evidence in adopting the PERB's decision and failed to

address Plaintiff's claims of regulatory error.

The PERB notes that Col Scovel's letter of September 2, 2003, is merely an endorsement

for promotion and not a request to change the mark. AR pp. 459-460, ¶ 3.a. Regardless, Plaintiff

submitted to the BCNR another letter from Col Scovel requesting official change. AR p. 482.

Col Scovel opines that:

> "Failure to change the report unfairly colors Major McGrady's
> performance because of the new evaluation system's reliance on
> comparative assessments. Those who may look at Major
> McGrady's record now or in the future would be misled as to his

performance during that period and as to his potential. This is not fair to the Marine or the Marine Corps, which relies on the performance evaluation system to make a myriad of personnel decisions. Major McGrady has a right to an accurate evaluation. The marking should be changed." *Id.* at ¶ 3.

BCNR did not even mention this letter in its decision.

## B. ADDITIONAL BASES ON WHICH BCNR'S DECISION VIOLATES APA STANDARD OF REVIEW

In addition to ratifying the shortcomings of the PERB's decision, BCNR's decision was problematic in other respects. BCNR treated the letters of Capt Davidson and Col Scovel in a dissimilar manner. BCNR implicitly admitted that the Col Scovel report was unfair and inaccurate but still decided not to order its correction. Finally, BCNR's decision fails to comport with its published regulations.

### 1. <u>BCNR Treated Two Cases Differently</u>

Although they differ as to the source, e.g. falsification verses inflation of grading philosophy, both Capt Davidson's and Col Scovel's reports are similar in that the marks unfairly color Plaintiff's performance. There is no rational basis for the disparate outcome. It is axiomatic that an agency must treat similar cases in a similar manner unless there is a legitimate reason for failing to do so. *Kreis v. Secretary of Air Force*, 406 F.3d 684, (D.C.Cir. 2005).

On the Capt Davidson report, BCNR issued a six-page report detailing the evidence and analyzing Plaintiff's contentions and ultimately concluded that the report should be changed. AR pp. 56-61. Included was an opinion from MMOA-4 (Officer Counseling and Evaluation

-51-

Division) that the requested change would increase the likelihood of Plaintiff's selection for promotion. AR pp. 62-63. This stands in stark contrast to BCNR's report on Plaintiff's application to correct Col Scovel's report.

Despite its "careful and conscientious consideration of the entire record," BCNR's 2 page decision does nothing more than ratify the decision of the PERB. AR pp. 651-652. The BCNR's decision does not articulate any standards or provide any relevant analysis in light of the PERB's 1 ½ page decision and Plaintiff's rebuttal consisting of 15 single spaced pages of relevant analysis and approximately 80-pages of supporting documentation. BCNR did not address even one of Plaintiff's contentions contained in his rebuttal to the PERB's recommendation. *See Chisolm v. United States*, 65 Fed. Cl. 497, 499 (2005) (finding that a corrections board acts in an arbitrary and capricious manner in disregarding contrary evidence without analysis and accepting as dispositive conclusory statements). Plaintiff identified to the BCNR that the PERB's decision misapplies the applicable orders and fails to consider Col Scovel's disregard for MCO P1610.7E's admonition to not change rating philosophy. BCNR's failure to address Plaintiff's contentions of regularity impropriety violates 32 C.F.R. 723.3(e)(4). Further, BCNR did not obtain an opinion from MMOA-4 as to the impact of the requested change on Plaintiff's selection for promotion.[18] Amended Complaint ¶ 122 and Answer thereto.

---

[18] Plaintiff speculates the decision's deficiencies are attributable, at least in part, to BCNR's efforts to meet the statutory deadline of 10 U.S.C. § 628. By letter of August 19, 2005, BCNR provided Plaintiff with MMPR's interim opinion for comment. AR pp. 461-462. Plaintiff responded on August 26, 2005, again, detailing the deficiencies of the PERB opinion and the MMPR's interim opinion. AR pp. 568-570. Plaintiff further noted the pendency of his complaint in this Court. AR p. 570, ¶ 9. BCNR issued its final decision on September 2, 2005.

