UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACKSON L. MCGRADY, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case Number: 05CV01651 (GK) |
| ) | |
| DEPARTMENT OF THE NAVY, ) | |
| GORDON R. ENGLAND, Secretary ) | |
| of the Navy, ) | |
| ) | |
| Defendants ) | |

### DECLARATION OF COLONEL (RETIRED) DANIEL CROWL

1. My name is Daniel Crowl. I retired from the Marine Corps in July 2005 after serving nearly 38 continuous years. I enlisted in the Marine Corps in Oct 1967 and served for nine years in the enlisted ranks before being selected for appointment into the Warrant Officer Program. I was later promoted through all five ranks of Warrant Officer and served as well as a First Lieutenant, Captain, Major, Lieutenant Colonel, and Colonel. During the ensuing years, I was placed in a variety of operational and staff assignments. One of these assignments included a tour as the Command Inspector for Marine Corps Base, Quantico, Virginia. I served in this position from July 2002 until July 2003. It was during this assignment that I met Major McGrady who was also a member of the command staff.

2. In the early spring of 2003, I became aware that Major McGrady had not been selected for promotion by the FY 2004 lieutenant colonel selection board. Given my experiences with the Marine Corps' promotion process, I offered to assist Major McGrady by reviewing his service record with him in an effort to better prepare his record for the next promotion board.

3. My experience with the promotion process includes having served as a board member on numerous regular officer promotion boards and I have also served as a board member on several special promotion boards. As such, I felt qualified to explain the processes used by the boards in determining which officers are selected for promotion. Further, I have written hundreds of fitness reports during my career as an officer in the Marine Corps.

4. There are a variety of factors that weigh-into the decision making process for selection. One of the most important single factors is the comparison of an officer's performance with that of his peers. In 1998 the Marine Corps'

PLAINTIFF
EXHIBIT (10)
064

1

performance evaluation system changed. However, the emphasis on an officer's performance, as compared to his peers, remained a key, objective criterion in determining which officers were selected for promotion. Under the pre-1998 evaluations, the comparisons were known as Value and Distribution markings. With the current evaluation system, the comparisons are known as Comparative Assessments.

5. Under the pre-1998 reports, the reporting senior, who was the first level supervisor of an officer, rated that officer's performance against the other officers of the same grade under the same reporting senior at that point in time. This system required a reporting senior to numerically rank each officer, assuming all officers were marked as "outstanding." The system also required the reviewing officer, who was the second level supervisor, to make an independent assessment of the rankings and provide comments.

6. Even though the comments on the report could be outstanding, the report could have a detrimental effect if the officer faired poorly in the comparative assessment. These reports were due on a periodic (annual or semi-annual) basis. However, there were a number of other occasions when an officer would receive an evaluation. One such situation was when an officer transferred from the reporting senior's supervision.

7. Because of the possible negative consequences on an officer's career from an unfavorable comparative assessment resulting from a periodic report, some reporting seniors attempted to "game" the system. Specifically, if an officer was transferred at a time that did not coincide with the date a periodic evaluation was required, the reporting senior was only required to compare the officer that was transferring. This allowed a reporting senior to mark an officer as being first on a transfer report, even though he would have been rated significantly lower on a periodic report, because the reporting senior was not required to submit a report on the other officers under the reporting senior's supervision. Because of this tendency, being ranked other than first on a transfer report could be viewed very negatively by a promotion board, even though the officer reported on would have no basis to challenge the report under the performance evaluation system.

8. In 1998, in an effort to prevent this type of "gaming" as well as some other problems with the performance evaluation system, the system was radically changed. Under the new system, a reporting senior develops a reporting senior "profile". By means of this profile, every time a reporting senior writes a fitness report, the subject of the report is effectively ranked against all other officers of the same grade on whom the reporting senior has written a report since the inception of the new style reports. Because of this fact, it is vital to the integrity of the system that raters, both reporting seniors and reviewing officers, maintain a consistent grading philosophy over the course of their careers. If a rater changes his rating philosophy over time, it will significantly alter the value of earlier reports.

065

2

9. With these thoughts in mind, I reviewed Major McGrady's record. I highlighted what I thought were significant positive aspects of Major McGrady's record. These factors included a combat action ribbon for service in Southwest Asia during the first gulf war. He had received a Meritorious Service Medal, which, at that time, was not common for a major. He also had two other personal decorations. He had very positive reports written by a member of the Senior Executive Service. I found that the comments on all the fitness reports were positive. However, we discussed that a transfer report, written by Captain Davidson, in which Major McGrady was ranked "3 of 3", could be viewed negatively by a promotion board. I am aware that Major McGrady contacted Captain Davidson to obtain a letter to try and place the marks in context, such as saying that the other two officers were so superlative that a negative inference should not be drawn from a three of three ranking. Such letters do have some impact on the promotion board, albeit minimal, and officers frequently seek to obtain and submit these types of letters to promotion boards, especially after not being selected for promotion.

10. I also noted what I perceived as a possible inconsistency on a report written by Colonel Scovel. Colonel Scovel had identified Major McGrady as a "top 5%" performer. However, the comparative assessment mark was in the 5th of 8 block on the comparative assessment scale. Based on my personal grading philosophy and my observations of grading trends by other officers, I noted to Major McGrady that this appeared inconsistent. However, what I perceived as a possible discrepancy, could have been explained by Colonel Scovel being a tough grader and that there was, in fact, no inconsistency. As long as Colonel Scovel's grading philosophy remained consistent over time, the rater's "profile" would accurately reflect Colonel Scovel's assessment of Major McGrady as a "top 5%" performer.

11. I am aware that Major McGrady obtained a letter from Colonel Scovel indicating that his grading philosophy had changed between the time of his writing of Major McGrady's report and the convening of the FY 2004 lieutenant colonel selection board. I am also aware that Major McGrady submitted this letter to the FY 2005 lieutenant colonel promotion board. Again, I suspect that the letter had some impact, but it would have been minimal. The letter did not constitute any type of official change to Major McGrady's record and likely was viewed as simply an endorsement for promotion.

12. As mentioned above, based on my experiences on promotion board, an officer's comparative performance under either of the performance evaluation systems was a key factor in determining whether an officer was selected for promotion. While no one factor was conclusive, it was my sense that officers with two times as many officers ranked below as above were very competitive for promotion and were likely selected. Officers with 5 times as many officers below as above were rare and were almost certainly promoted.

066

3

13. Per the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on December 13, 2005.

*[signature]*

D. CROWL
Colonel, U.S. Marine Corps (Retired)

067