## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JACKSON L. MCGRADY,                          )
                                      )
       Plaintiff                             )
                                        )
       v.                                    )     Case Number:  05CV01651 (GK)
                                        )
DEPARTMENT OF THE NAVY,                       )
GORDON R. ENGLAND, Secretary                 )
of the Navy,                                 )
                                        )
       Defendants                            )

## PLAINTIFF'S OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff submits his opposition to Defendants motion for summary judgment pursuant to Fed.R.Civ.P. 56 and requests that Defendant' motion be denied.  In support of this opposition, Plaintiff relies upon his Amended Complaint and Answer thereto; his Memorandum of Points and Authorities in Opposition to Defendants' Cross-Motion for Summary Judgment; the Administrative Record(s) filed by Defendants; and all exhibits filed by the parties in this case. Plaintiff has also filed with his Opposition a Statement of Material Facts to Which There Exists a Genuine Issue. A proposed Order consistent with this Opposition is attached hereto.  Plaintiff requests oral argument on the motion.

                                     Respectfully submitted,

                                     J. L. MCGRADY
                                     Plaintiff, *Pro Se*
                                     820 Bright Street
                                     Fredericksburg, Virginia 22401
                                     540.371.3792

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

JACKSON L. MCGRADY,                    )
                                          )
        Plaintiff                    )
                                            )
        v.                          )          Case Number: 05CV01651 (GK)
                                            )
DEPARTMENT OF THE NAVY,                )
DONALD C. WINTER, Secretary            )
of the Navy,                           )
                                            )
        Defendants                   )

## STATEMENT OF MATERIAL FACTS
### AS TO WHICH THERE IS A GENUINE ISSUE

Pursuant to LCvR 7(h), Plaintiff submits this Statement of Material Facts as to which there is a Genuine Issue. This is submitted in opposition to Defendants' "STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE" and included with Defendants' motion for summary judgment. Except as noted below, Plaintiff agrees with Defendants' "STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE."

Paragraph 7. Plaintiff disputes the materiality of whether he contested the Davidson fitness report at the time it was written given the Secretary's August 26, 2003 decision. Specifically, since the Secretary in August 2003 found Plaintiff's application to change the report to be "timely" within the meaning of 10 U.S.C. § 1552, the Secretary has already determined that there was not a reasonable basis to discover or be on notice of the error at the time the report was written. *See* AR pp. 056-061 (Secretary's August 26, 2003 decision); 10 U.S.C. § 1552.

Paragraph 11. The statement is true but is not material. The implication of the statement is that

Plaintiff received all of the relief he requested and should not receive further relief. It was

Plaintiff's intention to ask for a SSB in conjunction with his application to the BCNR. Pl. Ex. 1,

¶ 4. However, prior to filing his request, Plaintiff contacted Mr. Brian George. *Id.* Mr. George

is an attorney who worked at the BCNR at that time. *Id.* Plaintiff sought advice from Mr.

George on the procedures for submitting a request to correct Plaintiff's fitness report as well

submitting a request for a SSB. *Id.* Mr. George told Plaintiff that he should request the SSB, if

BCNR granted the requested relief, through the Commandant of the Marine Corps (CMC)

instead of through the BCNR. His view was that it would be quicker.[1] *Id.*


Paragraph 12. Defendants cite to 32 C.F.R. § 723.2(b), which states:

> (b) *Function.* The Board is not an investigative body. Its function
> is to consider applications properly before it for the purpose of
> determining the existence of error or injustice in the naval records
> of current and former members of the Navy and Marine Corps, to
> make recommendations to the Secretary or to take corrective
> action on the Secretary's behalf when authorized. 32 C.F.R. §
> 723.2(b).

BCNR's role is to determine whether there is an error or injustice not whether a change is

"material." As such, the averment in this paragraph is misleading as it is not BCNR's function to

determine whether an error was "material" within the meaning of 10 U.S.C. § 628. Defendants

do admit, however, that BCNR's determination as to "error or injustice" is a factor for

consideration when making a "material error" determination for purposes of ordering an SSB.

AR pp. 29-30, ¶ 6.b.

---

[1] Per SECNAVINST, BCNR is required to route a SSB request through the CMC before making
a recommendation to the Secretary. Making the request directly through CMC, in theory, would
have saved some time. Def. Attch. H, ¶ 17.

Paragraph 13. Again, Plaintiff agrees that he received all the relief that he had requested in his May 6, 2003 application to the BCNR, but the statement is not material. It is not material because Mr. George told Plaintiff to file the SSB request through the CMC rather than including a SSB with the request to correct the Davidson report. Pl. Ex.. 1, ¶ 4.; *see* response to paragraph 11, *supra*.

Paragraph 16. Again, Plaintiff agrees that he received all the relief that he had requested in his May 6, 2003 application to the BCNR, but the statement is not material. It is not material because Mr. George told Plaintiff to file the SSB request through the CMC rather than including a SSB with the request to correct the Davidson report. Pl. Ex.. 1, ¶ 4.; *see* response to paragraph 11, *supra*.

Paragraph 17. This paragraph purports to identify what information was before the Secretary when he rendered his April 16, 2004 decision to deny Plaintiff's SSB request. Plaintiff disputes that the Secretary had before him the fact that Plaintiff was not selected by the FY 2005 board. Defendants cite to AR Vol. I (certified May 17, 2006) at p. 71. However, there is no mentioned on that page or anywhere else in the Secretary's April 16, 2004 decision that Plaintiff's non-selection by the FY 05 board was before him. *See id.* at pp. 70-72. To the extent that the cite may be referring to AR Vol. I (certified May 17, 2006) at p. 1 (first page of the Secretary's February 23, 2006 decision), this cannot be construed to identify what was before the Secretary on April 16, 2004.

Paragraph 18. See response to paragraph 20.

3

Paragraph 20. This is disputed. The Secretary, on April 16, 2004, adopted the CMC's February

16, 2004 recommendation without further comment or analysis. The CMC's recommendation

specifically cited to SECNAVINST 1401.1B's requirement for "material error" as a pre-

condition to ordering a SSB and that Plaintiff's request is based on "material error of fact." AR

p. 31, ¶ 2; AR Vol. I (certified May 17, 2006) at p. 70 ¶ 2 (duplicate cites to same document).

This demonstrates Defendants understanding of the materiality requirement. The decision never

argues that the change was not "material" and admits that the presence of the inaccurate report

"may have been a competitive concern." AR p. 32, ¶ 4a; AR Vol. I (certified May 17, 2006) at

p. 71 ¶ 4a. The fifth paragraph of CMC's recommendation, as adopted by the Secretary on April

16, 2004, is labeled "Conclusion." CMC concluded that Plaintiff's

> "request does not meet the requirements for a special selection
> board per [SECNAVINST 1401.1B]; he failed to exercise due
> diligence to ensure his record was substantially accurate and
> complete before the convening of the board." AR p. 32; AR Vol. I
> (certified May 17, 2006) at p. 71.

