# PLAINTIFF

# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JACKSON L. MCGRADY,       )
                      )
       Plaintiff       )
                      )
       v.          )     Case Number: 05CV01651 (GK)
                      )
DEPARTMENT OF THE NAVY,   )
DONALD C. WINTER, Secretary  )
of the Navy,            )
                      )
       Defendants    )

## DECLARATION OF JACKSON L. MCGRADY

1. I am the Plaintiff in the above captioned case. The purpose of this Declaration is to address certain of the contentions raised in Defendants motion for summary judgment.

2. I filed my original Complaint on August 17, 2005. Prior to filing my Complaint but still during the month of August, I contacted LtCol Carberry seeking information about my request and its status. LtCol Carberry was then employed within the Office of the Staff Judge Advocate to the Commandant of the Marine Corps. Part of his duties included the oversight of the processing of Special Selection Board requests. As a result of my call LtCol Carberry later, orally informed me that LtCol Carberry had contacted personnel within the Navy's Office of the Staff Judge Advocate (Code 13) and indicated that a final decision would be issued on his request for reconsideration in a matter of weeks. Code 13 was responsible for the processing of my request.

3. Near the time I contacted LtCol Carberry, before the filing of my Complaint, I also contacted Mr. Bryan Wood seeking information about my SSB request and its status. At the time of my contact, Mr. Wood was the Deputy Counsel to the Commandant of the Marine Corps. An e-mail memorializing Plaintiff's request and Mr. Wood's indication that he would check on Plaintiff's request is included as enclosure (1) to this declaration. Between the date of the e-mail and the filing of Plaintiff's original Complaint, Mr. Wood spoke with Plaintiff. He also indicated that he had spoken with personnel from the Navy's Office of the Staff Judge Advocate (Code 13). He indicated that based on his conversation with Code 13, a final decision was expected to be issued on my request for reconsideration in a matter of weeks.

4. On May 6, 2003, I filed DD Form 149 to the BCNR through the PERB requesting correction of the rankings on the Davidson report. At that time, I was totally unfamiliar with the administrative processes of the BCNR the PERB or SSB requests. Therefore, during the month or so prior to filing my DD Form 149, I spoke with Mr. Brian George on at least two occasions. Mr. George was a staff attorney who worked at the BCNR. He was extremely helpful in proving procedural advice about the process. One issue that we specifically discussed was the issue of relief. I specifically recall asking him whether I should include a request for an SSB when filing the DD Form 149. He was of the opinion that, if BCNR corrected the rankings, I would get a quicker decision on my SSB request by filing it through the Commandant of the Marine Corps (CMC). Based on my review of SECNAVINST 1401.1B, this made sense as an SSB request through the BCNR would still need to be staffed through the CMC. Mr. George never gave me any impression that I might somehow prejudice my rights by not requesting an SSB in conjunction with the filing of my DD Form 149. This fact was confirmed to me by Colonel Yoder.

5. I filed my initial request for an SSB in September 2003. Near the time of the filing of my request, I spoke with Colonel Yoder. At that time, Colonel Yoder worked in the Manpower Division of Headquarters Marine Corps. The Promotions Branch was one of the branches that was underneath Colonel Yoder. In speaking with him, he indicated that any relief granted by BCNR would not affect the processing of my SSB nor my eligibility for a SSB.

6. In the November/December 2005 timeframe, I communicated with opposing counsel several times in an attempt to narrow the issues for litigation. These communications included my view that the Secretary conceded the issue of materiality in his April 16, 2004 decision as it related to the Davidson report I recall discussing this point during a conference call with opposing counsel, which also included agency counsel. I also retained several e-mails that I sent to opposing counsel on this issue. These are attached as enclosure 2 to this declaration.

7. On August 9, 2006, I personally visited the website of the Promotions Branch of the Manpower Division of Headquarters, United States Marine Corps. This is a site that is available to the public. I personally downloaded and printed the first page of the statistics published by the Marine Corps for the FY 2004 captain, major, and lieutenant colonel selection boards. This page shows planned selection rates and the selection opportunity. The printouts for FY 2004 are included as enclosure 3 to this declaration. For captains the planned promotion opportunity was 100% and 98.6% of the eligible officers were promoted. For majors the planned promotion opportunity was 90% and 90% of the eligible officers were promoted. For lieutenant colonels the planned promotion opportunity was 70% and 70% of the eligible officers were promoted. The printouts for FY 2005 are included as enclosure 4 to this declaration and show almost identical numbers.

8. Plaintiff notes that in this declaration he has attributed a number of statements to agency personnel that are currently on active duty. Plaintiff would have included declarations from these named individuals, or at least attempted to obtain declarations from them. However, agency personnel are specifically prohibited under Secretary of the Navy Instruction 5820.8A from providing information on pending litigation absent specific authorization.

9. Plaintiff submitted a request, pursuant to the 5820.8A, requesting to speak to agency personnel in connection with another matter that is currently pending before this Court under Civil Action Number 06-0752 (GK). A copy of this request is included with this declaration as enclosure 5. The agency's denial of this request is included as enclosure 6 to this declaration. Plaintiff has no reason to suspect that the agency would take a different position in relation to this litigation.

