## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JACKSON L. MCGRADY,     )
          )
   Plaintiff,       )
          )
   v.         )   Case Number: 05CV01651 (GK)
          )
DEPARTMENT OF THE NAVY,   )
DONALD C. WINTER, Secretary   )
of the Navy,         )
          )
   Defendants.     )

**RECEIVED**

NOV 1 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In their combined Opposition/Reply (hereinafter "Def. Opp."), Defendants argue that

Plaintiff: (1) improperly included opinions, legal conclusions, and immaterial fact in his

Statement of Material Facts on Which There is No Genuine Issue (hereinafter "Pl. SOF");  (2)

failed to prove the Secretary's decision making process regarding the Davidson report was

legally flawed; and (3) failed to prove the Secretary's decision making process regarding the

Scovel report was legally flawed.  Def. Opp., pp. 2-3.  Each is addressed in turn, but the first

issue must be the proper content of the Administrative Record (AR) and basis for judicial review.


### PROPER CONTENT OF THE ADMINISTRATIVE RECORD AND THE STATUTORY
### BASIS FOR REVIEW

Plaintiff's pleadings show that Defendant's failure to issue a final decision within six

months of receiving Plaintiff's self-styled request for reconsideration constituted a deemed denial

entitling Plaintiff to seek judicial review under 10 U.S.C. § 628.  *See* Pl. Mot. Sum Jud., pp 4-5.

-1-

Defendants maintain that 10 U.S.C. § 628 imposes no time restriction on the Secretary to issue a decision on a "request for reconsideration." Def. Opp., pp. 4, 12. This fails to account for the language of 10 U.S.C. § 628, which refers to a "complete application" as triggering the limitations period. Plaintiff's reconsideration request meets this criterion. Further, as Defendants note, there is no statutory or regulatory provision for the Secretary's consideration of a previous decision. Def. Opp. p. 4. As such, if the Secretary was not going to treat the submission as a new request, it should have been rejected.

It is relevant that the Secretary treated Plaintiff's application as a new request. *See* Pl. Opp. pp. 6-7. Defendants issued Plaintiff the exact same letter acknowledging his reconsideration request as his original application. *Compare* Pl. Ex. 14[1] and AR p. 106. Defendants do not dispute the Secretary treated the application as a new application but merely rely on the title of the document. This is insufficient. Defendants dispute the Court's jurisdiction to review the decision on the Davidson report under 10 U.S.C. § 628. If the Court's jurisdiction is premised on § 628, the time limits of § 628 must also apply.

Defendants argue that even if the limitations period of § 628 applied, it "would not have operated as a bar to the exercise of the Secretary's prerogative to issue a decision" noting that "plaintiff has cited no law suggesting otherwise." Def. Opp., p. 12. Of course there is no bar to the Secretary's issuance of a decision. The question is whether the Court should consider the *post hoc* rationalization. There is ample case law on this point. *See Environmental Def. Fund, Inc. v. Costle,* 657 F.2d 275, 284 (D.C.Cir.1981) (citing *Camp v. Pitts,* 411 U.S. 138, 142, 93

---

[1] This is not contained in the AR but should have been given the inclusion of a similar letter at AR p. 106.

S.Ct. 1241, 36 L.Ed.2d 106 (1973) (holding that the focal point for judicial review should be the administrative record already in existence, not some new record completed initially in the reviewing court). *Arizona v. Thompson*, 281 F.3d 248 (D.C.Cir. 2002) (courts may not accept appellate counsel's post hoc rationalizations for agency action); *Association of Civilian Technicians v. Federal Labor Relations Authority*, 269 F.3d 1112 (D.C.Cir. 2001) (holding that Agency decisions must generally be affirmed on the grounds stated in them; post-hoc rationalizations, developed for litigation are insufficient.)

### SUPPLEMENTATION OF THE RECORD IS APPROPRIATE

In his Summary Judgment Motion, Plaintiff included his own sworn statements as well as that of Colonel (Col) Crowl *See* Pl. Mot Sum Jud., Pl. Ex. 10, 11, and 13. Defendants object to the Court's consideration of these statements. Def. Opp., pp. 2, 9.[2] Although matters outside of the administrative record are not normally considered, this Circuit has recognized four instances where a court may deem supplementation necessary. *See e.g. James Madison Ltd., Inc. v. Ludwig*, 82 F.3d 1085, 1095 (D.C.Cir.1996); *AMFAC Resorts*, 143 F.Supp.2d 9, 11 ("In [the D.C.] Circuit, four separate exceptions are well established"). First, supplementation of the record is warranted if the court needs " 'background information' in order to determine whether the agency considered all of the relevant factors." *Ludwig*, 82 F.3d at 1095 (citing *Environmental Def. Fund, Inc.*, 657 F.2d at 285); *AMFAC Resorts*, 143 F.Supp.2d at 11. Second, a court may look beyond the administrative record if it appears the "agency deliberately or negligently

---

[2] Defendants make no objection to the Court's consideration of Plaintiff's other exhibits, which consist of orders and regulations to which Defendants are subject and are properly considered.

excluded documents that may have been adverse to its decision." *Ludwig,* 82 F.3d at 1095 (citing *Kent County v. EPA,* 963 F.2d 391, 395-96 (D.C.Cir.1992)); *accord AMFAC Resorts,* 143 F.Supp.2d at 11 (quoting *Kent County,* 963 F.2d at 395-96). Third, extra-record review is justified "where the agency failed 'to explain administrative action so as to frustrate effective judicial review." *Ludwig,* 82 F.3d at 1095 (quoting *Camp v. Pitts,* 411 U.S. 138, 142-43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)); *AMFAC Resorts,* 143 F.Supp.2d at 11. Finally, a court may supplement the administrative record "where there is a 'strong showing of bad faith or improper behavior' on the part of the agency." *AMFAC Resorts,* 143 F.Supp.2d at 11-12 (citing *Citizens to Pres. Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *see also Ludwig,* 82 F.3d at 1095 (citing *Overton Park,* 401 U.S. at 420).)

