UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

JACKSON L. McGRADY        )
                          )
        Plaintiff,        )
                          )
    v.                    )        Civil Action No. 05-1651
                          )
DONALD C. WINTER[1]        )
                          )
Secretary of the Navy, <u>et.</u> <u>al.</u>    )
                          )
        Defendants.       )
                          )
_____)

<u>MEMORANDUM OPINION</u>

Plaintiff, Marine Corps Maj. Jackson L. McGrady, brings this action pursuant to 10 U.S.C. § 628 and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, <u>et seq.</u>, against Defendants, U.S. Department of the Navy and Secretary Donald C. Winter, seeking judicial review of agency decisions relating to Plaintiff's military service record and requests for the convening of a Special Selection Board ("SSB").[2]

_____

[1] Pursuant to FED. R. CIV. P. 25(d), the current Secretary of the Navy ("Secretary"), Donald C. Winter, is automatically substituted as Defendant for former Secretary of the Navy, Gordon R. England.

[2] A SSB is a promotion board that convenes separately from the Navy's regularly-scheduled annual promotion boards. The Secretary has the authority to convene an SSB where he "determines that because of administrative error a person who should have been
(continued...)

This matter is presently before the Court on Defendants' Motion for Summary Judgment ("Defs.' Mot.") (July 25, 2006) [Dkt. No. 42] and Plaintiff's Cross Motion for Summary Judgment ("Pl.'s Mot.") (Aug. 25, 2006) [Dkt. No. 44]. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons stated below, Defendants' Motion for Summary Judgment is **granted** and Plaintiff's Motion for Summary Judgment is **denied**.

## I. Background[3]

On November 26, 1990, Plaintiff, who was then a First Lieutenant, received a performance review from Capt. Dennis Davidson for the four-month period beginning on August 1, 1990 and ending on November 26, 1990 ("Davidson Report"). AR at 396-97. The Davidson Report ranked Plaintiff "3 of 3," indicating he was the poorest performer compared to the two other officers under simultaneous review. AR at 396-97. Despite his low ranking,

---

[2](...continued)
considered for selection for promotion from in or above the promotion zone by a promotion board was not so considered . . . ." 10 U.S.C. § 628 (a)(1).

[3] Unless otherwise noted, the facts set forth herein are undisputed and drawn from the parties' Statements of Material Facts, submitted pursuant to Local Civil Rule 7(h), and the Administrative Record ("AR"). Additionally, unless otherwise noted, references to the AR are to the copy certified on November 22, 2005.

Plaintiff subsequently earned promotions to captain and then major. AR at 284-87.

On December 3, 1998 the Marine Corps issued Order ("MCO") P1610.7E, which modified the Performance Evaluation System for Marine Corps officers and called for a reduction in grade inflation. MCO P1610.7E, Pl. Ex. 8 (Aug. 25, 2006) [Dkt. No. 44-8]. Shortly thereafter, on August 3, 1999, Plaintiff received a performance review from Col. Francis Scovel for the period covering September 1, 1998 through March 15, 1999 ("Scovel Report"). AR at 584-588. In his review, Col. Scovel indicated that Plaintiff was among the "top 5% of majors [Scovel had] observed in [his] 22 years of service." Id. On the basis of his understanding at the time of MCO P1610.7E, Col. Scovel ranked Plaintiff fifth out of eight, with eight being the highest score possible. Id.

On July 12, 2002, the Commandant of the Marine Corps ("CMC")[4] issued a Marine Administrative Message ("MARADMIN") announcing that the Fiscal Year 2004 Lieutenant Colonel Selection Board ("FY 2004 Selection Board") would convene on October 9, 2003. AR at 155. In response to the MARADMIN, Plaintiff submitted an application for promotion to the rank of Lieutenant Colonel. AR at 161-67. Plaintiff was subsequently notified that he was not selected for

---

[4] The CMC presides over the Marine Corps' Headquarters and is required to provide recommendations regarding Marine Corps matters to the Secretary. 10 U.S.C. § 5043(e)(1).

promotion by the FY 2004 Selection Board. Plaintiff's Statement of Material Facts on Which There is No Genuine Issue ¶ 4 ("Pl.'s Stmt. of Facts") (Aug. 25, 2006) [Dkt. No. 44].

In response to this decision, Plaintiff consulted Lt. Col. D. Crowl regarding his military record. Id. ¶¶ 6,8. In evaluating Plaintiff's record, Lt. Col. Crowl identified inconsistencies in the Scovel Report and informed Plaintiff that negative inferences could be drawn from the Davidson Report. Id. ¶ 8; AR at 119-20, 479.