2. **BCNR Implicitly Admits Col Scovel's Report was Unfair and Inaccurate.**

BCNR's decision notes that Plaintiff may continue to submit Col Scovel's letter to future boards. AR p. 652. This statement, quite frankly, constitutes an admission by Defendants that Col Scovel's report is inaccurate. The only purpose for submitting Col Scovel's letter is to attempt to ameliorate the unfairness and inaccuracy in Plaintiff's record caused by Col Scovel's inflation of his grading philosophy in contravention of MCO P1610.7E. Instead of correcting the record, BCNR simply says to include Col Scovel's letter. However, this does not make Plaintiff whole. Col McCown, a member of the FY 2005 LtCol promotion board, notes that Col Scovel's letter:

> "does not constitute a change to [Plaintiff's] official record, thereby submitting the contents to the subjective opinion of the Board members. . . . An official change to [Plaintiff's] record would document the quantitative, objective comparison intended by [Colonel Scovel] and remove the subjectivity of an endorsement letter." AR p. 484, ¶ 4.

Plaintiff notes that the PERB is composed of the same pool of officers who would be called upon to serve on promotion boards. The fact that the PERB rejected correction of the report indicates that it was likely that the officers comprising the FY 2005 LtCol promotion board also rejected or gave little weight to Col Scovel's letter identifying his change in grading philosophy. *See* Pl. Ex. 10, p. 066, ¶ 11 (Col Crowl Declaration opining that the letter, likely, was given little weight as it did not constitute any type of official change to the record). Thus, Plaintiff did not receive the benefit of a favorable comparable assessment that would have come from an accurate report nor was he given that benefit based on submission of Col Scovel's letter

to the selection boards. Plaintiff specifically noted this point in his rebuttal to the PERB's

recommendation. AR p. 476, n.9. BCNR never addressed this point.

The markings on the Scovel report are a clearly presented injustice and BCNR should

have taken action to remedy it. Indeed, "when a correction board fails to correct an injustice

clearly presented in the record before it, it is acting in violation of its mandate." *Roth v. U.S.* 378

F.3d 1371, 1381 (Fed. Cir. 2004) (*citing* to Yee v. United States, 206 Ct. Cl. (1975).

### 3. Because PERB Applied a Preponderance of the Evidence Standard, BCNR Cannot simply adopt the PERB's decision as it uses a Substantial Evidence Standard.

The PERB and BCNR rely on the presumption of regularity in official records, but it can

be rebutted. The PERB requires the petitioner to produce "relevant evidence tending to prove

that the allegations contained in the application are more likely true than not." Pl. Ex. 9, p.057, ¶

10.a. However, BCNR only requires the production of "substantial evidence" to defeat the

presumption of regularity. 32 C.F.R. § 723.3(e)(2); *see* Pl. Ex. 12.

There is nothing inherently wrong with the PERB imposing a higher standard of proof on

the petitioner to rebut the presumption of regularity than the BCNR. Since all Marine Corps

applications must go through the PERB to BCNR, it makes sense from a conservation of

resources standpoint to allow the PERB to correct those records in cases where there is

preponderant evidence, without the need for BCNR to make a determination. However, this

means that the BCNR may not, per its regulations, simply "substantially concur" in the PERB's

determinations.

In denying Plaintiff's petition to change the report, the PERB made an implicit finding

that Plaintiff failed to produce preponderant evidence that would overcome the presumption of

regularity. Instead of merely "substantially concurring" in the PERB's opinion, BCNR should

have weighed anew the evidence tending to rebut the presumption of regularity under a

"substantial evidence" standard. It did not and thus violated 32 C.F.R. § 723.3(e)(2). Pl. Ex. 12,

p. 75.

## IV. BASED ON THE INACCURACY OF COLONEL SCOVEL'S REPORT, THERE WAS "MATERIAL UNFAIRNESS" WITHIN THE MEANING OF 10 U.S.C. § 628(b) AND DEFENDANTS' IMPLEMENTING INSTRUCTIONS IN THE PROCESSES OF THE FY 2004 – FY 2006 REGULAR LIEUTENANT COLONEL SELECTION BOARDS.