Given that Defendants understood the materiality requirement, Plaintiff's evidence on the issue

of materiality, and the "Conclusion" of the Secretary's decision, in which the only basis for

denial was reasonable diligence, the Secretary must have considered and conceded the issue of

materiality.

Further, as a result of the correction, the Secretary removed Plaintiff's failure of selection

by the FY 2004 board. The Secretary was not required to do this. Amended Complaint ¶ 102

and Answer thereto. It is Plaintiff's contention that the removal of the failure for selection

necessarily means that the Secretary found that the FY 2004 board considered Plaintiff in a

materially unfair manner.

Paragraph 22. Plaintiff disputes the materiality and accuracy of this paragraph. Defendants received Plaintiff's reconsideration request on February 9, 2005. Plaintiff filed his original Complaint on August 17, 2005. This constitutes a period in excess of 180 days or approximately 6 ¼ months. Per 10 U.S.C. 628, the Secretary has 6 months from the date of receipt of a complete application for a special selection board to render a decision or the request is deemed denied. At that point, a court has jurisdiction to review the deemed denial.

Paragraph 23. Plaintiff agrees that Defendants have accurately copies the excerpts from the Secretary's decision letter of February 23, 2006. However, whether the decision and its underlying rationale can survive judicial review is very much in dispute.

Paragraph 26. Defendants correctly note that Plaintiff asserted that Colonel Scovel changed his grading philosophy over time. However, Plaintiff, in his submission, which Defendants have designated as BCNR2, did not state that the change in grading philosophy was "in violation of MCO P1610.7." Plaintiff maintained that, per MCO P1610.7, Colonel Scovel's change in grading philosophy unfairly discriminated against him because the "change in philosophy severely diminishes the value of [the] report." AR pp. 470-471, ¶¶ 7-8. Further, Defendants' characterization of Plaintiff's contention that the "Scovel report constituted material error because it had been considered by the FY05 LtCol promotion board that had not selected him for promotion to LtCol" is not entirely accurate. Merely because the board considered the Scovel report does not, necessarily, mean that there was "material" error. Materiality is a separate element that Plaintiff must establish. Plaintiff established "materiality" by demonstrating the

impact on Plaintiff's rankings resulting from Colonel Scovel's change in grading philosophy and how the rankings would appear if given an accurate rating. *See* AR pp. 473-475, ¶ 12 .

Paragraph 28.  Plaintiff disputes whether this paragraph, as configured, states a fact and further disputes its materiality.  It is an undisputed fact that Plaintiff submitted Colonel Scovel's letter to the FY 2005 LtCol promotion board.  It is also a fact that Plaintiff requested official correction of the Scovel report through the BCNR.  However, Defendants' use of the word "despite" makes the paragraph argumentative.  It is Plaintiff's position that submission of the Scovel letter to the promotion board does not make Plaintiff whole.  Col McCown, a member of the FY 2005 LtCol promotion board, notes that Col Scovel's letter "does not constitute a change to [Plaintiff's] official record, thereby submitting the contents to the subjective opinion of the Board members." AR p. 484, ¶ 4.  Plaintiff notes that the PERB is composed of the same pool of officers who would be called upon to serve on promotion boards.  The fact that the PERB  rejected correction of the report indicates that it was likely that the officers comprising the FY 2005 LtCol promotion board also rejected or gave little weight to Col Scovel's letter identifying his change in grading philosophy.  *See* Pl. Ex. 3  ¶ 11 (Col Crowl Declaration opining that the letter, likely, was given little weight as it did not constitute any type of official change to the record).  Thus, Plaintiff did not receive the benefit of a favorable comparable assessment that would have come from an accurate report nor was he given that benefit based on submission of Col Scovel's letter to the selection boards. the materiality of this paragraph

Paragraph 29.  Plaintiff agrees that Defendants have accurately copies the excerpts from the PERB"S decision.  However, whether the recommendation/decision and its underlying rationale

can survive judicial review is very much in dispute. Further, Plaintiff specifically addressed that the PERB's rationale concerning an assessment being a "snapshot at the time" was flawed under the current performance evaluation system, which is "dynamic" in nature. *See* AR pp. 469-470, ¶6. Defendants have never addressed this point during administrative processing.

Paragraph 30. In this paragraph, Defendants attempt to characterize Colonel Scovel's letter of March 22, 2005, which was an official request to correct the rankings, and cite to "AR 467-481 482." AR 467-481 is Plaintiff's statement to BCNR and rebuttal to the PERB's recommendation. The Scovel letter is contained at AR 482. Nowhere within that letter is the statement "inflation of grades might make it look bad now." *See* AR p. 482. Paragraph 3 of the letter makes clear that Colonel Scovel changed his personal rating philosophy and states:

> "As I now rank officers, a "top5%" comment equates to a marking in the 7 block of the Christmas tree. Failure to change the report unfairly colors [Plaintiff's] performance because of the new evaluation system's reliance on comparative assessments. Those who may look at [Plaintiff's] record now or in the future would be misled as to his performance during that period and as to his potential. This is not fair to the Marine or the Marine Corps, which relies on the performance evaluation system to make a myriad of personnel decisions. [Plaintiff] has a right to an accurate evaluation. The marking should be changed." AR p. 482, ¶ 3.

Plaintiff then demonstrates why this change had a material impact on the Plaintiff's record.

Paragraph 32. Plaintiff agrees that Defendants have accurately copied the listed excerpts from BCNR's September 2, 2005. However, whether the decision and its underlying rationale can survive judicial review is very much in dispute.

7

Respectfully submitted,

Date:  August 21, 2006

J. L. McGrady
Plaintiff, *Pro Se*
820 Bright Street
Fredericksburg, Virginia 22401
540.371.3792

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JACKSON L. MCGRADY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case Number: 05CV01651 (GK) |
| | ) | |
| DEPARTMENT OF THE NAVY, | ) | |
| DONALD C. WINTER, Secretary | ) | |
| of the Navy, | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, pursuant to LCvR 7(h) and LCvR 56.1, respectfully submits this Memorandum of Points and Authorities in support of Plaintiff's opposition to Defendants' Motion for Summary Judgment.

### REMEDY

Defendants argue that if the Court deems the Secretary's explanation of his decision to be inadequate, the remedy is a remand to the Secretary with an order to provide such explanation. Defendants Motion for Summary Judgment (Def. Mot. Sum. Jud.) p. 9. This contradicts the plain language of 10 U.S.C. § 628:

> If a court sets aside a determination by the Secretary of a military department not to convene a special selection board under this section, it *shall* remand the case to the Secretary concerned, who *shall* provide for consideration by such a board. 10 U.S.C. § 628(g)(1)(B) (emphasis added).

If the Court sets aside the determination of the Secretary, the case must be returned to the

-1-

Secretary who shall provide consideration by a SSB. The remedy cannot be more clear.