10. Plaintiff has been unable to locate a copy of MCO P1610.7D. However, I have personal experience under the "old" performance evaluation system. I was commissioned in 1987 and the Davidson style reports were in use at that time until replaced by the current performance evaluation system at the end of 1998. Under the "old" system first and second lieutenant reports were normally due on a semi-annual basis. Further, a rater was required to write such a semiannual report if the rater had observed the lieutenant for a period of 31-days or longer. Although the substantive aspects of the current evaluation system have changed dramatically from the "old" system, these procedural provisions are still applicable. Excerpts of MCO P1610.7E are included as enclosure 7 to this declaration. Paragraph 3001.2 shows that lieutenant reports are due on a semiannual basis. Paragraph 3005.1.a show the requirement that a rater write an observed report on individuals requiring a semiannual report if the rater has observed them for 31-days.

11. Per the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on August 21, 2006, in the City of Fredericksburg, Virginia.

JACKSON L. MCGRADY
Plaintiff, *Pro Se*

3

## Jackson McGrady

| | |
|---|---|
| **From:** | "Wood SES1 Bryan" <WoodB@hqmc.usmc.mil> |
| **To:** | <jmcgrady@verizon.net> |
| **Sent:** | Friday, August 12, 2005 10:08 AM |
| **Subject:** | Re: MCGRADY |

Understood. I'll just try to "get information"

--------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Jackson McGrady <jmcgrady@verizon.net>
To: woodb@hqmc.usmc.mil <woodb@hqmc.usmc.mil>
Sent: Fri Aug 12 09:38:47 2005
Subject: MCGRADY

Sir,

   To follow-up on yesterday's conversation, my Special Selection Board (SSB) request is at Code 13, which falls under RADM McPherson. Mr. Cali may not have any visibility. CMC issued his recommendation and that is what is being reviewed by Code 13. I doubt Code 13 would change CMC's recommendation. I know that JA worked the issue for CMC.

   I filed my original request in Sep 2003. JA initially recommended denial alleging that I did not see a career counselor prior to the convening of the promotion board. This was their only basis. I found that out after SECNAV denied my initial request in April 2004 and I spent 6 months on Privacy Act requests and appeals. The fact is, I did see a career counselor, for whatever relevance that may have, and submitted evidence of it in my request for reconsideration in February 2005. By statute SECNAV has six months to make a decision or federal court review is available. After having gone through the process once and then providing specific evidence to rebut the erroneous assumption upon which the original decision was based, it should not have taken six months.

   I also have a second SSB request that is pending. Statutorily, SECNAV must make a decision towards the ends of September 2005. Based on my conversation with the attorney for BCNR, this will not happen.

   I have no desire to file a complaint in D.C. federal court but SECNAV should comply with statutorily imposed deadlines. It is not in my interests to simply wait. However, I understand that filing a complaint is not going to make anyone happy and I though it prudent to apprise you of my situation.


I would like to emphasize that I am not asking you to "weigh-in" on my case.

PL. EX. 1
ENCLOSURE (1)
1 of 2

8/6/2006

v/r
Maj McGrady

2 of 2

**From:** Mcgrady Maj Jackson L
**Sent:** Thursday, November 03, 2005 11:54 AM
**To:** 'Lisa.Goldfluss@usdoj.gov'
**Subject:** MCGRADY

Lisa,

I am involved with interviews from 2:30 until about 5:00 today but we can hopefully talk at some point.

I realize that you may not have worked on this particular type of case before but the issues are actually very easy. I would welcome the opportunity to walk you through the regulations and the administrative record. Further, my offer to try and clarify these points with the LCDR still stands. Again, I think the issues in the case are pretty clear.

I am not unsympathetic to either your schedule or that of LCDR Ouellette but would also like to get my life and career back on track. [even assuming that I get some type of relief on this case, I still have about another year of administrative litigation] I would be willing to negotiate a briefing schedule but would like to discuss some admissions, particularly in regard to materiality. Again, I think the Marine Corps admitted to it in the admin record on count I and do not believe there is a reasonable argument on count II. This would make everyone's life much easier. Also, given the agency's admission that I did see a career counselor, I am unsure of the basis upon which navy is relying for denial. It would be nice to know what we are fighting about. If we could agree on these points the fight only be about reasonable diligence.

I will talk with you this afternoon.

jack

PL. EX. 1
ENCLOSURE (2)
1 of 4

```
              20051103 RE MCGRADY - JOINT SUBMISSIONS
From: Mcgrady Maj Jackson L
Sent: Thursday, November 03, 2005 5:38 PM
To: 'Lisa.Goldfluss@usdoj.gov'
Subject: RE: MCGRADY - JOINT SUBMISSIONS
```

Lisa,

   On Count I, the fact that BCNR changed something does not make it "material".  It was "material" because the change
in rankings dramatically affected my over/under numbers.  As such FY 2004 Board considered me in an unfair manner and did
not have before them for their consideration important information about my record.  Also, MMOA-4 admitted during the administrative
process that the change would have increased the chances of my selection.  This is sufficient for the change to be "material".
If you would delete the first sentence in the first full paragraph of page 4 and replace with "Plaintiff asserts that this change
in the fitness report was "material" within the meaning of 10 U.S.C. 628" it would be good to go.

   I would also like to discuss the defenses but will save that for when we meet.

   You are killing me on the briefing schedule but given you representation that you will work with me to narrow some of the factual
issues and the fact that you gave me an answer, I agree.