## I. Colonel Crowl Declaration (Pl. Ex. 10) Is Properly Considered.

Col Crowl's declaration is properly considered as Defendants failed to explain their decision so as to frustrate effective judicial review and is also properly considered as "background information." The Secretary in making his decisions must know how promotion boards function to include the import of certain markings, such as being ranked last on a transfer fitness report, what numerical rankings are competitive, and the types of letters officers submit to the board. A reviewing Court may not. An understanding of the "inner workings" of promotion board procedures is essential to adjudication of the case. Since the Secretary did not provide any level of detail in his decision, it is proper for the Court to look elsewhere. The Crowl declaration provides this information. Col Crowl, who served in the Marine Corps for 38 years, has extensive experience with promotion board's procedures, both regular and special, and is

competent to provide evidence on these points. Pl. Ex. 10, p. 64, ¶¶1, 3.[3]

As an example, Plaintiff identified to the Secretary that the Davidson report was material as Plaintiff was ranked last on a "transfer" report. *See* AR p. 38 n. 3 (being "ranked last on a transfer report sends a strong negative message, even though the report is not considered to be adverse per the provisions of MCO p1610.7_"); Pl. Ex. 10, p. 65, ¶¶ 5-7 (explaining the impact of being ranked last on a transfer report). This is a key fact, but the Secretary *never* addressed it during the administrative process or in motions to the Court. Similarly, the Secretary questions the genesis of the Davidson letter, although it is not unusual for officers not selected for promotion to contact previous raters to put marks into context for submission to a later board.[4] *See* Pl. Ex. 10, p. 66, ¶ 9. The Crowl declaration shows the importance of the numerical rankings known as the Value and Distribution marking and the Comparative Assessment numbers and what numbers are competitive. These issues were raised in the administrative process. AR pp. 131-132 (showing correction of the Davidson report would improve Plaintiff's Value and Distribution markings and improve his record); AR pp. 473-475 (demonstrating the impact on Plaintiff's Comparative Assessment if Col Scovel's report accurately reflected his performance). These are key facts on the issue of materiality, but the Secretary *never* addressed them during the administrative process or in motions to the Court. *See* Pl. SOF ¶ 55 and Response. The Court must resort to Col Crowl's declaration for background information as the Secretary failed to

---

[3] If Defendants dispute the accuracy of Col Crowl's representations, they had ample time to prepare and submit affidavits to the contrary as Col Crowl's declaration was submitted with Plaintiff's original dispositive motion (Document # 5) in September 2005.

[4] The irony in this case is that instead of merely placing the marks in context, Capt Davidson admitted falsifying the rankings and Col Wilk admitted to not making his own assessment.

provide the requisite level of analysis in his decision and thereby frustrated judicial review.

## II.  Plaintiff Declarations (Pl. Ex. 11 and Pl. Ex 13) Are Proper for Consideration.

Consideration of Plaintiff's declaration is proper under the "background information exception," is justified because Defendants failed to explain administrative action so as to frustrate effective judicial review, and because there is a "strong showing of bad faith or improper behavior on the part of the agency." Defendants' dispositive motion and Opposition introduces a concept not articulated in either of the Secretary's decision. Defendants argue that BCNR granted Plaintiff relief on the Davidson report, and he is not entitled to further relief. Def. Opp., pp. 4-5, 8. Although both Secretarial decisions identify BCNR's corrective action, the Secretary never articulated this as a basis for the denial decision. *See* AR 31-33 (April 16, 2004 decision); AR Vol. I (Certified on May 17, 2006), pp 2-3 (February 23, 2006 decision). Regardless, it is only half the story.

Plaintiff specifically asked Mr. Brian George, an attorney for BCNR, if he should request the SSB in his BCNR petition. Pl. Ex. 13, p. 77, ¶ 4; *see* AR p. 7 (signature block indicating Mr. George signing by direction of BCNR). Mr. George instructed Plaintiff to request the SSB through CMC, if BCNR took favorable action on Plaintiff's application. Pl. Ex. 13, p. 77, ¶ 4. Plaintiff followed Defendant's advice and confirmed with Col Yoder, who worked in the Manpower Division of Headquarters Marine Corps, that his right to a SSB would not be prejudiced by any corrective action by BCNR. *Id*. at ¶¶ 4-5. Defendants now want to prejudice Plaintiff for following Defendants' own advice. This is important background information that

should be considered by the Court.[5]

Consideration of Plaintiff's declaration on the timing of the Secretary's February 23, 2006 decision is proper. As noted by Defendants, Plaintiff is an active-duty major and knows that subordinates cannot bind the Secretary on matters reserved to him for decision. *See* Def. Opp. p. 10. However, Plaintiff, having spent almost 10 years on a general's staff, knows that the staff knows how long it takes for a decision to be issued. Based on that staff experience, Code 13's representation to Mr. Wood, deputy counsel to CMC, and LtCol Carberry that a final decision would be issued in the first half of September 2005 was likely accurate. *See* Pl. Ex. 13, p. 76, ¶¶ 2-3. Code 13 was the last staff section to review the application before reaching the Secretary. *See* Captain (Capt) Adamson Declaration (Document #25, Exhibit A). This makes the estimate more likely to be accurate.

After Code 13 completes its review, it takes approximately three weeks for the Secretary to issue a final decision. *See* Capt Adamson Declaration., ¶¶ 4-5.[6] Given this fact, Code 13's representation to Mr. Wood and LtCol Carberry that a final decision would issue in a few weeks meant that Code 13 had either completed or was nearing completion of their review. However, Code 13 did not complete their legal review until February 7, 2006. *Id.* This is almost five months after Code 13 indicated that a final decision would be issued. This is almost a month

---

[5] Again, Plaintiff does not believe that the Secretarial decisions were based on the actions taken by BCNR and, in fact, such consideration would have violated applicable regulations as discussed, *infra*.