Based on Lt. Col. Crowl's comments, Plaintiff sought to obtain a letter from Captain Davidson to "ameliorate any negative inferences" that could be drawn from the Davidson Report. Pl.'s Stmt of Facts ¶ 10. On April 3, 2003, Plaintiff obtained a letter from Capt. Davidson stating that he "should have ranked [Plaintiff] 1 of 3" in his performance review but failed to do so, for reasons unrelated to Plaintiff's performance. AR at 22. Specifically, Capt. Davidson explained that:

> In that report I ranked First Lieutenant McGrady 3 of 3. This was not an accurate ranking. At the time of the report, there was little doubt that First Lieutenant McGrady was the more accomplished officer of the three and I should have ranked him 1 of 3. First Lieutenant McGrady was clearly superior. I ranked First Lieutenant McGrady, who was already a regular officer, behind the other two officers, both of whom were USMCR, in an

> effort to assist their chances for
> augmentation.
>
> I also made the "bonehead" assumption that
> First Lieutenant McGrady had limited
> aspirations for a career in the USMC and that
> the other two Officers were focused on a
> career. I was grossly mistaken in my
> assumption and live with this poor judgment
> constantly.
>
> Further, I did not believe that this report,
> even if First Lieutenant McGrady decided to
> stay in the Marine Corps, would hinder [his]
> career as he was certain for promotion and any
> follow-on assignments would show his superb
> value to service. I did not believe that my
> rankings on a transfer report would negatively
> affect [him].

Id.

Based on Davidson's letter, Plaintiff filed an application to the Board for Correction of Naval Records ("BCNR")[5] on May 6, 2003, requesting that Capt. Davidson's 1990 report be corrected to reflect a ranking of "1 of 3" instead of "3 of 3." AR at 186. Acting through the Performance Evaluation Review Board ("PERB"), the CMC recommended that BCNR deny Plaintiff's application to amend the Davidson Report.[6] AR at 129-130. On August 26, 2003, BCNR

---

[5] BCNR is a civilian board created by the Secretary pursuant to 10 U.S.C. § 1552. Unless the matter at issue is specifically reserved to the Secretary, BCNR has authority to take final action to amend a military personnel record. 32 C.F.R. § 723.6(e).

[6] To contest a performance evaluation report, an officer must first file his request with the CMC. MCO P1610.7E ¶ 5008.2. The CMC

(continued...)

granted Plaintiff's application to modify the Davidson Report. AR at 61.

On September 2, 2003, Plaintiff received a letter from Col. Scovel regarding the Scovel Report ("2003 Scovel letter"). AR at 535-36. Col. Scovel explained that, although Plaintiff was in the "top 5%" of majors, he ranked Plaintiff 5 out of 8 based on the understanding of MCO P1610.7E he had at the time. Id. Col. Scovel also stated that, if he were to evaluate Plaintiff based on current procedures, he would rank him 7 out of 8 instead of 5 out of 8:

> When [MCO P1610.7E] was published, a primary goal was to wring inflation out of the performance evaluation system.  We were all instructed that Bs and Cs were good marks, and blocks 3 and 4 . . . were fine, as well.  When I marked [then] Major McGrady in the 5th block, I believed then that this mark would be viewed as "outstanding" and consistent with a "top 5%" comment.  Since then, however, I think inflation has returned, at least to some degree, and the fifth block is now seen as middle of the road.  This was not my intent . . . . As I now rank officers, a "top 5%" comment equates to a marking in the  7 block.

Id.

In light of the amended Davidson Report, on September 16, 2003, Plaintiff requested the Secretary convene a SSB to consider

---

[6](...continued)
evaluates the request through PERB, which conducts the initial agency review. MCO 1610.11C ¶ 4a, Pl. Ex. 9 (Aug. 25, 2006) [Dkt. No. 44-9]. If the CMC, through PERB, denies the application, it is referred to the BCNR for final agency action. Id. at ¶ 9(h).

Plaintiff for promotion to Lieutenant Colonel. AR at 1-23.  While Plaintiff's SSB request was pending, the FY 2005 Lieutenant Colonel Selection Board ("FY 2005 Selection Board") considered Plaintiff for a promotion. In connection with that proceeding, Plaintiff provided the Board with a copy of the 2003 Scovel letter. Pl.'s Stmt. of Facts ¶ 47. On January 6, 2004, Plaintiff learned that the FY 2005 Selection Board denied his promotion to Lieutenant Colonel. Id.

On February 16, 2004, the CMC recommended denying Plaintiff's pending SSB request.  AR at 28-29.  On April 16, 2004, and without further comment, the Secretary adopted the CMC's recommendation and denied Plaintiff's SSB request.  AR at 75.

On December 9, 2004, Plaintiff submitted a request to BCNR to amend the Scovel Report to reflect a ranking of "7 out of 8" instead of "5 out of 8." AR at 582-83. On January 28, 2005, CMC, through PERB, recommended denying Plaintiff's record change application, noting that Scovel's performance evaluation was correct at the time it was written and that the 2003 Scovel letter was only an endorsement for promotion and not an official request to change Plaintiff's record.  AR at 465-66. On March 22, 2005, Plaintiff responded to PERB's recommendation and requested an SSB

based on the FY 2005 Selection Board's consideration of the unamended Scovel Report.[7] AR at 472.

On February 7, 2005, Plaintiff submitted a request to the Secretary for reconsideration of the April 16, 2004 denial of his SSB request. AR 34-180. On July 25, 2005, CMC recommended that Plaintiff's SSB reconsideration request be "disallowed." AR at 182-85. On August 17, 2005, Plaintiff filed a Complaint seeking judicial review of the Secretary's denial of his SSB reconsideration request. Although, at the time, the Secretary had not issued an actual decision on Plaintiff's request, Plaintiff argued that the reconsideration request should be "deemed denied" under applicable statutory provisions.