In response to the PERB's denial of Plaintiff's request to correct Col Scovel's

comparative assessment marking, Plaintiff replied to BCNR detailing, *inter alia*, the legal basis

for requesting a SSB to include the issues of materiality and reasonable diligence. AR pp. 467 –

567. Plaintiff noted that if Col Scovel graded Plaintiff according to his current philosophy,

Plaintiff's comparative assessments before the FY 2005 LtCol selection board would have been

dramatically strengthened and increased the likelihood of his selection.

In support of this conclusion, Plaintiff's March 22, 2005 submission included a letter

from Col J.E. McCown. AR pp. 483-484.  He has served on three selection boards. AR p. 483,

¶ 1.  He notes that selection boards place "significant weight . . . on both the reporting seniors'

and reviewing officers' comparative assessments." AR p. 483.  He further notes that the

"relative value markings, provided by the [reporting senior] in the old reports and by the

[reviewing officer] in the new reports is one of the few objective, quantifiable tools available to

the board members." AR p. 483. Col McCown was a member of the FY 2005 LtCol selection

board. AR pp. 490. He noted that "an official change to Col Scovel's report would result in a

significant improvement in [Plaintiff's] comparative value marks." AR p. 484, ¶ 4. Col

McCown expressed that if Col Scovel's markings had been accurate, the resulting

> "shift in the over/under numbers would have altered, in
> [Plaintiff's] favor, one of the key criterion used in making selection
> decision and would have increased the possibility of his selection."
> AR p. 484, ¶ 5.

Based on this letter alone, it is certain that correction of Col Scovel marking would

improve Plaintiff's record and his chance for selection. This meets Defendants' definition of

"materiality." *See* Pl. Ex 5, p. 13, ¶ 8.c. To demonstrate Col McCown's comment that the

requested change would result in "significant improvement" to Plaintiff's over/under numbers,

Plaintiff provided the comparative assessment numbers as they would have likely appeared

before the FY 2005 selection board and how the comparative assessment numbers would change

if Col Scovel's report were corrected.

Before the FY 2005 LtCol selection board, Plaintiff had approximately 47 officers

ranked above him, 59 officers with him and 48 officers below him. AR pp. 486-487; *see* p. 474 ¶

12.b; AR p. 473, n. 7 (explaining how these numbers were derived from the Master Brief

Sheets). A record with a similar number of officers ranked above and below is not competitive.

If Col Scovel's report were amended to accurately reflect Plaintiff's performance under Col

Scovel's current grading philosophy, Plaintiff's record before the FY 2005 LtCol selection board

would have had approximately 17 officers ranked above him, 44 officers ranked with him, and

94 officers below him. AR p. 474, ¶ 12.b. A record with five times the numbers of officer below

as above is highly competitive and almost always promoted. Pl. Ex. 10, p. 066, ¶ 12.

The importance of comparative assessment cannot be overstated. Comparative assessments are one of the few objective criteria that a promotion board receives. Given the dramatic impact on Plaintiff's comparative assessments based upon Col Scovel's change in grading philosophy and the importance placed on the comparative assessment by the selection board, this must constitute material error. Under *Richey* an SSB should be convened to consider Plaintiff's case.

## V. THE SECRETARY'S DECISION TO DENY PLAINTIFF'S SSB REQUEST VIOLATES 10 U.S.C. § 628 (g)(1)(A).

Based on the analysis above it is clear that BCNR erred in not correcting Col Scovel's report as requested by Plaintiff and that such a correction is "material" within the meaning of 10 U.S.C. § 628. The only remaining issue is whether Plaintiff exercised reasonable diligence to ensure the accuracy of his record prior to the convening of the 2005 LtCol promotion board.

BCNR did not reach the issue of "reasonable diligence" as it, albeit improperly, denied to change Col Scovel's report. However, the Officer Promotion Branch of the Marine Corps' Manpower Division (Code MMPR) issued an advisory opinion recommending denial of Plaintiff's SSB request based on alleged "failure in identifying and correcting the error prior to being considered by the FY 2005 USMC Lieutenant Colonel Selection Board." AR p. 461-462, ¶ 3. As an initial point, this is wrong. Plaintiff "identified" the error to the board by submission of Col Scovel's letter. This is one of the SJA's "reasonable diligence" criteria. However, as noted by the PERB (AR pp. 459-460, ¶ 3.a), Col Crowl (Pl. Ex. 10, ¶ 11), and Col McCown (AR p. 484, ¶ 4), the letter would have been viewed as merely an endorsement for promotion and not

had any official impact on Plaintiff's cumulative assessment numbers. As such, although the error was identified, it did not serve as a substitute for an accurate report.