## ARGUMENT

Defendants admit that Plaintiff's requests were "not frivolous or baseless." Def. Mot. Sum. Jud., p. 12. Defendants even recognize their responsibility to "consider each non-frivolous argument raised by the service member." *Id*. at p. 9 citing to *Frizelle v. Slater*, 111 F.3d 172 (D.C. Cir. 1997); *see Smith v. Dalton*, 927 F.Supp 1, 5 (D.D.C. 1996) (holding the Court must examine whether the agency considered all of the evidence before it, and if so, if it stated why the evidence contrary to the final decision was "disregarded or given less weight"). However, during the administrative process Defendants never addressed Plaintiff's valid arguments. In responding to Defendants' present motion, Plaintiff highlights several of these arguments. Those not raised in this opposition will be addressed in Plaintiff's cross-motion.

## ARGUMENT – DAVIDSON REPORT

Defendants' claim that the Secretary provided an "in-depth analysis of the reasons for his decisions," and that Plaintiff has not demonstrated that the "decision making process to be flawed, irrational, or not firmly based in evidence." Def. Mot. Sum. Jud., p. 14. Plaintiff disagrees. The facts demonstrate that the Secretary's decisions are contradictory, are not based on substantial evidence and are, otherwise, fundamentally flawed.

## I. Count I of the Amended Complaint is not Moot - Defendants Required to Issue Decision within 6 Months of Receipt of a "Complete Application.

Defendants argue that Count I of Plaintiff's Amended Complaint is moot and that, regardless, Defendants were not required to respond to Plaintiff's self styled "request for

-2-

reconsideration." Def. Mot. Sum Jud., p. 11.  This is not the case.

### A. Claim Not Moot - Impacts on the Proper Content of the Administrative Record Secretary Cannot Develop *Post Hoc* Rationalization for Litigation.

In his Amended Complaint, Plaintiff seeks review of the Secretary's "deemed denial" of

Plaintiff's Special Selection Board (SSB) request. Count II is pled in the alternative. The proper

content of the administrative record will be materially different if the Court proceeds under

Count I as opposed to Count II. Specifically, under Count I, the Secretary's February 23, 2006

decision is not properly part of the administrative record or at least should not be considered by

the Court. This is significant because the Secretary's April 16, 2004 decision concedes the issue

of materiality.[1] The Secretary's February 23, 2006 decision places materiality directly at issue.

Thus, depending on the proper content of the administrative record, materiality may or may not

be an element of the litigation. The issue cannot be moot.

During the April 25, 2006 Status Conference, the Court instructed Defendants to file a

supplement to the then existing certified administrative record. The supplement was to include

the Secretary's February 23, 2006 decision. Plaintiff requested that Defendants be required to

file a motion to supplement the administrative record to test Plaintiff's position that the February

23, 2006 decision was a *post hoc* rationalization made for purposes of litigation, which would be

properly excluded from the administrative record. The Court declined, but in response to

Plaintiff's concern about preserving the issue, instructed Plaintiff to raise the issue in the

dispositive motions. Plaintiff does so now and notes the following factors that indicate the

Secretary's decision was issued merely for purposes of defending the current litigation.

---

[1] Paragraph IV specifically addresses and demonstrates this point.

First, prior to filing his original Complaint on August 17, 2005, but during the month of

August 2005, Plaintiff contacted LtCol Carberry, an attorney within the office of the Staff Judge

Advocate to the Commandant and whose responsibilities include oversight of SSB requests,

seeking information about his February 7, 2005 request. Plaintiff's Exhibit (Pl. Ex.) 1 (Plaintiff's

Declaration), ¶ 2. LtCol Carberry later, orally informed Plaintiff that LtCol Carberry contacted

personnel within the Navy's Office of the Staff Judge Advocate (Code 13) and indicated that a

final decision would be issued in a matter of weeks. *Id*; *See* Adams' Declaration submitted by

Defendants on February 24, 2006, Document Number 28 (indicating Code 13 is responsible for

processing SSB requests). Plaintiff also contacted Mr. Bryan Wood who agreed to seek

information concerning the status of the SSB request. *Id*. at ¶ 3 and enclosure (1) (e-mail dated

August 12, 2005 between Plaintiff and Mr. Wood). At the time Mr. Wood was the Deputy

Counsel to the Commandant of the Marine Corps. *Id*. at ¶ 3. Between the date of the e-mail and

the filing of the original Complaint, Mr. Wood orally told Plaintiff that he spoke with Code 13

and that a final decision was expected in a matter of weeks. *Id*.

The Secretary's decision did not issue in a matter of a few weeks or even a few months.

Instead, the Secretary issued his decision some six months after the Complaint was filed. The

decision issued after Plaintiff had engaged in several communications, to include a conference

call, with opposing counsel and agency counsel in an attempt to narrow the issues, which

included specific discussion of the fact that the Secretary did not raise the issue of materiality in

his April 16, 2004 decision. Pl. Ex. 1, ¶ 6 and enclosure 2 (e-mails from November 3 and

December 5 from Plaintiff to opposing counsel regarding the fact that the April 14, 2004 decision

was not based on materiality). The decision issued only after Plaintiff timely submitted his

-4-

January 9, 2006 motion for summary judgment in which he specifically noted that the Secretary's previous decision did not raise the issue of materiality. Immediately after submission of that motion, there were a plethora of extension requests and ultimately a request to stay the proceedings by Defendants to allow the Secretary to issue a decision.[2] The Secretary's decision was issued on February 23, 2006 and upheld the original basis for denial and also added materiality as an additional basis. AR Vol I (Certified May 17, 2006), pp 002-003.

The *post hoc* nature of the February 23, 2006 decision is further demonstrated by the fact that the decision on Plaintiff's request for reconsideration took over 12 months compared to seven months for Plaintiff's original request. Further, in Plaintiff's original request, the Secretary required only two months to issue a decision after receiving CMC's recommendation. This two month time frame would have also been consistent with the reports by LtCol Carberry and Mr. Wood in August 2005 that a decision was expected in a few weeks given that the CMC issued his recommendation on July 25, 2006. Instead, the Secretary required seven months to issue a decision after receiving CMC's recommendation in Plaintiff's request for reconsideration. Given the timing and sequence of events, the Secretary's motivation is clear; and his decision should be stricken from the administrative record or at least not considered by the Court.[3]

---

[2] As of January 9, 2006, per the Court's Order, cross motions were due on January 13, 2006. Plaintiff submitted his motion on January 9, 2006. On or about January 10, 2006, opposing counsel contacted Plaintiff requesting a two week extension. Plaintiff agreed to a one week extension. On January 12, 2006, due to personnel circumstances of opposing counsel, Plaintiff consented to a two week delay. Defendants' motion was due on January 27, 2006. On January 26, 2006, Defendants requested Plaintiff to consent to a one day extension. On January 27, 2005 Defendants motioned for an 18 day extension. On February 8, 2006, Defendants filed a motion to stay the proceeding with the explicit purpose of allowing the Secretary to issue a decision.