   If we cannot do this tonight, we can do it on Tuesday.  If you make the above change, I have no objection to your signing for me and filing.

v/r
jack

```
-----Original Message-----
From: Lisa.Goldfluss@usdoj.gov [mailto:Lisa.Goldfluss@usdoj.gov]
Sent: Thursday, November 03, 2005 16:55
To: Mcgrady Maj Jackson L
Subject: RE: MCGRADY - JOINT SUBMISSIONS
```

Jack,

Please review the attached and get back to me.  If we can get this polished off today, that would be great.  Jim is at his office until 5:30.

Thanks, Lisa.

214

From:         Mcgrady Maj Jackson L
Sent:         Monday, December 05, 2005 12:36 PM
To:           'Lisa.Goldfluss@usdoj.gov'
Subject:      MCGRADY

Lisa,

I was thinking about our conversation on Friday and I wanted to tell you that I appreciate your help in getting the record squared away and appreciate your responsiveness throughout this process.

I was encouraged that Navy is willing to discuss some of the issues. Let's request delay according to the schedule we discussed. This will allow us to explore some possible stipulations and finalize the record.

I look forward to speaking with you on Wed or Thurs. Pls let me know of a time that is good for you and I will make sure that I am here.

I still believe that, given an hour, I could convince you of the correctness of my position. I will throw out a couple of thoughts.

**On Count I,** there are two issues: materiality and reasonable diligence.

    1. Materiality: While there is other evidence in the record, the fact that BCNR expunged my non-selection from the FY 2004 board, proves that the change was material. BCNR did not do that just because they are nice guys.

    2. Reasonable diligence: I still do not understand Navy's theory on this. The fitness report was old but there was nothing to indicate that the rater had falsified the rankings. I also note that CMC, through the PERB, did not think the admission from the rater that he had falsified the rankings provided a basis to change the report noting that the second level rater signed off on the report. How can CMC now argue that I should have known of the "nature of the report" and sought correction at an earlier point in time? These are inconsistent positions. BCNR only changed the report when the second level rater admitted that he simply "rubber-stamped" the rankings. I had no basis to believe that both of my evaluators failed in their responsibilities. I find it surprising that two agency officials admit to failing in their evaluation responsibilities and Navy blames me for not discovering their misconduct at an earlier point in time. Navy seems to argue that an officer has a duty to query each of his raters before each board and ask if they falsified their reports. I submit that that is not reasonable.

**On Count II,** there are three issues: should the report have been changed, materiality, and reasonable diligence.

    1. Should the report be changed: Col Scovel admits that he inflated his rankings over time, which makes my report inaccurate, even if it was accurate at the time it was written. This phenomena is explained in MCO P 1610.7E where it cautions raters to not inflate their reports as such an action unfairly discriminates against earlier reports. See para 63 of the complaint which excerpts portions of the order. Again, you have an agency official admitting to a violation of an agency order. How can BCNR not change a report that, by definition of the agency's own order, is unfair?

    2. Materiality: In my submission to BCNR, I explained the impact of the changing the report. See p. 473–474, Para 12. Specifically, my rankings were mid-pack, e.g. a similar number of officers ranked below me as above me. With a correct report, I would have 5 times as many officer ranked below me as above me. Navy cannot reasonably maintain that this is not material. The letter from a member of the FY 2005 board also confirmed the materiality of the change. See p. 483–484

3 of 4

3. Reasonable diligence. This is similar to Count I. I should be entitled to believe that the rater complied with applicable order in authoring my evaluation. I spoke with two career counselors who did not identify any inconsistency in the report. It was only after talking with another Colonel (Crowl) that he raised the issue of a possible inconsistency in the report based on his grading philosophy. This is what prompted me to speak with Col Scovel and ultimately resulted in the letter. I also note that I obtained the Scovel letter on 2 Sep 2003. The board that year convened in September. There would have been no way for me to file for a correction, which would have been denied, before the meeting of the FY 2005 board.

thanks

jack

4 of 4

FY 2004 USMC CAPTAIN SELECTION BOARD

PRESIDENT OF BOARD: BRIGADIER GENERAL KEVIN M. SANDKUHLER, USMC

CONVENING DATE:    2/10/2003            ADJOURNMENT DATE:    2/14/2003

ELIGIBLE FOR PROMOTION:    953          AUTHORIZED TO SELECT:    953

|  | ELIGIBLE | SELECTED | % SELECTED |
|---|---|---|---|
| ABOVE ZONE | 7 | 3 | 0.3% |
| IN ZONE | 946 | 937 | 98.3% |
| BELOW ZONE | 0 | 0 | 0.0% |
|  | 953 | 940 |  |

SELECTION OPPORTUNITY: 98.6%

PLANNED PROMOTION OPPORTUNITY: 100.0% (AFQ)

(% SELECTED IS DERIVED BY DIVIDING NUMBER SELECTED IN EACH ZONE BY THE TOTAL POPULATION TO MAINTAIN PLANNED PROMOTION OPPORTUNITY)

AGE/SERVICE DISTRIBUTION (AVERAGE YEARS)

SELECTED OFFICERS

|  | ABOVE ZONE | IN ZONE | BELOW ZONE |
|---|---|---|---|
| TIME IN GRADE | 2.1 | 0.7 | 0.0 |
| TIME IN SERVICE | 6.8 | 4.5 | 0.0 |
| AGE | 29.2 | 27.9 | 0.0 |