[6] Defendants argue that it took so long for the Secretary to issue a decision because of the "sheer volume of material (over 150 pages)" and that it was during a time of war. Def. Opp. p. 11. Based on Capt Adamson's declaration, it is apparent that the neither the war nor the length of the request had any impact on the time it took the Secretary to make a decision, e.g. it took about

after Plaintiff submitted his second summary judgment motion (Document # 20). Given the sequence of events, it cannot be more plain that the Secretary's February 23, 2006 decision was issued for purposes of litigation. As such, it is proper to consider Plaintiff's declaration so the Court can determine what weight, if any, should be given to the Secretary's decision.

Plaintiff's declaration demonstrates improper conduct of Defendants to engage in the "interactive" SSB process regarding how Plaintiff obtained the Davidson letter. Defendants state that "SSB requests are of an 'interactive nature' [and] those persons responsible for processing SSB requests may contact the requestor to clarify any question about the request." AR p. 106, ¶ 3; Pl. Ex. 14, ¶ 3. The AR makes plain the genesis of the Davidson and Wilk letters, which formed the basis for the fitness report correction. Regardless, an agency attorney responsible for reviewing the request, Capt Gaffney, called Plaintiff on this very point. Plaintiff gave a detailed explanation. Pl. Ex. 11, Enclosure 2, p. 71. He offered to Capt Gaffney's superior, LtCol Carberry, to explain further and specifically noted the "interactive nature" of the process and requested to address any concerns about his request. Pl. Ex. 11, enclosure 1, p. 70. In response, Plaintiff was told "if we need anything cleared up, we'll give you a ring. Appreciate your input." *Id.* This was in keeping with "interactive" nature of the process; and when Plaintiff was not further contacted, assumed the matter had been resolved.[7] Instead, CMC recommended denial of

---

three weeks like it normally does.

[7] 42 U.S.C. § 12112 ("Americans with Disabilities Act") requires employers to engage in an "interactive process" to find reasonable accommodation for disabled employees. "The failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible is *prima facie* evidence that the employer may be acting in bad faith." *Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1021 (8th Cir. 2000). The same should apply in this case and supports liberal supplementation of the record.

Plaintiff's SSB request because, *inter alia*, he did not sufficiently explain how he obtained the Davidson letter. This is improper and Plaintiff's declaration should be considered.[8]

### PLAINTIFF'S STATEMENT OF FACTS STATE GENUINE, MATERIAL FACTS THAT ARE NOT REASONBLE IN DISPUTE

Defendants argue Pl. SOF are in dispute, are not facts, or are not material. The objections fall into certain categories: (1) excerpts from letters that were before the Secretary, (2) excerpts of applicable regulations and statutes; (3) consideration of Plaintiff's "personal opinion"; and (4) those of questionable validity. As to category 3, Plaintiff addressed, *supra,* why his declarations as well as that of Col Crowl are properly considered.

As to the first two categories, the letters in the AR and the orders and regulations applicable to the processing of Plaintiff's requests provide the evidence, facts, and standards upon which the Secretary must make a decision. If the excerpts in Pl. SOF are accurate, make a factual assertion, and if there is no contradictory evidence, the fact must be undisputed.[9] Rather than acknowledge the accuracy of the excerpts, or showing contradictions in the record or governing regulations, Defendants "respectfully refer the Court to the documents for a full and accurate account of their contents and object to any characterization of plaintiff that may be

---

[8] Pl. SOF, ¶ 21 states that "SSB requests are of an 'interactive nature' [and] those persons responsible for processing SSB requests may contact the requestor to clarify any question about the request" citing to Defendants' own letter at AR p. 106, ¶ 3. Defendants respond that "interactive nature" is "vague and ambiguous." This is specious given the plain meaning of the words and Defendants' action in calling the Plaintiff to clarify an issue in the SSB application. Defendants simply do not want to admit their failure to engage in good faith in their own process.

[9] Defendants may be arguing the possibility the authors of the letters are being untruthful; therefore, any statements within the letters cannot be "facts." The statements were signed under 28 U.S.C. § 1746 or 18 U.S.C. § 1001. Absent contrary evidence, these must be considered facts or the Secretary has to explain why these sworn statements are not worthy of belief.

inconsistent therewith." *See* Defendants Response to Pl. SOF, ¶¶ 9, 10, 12, 13, 14, 15, 16, 17,

19, 22, 23, 24, 25, 29, 31, 32, 36, 37, 38, 40, 41, 42, 43, 46, 49, 50, 51, 52, 53, 56, 59, 60, 61, 62,

63, 64. Plaintiff took considerable effort to distill the genuine, undisputed, material facts in an

effort to sharpen the focus of the litigation. Defendants' approach undercuts Rule 56.1.

As an example of the first type of objection, Pl. SOF ¶ 13 states:

> "Col Scovel provided a letter stating that, although the comment
> and marking were accurate at the time of the report, he had inflated
> his grading philosophy over the intervening years. AR pp. 535-
> 536. Under his current grading philosophy, Col Scovel equates a
> "top 5%" comment to a mark in the 7th of 8 blocks. AR p. 536, ¶
> 4."

Defendants' response is as follows:

> "Defendants deny that personal opinions or grading philosophies of
> Commanders are material to any decision before this Court, as
> neither plaintiff's assertions of his action nor his accounts of third
> party opinions can assist this Court in its evaluation of the validity
> of the Secretary's decision making process. Plaintiff
> inappropriately submits his characterization of AR 535-536 as
> material facts. Defendants respectfully refer the Court to those
> documents for a full and accurate account of their contents and
> object to any characterizations of plaintiff that may be inconsistent
> therewith. Regardless of the accuracy of the substance of
> plaintiff's alleged actions, defendants agree that the information
> contained in the AR was before the Secretary for his consideration
> on April 14, 2006 [sic], and again on February 23, 2006."