_____

[7] In response to PERB's recommendation, Plaintiff submitted to BCNR a second letter from Col. Scovel, which requested that the 1999 Scovel Report be amended. In his letter, Col. Scovel stated that:

> Failure to change the report unfairly colors [Plaintiff's] performance because of the new evaluation system's reliance on comparative assessments. Those who may look at [Plaintiff's] record now or in the future would be misled as to his performance during that period and as to his potential. This is not fair to the Marine or the Marine Corps, which relies on the performance evaluation system to make a myriad of personnel decisions. [Plaintiff] has a right to an accurate evaluation. The marking should be changed.

AR at 482.

On September 2, 2005, the Secretary, through BCNR, denied Plaintiff's request to amend the Scovel Report and to convene an SSB on those grounds. AR at 651-52. On February 23, 2006, the Secretary denied Plaintiff's SSB reconsideration request. AR Vol. I at 2-3 (certified May 17, 2006).

Plaintiff filed an Amended Complaint on May 11, 2006 [Dkt. No. 34]. On June 21, 2006, Defendants filed an Answer to the Amended Complaint [Dkt. No. 38]. On July 25, 2006, Defendants filed a Motion for Summary Judgment. On August 25, 2006, Plaintiff filed a Cross Motion for Summary Judgment as well as a Memorandum in Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 45]. On October 20, 2006, Defendants filed an Opposition to Plaintiff's Cross Motion for Summary Judgment and Reply in Support of Defendants' Motion for Summary Judgment [Dkt. No. 49]. On November 13, 2006, Plaintiff filed a Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment [Dkt. No. 51].

## II. Standard of Review

Judicial review in this case is based upon the APA and 10 U.S.C. § 628, which provides federal courts with jurisdiction to review military agency actions relating to SSBs. Both statutes accord substantially similar levels of deference to military administrative actions. See Homer v. Roche, 226 F. Supp. 2d 222,

225 (D.D.C. 2002) (holding that "the standard adopted by § 628(g) largely echoes that found in the APA").

In reviewing military agency action, a court may set aside a decision if it is arbitrary or capricious, not based on substantial evidence, the result of material errors of fact or a material administrative error, or is otherwise contrary to the law. 5 U.S.C. § 706(2); 10 U.S.C. § 628(g)(1)(A). In conducting its review, the court employs an "unusually deferential application of the 'arbitrary and capricious' standard . . . ." Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989). As our Court of Appeals has held "[p]erhaps only the most egregious decisions may be prevented under such a deferential standard of review." Id. at 1515.

To survive judicial review, the military agency's decision "must give a reason that a court can measure, albeit with all due deference, against the 'arbitrary or capricious' standard of the APA." Id. at 1514-15. The court will set aside an agency decision "only when the record is so compelling that no reasonable fact finder could fail to find to the contrary" Lakeland Bus Lines, Inc., v. NLRB, 347 F.3d 955, 961 (D.C. Cir. 2003).

Plaintiff has the burden of proving by "'cogent and clearly convincing evidence' that the [military administrative] decision was the result of a material legal error or injustice." Cochrane v.

Wynne, 541 F. Supp. 2d 267, 271 (D.D.C. 2008) (citation and internal quotations omitted). To satisfy this burden, plaintiff must "overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." Frizelle v. Slater, 111 F.3d 172, 177 (D.C. Cir. 1997)(citation and internal quotations omitted).

When review is based upon the administrative record, "[s]ummary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision . . . ." Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995). The court must limit its review to the administrative record, which "includes all materials compiled by the agency that were before the agency at the time the decision was made." James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1095 (D.C. Cir. 1996)(citations and internal quotations omitted).

## III. Analysis

Plaintiff seeks judicial review of the following administrative actions: (1) the Secretary's September 2, 2005 denial of Plaintiff's request to correct the Scovel Report and accompanying request to convene an SSB, Am. Compl., Count 3-4; and (2) the Secretary's denial of Plaintiff's SSB reconsideration request based on the Davidson Report error, id. at Counts 1-2.

-11-

**A.   The Secretary Did Not Act Arbitrarily or Capriciously in Denying Plaintiff's Request to Amend the Scovel Report and to Convene an SSB**

**1.   The Secretary's Decision Denying Amendment of the Scovel Report**

The Secretary denied Plaintiff's request to correct the Scovel Report on the grounds that the Report "was both administratively correct and procedurally complete as written and filed." <u>AR</u> at 465, 651. In seeking judicial review of this conclusion, Plaintiff argues that the Secretary's decision was: (1) contrary to law; and (2) not based on substantial evidence.[8] Pl.'s Mot. 46-51. [9]

---

[8] Plaintiff also raises a number of additional challenges to the Secretary's decision.

First, Plaintiff argues that because the Davidson and Scovel Reports "are similar in that the marks unfairly color Plaintiff's performance" the Secretary should have accorded them the same treatment and amended the Scovel Report. Pl.'s Mot. 51. However, as Plaintiff himself points out, the basis for the alleged error in the Davidson Report (Davidson's falsification of Plaintiff's ranking) was different from the reason Plaintiff presented for amending the Scovel Report (a change in Scovel's grading philosophy). Accordingly, Plaintiff is incorrect in characterizing the Reports as similar and deserving of the same treatment.