In Plaintiff's SSB request, he very specifically detailed what actions he had taken before the convening of both the FY 2004, and FY 2005 LtCol selection board. AR pp. 475-479, ¶¶ 16-25. Plaintiff recounted all of the actions he took in preparation before the FY 2004 board. AR p. 477-478, ¶ 18-21; *see* Paragraph II of Argument, *supra* (detailing actions taken by Plaintiff to prepare for the FY 2004 board). Plaintiff then noted that, given his extensive preparation for the FY 2004 board, little preparation was required for the FY 2005 board. AR p. 478, ¶ 22. However, Plaintiff specifically noted that he obtained a copy of his personnel file to ensure that all fitness reports were present, that his awards were properly annotated and that nothing had "dropped out" since the previous year. AR p. 479, ¶ 23. Plaintiff also noted that he ensured a current picture was resident within his file and wrote a personal letter to the president of the board. *Id.* Plaintiff also saw a career counselor. *Id.* at ¶ 24. In sum Plaintiff demonstrated that he was diligent based on the SJA's stated criteria and that he fulfilled his responsibilities to ensure the accuracy of his military records as identified in the applicable MARADMIN.

MMPR does not dispute any of Plaintiff's assertion concerning the actions he took to ensure the accuracy of his record. MMPR does not provide any substantive analysis to support its recommendation but summarily concludes that Plaintiff failed to exercise reasonable diligence. Like Defendants, Plaintiff should be allowed to rely on the presumption of regularity. Two career counselors from MMOA-4 reviewed Plaintiff's record and never identified any possible inconsistency between Col Scovel's comments and rankings. Even though Col Crowl identified the possible inconsistency, he noted that, what he perceived as a possible discrepancy,

could have been explained by Col Scovel being a tough grader and that there was, in fact, no inconsistency. Pl. Ex. 10, p. 066, ¶ 10. Absent evidence to the contrary, Plaintiff should be entitled to presume that Col Scovel followed applicable orders when authoring subsequent performance evaluations.

## CONCLUSION

Like Defendants, Plaintiff should be allowed to rely on the presumption of regularity. Under the guise of "reasonable diligence," Plaintiff should not be required before each selection board to query each of his rating officials to determine if they were continuing to follow applicable regulations or improperly manipulating a report. Defendants place the onus on Plaintiff to discover the improper conduct of Defendants' own officials. Defendants take this extreme and untenable position in an effort to deny Plaintiff's SSB request. Defendants' decisions under both Counts I and II of the Amended Complaint fail under an APA standard of review, whether that be under 10 U.S.C. § 628 or under 5 U.S.C. § 701 *et. seq.*, and should be reversed.

Under Count I, Defendants' assertions that Plaintiff should have known of the "nature" of the report are without basis and ignores the overwhelming evidence that indicates the report was accurate on its face. It is only when Capt Davidson admitted the falsification of the rankings that Plaintiff was put on notice of the error. The Secretary determined that Plaintiff discovered the error in 2003, which requires a finding that Plaintiff was "reasonably diligent." The Secretary cannot now ignore that determination and develop a contradictory rationale to deny Plaintiff's SSB request. Under Count II, Defendants' supervisor, Col Scovel, failed to maintain a consistent

-59-

grading philosophy in contravention of established orders. Defendants' orders admit that this is unfair and results in an inaccurate report. Defendants' position that Col Scovel, simply, should not have changed his grading philosophy and their subsequent refusal to make official correction to the military record is arbitrary. Plaintiff was severely disadvantaged by Col Scovel's report and Defendants' should have taken action to make appropriate corrections to Plaintiff's record and send his record to a SSB. These facts are not, genuinely, in dispute and Plaintiff should be granted summary judgment.

Respectfully submitted,

Dated: <u>August 23, 2006</u>

Jackson L. McGrady
Plaintiff, *Pro Se*
820 Bright Street
Fredericksburg, VA 22401
540.371.3792

-60-