[3] The timing and sequence of events gives rise to an adverse inference in other cases. *See*

### B. Receipt of a "Complete Application" Triggers Six Months Limitations Period.

Defendants aver that, even if review of the deemed denial is not moot, Defendants were

not required to respond within the six month limit imposed by 10 U.S.C. § 628 because

Plaintiff's February 7, 2005 request was styled as a "request for reconsideration." Def. Mot.

Sum. Jud., p. 11. This argument, as a general principal, is wrong, because the issue under 10

U.S.C. § 628 is whether the submission was a "complete application."[4] Defendants'

interpretation is too narrow. Plaintiff's request for reconsideration could not have been a more

"complete application." Regardless, Defendants argument is not even colorable under the facts of

this case as the Secretary did not treat the application as a request for reconsideration but

processed it as a new request.

The Secretary's April 16, 2004 decision contained no objective criteria upon which the

reasonable diligence determination was based. *See* AR p. 73 - 75. Plaintiff, upon obtaining the

legal memorandum relating to the decision, determined the Secretary's decision was premised on

an assumed lack of career counselor contact. *See* AR pp 27-30, ¶ 5.c. The Secretary's review of

Plaintiff's subsequent SSB request should have been limited to that point. Instead, the Secretary

posits other reasons why Plaintiff, allegedly, failed to exercise reasonable diligence and adds an

---

*generally* 5 U.S.C. 1221(e) (allowing employee to demonstrate that employee's protected
disclosure was a contributing factor based, merely, on the temporal proximity of the disclosure
and the adverse personnel action). An adverse inference should be drawn in this case as well.

[4] "If, six months after receiving a *complete application for consideration by a special selection
board under this section in any case*, the Secretary concerned has not convened such a board and
has not denied consideration by such a board in that case, the Secretary shall be deemed for the
purposes of this subsection to have denied the consideration of the case by such a board." 10
U.S.C. § 628(g)(3)(A) (emphasis added).

additional basis for denial by alleging the change was not material. *See* AR Vol. I (certified May 17, 2006), pp. 002-003. There is no doubt that the Secretary made a *de novo* review of Plaintiff's request. Since the Secretary treated the request as a new request, he should be estopped from arguing that the time limits of 10 U.S.C. § 628 are not applicable because the request was styled as a "request for reconsideration."

### 1. 10 U.S.C. § 628 Applies to "Request for Reconsideration" or it Does Not.

Defendants appear to concede the Court's jurisdiction under 10 U.S.C. § 628 to review the Secretary's February 23, 2006 decision. *See* Def. Mot. Sum. Jud., pp. 12-15. This is incongruous with Defendants' claims that they are not bound by the limitations period. Either 10 U.S.C. § 628 applies or it does not. Defendants cannot claim that they are not bound by the limitation period then concede the Court's jurisdiction to review the Secretary's February 23, 2006 decision under the statute. Again, this issue is important as it determines the proper content of the administrative record. If the statute applies, the proper record for review would not include the Secretary's February 23, 2006 decision. If the statute does not apply, the current administrative record is the appropriate basis for review, but jurisdiction is founded in 5 U.S.C. § 701 *et. seq.* (Administrative Procedures Act (APA)).

Given that Congress created a special jurisdictional statute for SSB requests, it makes sense to proceed under that statute instead of torturing the language to exclude review, which would only result in review under the APA. Under 5 U.S.C. § 704 the Court has jurisdiction to review agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court. In this case, 10 U.S.C. § 628 provides an adequate remedy.

-7-

## II. **Secretary's Discretion Whether to Convene SSB is Constrained by Regulations.**

Defendants place great reliance on the discretion afforded to a service Secretary under 10

U.S.C. § 628 to convene a SSB even in situations where the officer's records, as considered by

the promotion board, contained material unfairness. Def. Mot. Sum Jud., p. 8. Defendants

ignore a key point. The Secretary's discretion is limited by Department of Defense (DoD)

regulations. *See* Amended Complaint ¶ 106 and Answer thereto (Defendants admitting that they

are bound by DoD regulations). The Secretary's discretion is also constrained by his own

regulations to include Secretary of the Navy Instruction (SECNAVINST) 1401.11B. Def. Attch.

H. Finally, 10 U.S.C. § 628 also imposes certain restrictions on the Secretary's discretion.

DoD Instruction 1320.11 establishes DoD policy on convening SSBs and provides that:

> "Each Military Department *shall* use a Special Selection Board for
> the reasons listed in Section 628(a) . . . *or* if the decision of the
> *original* board involved a factual or administrative error, *or* if the
> board lacked some material information for its consideration." Pl.
> Ex. 2, ¶ 4.1 (emphasis added).[5]

The only exception to this rule is that a SSB:

> "shall not . . . consider any person who may, by maintaining
> reasonably careful records, have discovered and taken steps to
> correct that error or omission on which the original board based
> its decision against promotion." Pl. Ex. 2, ¶ 4.2.

Under this DoD instruction once Plaintiff establishes error, materiality and reasonable diligence,

the Secretary has no choice but to convene a SSB.

Regardless of DoD policy, SECNAVINST 1401.11B also limits the Secretary's

---

[5] The latter half of this paragraph mirrors the language of 10 U.S.C. § 628(b), which allows the service Secretary discretion to convene a board. However, the Secretary of Defense, through

discretion, which provides that:

> "Correction of an error in an officer's record, after the officer
> incurs a failure of selection by the promotion selection board that
> was affected by the error, will not necessarily be the basis for the
> convening of a board." Def. Ex. H, ¶ 6a.

> "A special selection board will not be convened to consider any
> officer who, through the exercise of reasonable diligence, might
> have discovered and corrected the error or omission in the official
> record prior to the convening the promotion selection board that
> considered, but did not select the officer." Def . Ex. H, ¶ 6b.

Quite simply, paragraph 6a acknowledges the Secretary's discretion and then limits that

discretion in paragraph 6b by stating that a SSB will not be convened if the officer failed to

exercise "reasonable diligence" to ensure the accuracy of the officer's record. The

SECNAVINST does not identify any other circumstances in which the Secretary would deny a

SSB request. This reading is consistent with DoD Instruction 1320.11.

    10 U.S.C. § 628 also operates as a limitation on the Secretary's discretion. Specifically,

the statute requires that the service Secretary's implementing instructions be approved by the

Secretary of Defense. 10 U.S.C. § 628(j)(3). The Secretary of the Navy is not free to articulate a

rationale that has not been approved by the Secretary of Defense. The Secretary is not free to

articulate a rationale that is not established within his own instruction.

    Based on the above, it is clear that materiality and reasonable diligence can be the *only*

basis for denial of Plaintiff SSB request. Speculation in Defendants' motion that posits other

circumstances in which the Secretary might appropriately exercise his discretion is irrelevant as it

conflicts with the applicable instructions. Further, this approach ignores the fact that the

---

issuance of DoD Instruction 1320.11, takes away this discretion.