CIVILIAN EDUCATION

|  | ABOVE ZONE | | | IN ZONE | | | BELOW ZONE | | |
|---|---|---|---|---|---|---|---|---|---|
|  | ELIG | SEL | %SEL | ELIG | SEL | %SEL | ELIG | SEL | %SEL |
| DOCTORATE | 0 | 0 | 0.0 | 5 | 5 | 100.0 | 0 | 0 | 0.0 |
| POST MASTERS | 0 | 0 | 0.0 | 0 | 0 | 0.0 | 0 | 0 | 0.0 |
| MASTERS | 0 | 0 | 0.0 | 11 | 11 | 100.0 | 0 | 0 | 0.0 |
| 1ST PROF | 0 | 0 | 0.0 | 9 | 9 | 100.0 | 0 | 0 | 0.0 |
| BACHELORS | 7 | 3 | 42.9 | 904 | 895 | 99.0 | 0 | 0 | 0.0 |
| ASSOCIATES | 0 | 0 | 0.0 | 4 | 4 | 100.0 | 0 | 0 | 0.0 |
| HIGH SCHOOL | 0 | 0 | 0.0 | 13 | 13 | 100.0 | 0 | 0 | 0.0 |

PL. EX 1
ENCLOSURE (3)
1d3

FY 2004 USMC MAJOR SELECTION BOARD

PRESIDENT OF BOARD: MAJOR GENERAL ROBERT M. FLANAGAN, USMC

CONVENING DATE:      9/4/02              ADJOURNMENT DATE:      9/18/02

ELIGIBLE FOR PROMOTION  1525             AUTHORIZED TO SELECT:  656

|            | ELIGIBLE | SELECTED | * SELECTED |
|------------|----------|----------|------------|
| ABOVE ZONE | 76       | 22       | 3.0 %      |
| IN ZONE    | 729      | 634      | 87.0 %     |
| BELOW ZONE | 720      | 0        | 0.0 %      |
|            | 1525     | 656      |            |

SELECTION OPPORTUNITY:  90.0 %

PLANNED PROMOTION OPPORTUNITY:  90.0 %

* SELECTED IS DERIVED BY DIVIDING NUMBER SELECTED IN EACH ZONE BY THE IN ZONE POPULATION TO MAINTAIN PLANNED PROMOTION OPPORTUNITY)

AGE/SERVICE DISTRIBUTION  AVERAGE YEARS)

SELECTED OFFICERS

|                 | ABOVE ZONE | IN ZONE | BELOW ZONE |
|-----------------|------------|---------|------------|
| TIME IN GRADE   | 5.6        | 4.6     | 0.0        |
| TIME IN SERVICE | 11.7       | 10.3    | 0.0        |
| AGE             | 34.2       | 32.7    | 0.0        |

CIVILIAN EDUCATION

|              | ABOVE ZONE | | | IN ZONE | | | BELOW ZONE | | |
|--------------|------|-----|------|------|-----|-------|------|-----|------|
|              | ELIG | SEL | %SEL | ELIG | SEL | %SEL  | ELIG | SEL | %SEL |
| DOCTORATE    | 0    | 0   | 0.0  | 1    | 1   | 100.0 | 1    | 0   | 0.0  |
| POST MASTERS | 0    | 0   | 0.0  | 0    | 0   | 0.0   | 1    | 0   | 0.0  |
| MASTERS      | 4    | 1   | 25.0 | 53   | 50  | 94.3  | 34   | 0   | 0.0  |
| 1ST PROF     | 0    | 0   | 0.0  | 9    | 9   | 100.0 | 6    | 0   | 0.0  |
| BACHELORS    | 71   | 21  | 29.6 | 655  | 564 | 86.1  | 666  | 0   | 0.0  |
| ASSOCIATES   | 0    | 0   | 0.0  | 2    | 2   | 100.0 | 2    | 0   | 0.0  |
| HIGH SCHOOL  | 1    | 0   | 0.0  | 9    | 8   | 88.9  | 10   | 0   | 0.0  |

FY 2004 USMC LIEUTENANT COLONEL SELECTION BOARD

PRESIDENT OF BOARD: MAJOR GENERAL WILLIAM G. BOWDON III, USMC

CONVENING DATE:        10/9/02              ADJOURNMENT DATE:      10/25/02

ELIGIBLE FOR PROMOTION  1323                AUTHORIZED TO SELECT:   377

|             | ELIGIBLE | SELECTED | % SELECTED |
|-------------|----------|----------|------------|
| ABOVE ZONE  | 395      | 29       | 5.4 %      |
| IN ZONE     | 538      | 348      | 64.7 %     |
| BELOW ZONE  | 390      | 0        | 0.0 %      |
|             | 1323     | 377      |            |

SELECTION OPPORTUNITY:   70.1 %

PLANNED PROMOTION OPPORTUNITY:   70.0 %

(% SELECTED IS DERIVED BY DIVIDING NUMBER SELECTED IN EACH ZONE BY THE IN ZONE POPULATION TO MAINTAIN PLANNED PROMOTION OPPORTUNITY).