This response has several deficiencies. First, Plaintiff's fact accurately characterizes the

Scovel letter, which states that when Col Scovel "marked [Plaintiff] in the 5th block, [he]

believed that this mark would be viewed as 'outstanding' and consistent with a 'top 5%'

comment." AR 535, ¶ 3. This means that Col Scovel thought the report was accurate when

written. The letter goes on to state as Col Scovel "now rank[s] officers, a 'top 5%' comment equates to a marking in the 7 block." Clearly, Col Scovel inflated his grading philosophy. Pl. SOF ¶ 13 is not an inappropriate characterization of the Scovel letter. Again, this is only one example. Defendants follow a similar methodology when Plaintiff excerpts from the letters of Col Wilk, Col McCown, BCNR, CMC, and the Secretary.

Second, grading philosophies of commanders, and specifically Col Scovel, are highly relevant to the issue before the Court as Defendants' own order specifically caution against raters changing their philosophies because it unfairly discriminates against earlier reports. This is at the heart of Plaintiff's complaint. Plaintiff is entitled to be considered for promotion based upon a record that accurately reflects his performance. Third, the Scovel letter was never before the Secretary. It was before BCNR but was not a part of the process in the Secretary's April 14, 2004 and February 23, 2006 decisions as those both dealt with the Davidson report.

As an example of the second type of objection, Pl. SOF ¶¶ 63-64 excerpts relevant orders and regulations. Specifically, per 32 C.F.R. 723(e)(2) BCNR applies a substantial evidence standard to rebut the presumption of regularity while the PERB uses a preponderance of the evidence standard per MCO 1610.11C. These are facts and are relevant given that BCNR, without additional analysis, simply adopted the PERB's findings without weighing the evidence under the proper standard.

The final category of objections is those that are of questionable validity. Plaintiff provides a few examples. In Pl. SOF ¶ 3 Plaintiff detailed the actions he took to prepare for the FY 04 board. Defendants respond that this is immaterial. A key issue in this litigation is Plaintiff's reasonable diligence to ensure the accuracy of his military record. Defendants

-11-

admitted in Pl. SOF ¶ 1 that the Marine Administrative Message (MARADMIN) delineated a

Marine's responsibilities to ensure the accuracy of his records. In Pl. SOF ¶ 2, Defendants admit

that this list is *exhaustive*. It is illogical to then say Plaintiff's actions in conformance with the

MARADMIN are not material to an ultimate issue to be decided by the Court. In Pl. SOF ¶ 5,

concerning Plaintiff 's contact with LtCol McLennan, a career counselor in March 2003, Plaintiff

relied upon Defendant's admission in their answer to the original Complaint, as Defendants

indicated in the answer to the Amended Complaint that they lacked knowledge or information.

In response to Plaintiff's SOF, Defendant neither admit or deny as the "matters referenced . . . are

not included in the Administrative Record." This is wrong as this fact is contained in the AR.

*See* AR p. 479 ¶ 24.

Pl. SOF ¶ 26 addresses whether Defendants have published regulations concerning the

requirement for career counselor contact prior to requesting a SSB. In response Defendants deny

the fact even though the same facts were previously admitted. *See* Answer to Amended

Complaint ¶ 80; Answer to Complaint ¶ 50. Pl. SOF ¶ 48 references Col Scovel's letter which

states that he thought at the time he authored Plaintiff's report in 1999 that a "top 5%" comment

equated to a mark in the 5th block. The letter further indicates that, at least by September 2003,

Col Scovel changed how he rates individual officers and now equates a "top 5%" comment to a

mark in the 7th block. In response Defendants state that "insofar as those sentences allege matters

pertaining to Col Scovel's thought processes, there is no evidence in the administrative record to

support those matters." It cannot be more plain based on Col Scovel's letter, which is contained

in the AR, that he changed his grading philosophy between the time he authored Plaintiff's report

in 1999 until the convening of the FY 05 board in September 2003.

## DAVIDSON REPORT

### I. Secretary's Decision, Whether Deemed Denial or February 23, 2006 Decision, Cannot Survive an APA

Plaintiff's Summary Judgment Motion established why the change to the Davidson report was material and identified the evidence supporting this conclusion. Pl. Mot. Sum. Jud., pp. 20-28. Plaintiff demonstrated why he was reasonably diligent and identified the evidence supporting this conclusion. *Id.* at pp. 29-44. Plaintiff's motion emphasized the fact that neither the CMC nor the Secretary directly addressed even one of Plaintiff's contentions made during the administrative process. In Opposition the Secretary continues to ignore the evidence that was contrary to his decision or explain why it was discounted or given less weight. This necessarily means that the decision cannot survive judicial review. *Smith v. Dalton*, 927 F. Supp. 1, 5 (D.D.C. 1996) (finding that a court must examine whether the agency considered all of the evidence before it, and if so, if it stated why the evidence contrary to the final decision was "disregarded or given less weight"). In Opposition, Defendants, just as in the administrative process, do not attempt to address Plaintiff's argument and merely restate what was in their original motion. Defendants have failed to demonstrate that their decision to deny Plaintiff's SSB requests reflects a rational connection between the facts found and the choice made.

Defendants argue that the Secretary's February 23, 2006 decision concerning materiality was rationally based on the evidence before him and identify several points. First Defendants argue that the fact that BCNR amended the report, placed Plaintiff back in-zone for the FY 05 board and was ultimately not selected demonstrates that the change was not material. Def. Opp., pp 4-5, 8. Second, Defendants argues that the report was 13 years old and did not prevent

-13-

Plaintiff from being selected to captain and major. *Id*. at p. 6-7. Third, Defendants argue that the report in question was only for a four month period. *Id*.