Second, Plaintiff argues that because the Secretary has allowed Plaintiff to continue submitting Col. Scovel's retraction letter to future selection boards, the Secretary has admitted that the Scovel Report is unfair and inaccurate. <u>Id.</u> at 53. Plaintiff has no basis for reaching this conclusion as the Secretary's decision to permit Plaintiff to continue presenting Scovel's letter is in accordance with Navy regulations and established BCNR practice. <u>Mueller v. Winter</u>, 485 F.3d 1191, 1199 (D.C. Cir. 2007). Morever, "[w]here the BCNR has no more evidence than it had here to determine whether a reviewer changed his report out of sympathy for a disappointed officer, there is nothing arbitrary about retaining both [documents] and permitting future promotion boards to give

(continued...)

The Court reviews Plaintiff's challenge to the Secretary's decision under the APA.[10] <u>Musengo v. White</u>, 286 F.3d 535, 538 (D.C. Cir. 2002).

---

[8](...continued)
each [] the credit they believe it deserves." <u>Id.</u> at 1199.

Third, Plaintiff argues that the BCNR was prohibited from affirming PERB's recommended denial of Plaintiff's request because PERB applies a higher burden of proof than BCNR. Pl.'s Mot. 54. Plaintiff is correct that a different burden of proof is required by the two boards. <u>See</u> MCO 1610.11C, ¶ 10a (PERB may recommend amending an officer's record where the "applicant presents an amount of relevant evidence tending to prove that the allegations contained in the application are more likely true than not"); 32 C.F.R. § 723.3(e)(2) (in deciding record change requests BCNR "relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties"). Nevertheless, Plaintiff has cited no statute, regulation, or other authority establishing that the BCNR is prohibited from affirming a PERB decision on a record change application. In the absence of authority, this Court should not intrude upon the regulatory framework that Congress and the military have established for review of military personnel matters. <u>Kreis</u>, 866 F.2d at 1511.

[9] Pursuant to 10 U.S.C. § 1552(a)(1), the Secretary "may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." In bringing a request under Section 1552, the burden of proof rests with petitioner. MCO 1610.11C, ¶ 10a; 32 C.F.R. § 723.3(e)(2).

[10] In order to survive judicial review, the Secretary's decision must include "the reasons for the determination that relief should not be granted, including the applicant's claims for constitutional, statutory, and/or regulatory violations that were rejected, together with all the essential facts upon which the denial is based . . . ." 32 C.F.R. § 723.3(e)(4).

#### a.  The Secretary's Decision Was Not Contrary to Law

MCO 1610.7E provides the legal basis for the Secretary's conclusion that the Scovel Report was "administratively correct and procedurally complete" when written. In this regard, the Secretary concurred in PERB's determination that "[n]othing in MCO 1610.7E provides reporting officials with the advantage of hindsight, combined with subsequent years of service and observations, to change previously assigned evaluative grades or comparative assessments." AR at 465.

Plaintiff claims that this holding is contrary to law because another section of MCO 1610.7E, Paragraph 8002.1(e), requires amending the Scovel Report, Pl.'s Mot. 48-51:

> Reporting senior[] [officers] ["RS"] must accurately and fairly assess the performance of their subordinates; RSs who fail to do so will unwittingly and unfairly discriminate against either earlier reports or subsequent reports.
> ....
>
> (2) Reporting seniors who attempt to change their rating philosophy may either positively or negatively affect the relative value of reports for [the officers] they previously rated.
>
>> (a) When the RS changes his or her grading philosophy and grades higher, he or she diminishes the value of all preceding reports ever written.

MCO 1610.7E, ¶ 8002.1(e)(2)(a). Plaintiff argues that the Scovel Report's alleged error violates Paragraph 8002.1 (e)(2)(a) and that the Secretary, therefore, acted contrary to law by failing to amend the Report. Pl.'s Mot. 50. However, as Defendants correctly argue, the clear and plain language of Paragraph 8002.1(e) merely cautions officers to maintain consistent grading philosophies and does not suggest that a change in grading philosophy serves as a basis for amending a performance evaluation.

Moreover, the Secretary's interpretation of MCO 1610.7E is consistent with Marine Corps regulations governing requests to correct performance evaluations,[11] as well as the military's general position that "post-hoc reevaluations by reporting seniors are insufficient to overcome the presumption of regularity, based on the understanding that raters may attempt to retract otherwise

---

[11] Under Paragraph 11(b) of MCO 1610.11C,

> Appeals supported by statements from reporting officials who in retrospect, attempt to refute specific deficiencies cited by them in the contested report(s) are not usually approved. Specific evidence of error in judgment, misinterpretation of facts and circumstances, and so on, must be provided. Statements that merely allude to changed perspectives following some unfavorable event (non selection for promotion, regular appointment, professional schooling, etc.) that may be attributable to the report(s) are of little value.

accurate assessments when requested to do so by their disappointed officers." <u>Mueller</u>, 485 F.3d at 1198.

For these reasons, Plaintiff has failed to demonstrate that the Secretary's decision is contrary to law.