Secretary specifically articulated the bases for his finding that the change was not material, e.g. accurate when written, four month report, and present when promoted to captain and major. AR, Vol. I (certified on May 17, 2006) at pp. 002-003. Defendants, for purposes of litigation, cannot now posit a different rationale for materiality.

## III. Secretary's Bases for Materiality Are Contradictory or Otherwise Violate an APA Standard of Review.

On the issue of materiality Defendants cite to the fact that the Secretary was informed that Plaintiff was placed back in zone before the FY 2005 board but was still not selected even with the corrected Davidson report. Def. Mot. Sum Jud., p. 12. This point, while providing an accurate account of the historical facts, is irrelevant to the analysis. The Secretary did not base his materiality determination on this fact.[6] The Secretary specifically identifies the bases for his determination that the change was not material. First, he relies on his opinion that the report was accurate when written. Second, he relies on the fact that Plaintiff was promoted to captain and major with the four-month report present in his record. AR Vol. I (certified on May 17, 2006) pp. 002-003. These bases cannot survive judicial review.

### A. Secretary's February 23, 2006 decision Contradicts His August 26, 2003 Decision Issued Through the Board for Correction of Naval Records.

On materiality, the Secretary's February 23, 2006 decision notes that:

> "there is no evidence that, at the time the report was written, the reporting senior failed to consider all issues pertaining to the three first lieutenants

---

[6] Defendants are in agreement on this point. *See* Def. Mot. Sum Jud. p. 13 (noting on the issue of materiality that the Secretary found the Davidson report covered less than a four month period and that it was present in Plaintiff's record when he was promoted to captain and major).

he was evaluating. To the contrary, the fitness report was accurate, and based on the reporting senior's opinion at the time. Subsequent regret over the consequence of a ranking decision does not alone constitute material error and reconsideration after the fact, motivated by an individual failing of selection, does not form the basis for granting a Special Selection Board." AR Vol. I (certified on May 17, 2006) pp. 002-003.

The recommendation of the Performance Evaluation Review Board (PERB), dated July 16, 2003, was to deny Plaintiff's request to correct Davidson report noting:[7]

"the PERB concluded that the report is administratively correct and procedurally complete as written and filed."

. . .

"Captain Davison obviously considered all issues pertaining to the three First Lieutenants on whom he was writing."

. . .

"Opinions may change and waver with time. However, reconsideration after the fact, or those motivated by an individual failing selection, should not be used to change a performance evaluation that was done accurately, timely and based on the reporting official's knowledge *at the time*." AR pp. 129-130 (emphasis in original).

The Secretary's February 23, 2006 rationale regarding materiality is the same as the PERB's rationale for recommending denial to correct Davidson's rankings

The PERB's July 16, 2003 recommendation was enclosure (2) to the August 26, 2003 decision of the Board for Correction of Naval Records (BCNR) regarding Plaintiff's request to correct the rankings on the Davidson report. BCNR. AR p. 056 (first page of BCNR decision listing PERB recommendation as enclosure 2). Acting on behalf of the Secretary, BCNR ordered correction of the Captain Davidson report noting:

"[u]pon review and consideration of all the evidence of record, **and not withstanding the contents of [the PERB's July 16, 2003**

---

[7] Marine Corps personnel must route petitions to BCNR through the PERB. The PERB, on behalf of the Commandant of the Marine Corps, issues a recommended disposition.

recommendation], the Board finds an injustice warranting the requested fitness report modification and removal of [Plaintiff's] failure of selection to lieutenant colonel." AR p. 060 (emphasis added).

**The Secretary's August 26, 2003 decision to correct the Davidson report specifically rejects the rationale adopted by the Secretary in his February 23, 2006 decision.** This is plain error. In fact, the Secretary's February 23, 2006 decision, arguably violates 10 U.S.C. § 1552 (a)(4), which states that a correction under this section is final and conclusive on all officers of the United States. The Secretary, as an officer of the United States, is bound by his original determination. Plaintiff raised this point in the administrative process. AR p. 047-048, ¶¶ 37-39. Defendants never addressed the alleged statutory violation.

### B. Presence of Davidson Report When Promoted to Captain and Major is Irrelevant as to Promotion for Lieutenant Colonel.

The Secretary, on the issue of materiality, relies on the fact that the report was over a four month period and that the report was present in Plaintiff's record when he was promoted to captain and major. Neither point provides a rational basis for the materiality decision.

#### 1. First Lieutenant Reports Were Due on Semi-Annual Basis.

Defendants downplay the importance of the report by arguing that it only covered a four month period. However, this ignores important facts. Lieutenant reports were due every 6 months. Pl. Ex. 1, ¶ 10 citing to excerpts of MCO P1610.7E. Thus, the report covered approximately 80% of the normal reporting period. Further, a supervisor is *required* to write a report on a subordinate if the supervisor has observed the subordinates performance for a period of 31-days. *Id.* Thus, contrary to Defendants attempted characterization, the report was likely given similar weight as a regular semi-annual report.

-12-

The most significant point ignored by Defendants is the report was a "transfer" report or "detaching report." As noted in Defendants' Statement of Undisputed Facts at footnote three, detaching reports "would normally not rank an officer against other officers unless multiple officers of the same rank detached on the same day." Being ranked last on a transfer or detaching report sends a strong negative signal to a promotion board. Pl. Ex. 3, ¶¶ 5-7 (Declaration of Colonel Crowl). Plaintiff noted this fact during administrative processing. AR Vol. I (certified on May 17, 2006) p. 015, ¶ 30; AR p. 45 ¶ 30. Defendants have never addressed this point.

### 2. Material Error may not Prevent Promotion to Captain and Major but May Prevent Promotion to Lieutenant Colonel.

The Secretary placed a great deal of reliance on the fact that the Davidson fitness report was present in Plaintiff's military record when he was promoted to captain and major and leads to his conclusion that the change was not material. This reasoning is fatally flawed for the simple reason that promotional opportunities dramatically decrease as an officer becomes more senior. For FY 2004 and FY 2005, the promotion rate for captains was 99%. The promotion rate for major was 90%. The promotion rate for lieutenant colonels was 70%. Pl. Ex. 1, ¶ 7. Given this fact, any negative aspect of a military record is magnified in later promotion boards. Quite simply, a report that did not keep an individual from getting prompted to captain or major may very well be a report that prevents an individual from getting promoted to lieutenant colonel.

## IV. Secretary and CMC Have Conceded Materiality.

Defendants note that prior to convening a SSB under 10 U.S.C. § 628, the Secretary **must** determine that there was material error. Def. Mot. Sum Jud., p. 3 (emphasis in original).

-13-

However, Defendants also point to the fact that, when the Secretary made his initial denial decision on April 16, 2004, that the CMC "did not recommend that the Secretary find that the Davidson report comprised 'material error.'"[8] Def. Mot. Sum. Jud. p. 13. The implication appears to be that since there was never an *explicit* finding of materiality by the Secretary in his April 2004 decision, the Secretary is free to conclude that the error was material in February 2006 in response to Plaintiff's filing of his Complaint. This is specious.