AGE/SERVICE DISTRIBUTION (AVERAGE YEARS)

SELECTED OFFICERS

|                 | ABOVE ZONE | IN ZONE | BELOW ZONE |
|-----------------|------------|---------|------------|
| TIME IN GRADE   | 6.1        | 4.6     | 0.0        |
| TIME IN SERVICE | 17.0       | 15.3    | 0.0        |
| AGE             | 40.0       | 38.1    | 0.0        |

CIVILIAN EDUCATION

|              | ABOVE ZONE | | | IN ZONE | | | BELOW ZONE | | |
|--------------|------|-----|------|------|-----|------|------|-----|------|
|              | ELIG | SEL | %SEL | ELIG | SEL | %SEL | ELIG | SEL | %SEL |
| DOCTORATE    | 5    | 0   | 0.0  | 9    | 5   | 55.6 | 4    | 0   | 0.0  |
| POST MASTERS | 0    | 0   | 0.0  | 5    | 4   | 80.0 | 3    | 0   | 0.0  |
| MASTERS      | 128  | 12  | 9.4  | 233  | 167 | 71.7 | 116  | 0   | 0.0  |
| 1ST PROF     | 13   | 0   | 0.0  | 9    | 6   | 66.7 | 10   | 0   | 0.0  |
| BACHELORS    | 248  | 17  | 6.9  | 281  | 166 | 59.1 | 257  | 0   | 0.0  |
| ASSOCIATES   | 0    | 0   | 0.0  | 0    | 0   | 0.0  | 0    | 0   | 0.0  |
| HIGH SCHOOL  | 1    | 0   | 0.0  | 1    | 0   | 0.0  | 0    | 0   | 0.0  |

3/3

# FY 2005 USMC CAPTAIN SELECTION BOARD

PRESIDENT OF BOARD: BRIGADIER GENERAL THOMAS L. CONANT, USMC

CONVENING DATE:    2/9/2004    ADJOURNMENT DATE:    2/13/2004

ELIGIBLE FOR PROMOTION:    991    AUTHORIZED TO SELECT:    991

| | ELIGIBLE | SELECTED | % SELECTED |
|---|---|---|---|
| ABOVE ZONE | 9 | 6 | 0.6% |
| IN ZONE | 982 | 975 | 98.4% |
| BELOW ZONE | 0 | 0 | 0.0% |
| | 991 | 981 | |

SELECTION OPPORTUNITY: 99.0%

PLANNED PROMOTION OPPORTUNITY: 100.0% (AFQ)

(% SELECTED IS DERIVED BY DIVIDING NUMBER SELECTED IN EACH ZONE BY THE TOTAL POPULATION TO MAINTAIN PLANNED PROMOTION OPPORTUNITY)

## AGE/SERVICE DISTRIBUTION (AVERAGE YEARS)

SELECTED OFFICERS

| | ABOVE ZONE | IN ZONE | BELOW ZONE |
|---|---|---|---|
| TIME IN GRADE | 2.9 | 1.1 | 0.0 |
| TIME IN SERVICE | 5.0 | 4.5 | 0.0 |
| AGE | 29.7 | 27.6 | 0.0 |

### CIVILIAN EDUCATION

| | ABOVE ZONE | | | IN ZONE | | | BELOW ZONE | | |
|---|---|---|---|---|---|---|---|---|---|
| | ELIG | SEL | %SEL | ELIG | SEL | %SEL | ELIG | SEL | %SEL |
| DOCTORATE | 1 | 1 | 100.0 | 0 | 0 | 0.0 | 0 | 0 | 0.0 |
| POST MASTERS | 0 | 0 | 0.0 | 1 | 1 | 100.0 | 0 | 0 | 0.0 |
| MASTERS | 0 | 0 | 0.0 | 6 | 6 | 100.0 | 0 | 0 | 0.0 |
| 1ST PROF | 0 | 0 | 0.0 | 15 | 15 | 100.0 | 0 | 0 | 0.0 |
| BACHELORS | 8 | 5 | 62.5 | 955 | 948 | 99.3 | 0 | 0 | 0.0 |
| ASSOCIATES | 0 | 0 | 0.0 | 5 | 5 | 100.0 | 0 | 0 | 0.0 |
| HIGH SCHOOL | 0 | 0 | 0.0 | 0 | 0 | 0.0 | 0 | 0 | 0.0 |

PL. EX 1.
ENCLOSURE 4
1 of 3

FY 2005 USMC MAJOR SELECTION BOARD

PRESIDENT OF BOARD: BRIGADIER GENERAL KEVIN M. SANDKUHLER, USMC

CONVENING DATE:        9/8/2003          ADJOURNMENT DATE:    9/24/2003

ELIGIBLE FOR PROMOTION: 1371              AUTHORIZED TO SELECT:    564

|  | ELIGIBLE | SELECTED | % SELECTED |
|---|---|---|---|
| ABOVE ZONE | 89 | 30 | 4.8% |
| IN ZONE | 627 | 534 | 85.2% |
| BELOW ZONE | 655 | 0 | 0.0% |
|  | 1371 | 564 |  |

SELECTION OPPORTUNITY:  90.0%

PLANNED PROMOTION OPPORTUNITY:  90.0%

(% SELECTED IS DERIVED BY DIVIDING NUMBER SELECTED IN EACH ZONE BY THE IN ZONE POPULATION TO MAINTAIN PLANNED PROMOTION OPPORTUNITY)

AGE/SERVICE DISTRIBUTION (AVERAGE YEARS)

SELECTED OFFICERS

|  | ABOVE ZONE | IN ZONE | BELOW ZONE |
|---|---|---|---|
| TIME IN GRADE | 5.6 | 4.7 | 0.0 |
| TIME IN SERVICE | 10.8 | 10.0 | 0.0 |
| AGE | 33.5 | 32.8 | 0.0 |