**A. Secretary did not Base Denial Decision on Action of BCNR or FY 05 Board and Are Otherwise Irrelevant to the Materiality Determination.**

Plaintiff disputes that the Secretary relied on BCNR's action in making the materiality determination. The Secretary's April 2004 decision noted that the BCNR had taken corrective action on the Davidson report. AR p. 32, ¶ 3d. However, the decision still notes that it may have been a competitive concern. *Id*. at ¶ 4.a. Further, it is beyond pale that the denial decision was based on reasonable diligence and not materiality. *See Id*. at ¶ 5. In a similar vein, the February 23, 2006 decision, identifies the actions taken by the BCNR and the subsequent non-selection of Plaintiff by the FY 05 and FY 06 boards. AR Vol. I (Certified May 17, 2006), p. 2. However, that decision states that "[a]fter reviewing the references, [the Secretary] determined there is no material error." *Id*. at last paragraph. The references to which the Secretary refers do not include the BCNR's actions. *Id*. Further, the Secretary specifically states his bases for the materiality determination: the Davidson report was accurate when written; the report was for a period of approximately four months and Plaintiff was promoted to captain and major with the report in his record. *Id*. at pp 2-3. These are the issues that define the scope of review regarding materiality.

BCNR's actions and the results of subsequent selection board's cannot be used by the Secretary as a proxy for the materiality determination. The case law is clear that materiality is not a "but for" test, e.g. that the officer would not have been selected even if the record before the board had been accurate. Before enactment of 10 U.S.C. § 628, after an officer showed that his record contained a defective performance evaluation (fitness report), the ultimate burden was on

-14-

the government to show that the officer would not have been promoted even if his record contained no error. *Richey v. United States*, 322 F.3d 1317, 1323 (Fed. Cir. 2003). However, since the enactment of 10 U.S.C. § 628, a Secretary is not to make such a harmless error determination. *Id.* at 1324 (citing to *Porter v. United States*, 163 F.3d 1304, 1323 (Fed. Cir. 1998), *cert. denied*, 528 U.S. 809, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999)). Instead, the case should be referred to a SSB, which will decide whether to promote the officer based on his corrected military record, and, therefore, the harmless error rule has no application. *Id.*

Stated another way, an error can be material and warrant the granting of an SSB even though that was not "the" reason the officer was not selected. This is likely due to the closed nature of the board's deliberations, which may not be divulged. *See* 10 U.S.C. § 618(f). As such, no one can dispositively state the basis for an officer's nonselection. 10 U.S.C. § 628 avoids this problem by considering if the error was material and, if so, sending the record to an SSB. In Plaintiff's case, the issue is not whether the Davidson report was "the" reason for Plaintiff's nonselection. The issue is whether the FY 04 board had before it a materially accurate portrayal of Plaintiff's performance. Given all the evidence on the importance of the over/under numbers and the fact that the Davidson report was a "transfer" report, there can be no argument that the inaccuracy was material within the meaning of the applicable regulations and statute.

Further, each promotion board may place different weight on any given factor. The FY 04 board appeared to place dispositive weight on first lieutenant rankings. *See* Pl. Mot. Sum. Jud., pp. 25-27; AR pp. 2-4. Perhaps the FY 05 board focuses on something else. The issue must be whether the Plaintiff was fairly considered by the FY 04 board and the materiality determination must be made without reference to following boards. This position is in accord

-15-

with Department of Defense (DoD) Instruction 1320.11 which requires the convening of an SSB

if the *original* board involved material error.

Defendants allude to the "broad discretion conferred upon the Secretary to decide whether

to convene as SSB was intended to provide the Secretary with a means to effect justice,

considering all relevant factors." Def. Opp. p. 8. Defendants cite no authority for this

proposition. In fact, it is in direct conflict with DoD Instruction 1320.11 which states:

> "Each Military Department *shall* use a Special Selection Board for
> the reasons listed in Section 628(a) . . . *or* if the decision of the
> *original* board involved a factual or administrative error, *or* if the
> board lacked some material information for its consideration." Pl.
> Ex. 6, p. 21, ¶ 4.1 (emphasis added).

The Secretary admits that he is bound by the DoD regulations. Pl. SOF ¶ 42. Thus, the

Secretary has no discretion to convene a SSB as a remedy if the "original" board lacked some

material information for its consideration. The only exception is if the officer "may, by

maintaining reasonably careful records, have discovered and taken steps to correct that error or

omission on which the original board based its decision against promotion." Pl. Ex. 6, p. 21, ¶

4.2. There is no provision or delegation to the Service Secretaries to make a decision in equity.

Plaintiff specifically asked Defendants whether his right to an SSB for the FY 04 board's

unfair consideration of Plaintiff's record be compromised by the corrective action taken by the

BCNR and any decision by the FY 05 board. Pl. Ex. 13, p. 77, ¶¶ 4-5. Plaintiff was told that it

would not and that the two processes were separate and distinct. *Id.* Notably, this tracks the

intent of DoD Instruction 1320.11.