>    **b.    The   Secretary's   Decision   Is   Based   on Substantial Evidence**

In challenging the Secretary's decision on the grounds of substantial evidence, Plaintiff argues that the Secretary's denial was based on the erroneous belief that Col. Scovel's perception of Plaintiff had changed, when in fact it was his grading philosophy that had changed. Pl.'s Mot. 47. However, Plaintiff's argument, which is based on PERB's recommendation to BCNR, is not supported by the recommendation's text, which clearly states that there had been a change in Colonel Scovel's grading philosophy. AR at 466.

Plaintiff does not present any other arguments suggesting that the Secretary's decision is not supported by substantial evidence, which is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Smith v. Dalton</u>, 927 F. Supp. 1, 5 (D.D.C. 1996) (quoting <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1184 (8th Cir. 1989)). In fact, a review of the record demonstrates that  PERB's recommended denial of Plaintiff's request as well as BCNR's adoption of that recommendation were

based on substantial evidence.[12]

In sum, Plaintiff has failed to demonstrate that the Secretary's decision is not supported by substantial evidence in the record.

### 2.    The Secretary's Decision on Plaintiff's SSB Request

In declining to convene an SSB based upon the Scovel Report, the Secretary noted that since "there was no defect in the Scovel Report, there was no basis for granting an SSB on those grounds. AR at 652. This conclusion is consistent with 10 U.S.C. § 628, which

---

[12] In recommending denial of Plaintiff's record change request, PERB cited to several key pieces of evidence:

> [S]ince reviewing the challenged fitness report in 1999, the Reviewing Officer (Colonel Scovel) has changed the manner in how he now grades/rates fitness reports. It is, therefore, the petitioner's contention that a mark in Block 7 of the Comparative Assessment . . . more appropriately reflects Colonel Scovel's comment that he was in the 'top 5% of majors' on whom he wrote. To support his appeal the petitioner furnishes a copy of Colonel Scovel's letter to the President of the [FY 2005 Selection Board.

AR at 465.

In affirming PERB's recommendation, the BCNR also noted the evidence it reviewed prior to reaching its determination: (1) Plaintiff's original record change application, all documents submitted in support thereof, and Plaintiff's naval record; (2) applicable statutes, regulations and policies; and (3) Plaintiff's rebuttal letters, dated March 22, 2005 and August 26, 2005, to the PERB recommendation, as well as attachments thereto. AR at 651.

allows the Secretary to convene an SSB only where there has been "material unfairness:"

> If the Secretary of the military department concerned determines, in the case of a person who was considered for selection for promotion by a promotion board but was not selected, that there was material unfairness with respect to that person, the Secretary may convene a special selection board under this subsection to determine whether that person . . . should be recommended for promotion. In order to determine that there was material unfairness, the Secretary must determine that —
>
> (A) the action of the promotion board that considered the person was contrary to law in a matter material to the decision of the board or involved material error or material administrative error; or
>
> (B) the board did not have before it for its consideration material information.

Id. at § 628(b)(1). Because the Secretary did not act arbitrarily or capriciously in concluding that there was no error in the Scovel Report, the Court concludes that the Secretary's decision not to convene an SSB was also proper.

For the foregoing reasons, the Court concludes that Plaintiff has failed to show that the Secretary acted arbitrarily or capriciously in denying Plaintiff's request to amend the Scovel Report and convene an SSB.

**B.    The Secretary Did Not Act Arbitrarily or Capriciously in Denying Plaintiff's Reconsideration Request Based on the Davidson Report**

Plaintiff raises two challenges to the Secretary's denial of Plaintiff's SSB reconsideration request. First, Plaintiff argues that the Secretary's February 23, 2006 decision should not be considered. Second, Plaintiff argues that the denial of his SSB reconsideration request was arbitrary and capricious and not based on substantial evidence. The Court will consider each of these arguments in turn.

**1.    The Secretary's February 23, 2006 Decision Is a Final Agency Decision and Therefore Is Properly Considered**

Plaintiff presents two arguments as to why the February 23, 2006 decision should not be considered by the Court. First, Plaintiff claims there was a final agency decision on his SSB reconsideration request on August 9, 2005 when Plaintiff's request was "deemed denied" pursuant to 10 U.S.C § 628(g).[13] Pl.'s Mot. 3. Second, Plaintiff argues that the February 23, 2006 decision was rendered solely for purposes of this litigation and should not be considered by the Court. Id. at 4-7.

_____

[13]Although Plaintiff argues against the Court's consideration of the February 23, 2006 decision, in his Amended Complaint, he presents the decision as an alternate ground for judicial review should the Court reject his claim that the SSB reconsideration request was "deemed denied." Am. Compl., Count 1-2.

With regard to his first argument, Plaintiff is incorrect that 10 U.S.C § 628(g) applies to SSB reconsideration requests. Under that statutory provision, "[i]f, six months after receiving a complete application for consideration by a special selection board under this section in any case, the Secretary concerned has not convened such a board and has not denied consideration by such a board in that case, the Secretary shall be deemed for the purpose of this subsection to have denied the consideration of the case by such a board." 10 U.S.C. § 628(g)(3)(A). The plain language of the statute makes clear that the six-month limitation period applies to initial requests to convene an SSB and nowhere suggests that that limitations period also extends to requests to reconsider previous SSB denials.