The Secretary's April 16, 2004 decision, specifically cited to SECNAVINST 1401.1B's requirement for "material error" as a pre-condition to ordering a SSB and that Plaintiff's request is based on "material error of fact." AR p. 031, ¶¶ 2-3. The Secretary understood the materiality requirement. The decision never argues that the change was not "material" and admits that the presence of the inaccurate report "may have been a competitive concern." AR p. 32, ¶ 4a. Given these facts, it is inconceivable that Defendants would not have made a specific finding that the correction was not material if it was, in fact, not material.

The fifth paragraph of CMC's recommendation, as adopted by the Secretary on April 16, 2004, is labeled "Conclusion." CMC concluded that Plaintiff's

> "request does not meet the requirements for a special selection
> board per [SECNAVINST 1401.1B]; he failed to exercise due
> diligence to ensure his record was substantially accurate and
> complete before the convening of the board." AR p. 032. ¶ 5.

It is also significant that CMC, in his recommendation of July 25, 2005 notes that the Secretary "disapproved [Plaintiff's] request on 16 April 2004 based on the fact that *he did not exercise reasonable diligence*." AR p. 183, ¶ 3.b. CMC states the Secretrary "denied

---

[8] To put this in context, the Secretary, without further comment or analysis, accepted the CMC's

[Plaintiff's] request due to his failure to exercise reasonable diligence." *Id.* at ¶ 3.c. This is also consistent with the promotions branch assessment of the April 16, 2004 deicison, which states the denial was "based on the fact that he did not exercise reasonable diligence." AR 461, ¶ 2.b. There is no mention of the Secretary denying the request based on materiality.

Given that Defendants understood the materiality requirement, Plaintiff's evidence on the issue of materiality, and the "Conclusion" of the Secretary's decision, in which the only basis for denial was reasonable diligence, the Secretary must have considered and conceded the issue of materiality. This is the only rational reading of the decision given the evidence and the finding that the error "may have been a competitive concern."

This is also consistent with Defendants acknowledgement that the Secretary **must** address the issue of materiality. Defendants cannot be arguing that the Secretary's April 16, 2004 decision was incomplete, especially in light of "the legal presumption that the Secretary, as a public officer, has discharged his duties lawfully an in good faith." *See* Def. Mot. Sum. Jud., p. 8 (citing to *McDougall v. Widnall*, 20 F. Supp. 2d 78, 82 (D.D.C. 1998). Defendants' efforts to argue that that the Secretary did not consider the issue of materiality in his April 2004 decision ring hollow. The Secretary should not now, for purposes of this litigation, be permitted to argue that the change was not material.

## V. Plaintiff was Reasonably Diligent and Secretary's Contrary Conclusion Violates and APA Standard of Review.

The February 2006 decision finds Plaintiff was not reasonably diligent in ensuring the accuracy of his records because he was aware of the 3 of 3 ranking and took no action to change recommendation. AR pp. 031-033. As such, analysis must focus on CMC's recommendation.

or inquire into the circumstances surrounding the rankings. This rationale is flawed.

At the time of the report, Plaintiff had no rational basis to contest the report. Plaintiff, then a first lieutenant, was rated 3 of 3 by a Marine Corps Captain and a Marine Corps Major, who was the executive officer of an infantry battalion. Other than the ranking, the report was positive and provided no basis for an appeal. Other than the conclusion that Plaintiff knew he was ranked 3 of 3, Defendants have never pointed to any objective reason that Plaintiff should have been aware that Davidson improperly manipulated the rankings and that Wilk failed to exercise his independent judgment on the rankings as he was required to do. Amended Complaint 47 and Answer thereto.

Defendants' position, again, ignores the Secretary's August 2003 decision in which he found that Plaintiff's application for correction under 10 U.S.C. 1552, which has a three limitations period, was "timely." This necessarily means that the Secretary has already determined that there was no basis for Plaintiff to contest the report at the time it was written. This point was specifically raised in Plaintiff's request for reconsideration. AR pp. 37-38, ¶¶ 37-39. The Secretary never addressed this point and ignores his previous decision to improperly find that Plaintiff was not reasonably diligent.

The Secretary, in part, defends on the idea that he, as a public official, is presumed to carry out his duties lawfully and in good faith. Def. Mot. Sum. Jud., p. 8. Plaintiff argued in his request that he should be entitled to rely on that same presumption as it relates to Davidson and Wilk. AR p. 045-046, ¶ 31. Again, the Secretary never addresses this point. From this presumption, it flows that neither Plaintiff nor any military officer is required to query each of his previous raters throughout the officer's career to determine if the raters acted improperly absent

-16-

some evidence to the contrary.  An opposite conclusion would lead to absurd results.  Plaintiff raised this point in his request for reconsideration. *Id.*  The Secretary never addressed it.

## VI.  Secretary Failed to Address Plaintiff's Argument Demonstrating Materiality.

In this opposition, Plaintiff identifies arguments raised during the administrative process that the Secretary never addresses.  Plaintiff notes that he specifically examined the issue of "materiality" in his SSB request to the Secretary by developing independent evidence that the FY 2004 board placed dispositive weight on first lieutenant rankings by examining and comparing the records of other officers who did and did not get selected for promotion.  *See* AR pp. 137-139, ¶¶ 12-19; AR pp. 2-4, ¶¶ 5-11.  The Secretary never addressed this evidence.

### ARGUMENT – SCOVEL REPORT

## I.  Court Has Jurisdiction to Review Deemed Denial Under 10 U.S.C. § 628.

Defendants state that the BCNR, when acting upon a SSB request, "may act as an agent for the Secretary to determine if an error existed, or whether any such error created material unfairness under 10 U.S.C. § 628 [and] in that context, the decision of the BCNR to deny an SSB may be reviewable under 10 U.S.C. § 628." Def. Mot. Sum. Jud. p. 4.  This point requires amplification as it goes to the jurisdictional basis for the Court's review of Count III.

Per 10 U.S.C. § 628(3)(A), the six month limitations period begins upon receipt of a "complete application for consideration by a special selection board." *See* n. 4, *infra* (reprinting statutory provision).  Plaintiff's submission meets this requirement.  His submission shows there was an error in his record.  It demonstrated why the error was material and that Plaintiff exercised reasonable diligence to ensure the accuracy of his

record prior to the board's convening. Proof of these three things, error, materiality, and reasonable diligence, entitle Plaintiff to a SSB. Pl. Ex. 2 (DoD Instruction 1320.11).