CIVILIAN EDUCATION

|  | ABOVE ZONE | | | IN ZONE | | | BELOW ZONE | | |
|---|---|---|---|---|---|---|---|---|---|
|  | ELIG | SEL | %SEL | ELIG | SEL | %SEL | ELIG | SEL | %SEL |
| DOCTORATE | 0 | 0 | 0.0 | 0 | 0 | 0.0 | 2 | 0 | 0.0 |
| POST MASTERS | 0 | 0 | 0.0 | 1 | 1 | 100.0 | 1 | 0 | 0.0 |
| MASTERS | 5 | 1 | 20.0 | 51 | 47 | 92.2 | 34 | 0 | 0.0 |
| 1ST PROF | 0 | 0 | 0.0 | 6 | 5 | 83.3 | 17 | 0 | 0.0 |
| BACHELORS | 83 | 29 | 34.9 | 557 | 473 | 84.9 | 560 | 0 | 0.0 |
| ASSOCIATES | 0 | 0 | 0.0 | 2 | 1 | 50.0 | 6 | 0 | 0.0 |
| HIGH SCHOOL | 1 | 0 | 0.0 | 8 | 6 | 75.0 | 33 | 0 | 0.0 |

213

FY 2005 USMC LIEUTENANT COLONEL SELECTION BOARD

PRESIDENT OF BOARD: MAJOR GENERAL RICHARD A. HUCK, USMC

CONVENING DATE:    9/4/2003            ADJOURNMENT DATE:    9/18/2003

ELIGIBLE FOR PROMOTION: 1306          AUTHORIZED TO SELECT:   264

|  | ELIGIBLE | SELECTED | % SELECTED |
|---|---|---|---|
| ABOVE ZONE | 461 | 31 | 8.2% |
| IN ZONE | 377 | 233 | 61.8% |
| BELOW ZONE | 468 | 0 | 0.0% |
|  | 1306 | 264 |  |

SELECTION OPPORTUNITY:   70.0%

PLANNED PROMOTION OPPORTUNITY:  70.0%

(% SELECTED IS DERIVED BY DIVIDING NUMBER SELECTED IN EACH ZONE BY THE IN ZONE POPULATION TO MAINTAIN PLANNED PROMOTION OPPORTUNITY)

AGE/SERVICE DISTRIBUTION (AVERAGE YEARS)

SELECTED OFFICERS

|  | ABOVE ZONE | IN ZONE | BELOW ZONE |
|---|---|---|---|
| TIME IN GRADE | 6.2 | 4.7 | 0.0 |
| TIME IN SERVICE | 17.4 | 15.3 | 0.0 |
| AGE | 40.2 | 38.2 | 0.0 |

CIVILIAN EDUCATION

|  | ABOVE ZONE | | | IN ZONE | | | BELOW ZONE | | |
|---|---|---|---|---|---|---|---|---|---|
|  | ELIG | SEL | %SEL | ELIG | SEL | %SEL | ELIG | SEL | %SEL |
| DOCTORATE | 5 | 0 | 0.0 | 7 | 3 | 42.9 | 4 | 0 | 0.0 |
| POST MASTERS | 1 | 0 | 0.0 | 2 | 1 | 50.0 | 1 | 0 | 0.0 |
| MASTERS | 157 | 15 | 9.6 | 144 | 91 | 63.2 | 112 | 0 | 0.0 |
| 1ST PROF | 12 | 1 | 8.3 | 12 | 5 | 41.7 | 9 | 0 | 0.0 |
| BACHELORS | 285 | 15 | 5.3 | 210 | 131 | 62.4 | 339 | 0 | 0.0 |
| ASSOCIATES | 0 | 0 | 0.0 | 0 | 0 | 0.0 | 2 | 0 | 0.0 |
| HIGH SCHOOL | 1 | 0 | 0.0 | 2 | 2 | 100.0 | 1 | 0 | 0.0 |

343

Jackson L. McGrady
820 Bright Street
Fredericksburg, VA 22401
(H) 540.371.3792
(W) 703.784.2902
June 2, 2006

Judge Advocate General of the Navy (Code 14)
Washington Navy Yard
1332 Patterson Ave., SE, Suite 3000
Washington Navy Yard, DC 20374-5066

CERT MAIL # 7004 2890 0002 0376 4819
DELIVERED @ 9:46AM ON JUNE 6, 2006 IN NAVAL
ANACOSTA ANNEX DC 20373

Subj: LITIGATION REQUEST

Dear Sir,

Pursuant to the provisions of Secretary of the Navy Instruction (SECNAVINST) 5820.8A, I am making a litigation request. I am providing the following information in compliance with the SECNAVINST to allow you to process my request.

## A. Identification of the Parties, their Counsel and the Nature of the Litigation.

1. Caption of the Case: <u>Jackson L. McGrady v. Department of the Navy, Donal C. Winter, Secretary of the Navy</u>. The case is currently pending in the Federal District Court for the District of Columbia, Civil Action Number 06-0752.

2. I am a *pro se* Plaintiff. My contact information is listed above. The Department of Justice Counsel representing the Secretary is Ms. Marian L. Borum. Her address is 555 4th St., NW, Washington DC 20530.

3. I am seeking official information from not more than two Department of the Navy employees. This information would be obtained in the form of an interview. The interviews should take place prior to July 31, 2006. I would interview the employees at their place of employment and estimate that each interview would not exceed two hours.