Defendants state that it was "not arbitrary or capricious for the Secretary to have found, in

the original April 16, 2004 denial decision, that there had been no 'material unfairness' in the

conduct of the LtCol Selection Board." Def. Opp., p. 5. This is a mischaracterization of that decision. The Secretary specifically based his denial decision on the Plaintiff's alleged lack of reasonable diligence. This is eminently plain by reading the penultimate paragraph of the decision. AR p. 32, ¶ 5. There is no possible way that the "Conclusion" could be construed to mean that the decision was based on materiality. *Id.* It is only after Plaintiff submitted his original motion for summary judgment (Document # 5), which noted the Secretary's concession as to materiality, discussed with opposing and agency counsel the fact that the Secretary conceded the issue of materiality (Pl. Ex. 13, Enclosure 2, pp. 81-84), and submitted his second motion for summary judgment (Document # 20), which again noted the Secretary's concession as to materiality, that Defendants argue that the Davison report was not material. Defendants do so by citing to a snippet within the decision that was irrelevant to the ultimate "Conclusion" and which contradicts the finding that the ranking "may have been a competitive concern." Further CMC's July 25, 2005 recommendation concludes that the April 16, 2004 decision, which was authored by CMC, was based on reasonable diligence. The recommendation states that Plaintiff's application "does not meet the requirements for a special selection board [because] he failed to exercise reasonable diligence to ensure his record was substantially accurate and complete before the convening of the board and has not provided any additional evidence to refute the [Secretary's April 16, 2004 decision]." There is no mention of materiality.

### A. Secretary February 23, 2006 Decision Contradicts His August 26, 2003 Decision.

The Secretary's February 23, 2006 decision regarding materiality is premised on his view that the "report was accurate, timely, and based on the reporting senior's opinion at the time."

-17-

AR Vol. I (Certified May 17, 2006), p. 2. Plaintiff demonstrated that this is directly contrary to

the Secretary's decision on August 26, 2003 to correct the report. Pl. Mot. Sum. Jud., pp. 23-24.

On August 26, 2003, the Secretary, through the BCNR, determined that the Davidson report was

inaccurate at the time it was written concluding that Plaintiff "should have been ranked '1 of 3,'

rather than '3 of 3.'" AR p. 60. The Secretary further found that the report "must be so modified

to reflect [Davidson's] true opinion of the [Plaintiff's] ranking." *Id.* 10 U.S.C. 1552(a) bars the

Secretary from issuing a contradictory decision and he must be bound by his August 26, 2003

decision. Therefore, the February 23, 2006 decision cannot withstand judicial review even under

the deferential arbitrary and capricious standard. Defendants avoid addressing these facts in their

Opposition and in their response to Plaintiff's SOF. *See* Pl. SOF, ¶¶ 37, 38.

### B. Four Month Report is Material.

Defendants emphasize that the Davidson report covered an approximately four month

period out of a then 15-year career and, therefore, it cannot be material. Def. Opp., p. 7. This

argument ignores the contrary evidence. A reviewing Court must examine whether the agency

considered all of the relevant evidence before it, and if so, if it stated why the evidence contrary

to the decision was disregarded or given less weight." *Smith v. Dalton*, 927 F. Supp1, 5 (D.D.C.

1996).[10]  The Secretary failed to address the fact that this was a transfer report in which Plaintiff

was ranked last even though Plaintiff raised the issue in the administrative process. AR p. 38 n.

---

[10] This type of review is not improper "second-guessing [of] the weight attributed by the
Secretary to various items of evidence." Def. Opp. p. 3; *see Id.* at pp. 7, 9. It is not even second
guessing when the Secretary will not address evidence that is contrary to his decision or
undercuts the bases for the decision. Even the Secretary acknowledges that he must consider
each non-frivolous argument raised by Plaintiff. *See* Def. Mot Sum. Jud. p. 9 citing to *Frizelle v.
Slater*, 111 F.3d 172 (D.D.Cir. 1997).

-18-

3 (being "ranked last on a transfer report sends a strong negative message, even though the report is not considered to be adverse per the provisions of MCO p1610.7_"); AR p. 45, ¶ 30. The Secretary failed to address that the over/under numbers on the Davidson report were used by his own career counselor's to gauge Plaintiff's competitiveness for promotion and found that the change would improve Plaintiff's record. *See* AR pp. 131-132. It did not matter that it was a four month report. The report counted the same as any other report in Plaintiff's record. The Secretary ignores these facts that contradict his decision. It is relevant that per Defendants' regulations, lieutenant reports were due on a semi-annual basis and that an observed report was required if the lieutenant had been under supervision for 31-days. Pl. Ex. 13, p. 78, ¶ 10. These facts support the idea that the report was given "full weight" by the board and was in no way discounted because it was a four month report.

### C. Lack of Materiality Not Shown by Fact of Plaintiff's Promotion to Captain and Major.

Defendants argue that the Davidson report was not material because it was present in Plaintiff's record when promoted to captain and major. Def. Opp. p. 6. This argument is conclusory and unpersuasive when placed in context. Specifically, Defendants admit that the promotion rates for captains, majors, and lieutenant colonels as being 99%, 90%, and 70%, respectively, on the FY 04 and FY 05 boards. *See* Pl. SOF ¶ 39. The Secretary is, undoubtedly aware of the promotion percentages. In fact, Defendants makes these numbers available to the public. Pl. Ex. 13, p. 77, ¶ 7. Quite simply, as argued by Plaintiff, what may not prevent an officer's promotion to captain or major may prevent promotion to lieutenant colonel. Pl. Mot. Sum. Jud. pp. 27-28, ¶ 4.c. Defendants do not respond to this point in Opposition.

### D. No Requirement for Officers to Contact Previous Raters Before a Promotion Board.

`Defendants criticize Plaintiff for not identifying "any evidence in the Administrative Record showing that he ever provided the Secretary with an explanation why, if he truly believed before the original FY 04 board that the Davidson report was material to his chances for promotion, he 'failed' to contact Davidson for thirteen years, and why he did not feel it necessary to contact Davidson while auditing his officer records prior to his promotion to the rank of Capt and Major." Def. Opp. p. 9. This premise suffers from a number of fallacies.