With regard to his second argument, Plaintiff has failed to show that the February 23, 2006 decision is an impermissible post-hoc rationalization issued merely for the purposes of litigation. As the case law makes clear, the rule barring consideration of post-hoc agency rationalizations applies "where an agency has provided a particular justification for a determination at the time the determination is made, but provides a different justification for the same determination when it is later reviewed by another body." Independence Mining Co. v. Babbitt, 105 F.3d 502, 511 (9th Cir. 1997).

Plaintiff argues that the February 23, 2006 decision constitutes a post-hoc rationalization because it issued several months after Plaintiff originally sought review in this Court and because it denied Plaintiff's reconsideration request on grounds not contained in the Secretary's April 16, 2004 decision. Pl.'s Mot. 4-7, 22. While Plaintiff is correct about the timing of the Secretary's February 23, 2006 decision, Plaintiff is incorrect that the grounds for dismissal contained in that decision constitute a post-hoc rationalization. The February 23, 2006 decision presented two rationales for denying Plaintiff's SSB reconsideration request. First, it affirmed the Secretary's April 16, 2004 decision denying Plaintiff's original SSB request because he had failed to exercise reasonable diligence. AR Vol. I at 2-3.  Second, it concluded that denial was also appropriate because the Davidson Report did not amount to material unfairness. Id. Plaintiff argues that this ruling on "material unfairness" was impermissible as a post-hoc rationalization. However, the "material unfairness" rationale was only a supplemental ground for denial, not a "different justification for the same determination when it is later reviewed by another body."

For these reasons, the Court concludes that the February 23, 2006 decision is the final agency decision on Plaintiff's SSB

reconsideration request and is properly considered by the Court.

> **2.  The Secretary's Decision to Deny Plaintiff's SSB Reconsideration Request Was Neither Arbitrary Nor Capricious**

Plaintiff argues that the Secretary acted arbitrarily and capriciously in concluding that the Davidson Report error did not constitute material unfairness and that Plaintiff failed to exercise reasonable diligence. Pl.'s Mot. 20-44. The Court reviews Plaintiff's challenge under 10 U.S.C. § 628(b).[14]

> **a.  The Secretary's Decision on Material Unfairness**

On the issue of material unfairness, the Secretary's February 23, 2006 decision concluded that:

> > [T]here is no evidence that, at the time the report was written, the reporting senior failed to consider all issues pertaining to the three first lieutenants he was evaluating. To the contrary, the fitness report was accurate, and based on the reporting senior's opinion at the time. Subsequent regret over the consequence of a ranking decision does not

---

[14] Plaintiff argues that the Court's review of the February 23, 2006 decision arises under the APA, rather than 10 U.S.C. § 628. Pl.'s Mot. 7. However, Section 628 states that, "[a] court of the United States may review a determination by the Secretary of a military department . . . not to convene a special selection board in the case of any person." As is clear, the Secretary's February 23, 2006 decision affirming the Navy's denial of Plaintiff's original SSB request constitutes "a determination by the Secretary of a military department . . . not to convene a special selection board . . . ." Accordingly, 10 U.S.C. § 628 governs the Court's review of the February 23, 2006 decision.

> constitute material error and reconsideration
> after the fact, motivated by an individual
> failing of selection, does not form the basis
> for granting a Special Selection Board.
>
> Furthermore, the fitness report covered
> less than four months of, at the time of the
> board, more than 15 years of active duty. With
> this same report unchanged, Major McGrady was
> promoted to captain and major.

AR Vol. I at 2-3.

Plaintiff raises several challenges to the Secretary's finding of no material unfairness. First, Plaintiff argues that the Secretary's conclusion contradicts the BCNR's August 26, 2003 decision to correct the Davidson Report. Pl.'s Mot. 22-24. Second, Plaintiff argues that the Secretary's April 16, 2004 decision already conceded the issue of material unfairness. Id. at 21-22. Third, Plaintiff argues that the Secretary's February 23, 2006 decision is not substantially supported by the evidence. Id. at 24-29.

With regard to the BCNR's August 26, 2003 decision, the record shows that the BCNR made no ruling on material unfairness, nor did it in any other way conclude that the Davidson Report was "material" as defined under 10 U.S.C. § 628.[15] With regard to the

---

[15]The BCNR is not required to find that an error is material in order to correct a military record. See 10 U.S.C. § 1552(a)(the BCNR "may correct any military record of the Secretary's department
(continued...)

Secretary's April 16, 2004 decision, as previously mentioned, that decision denied Plaintiff's request for an SSB based on his lack of reasonable diligence. Although the decision did make findings of fact that could have been used to reach a conclusion on material unfairness, the Secretary plainly chose not to do so.[16] He did not, therefore, "concede" the issue of material unfairness.

With regard to the issue of substantial evidence, the Secretary based his conclusion on the following key pieces of evidence: (1) the BCNR's August 26, 2003 decision[17] correcting the Davidson Report to reflect a ranking of 1 out of 3 and ordering

---

[15](...continued)
when the Secretary considers is necessary to correct an error or remove an injustice").

[16]Although the Secretary's April 16, 2004 decision does suggest that the error in the Davidson Report "may have been a competitive concern," the Secretary did not ultimately reach a conclusion on this issue. See AR Vol. I at 71 ("The presence of the fitness report for the period 1 August 1990 to 26 November 1990 in Major McGrady's record may have been a competitive concern, however, Major McGrady reasonably should have known the nature of the ranking and should have taken appropriate steps to highlight or correct the fitness report prior to the [FY 2004 Selection Board] convening.").