Defendants sanction this approach. Defendants indicate that the BCNR's underlying determination of no error, "if correct" would prevent the Secretary from convening a SSB. Def. Mot. Sum Jud., pp. 15-16. Defendants state that denial of the SSB "is not reviewable by the court if the BCNR's refusal to amend the Scovel report was proper." *Id.* at 18 (in the heading). Plaintiff agrees. However, the reverse is also true. If BCNR's decision is in error, the Secretary could order a SSB upon a finding of materiality and reasonable diligence. Plaintiff's submission is a "case," and given that Plaintiff demonstrated error, materiality, and reasonable diligence, is a "complete application." The Secretary's failure to issue a decision within six months of receipt vests the Court with jurisdiction to review the deemed denial under 10 U.S.C. § 628.[9]

Defendants merely cite to the BCNR decision and state that it was not arbitrary or capricious and demonstrated a rational connection between the matters considered and the ultimate decision. Def. Mot. Sum Jud., p. 20. This is conclusory. BCNR did receive two advisory opinions.[10] One was from the PERB. AR pp. 459-460. Plaintiff submitted rebuttal. AR pp. 467-567. The other advisory was from the Promotion Section. AR pp. 461-462. Plaintiff submitted rebuttal. AR 568-570. Plaintiff's submissions included 17 pages of substantive analysis and some 80 pages of supporting documentation demonstrating why these advisory

---

[9] If the Court does not assert its jurisdiction under 10 U.S.C. § 628 of the deemed SSB denial, there is no dispute that the Court has jurisdiction to review the BCNR's decision under 5 U.S.C. § 701 *et. seq.* to deny correction of the Scovel report.

[10] Plaintiff notes that BCNR did not obtain an advisory opinion from MMOA-4, which would have addressed whether the change would have been material. BCNR received such an opinion in the Davidson case. *See* AR 062-063.

-18-

opinions were in error. BCNR, in its two page decision, failed to address Plaintiff's arguments. AR 651-652. Instead, BCNR merely "substantially concurred' in the PERB's opinion despite the specific failings identified by Plaintiff. *Id.* Specifically, Plaintiff rebutted the PERB's point that Colonel Scovel's perception of Plaintiff's performance changed over time by submitting additional evidence that it was Colonel Scovel's grading philosophy that changed over time in violation of the tenets of MCO P 1610.7E.[11] AR pp. 468-469, ¶¶ 4-5. BCNR did not address this point. The PERB also concluded, in essence, that the report was accurate when written and therefore there was no basis for correction. Plaintiff responded, as he did in this opposition, that the point is not whether it was accurate when it was written but whether it accurately portrayed Plaintiff's performance before the FY 2005 selection board. AR p. 469, ¶ 6. Again, BCNR did not address this issue.

Plaintiff even identified to the BCNR that the PERB misapplied or misinterpreted a section of the order. The PERB stated that a fitness report is a "snapshot of the Marine reported on **at the time** any given report is reviewed." AR 460. Plaintiff explained in his rebuttal that misapplies MCO P1610.7E, and evidenced a misunderstanding of the dynamic nature of the Performance Evaluation System. AR p. 469, ¶ 6. BCNR never addressed this important issue.[12]

## II. **The Scovel Report Inaccurately Portrayed Plaintiff's Performance to the FY 2005 Selection Board.**

---

[11] Plaintiff emphasized this point in his initial application to the PERB by stating that "this is not a case of a reviewing officer changing his perceptions of my performance over a period of time after my non-selection." AR p. 583.

[12] The BCNR decision also suffered from other infirmities, to include the fact that the BCNR misapplied its own standard of review. These will be addresses in Plaintiff's cross-motion.

-19-

Defendants argue the Scovel report was accurate when written, which ends the analysis.[13]
Def. Mot. Sum. Jud., pp. 16, 18. This argument fails to address the dynamic nature of the
evaluation system. The issue is not whether the report was accurate when written but whether it
accurately portrayed Plaintiff's performance before the FY 2005 board. If it did not, the issue is
whether the inaccuracy was "material." The language of the statute and implementing instruction
mandates this framework for analysis. *See* 10 U.S.C. § 628; Pl. Ex. 2 (DoD Instruction 1320.11).
It is at that point the Secretary should make a reasonable diligence determination.

Defendants avoid using this framework and simply state that the report was accurate
when written and omit the materiality analysis. Defendants refuse to address the impact on
Plaintiff's record, as it appeared before the FY 2005 board, because of Colonel Scovel's change
in grading philosophy. It is clear that materiality is established. MCO P1610.7E makes clear
that a change in grading philosophy unfairly discriminates against earlier reports:

> "[reporting officials] must accurately and fairly assess the
> performance of their subordinates; **[reporting officials] who fail
> to do so will unwittingly and *unfairly discriminate* against
> either earlier reports or subsequent reports.**" Def. Attch. G, ¶
> 8012.2(e)(Emphasis added).
>
> . . .
>
> Reporting seniors who attempt to change their rating philosophy
> may either positively or negatively affect the relative value of
> reports for MROs they previously rated. Para. 8012.2(e)(2). **When
> the rater changes his philosophy and grades higher, he will
> diminish the value of all preceding reports ever written.** *Id.* at ¶
> 8012.2(e)(2)(a). (Emphasis added).

---

[13] Defendants', in n. 7 of their brief, argue that **all** of Col Scovel's reports are invalid. (Emphasis
in original). This is overbroad. Once Col Scovel's philosophy became consistent, his reports
were accurate. It is only with the first few reports, as Col Scovel was getting accustomed to the
new system that inaccuracies occurred. The class of any affected officers is very limited,
especially when considering the materiality and reasonable diligence requirements.

Plaintiff's is the situation described in subparagraph 8012.2(e)(2)(a).

Plaintiff raised this specific issue during the administrative process. AR pp. 473-475, ¶¶ 12-15. BCNR never addressed it. *For purposes of litigation*, Defendants now take the position that the MCO P1610.7E is "<u>merely</u> <u>cautiona[ary]</u>."[13]  Def. Mot. Sum Jud., p. 16.  Plaintiff is unsure of the import of this point. Perhaps, it means that the order is not punitive in nature, in which case an officer, in this case Colonel Scovel, could not be prosecuted for its violation under the Uniform Code of Military Justice. Perhaps, it means that the order merely establishes a policy. Whatever the import, it is clear that the change in grading philosophy unfairly discriminated against the Plaintiff's record as it was considered by the FY 2005 board. The unambiguous text of the order makes this abundantly clear. Plaintiff was unfairly discriminated against because of Colonel Scovel's change in grading philosophy under the definition of Defendants' order. This is a fact no matter how Defendants now chose to construe the prohibition.[14]

---

[13] The Secretary takes the position that an officer's actions are his own and cannot be attributed to the Secretary. This position ignores that the an officer's actions can impose liability on the Secretary for any number of actions such as discrimination claims under Title VII or claims under the Federal Tort Claims Act. Here, the harm caused by the officer's violation of the Secretary's policies, must be attributable to the Secretary. The Secretary, acting through the BCNR, must take appropriate action to correct the harm.