## B. Identification of Information or Document Requested

1. By motion in the identified litigation, the Secretary has indicated his intent to file an affidavit of an unnamed person to support a motion for summary judgment. I would like to interview the affiant to ascertain the bases for the observations and conclusions that will be contained within the affidavit. I would also like to interview Mr. Robert Sunday. The purpose of the interview would be to obtain information as to the documents and information that are provided to Marine Corps' promotions boards and what happens to the documents at the conclusion of the board. I am not seeking any information that would divulge the proceedings of any particular board but merely seek information as to the process.

PL. EX 1
ENCLOSURE (5)
1 OF 3

Subj: LITIGATION REQUEST

2. I am unaware of the particular information regarding the unnamed declarant in the Secretary' motion. However, Mr. Sunday is currently serving as the Deputy Head of the Promotion Branch of the Manpower Division of Headquarters U.S. Marine Corps. Mr. Sunday is located at Harry Lee Hall, 17 Lejeune Rd., Quantico, VA 22134. Mr. Sunday's phone number is (703) 784-9703.

3. The information that I seek is factual information as defined by SECNAVINST 5820.8A.. The information that I seek is not opinion or expert testimony as those terms are defined by SECNAVINST 5820.8A.

## C. Description of Why Information is Needed.

1. This is a Freedom of Information Act (FOIA) suit. In this case, I am seeking highly redacted copies of the Master Brief Sheets (MBSs) that comprise the sampling of records required to be maintained pursuant to SECNAVINST 1401.1B and Marine Corps Order P1400.31.

2. The redacted copies of MBSs will reveal Value and Distribution markings and the Comparative Assessments of those records without any possibility of the information being identified with a particular officer. These statistics are a significant criteria in whether a particular officer is recommended for promotion. Release of these numbers will provide officers a better understanding of the importance of these numbers without reliance on career counselors or members of the selection board providing their subjective assessment.

3. I am not seeking expert or opinion testimony as those terms are defined by SECNAVINST 5820.8A. The testimony that I seek is available only from current or former Department of the Navy personnel who understand what documents are provided to promotions boards and what happens to those documents at the conclusion of the board.

## D. Additional Considerations.

1. I am willing to pay the reasonable costs associated with this request. However, the documents at issue in the litigation have already been located. I am willing to travel to the work location of the employees so there will be no travel or accommodation expenses for the employees.

2. The employee will not be requested to attend a later trial. It not anticipated that the employee will later be required for a deposition and is not requested at this time.

2/3

3. I agree to notify the appropriate determining authority at least 10 working days in advance of the interview.

Subj: LITIGATION REQUEST

4. I agree to conduct the interview/deposition of the witness at the location of the witness. However, I am willing to conduct the interview/deposition at an alternate location if the witness and his or her commanding officer or cognizant superior, as applicable, stipulates otherwise.

5. I am not seeking, at this time, information from former Department of the Navy personnel.

6. I agree to provide a copy of any synopsis of the interview or any recording of the interview to the person who is interviewed.

7. I agree that if the local rules of procedure controlling the litigation so provide, the witness will be given the opportunity to read, sign, and correct the deposition at no cost to the witness of the Government.

8. I understand that the United States reserves the right to have a representative present at any interview or deposition.

9. I agree to provide opposing counsel with a copy of all correspondence originated by the determining authority.


Thank you for your consideration in this matter.

Sincerely,

J. L. MCGRADY

3

3 of 3



**DEPARTMENT OF THE NAVY**
OFFICE OF THE JUDGE ADVOCATE GENERAL
WASHINGTON NAVY YARD
1322 PATTERSON AVENUE SE SUITE 3000
WASHINGTON DC 20374-5066

IN REPLY REFER TO

5820
Ser SRL/0382
July 28, 2006

Jackson L. McGrady
820 Bright Street
Fredericksburg, Virginia 22401

Dear Mr. McGrady:

SUBJECT:    REQUEST TO INTERVIEW DON PERSONNEL ICO <u>MCGRADY V. WINTER ET AL.</u>

     This correspondence is in response to your letter of June 2, 2006,
wherein you requested to interview witnesses in connection with the
above-referenced matter.

     It is obvious from the contents of your request that you are aware
that the release of official information, whether verbal or written, for
litigation purposes is controlled by Department of Defense Directive
5405.2 and Secretary of the Navy Instruction 5820.8A.  Those regulations
are published at 32 C.F.R. pts. 97 and 725 (2005).  They are issued
consistent with 5 U.S.C. § 301 and the Supreme Court holding in <u>United
States ex rel.</u> Touhy v. Ragen, 340 U.S. 462 (1951), which confirms the
authority of the head of a Federal agency to control the release of
official information, including testimony.

     Per 32 C.F.R. § 725.6(c)(1), one of my responsibilities is to review
subpoenas and other requests for Department of the Navy employees to
testify at deposition and trial.  It is in this capacity that I deny your
request.  Prior to making my decision, I carefully considered each the
ten factors set forth at 32 C.F.R. § 725.8(a).  Among my reasons for
denying your request is my conclusion that since your case against the
Secretary of the Navy is currently in litigation, your request for
witness testimony is in conflict with 32 C.F.R. §§ 725.8(a)(2),(4).
Specifically, your request for witness testimony conflicts with Federal
Rule of Civil Procedure 26(d), which requires that a discovery conference
under Federal Rule of Civil Procedure 26(f) be held prior to the
commencement of discovery.  Additionally, it is well-established that

PL. EX 1
ENCLOSURE (6)
1 of 2

5820
Ser SRL/0382
July 28, 2006

discovery is generally unavailable in litigation involving the Freedom of Information Act. <u>Judicial Watch, Inc. v. Export-Import Bank,</u> 108 F. Supp. 2d 19, 25 (D.C. Cir 2000); <u>Wheeler v. Central Intelligence Agency,</u> 271 F. Supp. 2d 132, 139 (D.C. Cir. 2003).