There is no requirement that an officer being considered for promotion to contact each of his previous raters to query whether they completed a fraudulent report or otherwise failed to complete the report in accordance with the applicable directives at the time the report was written. An officer is entitled to presume that military officers carry out their duties correctly and in good faith. *Kosnik v. Secretary of the Air Force*, 31 F. Supp. 2d 151, 158 (D.C. Cir. 1998) (finding a strong presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith); *LaChance v. White*, 174 F.3d 1378, 1381 (Fed.Cir. 1999) (government officials are presumed to act in good faith and this presumption of regularity is the supposition that public officers perform their duties correctly, fairly, in good faith, and in accordance with law and governing regulations, and is valid and binding unless "well-nigh irrefragable proof rebuts or overcomes it"). There is no requirement for an officer to obtain a letter from previous raters for submission to a promotion board explaining why an officer was not given the highest possible rating in every category. *See* AR p. 45-46, ¶ 31 (arguing this point in the administrative process).

Against this backdrop, Plaintiff understood the significance of the report throughout his career. *Id.* However, Plaintiff had no reason to believe that Capt Davidson falsified the report and that Col Wilk failed to properly provide an independent assessment of the rankings. *Id.* Understanding the minimal impact that a rater's letter has on a promotion board when putting markings into context, it makes little sense to go through the time, effort, and, quite frankly, the embarrassment of seeking such a letter. Further, submission of the letter highlights the very issue to the board members. The board members may conclude that if the officer was concerned enough about the issue to attempt clarification, it must be a significant detractor, and the letter may actually do more harm than good.

Once passed for promotion, an officer must do what he can for the next board to include making those phone calls to previous raters seeking letters placing marks into context because the chances for selection decrease dramatically as once an officer is passed. The unique situation in this case, is that instead of merely placing the marks in context, Capt Davidson admitted he falsified the report in an effort to increase the chances for two other officers to be augmented into the "regular", as opposed to "reserve," forces. AR p. 22. Col Wilk admitted that he failed to provide an independent assessment of the rankings. AR p. 142, ¶ 5. Col Wilk was required to provide an independent assessment of the rankings. Amended Complaint ¶ 47 and Answer.

The Secretary's argument would require each officer to contact each of his superiors throughout his career to confirm whether the raters properly fulfilled their reporting responsibilities as the touchstone for "reasonable" diligence. Even if the raters said he fulfilled his reporting responsibilities correctly, the officer would still be required to ask before the next promotion board just in case the officer was not being truthful. This flies in the face of *Kosnick*

-21-

and would create an unworkable system. Plaintiff explained this in the administrative process. However, the Secretary continues the argument.

Defendants appear to argue the ranking was not material because, since Plaintiff did not contact Davison earlier, Plaintiff did not think it was material; so the Secretary determined that it was not material. This is convoluted logic and was not the basis for the Secretary's decision. Of course numerical ratings on an evaluation are material. There is ample evidence of this fact in the record. However, it cannot be considered a "failure" to not contact Davidson at an earlier point in time absent some evidence of a conspiracy between Capt Davidson and Col Wilk. Again, Plaintiff addressed this issue in the administrative process. AR p. 45, ¶ 31. There is no requirement for any officer to contact previous evaluators to amplify their markings prior to the convening of a promotion board. This cannot be the standard for "reasonable diligence."

### E. Reasonable Diligence.

When requesting a SSB, MCO P1400.31B requires an officer to explain the actions he took to ensure the accuracy of his record. Pl. Ex. 7, p. 29, ¶ 2.c. However, that order does not list any specific criteria. In his original SSB request, Plaintiff explained the actions he took to ensure the accuracy of his records per the criteria of the MARADMIN. *See* AR p. 4, ¶ 12. Defendants admit that the MARADMIN criteria are exhaustive of an officer's responsibilities. Pl. SOF ¶ 2 and 57. In his subsequent SSB request, Plaintiff again analyzed the MARADMIN factors, as well as those listed in the SJA memo, and demonstrated why he was reasonably diligent. AR pp. 38 – 46. This included specific reference to the fact that, despite Plaintiff's numerous reviews of his record, he did not discovery the inaccuracy due to its fraudulent nature.

AR p. 43, n. 7;[11] *see* Pl. Sum Jud Mot. p. 29. In Opposition, Defendants do not seriously

dispute Plaintiff's reasonable diligence under the criteria of the MARADMIN or SJA memo.[12]

## SCOVEL REPORT

Defendants fail to address the issues raised in Plaintiff's motion concerning why the

PERB's decision, which was adopted by BCNR, was in error to include misconstruing the

evidence presented and erroneously applying MCO P1610.7E. *See* Pl. Mot. Sum. Jud. pp. 45-50.

Similarly, Defendants never address the issues raised by Plaintiff concerning the other

shortcomings of BCNR's decision and its failure to comport with its own regulations. *See* Pl.

Mot. Sum. Jud. pp. 51-54. Instead, Defendants, in a conclusory fashion, simply states that "Col.

Scovel did not violate any regulation by allegedly changing his grading philosophy over time (the

alleged violation on which plaintiff's alleged material error is based.)" Def. Opp., p. 14.

---

[11] Despite the improper action of Capt Davidson and Col Wilk, Defendants blame Plaintiff for
not discovering the conduct before the FY 04 board. Def. Opp. pp. 5-6. This argument is
without merit given the lack of evidence of improper conduct by the two raters, the presumption
of regularity, and no requirement to verify raters carried out their duties according to applicable
regulations. The *only* reason the fraud came to light was because Plaintiff was not selected for
promotion and was the initiating cause for Plaintiff's contacting Capt Davidson and Col Wilk.