[17] While Plaintiff suggests that the Secretary did not review the BCNR's August 26, 2003 decision, it was in fact plainly referenced in the Secretary's February 23, 2006 decision. Moreover, the BCNR's decision was also cited in the Secretary's April 16, 2004 decision and was therefore part of the record accompanying Plaintiff's SSB reconsideration request. Pl.'s Reply 14.

other relief;[18] (2) the fact that, at the time of the FY 2004 Selection Board, the Davidson's Report covered less than four months of Plaintiff's fifteen years of active duty; and (3) the fact that, even before the Davidson Report had been corrected,

---

[18] In relevant part, the BCNR recommended that the following remedial action be taken on plaintiff's record change request:

> (a)   That Petitioner's naval record be corrected by modifying the fitness report for 1 August to 26 November 1990, signed by Captain D.W. Davidson and dated 10 December 1990, by changing the item 15 peer ranking from "3" of "3" to "1" of "3."

> (b)   That Petitioner's naval record be corrected further so that he will be considered by the earliest possible selection board convened to consider officers of his category for promotion to lieutenant colonel as an officer who has not failed selection for promotion to that grade.

> (c) That any material or entries inconsistent with or relating to the Board's recommendation be corrected, removed or completely expunged from Petitioner's record and that no such entries or material be added to the record in the future.

> (d) That any material directed to be removed from Petitioner's naval record be returned to this Board, together with a copy of this Report of Proceedings, for retention in a confidential file maintained for such purpose, with no cross reference being made a part of Petitioner's naval record.

AR Vol. I at 31.

Plaintiff had received a promotion from captain to major. AR Vol. I at 2-3.[19]

In deciding whether the Secretary's decision is based on substantial evidence, the Court must not base its finding "'merely on the basis of evidence which in and of itself justified [the Board's decision] without taking into account the contradictory evidence or evidence from which conflicting inferences could be drawn.'" Lakeland, 347 F.3d at 962 (quoting Universal Camera Corp., v NLRB, 340 U.S. 474, 488, 71 S. Ct. 456 (1951)). While Plaintiff's reconsideration request does present additional arguments in favor of convening an SSB,[20] the Court cannot conclude that this evidence

---

[19] In the February 23, 2006 decision, the Secretary also noted that the FY 2005 and 2006 Selection Boards denied Plaintiff's promotion application, even though he was "in zone" and the corrected Davidson Report had been included in his file. AR Vol. I at 2. Plaintiff argues that the Secretary should not have considered these facts as Plaintiff's consideration by the FY 2005 and 2006 Selection Boards is irrelevant to determining whether Plaintiff suffered material unfairness before the FY 2004 Selection Board. Pl.'s Reply 15-16. While Plaintiff's argument is not without merit, the Secretary's decision on material unfairness does not rely on Plaintiff's consideration by the FY 2005 and 2006 Selection Boards.

[20] Plaintiff raises the following evidence and arguments in support of his claim that an SSB was warranted: (1) the fact that the Davidson Report was a transfer report, and that "being ranked last [on such a report] sends a strong negative signal to the promotion board;" (2) evidence from two other officers who had similar career patterns as Plaintiff that allegedly demonstrates that the selection boards "place[] dispositive weight on competitive rankings;" (3) an advisory report from a career counselor

(continued...)

is so compelling that the Secretary "could [not] have fairly and reasonably found the facts that it did," Morall v. DEA, 412 F.3d 165, 176-77 (D.C. Cir. 2005).

### b.    The Secretary's Decision on Reasonable Diligence

On the issue of reasonable diligence, the Secretary's February 23, 2006 decision concluded that:

> Major McGrady did not demonstrate the [reasonable] diligence required. Secretary of the Navy regulations issued pursuant to title 10, U.S. Code section 628(j) state that a selection board will not be convened to consider any officer who, through the exercise of reasonable diligence, might have discovered and corrected the errors or omission in the record prior to the convening of the Fiscal Year 2004 board; during those twelve years, he was aware of his 3 of 3 ranking, but took no action to change, or even inquire into the circumstances surrounding, the ranking.

AR Vol. I at 3.

In accordance with 10 U.S.C. § 628 as well as applicable military regulations, the Secretary's authority to convene an SSB for material unfairness depends upon petitioner's exercise of reasonable diligence in discovering any material errors or mistakes. See Department of Defense Instruction 1320.11 (directing

---

[20](...continued)
suggesting that "a change in the ranking would 'improve'" Plaintiff's record; and (4) evidence that promotion opportunities decrease as an officer becomes more senior. Pl.'s Mot. 24-28.

that an SSB "shall not . . . consider any person who may, by maintaining reasonably careful records, have discovered and taken steps to correct that error or omission on which the original board based its decision against promotion").

In challenging the Secretary's decision on this issue, Plaintiff raises several arguments. First, Plaintiff argues that the Secretary's decision on reasonable diligence contradicts the BCNR's August 26, 2003 decision that Plaintiff's record change request was timely. Pl.'s Mot. 39. Second, Plaintiff argues that the Secretary's decision ignores substantial evidence that Plaintiff had no reasonable basis to question the accuracy of the Davidson Report prior to 2003. Id. at 32-43. Third, Plaintiff argues that the Secretary's decision fails to identify "objective factors" used to identify reasonable diligence. Id. at 29-32.