[14] Defendants assert that "considering that officers develop professionally during their careers, it would be unreasonable and unrealistic to require officer' grading philosophies to remain altogether static." Def. Sum Jud. Mot. pp. 17-18. This statement is flabbergasting. The current Performance Evaluation System is "dynamic" in nature. As an officer writes additional reports on officers of a particular grade throughout his career, the relative value of each of those reports changes. As MCO P1610.7E makes clear, the grading officer must have a consistent grading philosophy in order for the reports to have any meaning. This is a bedrock tenet of the Performance Evaluation System. *See* Def. Attch. G. If Defendants anticipate officers to change their grading philosophy over their careers, this necessarily means the entire Performance

Whether or not the correction would have been material, BCNR had a non-discretionary, judicially enforceable duty to exercise its power to correct Plaintiff's record.[15]  BCNR should have granted Plaintiff some relief, especially given the implication in BCNR's decision that the Scovel report was inaccurate.  Specifically, BCNR's decision notes that Plaintiff may continue to submit Col Scovel's letter to future boards.  AR p. 562.  The only purpose for submitting Col Scovel's letter is to attempt to ameliorate the unfairness and inaccuracy in Plaintiff's record caused by Col Scovel's inflation of his grading philosophy in contravention of MCO P1610.7E.  Instead of correcting the record, BCNR simply says to submit the letter to future board.  BCNR acted in violation of its mandate.

### III.  Impact of Colonel Scovel's Change in Grading Philosophy Had a Material Impact on Plaintiff's Record as It Appeared Before the FY 2005 Selection Board.

Defendants aver that "plaintiff presents no evidence of any specific error in the Scovel report."  Def. Mot. Sum. Jud., p. 18.  Defendants then note that even if the BCNR should have found error or injustice because of Colonel Scovel's grading philosophy, the error was immaterial because plaintiff submitted the Scovel letter to the FY 2005 Board.  These arguments are not persuasive.  During the administrative process, Plaintiff clearly showed how Colonel Scovel's change in grading philosophy affected his ranking before the FY 2005 Board and that the submission of Colonel Scovel's letter did not ameliorate the detriment to Plaintiff.  Defendants did not address these arguments during the administrative process.

---

Evaluation System is arbitrary and capricious.

[15] Defendants note in ¶ 12 of their Statement of Undisputed Facts that BCNR is authorized to grant equitable relief without being required to find that the error was material.

## A. Change In Philosophy had Significant (Material) Impact on the Numbers.

Plaintiff explained, *inter alia*, to BCNR in his rebuttal to the PERB recommendation the

legal basis for requesting a SSB to include the issues of materiality and reasonable diligence. AR

pp. 467 – 567.

On the issue of materiality, Plaintiff's March 22, 2005 submission included a letter from

Col J.E. McCown. AR pp. 483-484. He has served on three selection boards. AR p. 483, ¶ 1.

He notes that selection boards place "significant weight . . . on both the reporting seniors' and

reviewing officers' comparative assessments." AR p. 483. He notes that the "relative value

markings, provided by the [reporting senior] in the old reports and by the [reviewing officer] in

the new reports is one of the few objective, quantifiable tools available to the board members."

AR p. 483. Col McCown was a member of the FY 2005 LtCol selection board. AR pp. 490. He

noted that "an official change to Col Scovel's report would result in a significant improvement in

[Plaintiff's] comparative value marks." AR p. 484, ¶ 4. Col McCown expressed that if Col

Scovel's markings had been accurate, the resulting

> "shift in the over/under numbers would have altered, in
> [Plaintiff's] favor, one of the key criterion used in making selection
> decision and would have increased the possibility of his selection."
> AR p. 484, ¶ 5.

Based on this letter alone, it is certain that correction of the Scovel marking would

improve Plaintiff's record and his chance for selection. This meets Defendants' definition of

"materiality." Def. Attch. H, ¶ 8(c).

To demonstrate Col McCown's comment that the requested change would result in

"significant improvement" to Plaintiff's over/under numbers, Plaintiff provided the comparative

-23-

assessment numbers as they would have likely appeared before the FY 2005 selection board and how the comparative assessment numbers would change if Col Scovel's report were corrected.

Before the FY 2005 LtCol selection board, Plaintiff had approximately 47 officers ranked above him, 59 officers with him and 48 officers below him. AR pp. 486-487; *see* p. 474 ¶ 12.b; AR p. 473, n. 7 (explaining how these numbers were derived from the Master Brief Sheets). A record with a similar number of officers ranked above and below is not competitive. If Col Scovel's report were corrected to accurately reflect Plaintiff's performance under Col Scovel's current grading philosophy, Plaintiff's record before the FY 2005 LtCol selection board would have had approximately 17 officers ranked above him, 44 officers ranked with him, and 94 officers below him. AR p. 474, ¶ 12.b. A record with five times the numbers of officer below as above is highly competitive and almost always promoted. Pl. Ex. 3, ¶ 12. As shown by Col McCown's letter, the importance of comparative assessment cannot be overstated. Given the dramatic impact on Plaintiff's comparative assessments based upon Col Scovel's change in grading philosophy, this must be material error. Defendants never addressed this argument.

### B. Submission of Colonel Scovel is No Substitute for Official Change to the Record.

As stated above, the change in the over/under numbers is dramatic. However, Defendants argue that Plaintiff's submission of the Scovel letter to the FY 2005 board "mak[es] any error at best immaterial since the explanation was before the [board]." Def. Mot. Sum. Jud. p. 18. Plaintiff specifically raised this issue in the administrative process. AR p. 476, n. 9.

BCNR's decision notes that Plaintiff may continue to submit Col Scovel's letter to future boards. AR p. 562. This statement, quite frankly, constitutes an admission by Defendants that

-24-

Col Scovel's report is inaccurate. The only purpose for submitting Col Scovel's letter is to attempt to ameliorate the unfairness and inaccuracy in Plaintiff's record caused by Col Scovel's inflation of his grading philosophy in contravention of MCO P1610.7E. Instead of correcting the record, BCNR simply says to include Col Scovel's letter. However, this does not make Plaintiff whole. Col McCown, a member of the FY 2005 LtCol promotion board, notes that Col Scovel's letter "does not constitute a change to [Plaintiff's] official record, thereby submitting the contents to the subjective opinion of the Board members." AR p. 484, ¶ 4. Plaintiff notes that the PERB is composed of the same pool of officers who would be called upon to serve on promotion boards. The fact that the PERB rejected correction of the report indicates that it was likely that the officers comprising the FY 2005 LtCol promotion board also rejected or gave little weight to Col Scovel's letter identifying his change in grading philosophy. *See* Pl. Ex. 3 ¶ 11 (Col Crowl Declaration opining that the letter, likely, was given little weight as it did not constitute any type of official change to the record). Thus, Plaintiff did not receive the benefit of a favorable comparable assessment that would have come from an accurate report nor was he given that benefit based on submission of Col Scovel's letter to the selection boards. This is a clearly presented injustice and BCNR should have taken action to remedy it. Indeed, "when a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate." *Roth v. U.S.* 378 F.3d 1371, 1381 (Fed. Cir. 2004) (*citing* to Yee v. United States, 206 Ct. Cl. (1975).

Respectfully submitted,

Jackson L. McGrady
Plaintiff, *pro se*

Dated: <u>August 20, 2006</u>

-25-