I regret that your request is such that a favorable response cannot be provided.

Sincerely,

For L. R. ALMAND
Captain, JAGC, U.S. Navy
Deputy Assistant Judge Advocate General
(General Litigation)

PERFORMANCE EVALUATION SYSTEM

CHAPTER 3

SUBMISSION REQUIREMENTS

3001. <u>GENERAL</u>. The Marine Corps Performance Evaluation System provides a continuous chain of fitness reports that cumulatively covers every day a Marine serves in the grade of sergeant through major general. Submit fitness reports only as specifically required by this Manual and only by individuals in a Marine's proper reporting chain as defined in paragraphs **2003** and **2004**.

3002. <u>FITNESS REPORT SUBMISSION SCHEDULE</u>. Submit fitness reports as the occasions defined in this chapter occur or per the schedule in Appendix A, whichever occurs first. <u>NOTE</u>: See paragraph 7004 when combat or other unique operational situations preclude the timely submission of fitness reports.

3003. <u>REPORTING OCCASIONS</u>

1. Reporting occasions are designed to:

    a. Obtain a continuous chain of fitness reports on each Marine.

    b. Reduce those situations wherein a Marine has two RSs.

    c. Provide meaningful reports for every primary billet assignment held.

2. <u>Occasions for General Officers</u>

    a. Generals and lieutenant generals will not receive performance evaluations.

    b. Major generals' reporting occasions are Change of Reporting Senior, Transfer, Grade Change, To Temporary Duty, and From Temporary Duty.

    c. Brigadier generals' reporting occasions are Change of Reporting Senior, Transfer, Grade Change, To Temporary Duty, From Temporary Duty, and Annual.

3. **Occasions for Grades Sergeant Through Colonel**. Marines in the grades of sergeant through colonel require fitness reports for any of the following 13 occasions:

| Occasion | Code |
|---|---|
| Grade Change | GC |
| CMC Directed | DC |
| Change of Reporting Senior | CH |
| Transfer | TR |
| Change of Duty | CD |
| To Temporary Duty | TD |
| From Temporary Duty | FD |
| End of Service | EN |
| Change in Status | CS |
| Annual (Active Component) | AN |
| Annual (Reserve Component) | AR |
| Semiannual (lieutenants only) | SA |
| Reserve Training | RT |

Pl. Ex 1
3-3
Enclosure (7)
1 of 2

3005                    PERFORMANCE EVALUATION SYSTEM

observation is 30 days or less.  Include with the period in the next report due.

    (2) It is known in advance another reporting occasion will occur within 30 days after the ending date for the report.  <u>NOTE</u>:  The report may <u>not</u> be omitted in anticipation of disciplinary or administrative separation actions, and the same Reviewing Officer will be named on the report as would have been named on the omitted report.

13.  <u>Reserve Training (RT)</u>

    a.  For SMCR and IRR members only, submit a report upon completion of annual training and anytime a reservist completes active duty for a period of 12-30 days.

    b.  Reporting seniors may omit the RT report for reservists performing Reserve training if they write the MRO's annual reserve report.  When this occurs, the RS must include observations of the MRO's performance during annual Reserve training in the next reporting occasion.  Section I directed comments apply (see paragraph <u>4012.4</u>).

    c.  Submit an RT report for reservist serving a period of active duty for 12-30 days, or <u>under a different RS</u>.  The RS under whom the MRO served the temporary active duty must submit the report.

3005.  <u>MINIMUM OBSERVATION REQUIREMENTS</u>

1.  <u>Minimum Observation Time</u>.  Reporting seniors must submit observed reports for all reporting occasions covering periods of 90 days or longer except the following:

    a.  Reporting seniors must submit observed reports for periods covering 31 days or longer for:

        (1) Semiannual (SA) reports.

        (2) From Temporary Duty (FD) reports.  <u>NOTE</u>:  See paragraph 6004.4 for periods of academic and training duty lasting between 31 and 89 days.

        (3) Change in Status (CS) reports.  <u>NOTE</u>:  If a member of the IRR attends a school lasting 31 days or longer, the report can be not observed.

    b.  Reporting seniors must submit observed reports for periods covering 12-30 days for Reserve Training (RT) reports.

2.  <u>Periods of Nonavailability</u>.  Periods of 30 or more consecutive days when either the MRO or the RS was not physically present to perform his or her duties at the reporting command or organization constitute nonavailability and do not count when determining minimum observation time for submission of an observed report.  <u>NOTE</u>:  RSs must identify periods of nonavailability in section I (see paragraph 4012.4b(2)).  The RS to MRO relationship has to already have been established for RS's nonavailability to be germane.

3.  <u>Exception to Policy</u>.  For periods of 89 days or less, RSs may submit an observed report if in their judgment, they possess sufficient observation and:

    a.  The basis of the observation results from meaningful personal contact with the MRO.

    b.  The information provided to the CMC is <u>significant and provides a fair assessment</u> of the MRO.

2 of 2