[12] Defendants dispute equating "timely" filing with BCNR and reasonable diligence. However, a
limitations period and reasonable diligence are linked. Under North Carolina law, the situs of the
Davidson report, the limitations period for a fraud claim is three years after the cause of action
has accrued. The action accrues when discovered by the aggrieved party of the facts constituting
the fraud. The limitations period begins from discovery of the fraud or from the time it should
have been discovered in the exercise of *reasonable diligence. See B-W Acceptance Corp. v.
Spencer*, 286 N.C. 1 (N.C. 1966); *Andrews v. Fitzgerald*, 823 F. Supp. 356 (D.N.C. 1993) (citing
to *B-W Acceptance Corp.*). Thus, if BCNR determined that Plaintiff's application was timely
because of the fraud, Plaintiff must have also been reasonably diligent. At a minimum, the
BCNR's finding of timeliness is a factor to be considered. Defendants at least admit this point.
*See* AR pp. 29-30, ¶ 6b

Looking at the Scovel letter, Defendants cannot make a nonfrivlious argument that Col Scovel

did not change his grading philosophy over time unless they are contending Col Scovel's letter is

untrue. Similarly, Defendants cannot make a nonfrivioulous argument that this change in

philosophy violates the intent of MCO P1610.16 which states that:

> "[reporting officials] must accurately and fairly assess the
> performance of their subordinates; [**reporting officials] who fail
> to do so will unwittingly and _unfairly discriminate_ against
> either earlier reports or subsequent reports.**" Pl. Ex. 8, p.045, ¶
> 8012.2(e)(Emphasis added).
> . . .
> Reporting seniors who attempt to change their rating philosophy
> may either positively or negatively affect the relative value of
> reports for MROs they previously rated. Para. 8012.2(e)(2). **When
> the rater changes his philosophy and grades higher, he will
> diminish the value of all preceding reports ever written.** _Id_. at ¶
> 8012.2(e)(2)(a). (Emphasis added).

The point is whether Plaintiff's record before the FY 05 accurately portrayed his

performance. Defendants argue that there must have been an error or inaccuracy when the fitness

report was written to warrant relief. Def. Opp. p. 14. This is not the standard. The issue is

whether the Plaintiff's performance was accurately portrayed before the FY 05 board. Based on

the plain reading of Defendants order, it is beyond pale that Plaintiff's official record as

considered by the FY 05 board was not an accurate portrayal of his performance. This is

confirmed by the dramatic shift in Plaintiff's Comparative Assessment numbers if Plaintiff was

accurately rated under Col Scovel current grading philosophy. Plaintiff's assessment would

change from having an equal number of officers rated above as below to having five times the

number below as above. _See_ AR pp. 473-475. This type of record is almost always selected for

promotion. Pl. Ex 10, p. 66, ¶ 12. Defendants would not address this issue in the administrative

process and will not address it in this forum. *See* Pl. SOF ¶ 55.

Defendants also argue that the FY 05 promotion board had Col Scovel's letter, and this made Plaintiff whole. Def. Opp. p. 14. Plaintiff explained why this was erroneous in the administrative record. *See* AR p. 476, n. 9. It was also addressed in Plaintiff's motion. Pl. Mot. Sum. Jud. p. 53-54. Quite simply, Col Scovel's letter was given little or no weight by the board and was no substitute for an accurate evaluation. This is supported by the PERB (AR pp. 459-460, ¶ 3.a), Col Crowl (Pl. Ex. 10, ¶ 11), and Col McCown (AR p. 484, ¶ 4) who indicated that the letter would have been viewed as merely an endorsement for promotion and not had any *official* impact on Plaintiff's cumulative assessment numbers. Although the change in grading philosophy was identified to the promotion board, it did not serve as a substitute for an accurate report. Therefore, the board considered Plaintiff's record in an unfair within the meaning of 10 U.S.C. § 628 and Defendants' governing regulations.

Respectfully submitted,

Dated: <u>November 10, 2006</u>

Jackson L. McGrady
Plaintiff, *Pro Se*
820 Bright Street
Fredericksburg, VA 22401
540.371.3792



**DEPARTMENT OF THE NAVY**
HEADQUARTERS UNITED STATES MARINE CORPS
MANPOWER AND RESERVE AFFAIRS DEPARTMENT
HARRY LEE HALL, 17 LEJEUNE ROAD
QUANTICO, VIRGINIA 22134-5104

IN REPLY REFER TO:

1401/2
MMPR-1

FEB 0 9 2005

From:  Commandant of the Marine Corps
To:    Major Jackson L. McGrady 216 74 4199/4402 USMC
       820 Bright Street, Fredericksburg, VA 22401

Subj:  SPECIAL SELECTION BOARD

Ref:   (a) Your ltr dtd 7 Feb 05
       (b) SECNAVINST 1401.1B

1.  In reply to reference (a), your request has been received by
this headquarters and is in staffing per reference (b).

2.  Subsequent to staffing, the Commandant of the Marine Corps'
recommendation and endorsement are forwarded to the Secretary of
the Navy for final disposition.  You will be informed by letter
of the Secretary's decision.

3.  The interactive nature of special selection boards may
require this headquarters to contact you.  Keep this headquarters
updated with your current mailing address, e-mail address, and
telephone number.  If you have any questions pertaining to the
subject board, please contact Mrs. Susan Reed, Officer Promotion
Section (MMPR-1), Harry Lee Hall, 17 Lejeune Road, Quantico, VA
22134, or phone at:  DSN 278-9703/4 or (COM) (703) 784-9703/4.

R. Y. GILLIS
By direction

PL. EX. 14

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of November, 2006, I, J. L. McGrady, sent by first class U.S. mail, postage prepaid, return receipt requested, a copy of Plaintiff's **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT CROSS-MOTION FOR SUMMARY JUDGMENT** to the following addresses:

Clerk of Court
United States District Court
for the District of Columbia
333 Constitution Ave., NW
Washington DC 20001

Mr. K. L. Wainstein
U.S. Attorney for the District of Columbia
555 4th St. NW
Washington, DC 20530


J. L. MCGRADY
Plaintiff, *Pro Se*
820 Bright Street
Fredericksburg, Virginia 22401
540.371.3792