With regard to the BCNR's August 26, 2003 decision, Plaintiff has failed to show that the BCNR's ruling on timeliness conflicts with the Secretary's ruling on reasonable diligence. In its August 26, 2003 decision, the BCNR held that Plaintiff's petition to amend the Davidson Report was timely even though it was filed some thirteen years after the Davidson Report was issued. Pl.'s Mot.

39.[21]  Plaintiff argues that the by permitting Plaintiff to proceed with his record correction request the BCNR essentially concluded that "there was no reasonable basis for contesting the [Davidson Report] until discovery of the error [in] 2003." Pl's Mot. 40. However, BCNR's conclusion that the petition to correct the error in the Report was timely does not amount to a finding that Plaintiff was reasonably diligent in actually discovering that error.

With regard to substantial evidence, the Secretary's decision was based on the following facts: (1) during the twelve years between the issuance of the Davidson Report and the FY 2004 Selection Board Plaintiff was aware of his "3 of 3" ranking; and (2) Plaintiff did not question the ranking's accuracy until after he was denied promotion by the FY 2004 Selection Board.[22] AR Vol. I at 3, 71. Although Plaintiff did present evidence suggesting he had no reason to believe the Davidson Report was incorrect until

---

[21] Under 10 U.S.C. § 1552(b), the Secretary is authorized to correct a military record only if "the claimant . . . files a request for the correction within three years after he discovers the error or injustice. . . . [or] if it [is] in the interest of justice."

[22] In the April 16, 2004 decision, the Secretary also noted that "correction of an error in an officer's record, after the officer incurs a failure of selection by a promotion board, will not necessarily be the basis for convening a special selection board." AR Vol. 1 at 71.

2003, this evidence is not compelling enough to outweigh the Secretary's finding that Plaintiff should have, but did not question the Davidson Report for some thirteen years and did so only after he believed his promotion opportunities had been adversely affected by the Report. See Mueller, 485 F.3d at 1200 (holding that Navy's denial of petitioner's SSB request was reasonable even though there may have also been substantial evidence supporting petitioner's claim); Morall, 412 F.3d at 176 ("In applying the substantial evidence test, we have recognized that an agency decision may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view.")(citation and internal quotations omitted).

For similar reasons, the Secretary's decision demonstrates the "objective factors" used for determining whether Plaintiff exercised reasonable diligence.[23] The Marine Corps Promotion Manual

---

[23] Plaintiff argues that the Secretary has failed to show that Plaintiff did not act with reasonable diligence because he complied with the applicable Marine Corps regulation for ensuring the accuracy of his records prior to appearing before the FY 2004 Selection Board. Pl.'s Mot. 29-31. There is no dispute that Plaintiff was in compliance with this regulation. Defendant's Reply to Plaintiff's Statement of Material Facts on Which There is No Genuine Issue in Support of His Motion for Summary Judgment ¶ 57 (Oct. 20, 2006) [Dkt. No. 49-1]. However, as reflected in the Marine Corps' Judge Advocate Division's legal opinion("Judge
(continued...)

defines "reasonable diligence" as the "fair, proper, and due degree of care and activity, measured with reference to the particular circumstance; such diligence care and attention as might be expected from a man/woman of ordinary prudence and activity." MCO P1400.31B ¶ 5002.2(c), Pl. Ex. 7 (Aug. 25, 2006) [Dkt. No. 44-8]. In assessing whether the Secretary has provided a sufficient basis for concluding that Plaintiff failed to meet this standard, the Court must determine whether the Secretary has "give[n] a reason that the Court can measure, albeit with due deference." Kreis, 866 F.2d at 1514-15. Where the "agency's path may be reasonably discerned," a "reviewing court will uphold a decision of less than ideal clarity . . . ." Frizelle, 111 F.3d at 176 (citation and internal quotations omitted). Here, the Secretary's decision clearly states that Plaintiff's request failed to meet the regulatory requirement of reasonable diligence and provides facts to support its conclusion.[24]

---

[23](...continued)
Advocate's Opinion") on Plaintiff's original SSB request, compliance with this regulation alone does not necessarily satisfy the requirement of reasonable diligence. AR at 28.

[24] Plaintiff argues that the Secretary's decision that Plaintiff failed to exercise reasonable diligence was based on the Judge Advocate's Opinion that Plaintiff had failed to consult with a career counselor before the FY 2004 Selection Board convened. Pl.'s Mot. 31. While it is true that the Judge Advocate's Opinion made
(continued...)

For the foregoing reasons, the Court concludes that the Secretary did not act arbitrarily or capriciously in denying Plaintiff's SSB reconsideration request based on the Davidson Report.

**IV. Conclusion**

For all the reasons stated herein, Defendants' Motion for Summary Judgment is **granted in full** and Plaintiff's Cross Motion for Summary Judgment is **denied in full**. An Order will accompany this Memorandum Opinion.


                                        /s/
September 16, 2011                      Gladys Kessler
                                       United States District Judge

---

[24](...continued)
this finding, the Secretary's decision is no way references or relies on this conclusion.